UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) ) | Criminal No. 16-10094-LTS |
| ROSS MCLELLAN, | ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S OPPOSITION TO MCLELLAN'S MOTIONS TO COMPEL THE GOVERNMENT TO SUBMIT MUTUAL LEGAL ASSISTANCE TREATY REQUESTS**

The government respectfully submits this consolidated response in opposition to defendant Ross McLellan's motions to compel the U.S. government to submit requests pursuant to Mutual Legal Assistance Treaties (MLAT) with, respectively, the Netherlands and Ireland. See Dkt. 275 & 276. McLellan seeks to compel the government to issue an MLAT to the Netherlands on his behalf to depose Sarah Lewis, and to issue an MLAT to Ireland to obtain materials previously sought by letters rogatory. Because MLAT procedures are not available to private parties such as McLellan, and the government's unwillingness to make impermissible requests pursuant to those treaties raises no constitutional concerns, his motions should be denied.

**BACKGROUND**

On June 26, 2017, letters rogatory to Ireland were issued without the government's opposition. McLellan has recently learned that the Irish government will not honor the letters rogatory, and so has filed one of the instant motions. Dkt. 276.

On January 10, 2018, this Court granted the unopposed motion of McLellan to take the deposition of Sarah Lewis pursuant to Rule 15. Dkt. 272. The government took no position on

the motion, provided that it did not delay the current trial date.  The government also understood from McLellan's counsel that, in order for the deposition to occur, either Ms. Lewis would have to submit to the deposition voluntarily or compulsion would have to be obtained via letters rogatory issued to the Netherlands.[1]

## ARGUMENT

1. <u>The MLAT between the U.S. and Ireland and the MLAT between the U.S. and the Netherlands do not provide any rights to private parties.</u>

Neither the Ireland nor the Netherlands MLAT provides private parties such as McLellan with the right to avail themselves of the treaties' provisions.  McLellan concedes as much with respect to the treaty with Ireland, but insists that the treaty with the Netherlands does afford such a right.  In support of his argument, McLellan cites the *Federal Judicial Center International Litigation Guide*, 2014, at 12 ("The first three MLATs signed by the United States – those with Switzerland, Turkey, and the Netherlands – include provisions granting defense counsel permission to access evidence pursuant to an MLAT.").  The *Guide* is incorrect.[2]  Nowhere in the MLAT does it mention anything about private parties being able to initiate (or compel the initiation of) an MLAT.  Rather, Section 5(3) of the MLAT, which addresses the taking of witness depositions and producing documents, provides: "At the execution of a request, the Requested State shall permit the presence of an accused, counsel for the accused, and any other interested person specified in the request."  1981 US-Netherlands Mutual Legal Assistance Treaty, June 12, 1981, U.S.-Neth., 35 U.S.T. 1361, T.I.A.S. No. 10734.  In other words, a

---

[1] The government has advised McLellan's counsel that, had counsel suggested that he would instead seek to compel the Rule 15 depositions by obtaining an order for the government to issue an MLAT, the government would have opposed the Rule 15 deposition.

[2] The *Guide* contains other surprising errors.  On page 12, it cites the case of *United States v. Sindona*, 636 F.2d 792 (2d Cir. 1980), as an example where a court ordered the government to make an MLAT request to Switzerland on the defendant's behalf.  In fact, the Second Circuit opinion refers to a request for deposition testimony to *Italy*, not Switzerland, and this was done on the *government's* initiative not the defendant's.  *See* 636 F.2d at 802-04.

defendant and his counsel are entitled to be present at any deposition obtained pursuant to an MLAT, but they are not entitled to initiate one.  Indeed, Art. 1 of the MLAT specifies "The Contracting Parties undertake to afford *each other*, upon request and in accordance with the provisions of this Treaty, mutual assistance in criminal investigations and proceedings." *Id.* (emphasis added).

Subsequent MLATs, like the one with Ireland, contain more explicit language disclaiming any rights by private parties: "The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a Request."  Art. 1, Treaty Between the Government of the United States of America and the Government of Ireland on Mutual Legal Assistance in Criminal Matters, January 18, 2001, *available at* https://www.state.gov/documents/organization/129536.pdf.  But the absence of this explicit clause in the Netherlands MLAT does not give rise to a private right. There is a strong judicial presumption that treaties do not create private rights, and only "[e]xpress language in a treaty creating private rights can overcome this presumption." *In re Request from U.K. Pursuant to Treaty Between the Government of the U.S. and Government of U.K.*, 685 F.3d 1, 11 (1st Cir. 2012).  Because there is no such language in the Netherlands MLAT—with the sole and non-pertinent exception discussed above where a defense counsel may be present at a deposition taken pursuant to a validly issued MLAT request—neither MLAT gives McLellan the right to seek testimony or evidence on his behalf.

This Court is not in a position to ignore the express language of the treaty and order the U.S. Central Authority[3] to issue an MLAT either to Ireland or the Netherlands.  "The First

---

[3] For the United States, MLATs are administered by the executive branch, normally referred to as a "Central Authority."  The Central Authority for the United States is always the Attorney General or designated officials of the U.S. Department of Justice.  The Attorney General has

Circuit and other courts of appeals have held that 'treaties do not generally create rights that are privately enforceable in the federal courts.'" *Id.* (quoting *United States v. Li*, 206 F.3d 56, 60 (1st Cir. 2000) (en banc)); *see also United Kingdom v. United States*, 238 F.3d 1312, 1317 (11th Cir. 2001) ("There is no provision for private parties, such as individual criminal defendants in the English (or America) courts, to request the production of information."); *United States v. Sedaghaty*, 728 F.3d 885, 917 (9th Cir. 2013) ([T]he district court had no authority [by which it could] order the Executive Branch to invoke the [MLAT] process to obtain evidence abroad for a private citizen."); *United States v. Jefferson*, 594 F. Supp. 2d 655 (E.D.V.A.. 2009) ("It is thus clear that the defendant, as a private party, is not entitled to use the MLA Treaty process himself or force the government to use the treaty on his behalf.").

Indeed, for a court to order the government to initiate an MLAT request on behalf of a defendant, with the expectation that the U.S. Central Authority would, in turn, make such a request, would be an impermissible judicial effort to amend the treaty itself. *In re Commissioner's Subpoenas*, 325 F.3d 1287, 1294 (11th Cir. 2003) ("As Justice Story wrote long ago, 'to alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions.  It would be to make, and not to construe a treaty.' *The Amiable Isabella*, 6 Wheat. 1, 71, 5 L.Ed. 191 (1821)").

Moreover, in assessing the broader impact of U.S. courts ordering U.S. prosecutors to make requests on behalf of U.S. defendants, one cannot overlook that MLATs are intended for

---

delegated the Central Authority function to Department of Justice officials of the Criminal Division and, in particular, to Criminal Division officials in the Office of International Affairs ("OIA").  28 C.F.R. 0.64-1.  As a result, OIA—a part of the executive branch department entrusted with the responsibility for prosecuting all federal criminal offenses—serves as the Central Authority for the United States and administers the MLATs.

4

use by both treaty partners. Just as U.S. defendants cannot make use of the MLATs, neither can foreign criminal defendants. OIA, as Central Authority for the United States under the MLATs, advises foreign courts and authorities that, generally, the Department of Justice does not execute requests for assistance on behalf of defendants in foreign criminal matters and, specifically, that OIA does not entertain MLAT requests on behalf of defendants in foreign criminal proceedings. OIA has advised foreign criminal defendants to seek either (1) voluntary cooperation directly from potential witnesses in the United States or (2) compelled production of evidence or testimony via letters rogatory submitted to a U.S. court pursuant to 28 U.S.C. § 1782. OIA has further advised foreign criminal defendants seeking assistance in the United States to retain private local counsel to pursue their interests inasmuch as the Department of Justice is unavailable to assist in execution of their requests.

In short, the impact of judicial overreach on U.S. treaty obligations go far beyond McLellan's case.

2. <u>Neither the Fifth nor the Sixth Amendment requires the government to obtain evidence located abroad on the defendant's behalf.</u>

Notwithstanding the separation of powers concerns, McLellan makes the novel argument that the Constitution requires the U.S. government to use non-pertinent treaty obligations and entitlements to obtain evidence located abroad on his behalf. The Constitution requires no such thing.

A defendant generally has no due process right to secure evidence extraterritorially by way of a U.S. subpoena for testimony or production of physical evidence. *See, e.g., United States v. Zabaneh*, 837 F.2d 1249, 1259-60 (5th Cir. 1978). Indeed, the right to compulsory process extends only to those areas within the territorial power of the United States courts. *See Sensi*, 879 F.2d 888, 889 (D.C. Cir. 1989); *accord United States v. Moussaoui*, 382 F.3d 453,

463 (4th Cir. 2004) ("[T]he process power of the district court does not extend to foreign nationals abroad").  Hence, "[i]t is well-settled that a defendant's inability to subpoena foreign witnesses is not a bar to criminal prosecution."  *Sensi*, 879 F.2d at 899.

An MLAT is a mechanism designed to facilitate the efforts of U.S. prosecutors in gathering evidence in a foreign jurisdiction.  As such, an MLAT is neutral with regard to a defendant's constitutional rights; it neither guarantees nor subverts them.  While undeniably an MLAT places the government in a more privileged position than a criminal defendant when it comes to gathering evidence abroad, the mere existence of such inequities—no different than the government's unequal power to use search warrants and wiretaps—does not amount to a Fifth Amendment violation.  "Due process [under the Fifth Amendment] guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'"  *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)).  McLellan has not made a compelling argument for why the absence of the records he seeks would "fatally infect[]" his trial—and, more importantly, how the government would share any responsibility for his lack of access to those records, when it merely declines to exercise its treaty rights in a way that is at odds with the plain text of the treaty.

McLellan contends that the files and documents he seeks from the Irish Government Pension Fund and the Irish Corporation would, at most, enable him to more effectively cross-examine one of the government's potential witnesses.  See Dkt. 276 at 7.  Such speculation does not warrant the unprecedented relief McLellan seeks.  The mere fact that this Court authorized the issuance of letters rogatory to obtain evidence does not mean that McLellan will suffer a due

process violation if he fails to obtain that evidence. Courts have acknowledged that delays in obtaining the evidence via letters rogatory do not compel lengthy trial delays or dismissals of indictments. *See, e.g., United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 214 (S.D.N.Y. 2015) ("The cases make clear that trials need not be stayed indefinitely to await the unpredictable developments of foreign proceedings."); *United States v. Bastanipour*, 697 F.2d 170, 178 (7th Cir. 1982) ("The record indicates the district court delayed commencement of the trial for several months to allow time for the letters rogatory to be transmitted and returned. . . . We do not think the trial court was obliged to postpone commencement of trial indefinitely."). In short, the Constitution allows criminal defendants to be forced to stand trial without having obtained evidence they have sought from abroad.

Finally, McLellan's reliance on *United States v. Theresius Filippi*, 918 F.2d 244 (1st Cir. 1990), is unavailing. There, the defendant was seeking admission into the country of a witness who was willing to testify on the defendant's behalf. The sole question was whether the U.S. government would exercise its discretion in granting parole admission into the country of a witness who was willing to testify on the defendant's behalf, not whether it would exercise a treaty right vis-à-vis another country in an impermissible manner. Moreover, the central proposition the case stands for is dicta and non-binding, as the panel held that the defendant waived whatever right he might have had in the testimony of the foreign witness by proceeding to trial.

3. <u>The defendant's inability to procure evidence from abroad should not result in the exclusion of any of the government's evidence.</u>

McLellan argues, with no support in the case law, that if the government cannot be compelled to issue an MLAT to Ireland (and presumably one to the Netherlands) on his behalf that it should be precluded from utilizing any evidence of the relevant transitions. McLellan

7

misconstrues this remedy as an issue of fairness: that because the government decided to prosecute conduct that had foreign victims, McLellan must first obtain any documents he deems necessary to his defense wherever they may be located.

But neither the Constitution, nor controlling case law, require any such thing. No court has ever ruled that the U.S. government has a legal obligation to help a defendant procure evidence located abroad. To the extent the government does have affirmative disclosure obligations, such as those under *Brady* and *Giglio*, they apply only to materials under the government's possession, custody and control, which is plainly not the case here. *See United States v. Bender*, 304 F.3d 161, 164 (1st Cir. 2002) (Maine state mental health records not within government's possession); *United States v. Sepulveda*, 15 F.3d 1161, 1179 (1st Cir. 1993) (New Hampshire state probation report not within government's possession).

Excluding evidence is a remedy when there is a wrong. But the cases McLellan cites to support his proposed remedy are inapplicable: they concern either the *destruction* of evidence by the government, the *withholding* of exculpatory evidence by the government, or the *exclusion* by the trial court of evidence and testimony that the defendant was able and prepared to introduce at trial. *See California v. Trombetta*, 467 U.S. 479, 487 (1984) (suggesting that when choosing the remedy for the intentional destruction of evidence by the government "the court must choose between barring further prosecution or suppressing . . . the State's most probative evidence"); *Woodfox v. Cain*, 609 F.3d 774, 802 (5th Cir. 2010) (noting that the remedy for a *Brady* violation is a new trial at which the withheld evidence can be admitted); *Holmes v. South Carolina*, 547 U.S. 319, 331 (2006) (holding that trial court's exclusion of third-party guilt evidence violated defendant's right to present a complete defense); *Crane v. Kentucky*, 476 U.S. 683, 691 (1986)

(holding that trial court's exclusion of testimony regarding the voluntariness of defendant's confession violated defendant's right to present a defense).

None concerns remedies when the defendant is unable to secure evidence he would like to introduce at trial.  The hard truth for McLellan is that there is no remedy because there is no wrong.  Courts do not engage in ad-hoc levelling when the government's evidence of guilt is overwhelming or when it is marginal.  They follow the Constitution and the Rules of Evidence, and neither requires the Court to exclude probative evidence of the defendant's guilt merely because the defendant was unable to acquire countervailing evidence.  A contrary rule would incentivize criminal defendants to claim that important evidence to their defense was located abroad, and then when it did not appear on time, make sweeping demands that courts exclude probative evidence of the defendants' guilt.  There is simply no basis in law to cabin the government's case because the MLATs McLellan seeks are unavailable to him.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny McLellan's motions to compel the government to submit MLATs on his behalf, Dkt. 275 & 276.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

By:  */s/ Stephen E. Frank*
      STEPHEN E. FRANK
      Assistant U.S. Attorney
      John Joseph Moakley U.S. Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA 02210

      SANDRA MOSER
      Acting Chief, Fraud Section
      Criminal Division

By:  */s/ William E. Johnston*
      William E. Johnston
      Trial Attorney
      1400 New York Ave, N.W.
      Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I certify that on February 2, 2018, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

      /s/ *William E. Johnston*
      WILLIAM E. JOHNSTON