UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | No. 16-10094-LTS |
| ROSS MCLELLAN,<br>           Defendant | ) ) ) ) ) | |

**DEFENDANT ROSS MCLELLAN'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTIONS FOR RELIEF**

For the reasons set forth herein and in defendant McLellan's opening motions, Mr. McLellan's motions for relief relating to the U.S.-Netherlands and U.S.-Ireland Mutual Legal Assistance Treaties ("MLATs"), Dkt. 275 and 276, should be granted.

**A.     U.S.-Netherlands MLAT**

The U.S.-Netherlands MLAT requires the two countries to "afford each other . . . mutual assistance in criminal investigations and proceedings," including "taking the testimony or statements of persons." Dkt. 275-1 at 8. On its face, this obligation is self-evidently broad enough to include assistance requested on behalf of criminal defendants. The treaty goes on to set out the strictly limited circumstances in which an MLAT request may be denied. *See id.* at 16. Crucially, none relates to requests for the benefit of defendants. The Federal Judicial Center ("FJC") has thus characterized the U.S.-Netherlands MLAT, as well as similar MLATs with Switzerland and Turkey, as "granting defense counsel permission to access evidence." Mutual Legal Assistance Treaties and Letters Rogatory: A Guide for Judges, *Federal Judicial Center International*

1

*Litigation Guide*, 2014 [hereinafter "FJC Guide"], at 18.  Moreover, at least one district judge, in an unpublished decision, has ordered the government to submit a request for defense evidence under the analogous U.S.-Switzerland MLAT.  *See United States v. Rosen*, 240 F.R.D. 204, 213 (E.D. Va. 2007) (citing case of Michele Sindona).[1]  The present case calls for the same result.

**B.     U.S.-Ireland MLAT**[2]

The Government's opposition to Mr. McLellan's motion relating to the Ireland MLAT begins from the unremarkable observation that the MLAT itself does not confer any private rights.  *See* Dkt. 279 at 3.  "The obvious and decisive answer to this, of course, is that no agreement with a foreign nation can confer power on . . . any . . . branch of Government, which is free from the restraints of the Constitution."  *Reid v. Covert*, 354 U.S. 1, 16 (1957).  The source of Mr. McLellan's asserted right is not the U.S.-Ireland MLAT, but rather the Fifth and Sixth Amendments to the United States Constitution.

Mr. McLellan's constitutional argument, while somewhat novel, is not as unprecedented as the Government suggests.  The Supreme Court has long held that the Due Process and Compulsory Process Clauses "require that criminal defendants be afforded a meaningful opportunity to present a complete defense."  *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  Included in this right is an "area of

---

[1] Contrary to the Government's accusation of a "surprising error[]," the FJC Guide's characterization of the *Sindona* ruling is largely correct.  *See Rosen*, 240 F.R.D. at 213.

[2] If, contrary to the argument set forth above and in Mr. McLellan's opening motion, the Court holds that the U.S.-Netherlands MLAT does not, in itself, authorize requests made on behalf of defendants, Mr. McLellan alternatively relies on the same constitutional arguments raised regarding the U.S.-Ireland MLAT.  Indeed, much like the evidence sought from Ireland, the Court has already acknowledged the materiality of Sarah Lewis's deposition testimony, *see* Dkt. 272, and Mr. McLellan has no other means of obtaining that testimony, *see* Dkt. 275 at 2, 3-4 n.2.

constitutionally guaranteed access to evidence." *Trombetta*, 467 U.S. at 485 (citation omitted). The Court has intimated that this guaranteed access may extend "to exculpatory evidence **beyond the government's possession**." *Id.* at 486 (emphasis added).

Consistent with these principles, the First Circuit has unequivocally instructed that the government may be constitutionally required to help a defendant obtain material evidence located abroad. *See United States v. Theresius Filippi*, 918 F.2d 244, 247 (1st Cir. 1990).[3] The Government devotes a mere four sentences to this directly applicable and binding precedent, suggesting that the "sole question" in *Theresius Filippi* "was whether the U.S. government would exercise its discretion in granting parole admission into the country of a witness who was willing to testify on the defendant's behalf, not whether it would exercise a treaty right vis-à-vis another country in an impermissible manner." Dkt. 279 at 7. The Government misses the forest for the trees. While *Theresius Filippi* did not specifically involve MLATs, it does stand for the broader proposition that courts may, when consistent with core Constitutional protections, order the executive to help a defendant obtain evidence abroad. On this point, the First Circuit could hardly have been clearer: "a deliberate omission to act, where action was required, by the United States Attorney constitutes a violation of the Sixth Amendment right to compulsory process and, derivatively, the right to due process protected by the Fifth Amendment." *Theresius Filippi*, 918 F.2d at 247.[4]

---

[3] The Government curiously asserts that "[n]o court has ever ruled that the U.S. government has a legal obligation to help a defendant procure evidence located abroad." Dkt. 279 at 8. But that is precisely what the First Circuit did in *Theresius Filippi*.

[4] It is no answer for the Government to point out that this language was technically dicta in light of the court's subsequent finding that the defendant had waived his rights. Indeed, "considered dicta" is "almost as firmly" binding as "outright holdings." *Cuevas v. United States*, 778 F.3d 267,

3

The Government's repeated insistence, unburdened by citation, that it would be somehow "impermissible" to make an MLAT request on behalf of a criminal defendant is flatly wrong. Dkt. 279 at 7.  Indeed, in at least one case, the government has expressly offered to submit such a request. *See United States v. Des Marteau*, 162 F.R.D. 364, 372 (M.D. Fla. 1995). This practice is entirely consistent with the language of the treaty itself which is "silent regarding the ability of the government to request evidence on behalf of a defendant." L. Song Richardson, *Convicting the Innocent in Transnational Criminal Cases: A Comparative Institutional Analysis Approach to the Problem*, 26 Berkeley J. Int'l L. 62, 107 (2008). As another scholar has explained, "The prosecutor has a duty in a criminal case to be sure that justice is done; a[n] MLAT is designed to assist the prosecution in a criminal case; therefore, it is the prosecution's duty to use the MLAT to satisfy the obligation to ensure justice." Frank Tuerkheimer, *Globalization of U.S. Law Enforcement: Does the Constitution Come Along*?, 39 Hous. L. Rev. 307, 372 (2002).

The Government's remaining arguments are equally unavailing. While it cites cases for the proposition that a defendant does not ***always*** have the right to secure evidence abroad, the Government points to no authority directly addressing the unique situation at hand. Mr. McLellan is seeking evidence that the Court has already recognized as "directly relevant," Dkt. 168-1 and 168-2, the Government has an undisputed right to access that evidence via an MLAT request, and Mr. McLellan has no independent means of obtaining the evidence. The Government's contention that Mr. McLellan has failed to make a sufficient showing of materiality rings hollow in light of the Court's prior acknowledgment "that justice cannot completely be done amongst the parties

---

272–73 (1st Cir. 2015).

without the production of the documents requested." Dkt. 168-1 and 168-2. Because Mr. McLellan has, to this point, been unable to access the evidence in question, he "cannot be expected to render a detailed description" of it. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982). As explained in his opening motion, *see* Dkt. 276 at 6-7, Mr. McLellan has made a "plausible showing" that the evidence is "material and favorable to his defense." *Valenzuela-Bernal*, 458 U.S. at 873. Finally, the Government's claim that suppression is inappropriate in the absence of a wrong simply begs the question. If the Court finds that the Government's "deliberate omission to act" to allow Mr. McLellan access to material evidence constitutes a constitutional violation, there will be a wrong requiring remedy. *Theresius Filippi*, 918 F.2d at 247.

The Government concedes that the MLAT "undeniably" places it in a "privileged position," as compared to Mr. McLellan, "when it comes to gathering evidence abroad." Dkt. 279 at 6.[5] And the Government has maximized its potential to exploit this privilege by charging Mr. McLellan based on transactions exclusively involving non-U.S. clients. The resulting inequity offends the most basic underpinnings of our criminal justice system. *See United States v. Nixon*, 418 U.S. 683, 709 (1974) ("The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts."). For the foregoing reasons, and those set forth in his opening motions, Mr. McLellan's motions for relief should be granted.

---

[5] The government argument that its "privileged position" is "no different than the government's unequal power to use search warrants and wiretaps," Dkt. 279 at 6, misses the mark. A defendant, of course, has different (if not fewer) constitutional protections in the pre-indictment, investigatory phase of litigation. Here, in the trial stage, Mr. McLellan has the unquestioned constitutional rights to compulsory process, to confront adverse witnesses, and to due process and a fair trial. That he does not have the power to issue search warrants has no bearing on these core constitutional protections. Indeed, it is the imbalance of *pretrial* powers cited by the government that underscores the importance of equal rights and powers at trial.

Respectfully submitted,

Ross McLellan
By his Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: February 5, 2018

**CERTIFICATE OF SERVICE**

    I, Martin G. Weinberg, hereby certify that on this date, February 5, 2018, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg