UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 16-10094-LTS |
| ROSS MCLELLAN, | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO SEVER COUNT 6**

The government respectfully submits this response in opposition to Defendant Ross McLellan's Motion to Sever Count 6. *See* Dkt. 292. On February 7, 2018, the Grand Jury returned a superseding indictment adding one additional count to the original five counts. Dkt. 282. The additional charge followed State Street's self-disclosure to the government, just three months earlier, that it had discovered new evidence that McLellan may have defrauded an additional client, this one based in the United States. Joinder of this new count pursuant to Rule 8 is proper because it concerns a fraudulent transition directed by McLellan that is effectively identical to those alleged in the rest of the indictment: same scheme, same affirmative misrepresentations, same hidden commissions, same time period, and same trading desk. Furthermore, severance pursuant to Rule 14 is unwarranted because all of the evidence pertaining to Counts One through Five would be admissible in a separate trial on Count Six, and vice-versa, eviscerating any argument that joinder would result in undue prejudice. Because the evidentiary burden of this single new count is minimal and the relevant additional discovery has already been produced, the trial date should remain as currently scheduled and McLellan's motion for severance, or, in the alternative, for a continuance should be denied.

## BACKGROUND

On March 31, 2016, the Grand Jury returned an indictment charging McLellan with conspiracy to commit securities fraud and wire fraud, two counts of securities fraud, and two counts of wire fraud. Dkt. 1. The indictment sets forth the scheme McLellan and his co-conspirators were charged with perpetrating: "secretly overcharging at least six transition management clients . . . through the use of hidden commissions on securities that [State Street] purchased and sold on their behalf in the course of transitions." *Id.* at 4. The indictment described how the scheme operated: (1) State Street, at the direction of McLellan and co-conspirators, entered into agreements to perform transitions for agreed-upon, pre-negotiated fees; (2) McLellan and co-conspirators instructed State Street employees to charge additional commissions on fixed income trades that had not been agreed upon; (3) McLellan and co-conspirators took steps to hide the additional commissions from the clients and from others within the bank. *Id.* at 4-5. The indictment sets forth specific examples of how McLellan and his-conspirators carried out the scheme against three of the transition management clients in the Europe, Middle East, and Africa ("EMEA") region: a Middle Eastern Sovereign Wealth Fund, an Irish Government Pension Fund, and a British Government Pension Fund. *Id.* at 6-12.

On February 7, 2018, the grand jury returned a superseding indictment against McLellan. Dkt. 282. The superseding indictment adds one additional count charging McLellan with wire fraud affecting a financial institution.[1] Count Six concerns another fraudulent transition directed

---

[1] The statute is identical to Counts Four and Five in the original indictment, 18 U.S.C. § 1343, with the exception that the count alleges that the fraud "affected" a financial institution for purposes of triggering a ten-year statute of limitations pursuant to 18 U.S.C. § 3293. The superseding indictment also corrected a typographical error that was in one paragraph in the original indictment, which alleged that State Street charged a commission of "2 basis points (0.02%)." Dkt. 1 at ¶ 26. The superseding indictment clarifies that the amount of the commission was "2 cents per share." Dkt. 282 at ¶ 28.

by McLellan—this one involving a U.S. life insurance company—which occurred in March 2011, right in the middle of the original charged conspiracy which spanned February 2010 to September 2011.  *Id.* at 4.  The superseding indictment alleges that McLellan, on behalf of State Street, (1) agreed that any fees for the transition would be fully disclosed and agreed upon in advance, (2) agreed to conduct the transition for a specified fee, and (3) instructed traders to charge the insurance company a higher fee by applying commissions to fixed income trades.  *Id.* at 13-14.

The government first learned of the potentially fraudulent transition involving the U.S. insurance company via a self-disclosure by State Street on October 25, 2017.  Evidence obtained by the government suggests that the transition's belated discovery was the product of specific steps McLellan took in 2011 to prevent the overcharges from being detected during State Street's internal investigation of the charged conduct, and its audit of the bank's largest transitions during the relevant period.  After additional investigation, the Grand Jury returned the additional charge against McLellan just over three months later.

## ARGUMENT

1. <u>Rule 8 joinder of Count 6 is proper because the scheme to defraud the U.S. insurance company was part of the same scheme charged in the original indictment.</u>

    Federal Rule of Criminal Procedure 8(a) permits an indictment to charge a defendant with "2 or more offenses if the offenses charged . . . are of the same or similar character . . . or are connected with or constitute parts of a common scheme or plan."  "[J]oinder serves the purpose of economy of resources."  *United States v. Edgar*, 82 F.3d 499, 503 (1st Cir. 1996).  As a result, "Rule 8(a)'s joinder provision is generously construed in favor of joinder . . . ." *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996).  "'Similar' does not mean

'identical," and courts "assess similarity in terms of how the government saw its case the time of indictment." *United States v. Melendez*, 301 F.3d 27, 35 (1st Cir. 2002).

In this case, joinder of Count Six is exactly what Rule 8 contemplates. Count Six alleges that McLellan engaged in the same fraudulent scheme with respect to the U.S. Insurance Company as he did during the same time period with respect to the six transition management clients identified in the original indictment. McLellan and his co-conspirators assured the client that all fees would be fully disclosed, quoted the client a specified fee, and then instructed traders to charge higher fees than had been agreed upon, which would be hidden from the client. As with the original charges—in which McLellan specifically chose to add the hidden charges principally to fixed-income trades because they were easier to hide—the new charge involves fixed-income trades. McLellan, in his role as global head of portfolio solutions and architect of the charged fraud, is the common link between the six EMEA clients and the U.S. client. Indeed, McLellan was directing the U.S. insurance company transition in February and March 2011, almost *simultaneously* with the transitions involving the British Government Pension Fund, which likewise occurred in February and March 2011, and the Irish Government Pension Fund, which took place between December 2010 and April 2011. And McLellan relied on the same Boston-based trading desk to help him execute the scheme, personally directing traders to add the hidden commissions to the clients' trades. The fraudulent transition involving the U.S. Insurance company is thus "of the same or similar character" to the fraudulent transitions in the pre-existing counts and is "connected with or constitute parts of a common scheme or plan." Fed. R. Crim. Proc. 8(a). Accordingly, joinder is entirely proper.

McLellan's contrary argument merely highlights distinctions that have no bearing on the Rule 8 analysis. <u>First</u>, McLellan argues the statutes are different, noting that Count Six charges

wire fraud "affecting a financial institution," whereas Counts Four and Five charge merely wire fraud. This argument is frivolous. Counts Four, Five and Six *all* charge violations of 18 U.S.C. § 1343. Count Six merely requires the government to prove one additional element—that the defendant's fraudulent conduct "affected" a financial institution—in order to trigger the ten-year statute of limitations.

Second, McLellan argues that joinder is improper because the victims referenced in the original indictment are based in Europe and the Middle East and the U.S. insurance company is based in New York. Again, this is a distinction without difference. What is relevant for the Rule 8 analysis—*i.e.*, "common scheme" or "same or similar character"—is that *each* of the victims, regardless of where it was based, was an institution that contracted with State Street for transition management services during the 2010 to 2011 time period; *each* client agreed to what McLellan and those acting at his direction represented would be a fully transparent fee, agreed upon in advance; and *each* client was overcharged through the application of additional commissions that were hidden from them. McLellan's contention that the different transitions were governed by different regulatory regimes goes to his potential defenses, *not* whether the fraudulent transitions were part of a "common scheme" and thus properly joined. *See Melendez*, 301 F.3d at 35. The government is unaware of any case, and McLellan cites none, providing that the government must tailor its joinder decisions under Rule 8 to the advantage of the defenses that a defendant would like to advance at trial.

Third, McLellan argues that the evidence required to prove Count Six does not overlap with the evidence required to prove the first five counts. That is simply untrue. Indeed, the government anticipates many of the *same* witnesses will testify to *all* the counts, and that few, if any, additional witnesses will be required to prove the new count. Moreover, even witnesses

who did not participate in the U.S. Insurance Company transition would still be called to testify in a separate trial on Count Six, not just because the conduct is identical, occurred at the same time and is inextricably intertwined—and not just because evidence of McLellan's actions with respect to the EMEA transitions would be separately admissible in a trial relating to the U.S. transition (and vice versa) for purposes of showing motive, intent, knowledge and absence of mistake pursuant to Fed. R. Crim. P. 404(b), *see infra*—but also because the government has learned that McLellan made incriminating admissions to his co-conspirators in Europe regarding the transition in the U.S.[2]

Fourth, McLellan's contention that a "meaningfully distinct legal and regulatory regime" governed his interactions with the U.S. Insurance Company and the interactions he directed with State Street's EMEA clients is a red herring. Despite McLellan's best efforts to turn this into an omissions case, this is a case about *affirmative* misrepresentations that McLellan personally made or directed. Accordingly, McLellan's defense "based on differences between the relevant laws, procedures, practices, and the reasonable expectations of sophisticated clients and their consultants and attorneys in EMEA and the U.S.," Dkt. 292 at 6, is a non-starter under both the original indictment and the superseding indictment. Regardless of what disclosures are required under the laws in Europe and those in the United States, no legal or regulatory regime permits bankers to affirmatively lie. That is what McLellan is charged with doing.

Likewise, McLellan's assertions that different compliance departments were involved and different transition management agreements were in place are simply untrue. Indeed, the original indictment *already* involves charges that McLellan and his co-conspirators affirmatively misled State Street's compliance officers in the United States. *See* Dkt. 1 ¶ 37. And the original

---

[2] McLellan himself concedes, as of course he must, that his knowledge is at issue. Dkt. 292 at 7.

indictment *already* involves varying transition management agreements that were entered into between the bank and the clients affected by the charged conspiracy.  Moreover, the evidence will show that, at McLellan's direction, the bank entered into the transition with the U.S. Insurance Company *without* any transition management agreement in place and *without* consulting with the bank's legal department—specifically as part of a scheme to hide the fraud from the bank and from the client.

These are not mere "thematic" similarities.  This is the *same* scheme: same types of victims, same trading desk, same time period, same manner and method of deceit.  The *only* difference between the six original transitions and the one charged in Count Six is that the co-conspirators charged in the former were not involved in the latter (though they would, as noted, be critical witnesses in any separate trial of that count).

2. <u>Severance pursuant to Rule 14 is unwarranted because evidence relating to Count 6 would be admissible in a trial on Counts 1 through 5, and vice-versa.</u>

Federal Rule of Criminal Procedure 14 permits the Court to sever a count from a trial if joinder would prejudice a defendant, even if Rule 8(a) joinder is otherwise proper.  To overcome the presumption of joinder, however, a defendant seeking severance must make a "strong showing of evident prejudice."  *United States v. Richardson*, 515 F.3d 74, 81 (1st Cir. 2008) ("Some prejudice results in almost every trial in which the court tries more than one offense together.  Garden variety prejudice, however, will not, in and of itself, warrant severance."); *see also United States v. Tejeda*, 481 F.3d 44, 55 (1st Cir. 2007) ("prejudice means more than just a better chance of acquittal at a separate trial") (quoting *United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990)); *United States v. Hart*, No. 09-10005-PBS, 2010 WL 583653 (D. Mass. Feb. 11, 2010) ("defendant must demonstrate prejudice so pervasive that it would be likely to effect a miscarriage of justice") (citation and internal quotation marks omitted).  Severance is

inappropriate where "evidence as to each group of offenses would" be admissible "in a trial of the other." *United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004).

The First Circuit has recognized three types of prejudice that could possibly warrant severance:

> (1) The defendant may become embarrassed, or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*United States v. Scivola*, 766 F.2d 37, 41-42 (1st Cir. 1985). None of these applies to McLellan.

First, McLellan errs in arguing that proof as to Count Six would be inadmissible in a separate trial of the first five counts. It is well-settled that evidence of other acts that are "intrinsic to the crime for which the defendant is on trial" is admissible without regard for the requirements of Federal Rule of Evidence 404(b). *United States v. Epstein*, 426 F.3d 431, 439 (1st Cir. 2005) (citation and internal quotation marks omitted) (affirming admission of defendant's tax return because the return was "intertwined with the crime" insofar as it reported some of the income he received from the fraud scheme, but not all of it, suggesting knowledge of the fraud); *see also United States v. Roszkowski*, 700 F.3d 50, 56 (1st Cir. 2012) (evidence that defendant discharged firearm was properly admissible as intrinsic to charge that he was a felon in possession of a firearm because it "comprise[d] part and parcel of the core events undergirding the crime for which he was charged," and thus did not implicate Rule 404(b)); *United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 50 (1st Cir. 2004) (evidence that defendant threatened his child's mother admissible as "necessary description of the events leading up to the" charged crime of international parental kidnapping, and "intrinsic evidence" of intent, which was an element of the charged offense); *United States v. Taylor*, 284 F.3d 95, 101 (1st Cir. 2002)

8

(affirming admission of reference to defendant's prior drug transaction on consensual recording with cooperating witness "as part and parcel of an on-going conversation taking place during the crime itself," and citing *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994), for the proposition that "Rule 404(b) is not applicable to evidence of crimes that are necessary to complete the story of the charged crime").  Here, all the hallmarks of intrinsic evidence are present here.  As noted, the evidence underlying Count Six involves many of the same witnesses.  Evidence of each of the fraudulent transitions is part of a necessary description of events leading up to the others, and is part and parcel of ongoing conversations (including with traders) taking place during the commission of those crimes.  And all of the evidence is intrinsic evidence of intent, which is an element of the charged offenses.

   Moreover, such evidence would also be admissible pursuant to Rule 404(b) to show, *inter alia*, knowledge, intent, and absence of mistake, and as proof that all the fraudulent transitions were part of a common plan or scheme.  *See United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000) (citation omitted) (noting that evidence of other bad acts is admissible if it has "'special relevance' to an issue in the case such as intent or knowledge, and [does] not include 'bad character or propensity as a necessary link in the inferential chain'").  To assess that "special relevance," courts look to the "remoteness in time of the other act and the degree of resemblance to the crime charged."  *Id.* at 119.  That is, the closer in time and the more similar the other bad act, the more relevant it is to whether the defendant was carrying out a common scheme or plan.  *See United States v. DeCicco*, 370 F.3d 206, 212-13 (1st Cir. 2004) (reversing district court for abuse of discretion when it excluded government's prior bad act evidence of defendant burning down warehouse for insurance proceeds only three years prior to charged conduct of arson).

Here, the U.S. insurance company transition, just like the EMEA transitions, shows that McLellan was carrying out a common scheme or plan to defraud State Street's transition management clients. The jury need make no inference that McLellan had a criminal propensity to conclude that he developed a plan to defraud transition clients where possible during 2010 and 2011. The various fraudulent transitions mentioned in the superseding indictment, including the one underlying Count Six, demonstrate that McLellan decided to generate extra revenue for State Street by charging its transition clients more than they had agreed upon and then hiding those extra fees by applying undisclosed commissions to their (typically fixed income) trades. And because the U.S. insurance company transition was concurrent with the EMEA transitions, there can be no argument that the conduct underlying Count Six is too remote in time to allow its admission. Accordingly, evidence of the Count Six conduct would be admissible in a trial of Counts One through Five pursuant to Rule 404(b). Likewise, evidence of the conduct underlying Counts One through Five would be admissible in a trial of Count Six.

Finally, in the event there were separate trials, there can be no serious argument that the Count Six evidence, while admissible under Rule 404(b), would be excluded pursuant to Federal Rule of Evidence 403. "Danger of unfair prejudice occurs if the evidence 'invites the jury to render a verdict on an improper emotional basis.'" *United States v. Landry*, 631 F.3d 597, 604 (1st Cir. 2011) (citation omitted). Evidence that McLellan was involved in seven, rather than six, fraudulent transitions of an almost identical nature is simply not the type of evidence that will inflame a jury or cause jurors to render a verdict on an improper basis. Accordingly, severance is unwarranted because the evidence supporting the first five counts would be admissible in a trial on Count Six, and vice-versa. *See Richardson*, 515 F.3d at 82 (rejecting

severance argument where "substantially the same evidence would have been admitted in separate trials").

Next, McLellan contends that the addition of Count Six complicates his defense that he believed the regulatory regime in Europe permitted misrepresentations about fees to clients. As noted, that is not true, because neither regulatory regime permits affirmative misrepresentations, such as those with which McLellan is charged. Moreover, to the extent McLellan nonetheless seeks to advance this argument, nothing about the involvement of a U.S. victim precludes or confounds McLellan's contention that he believed the European regulatory regime permitted the charging of undisclosed fees despite representations that they would not be charged. While evidence of the U.S. fraud might make it less likely that a jury will *believe* McLellan—and evidence of the European fraud might likewise make it less likely that a jury will believe his contentions about his conduct *vis-à-vis* the U.S. Insurance Company—that is not the type of prejudice with which the case law is concerned. Rather, courts are concerned only when defenses are so contradictory that the defendant runs the "risk of offending, or confusing, the jury." *United States v. Gilbert*, 92 F. Supp. 2d 1, 7 (D. Mass. 2000); *see also United States v. Liberatore*, No. 16-cr-10211-ADB, 2017 WL 2294283, at *3 (D. Mass. May 25, 2017) (noting that "defendants do not explain how presenting separate defenses would cause embarrassment or confusion, aside from generally asserting that this would be true"). McLellan fails to advance any plausible explanation of why that is the case here. Moreover, to the extent McLellan seeks to advance a defense about his good-faith belief concerning the applicable legal regime in separate trials, the evidence underlying the additional count or counts will be admissible to rebut that contention, even without regard for the fact that the evidence is also inextricably intertwined and separately admissible pursuant to Rule 404(b).

McLellan has likewise failed to articulate a compelling reason why he faces a double-bind on his decision to testify.  "Severance is not automatic when a defendant wants to testify on some counts and not others, but rather, the defendant must 'make a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on another' in order for severance to be warranted." *United States v. George*, No. Crim. 03-10091-PBS, 2004 WL 746282, at * 3 (D. Mass. Apr. 6, 2004) (quoting *United States v. Jordan*, 112 F.3d 14, 17 (1st Cir. 1997) (modifications incorporated)).  McLellan merely says that he "may wish to testify as to Counts 1-5 but not Count 6," but cannot make such a decision until he reviews the discovery, which the government has already provided.  Dkt. 292 at 13.  That, of course, is not a "showing," much less a "convincing" one, that McLellan has "important testimony" to give on Counts One through Five.  Nor does it demonstrate why he has a "strong need to refrain from testifying on" Count Six.  *See Richardson*, 515 F.3d at 81 (rejecting severance argument where defendant articulated the "important testimony" he was to give on some counts, but not why he had a "strong need" to avoid testifying on others).[3]

Finally, the fact that the government has produced an additional 58,000 pages of discovery related to Count Six (in a searchable electronic database) also does not support severance.  The discovery in this case to date has exceeded 1.35 million pages.  Supplementing

---

[3] The case on which McLellan relies, *United States v. Jordan*, 112 F.3d 14 (1st Cir. 1997), involved "unique circumstances" of a defendant who wished to testify to rebut the central element of a tax evasion charge, but not the separate mail fraud charges, which concerned entirely separate fraudulent conduct.  *Id*. at 17.  Here, as noted, the charged conduct across all the counts is effectively identical.  And even if there were a separate trial for the first five counts, McLellan, in the event he chose to testify, would be exposed to cross-examination on the Count 6 conduct (and vice-versa).  *Cf. United States v. Alosa*, 14 F.3d 693, 695 (1st Cir. 1994) ("[W]hile the courts zealously guard a defendant's right not to testify at all, the case law is less protective of a defendant's right to testify selectively, addressing some issues while withholding testimony on others that are related." (citing *Brown v. United States*, 356 U.S. 148, 155-56 (1958))).

that amount by less than 5 percent, four months before trial, does not materially change the burden faced by McLellan or his counsel.  In reality, the key documents relevant to the additional transition number just a few dozen, and the government has offered to provide this single-binder's worth of "hot" documents to McLellan to help him prepare for trial.  McLellan has at least four lawyers working on his case (twice the size of the government team), including some of the most distinguished members of the Massachusetts criminal defense bar.  Moreover, McLellan's complaint rings particularly hollow insofar as he continues to press several outstanding request for letters rogatory and Rule 17(c) subpoenas, all of which will likely significantly increase the amount of documents he must review.  Accordingly, there is no basis in the law or the facts of this case to sever Count Six pursuant to Rule 14.

3. <u>The minimal amount of additional discovery and the nearly identical nature of the conduct underlying Count 6 argue against any further delay in trial.</u>

With nearly four months until the scheduled trial date, there is ample time for McLellan to review the supplemental discovery and prepare a defense to a nearly identical charge, such as by hiring an additional expert on the American regulatory regime.  While the government would be prepared to assent to a modest continuance should McLellan insist on one, the government respectfully requests submits that such a delay is entirely unnecessary.

13

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny McLellan's motion to sever Count 6, or, in the alternative, to continue trial.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

By: */s/ Stephen E. Frank*
    STEPHEN E. FRANK
    Assistant U.S. Attorney
    John Joseph Moakley U.S. Courthouse
    1 Courthouse Way, Suite 9200
    Boston, MA 02210

    SANDRA MOSER
    Acting Chief, Fraud Section
    Criminal Division

By: */s/ William E. Johnston*
    William E. Johnston
    Trial Attorney
    1400 New York Ave, N.W.
    Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I certify that on February 21, 2018, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

        /s/ *William E. Johnston*
        WILLIAM E. JOHNSTON