UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES, | ) ) ) | |
| v. | ) ) | Case No. 16-cr-10094-LTS |
| ROSS MCLELLAN, | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTIONS TO DISMISS (Doc. Nos. 135, 136, 139, and 148)

February 27, 2018

SOROKIN, J.

The government has charged defendant Ross McLellan with conspiring to commit, and committing, securities fraud and wire fraud when he was an executive for State Street Bank. Doc. No. 282.[1] McLellan has filed four motions seeking dismissal of various combinations of the charges against him.[2] The government has opposed each motion. After careful consideration, the motions are DENIED for the reasons set forth below. For purposes of this Order, familiarity with the facts alleged in the Superseding Indictment is assumed.[3]

---

[1] Citations to "Doc. No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.
[2] The motions as filed sought dismissal of the original Indictment. Doc. No. 1. Recently, a Grand Jury returned a Superseding Indictment which, among other things, added factual allegations supporting a new charge of wire fraud. Doc. No. 282. The parties have stated that they "do not believe that the superseding indictment has any effect on the pending motions" to dismiss, Doc. No. 291 at 1, so the Court considers the motions as challenges to the same charges in the Superseding Indictment. Resolution of the motions is not impacted by the changes the government has made to the charging document.
[3] The Court presumes the allegations of an indictment are true for purposes of assessing its sufficiency. United States v. Perry, 37 F. Supp. 3d 546, 548 (D. Mass. 2014).

1

I.     LEGAL STANDARDS

"Defendants challenging the sufficiency of an indictment bear a heavy burden." Perry, 37 F. Supp. 3d at 550 (citing United States v. Troy, 618 F.3d 27, 34 (1st Cir. 2010)). The question presented by a motion seeking dismissal of a lawfully returned criminal indictment "is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012); accord United States v. Stepanets, 879 F.3d 367, 372 (1st Cir. 2018). Because dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury," the circumstances under which a trial court properly may invoke its authority in this regard are "extremely limited." Whitehouse v. U.S. Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995). Generally, an indictment is sufficient if it "describes all of the elements of the charged offense using the words of the relevant criminal statute." United States v. Wells, 766 F.2d 12, 22 (1st Cir. 1985) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)); see Stepanets, 879 F.3d at 372 ("An indictment need not say much to satisfy these requirements . . . .").

"[A] court must deny a motion to dismiss [a criminal indictment] if the motion relies on disputed facts." Stepanets, 879 F.3d at 372. Where a defendant's motion to dismiss depends "on disputed facts that [he] want[s] found in [his] favor," such as "contested facts surrounding the commission of the alleged offense," the "situation . . . calls for a trial, not a dismissal on pretrial motions," as "no court may consider [such facts] before trial." Id. at 375 (quotation marks omitted).

McLellan's arguments depend on viewing this case through the lens he prefers and considering an array of facts not contained within the four corners of the Superseding

Indictment. E.g., Doc. No. 139 at 5 & n.3 (attaching a chart analyzing certain transactions at issue and arguing that the alleged victims "received precisely" what they "bargained for": "the successful completion of the desired transition at or below the agreed-upon cost"). The Court, however, may not consider such information in resolving a motion to dismiss in a criminal action.[4] United States v. Ngige, 780 F.3d 497, 501-03 (1st Cir. 2015).

II. DISCUSSION

    A. Motion to Dismiss Counts Two and Three and So Much of Count One as Charges Conspiracy to Commit Securities Fraud, to Exclude Evidence of Extraterritorial Transitions and Transactions, and Motion for Related Discovery (Doc. No. 148)

In his first motion, McLellan argues that a "majority of the securities transactions at issue were conducted entirely extraterritorially and hence fall outside the scope of" the relevant securities laws and regulations. Doc. No. 148 at 2, 24-25. Likewise, he argues any fraud alleged is foreign, not domestic, and is therefore also beyond the reach of the wire fraud statute. Id. McLellan's "extraterritoriality" motion is DENIED.

The parties disagree about whether the criminal statutes at issue here apply extraterritorially. As to the securities laws, the Court need not resolve that dispute to rule on McLellan's motion. Even assuming those laws do not reach purely extraterritorial conduct, the Superseding Indictment, on its face, alleges conduct that falls squarely within the reach of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. E.g., Doc. No. 282 at ¶¶ 12(d), 17-18, 24, 28, 34-38 (referencing "securities traded in the United States," "U.S. securities," "U.S. equities trades,"

---

[4] Some courts recognize a "narrow exception" to the rule that the sufficiency of an indictment is to be determined solely on the basis of the indictment's allegations, United States v. Martinez-Mercado, 145 F. Supp. 3d 150, 151 (D.P.R. 2015), but such an exception would not apply here. The parties have not offered an agreed-upon set of undisputed facts, the government has not consented to the Court's consideration of information beyond the indictment, and the central issues presented by McLellan's motions are not purely legal ones capable of resolution without a trial on the merits.

"U.S. trades," and various actions taken by traders located in the United States); see Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247, 269-70 (2010) (adopting "transactional test" under which reach of securities laws depends on "whether the purchase or sale is made in the United States, or involves a security listed on a domestic exchange").[5] McLellan's arguments to the contrary rely on facts beyond the charging documents—facts to which the government has not stipulated for present purposes, and which the government has not agreed are appropriately considered now. The Court may not dismiss charges (or determine, now, that conduct was extraterritorial) on the basis of such facts.[6] Stepanets, 879 F.3d at 372, 375.

Insofar as the original two wire fraud charges are concerned,[7] McLellan's argument fares no better. Addressing the extraterritorial application of a criminal statute with language similar to 18 U.S.C. § 1343, the First Circuit concluded that Congress had indicated an intent to reach conduct beyond the United States by "explicitly appl[ying]" the statute "to transmissions between the United States and a foreign country." United States v. Lyons, 740 F.3d 702, 718 (1st Cir. 2014). However "cursory" McLellan believes the First Circuit's analysis in Lyons was, this Court is guided by it. The wire fraud statute explicitly references transmissions "in interstate or foreign commerce," § 1343 (emphasis added), and the two transmissions at issue here were either made or received by McLellan in the United States, Doc. No. 282 at ¶ 54. Under these

---

[5] Because the Court concludes the charges here satisfy the Morrison test, it need not resolve whether Section 929P(b) of the Dodd-Frank Act amended the relevant securities laws in a manner indicating Congress's intent to reach extraterritorial conduct (thus superseding Morrison).

[6] This ruling does not preclude McLellan from renewing his motion to dismiss or narrow the charges based on Morrison, should the facts adduced by the government at trial demonstrate that some of the conduct at issue was beyond the reach of United States criminal laws.

[7] The Superseding Indictment added a wire fraud charge in Count Six which is not the subject of the motions presently before the Court.

4

circumstances, there is no basis for dismissing the charges alleging wire fraud based on extraterritoriality.

Besides dismissal, McLellan requests: 1) that the conspiracy charge be narrowed to exclude any allegations regarding the "Irish Corporation" and the "Dutch Pension Fund" transitions; 2) that all evidence regarding the same two transitions be excluded at trial; 3) that evidence relating to "extraterritorial transactions that formed part of the remaining four transitions" be excluded at trial; and 4) that the government be required "to specify the basis for its categorization of each transition and securities transaction as domestic." Doc. No. 148 at 24-25. Each of these requests is DENIED. The Superseding Indictment contains no specific factual allegations regarding the "Irish Corporation" or the "Dutch Pension Fund" transitions. As such, there are no allegations to strike or narrow at this time.

Requests to exclude evidence of extraterritorial transitions (or extraterritorial transactions within a larger transition) are premature. The Court is not presently in a position to assess—and the government surely does not share—McLellan's view that such evidence is "irrelevant to proof of the offenses charged," id. at 25, let alone to engage in the weighing required by Federal Rule of Evidence 403. Challenges such as these can be presented via motion in limine before the trial, when the Court will consider the relevance and admissibility, including pursuant to Rule 404(b), of such evidence.

Finally, the Court perceives no basis upon which to allow McLellan's request for specifics regarding the government's theory of why each transition and/or transaction is "domestic," which the government aptly characterizes as "a request for a bill of particulars" without adequate support.

B. Motion to Dismiss Counts Two and Three and So Much of Count One as Charges Conspiracy to Commit Securities Fraud (Doc. No. 135)

McLellan further challenges the securities fraud charges in a second motion, asserting: 1) that the alleged misstatements identified in the Superseding Indictment "were not material to a decision to purchase or sell securities" and "were not made in connection with the purchase and sale of securities," Doc. No. 135 at 2, 12-15; and 2) that the government has not sufficiently alleged a "scheme liability" theory of securities fraud, id. at 3, 15-19. Because the success of these challenges hinges on whether McLellan's view of disputed facts is accepted—something only the jury can resolve—the motion is DENIED.

The Superseding Indictment alleges that McLellan made "material" misstatements of fact, and that he engaged in manipulative and deceptive conduct "in connection with the purchase or sale of securities." Doc. No. 282 at ¶¶ 47(a), 50, 52. Whether the government can prove that the misstatements forming the basis for the charges were, in fact, "material" and were, in fact, made "in connection with the purchase or sale of securities" are not the sort of questions the Court can resolve now as a matter of law. The parties disagree about a number of factual issues relevant to answering these questions, for example: what features of the transactions at issue were specifically negotiated and/or were the deciding factors in the alleged victims' decisions to hire State Street to conduct their transitions; the scope of the alleged fraud, and whether material misstatements continued after the alleged victims decided to hire State Street in the first instance; and whether and to what extent the alleged victims were harmed by McLellan's actions.

The Court simply cannot, on the face of the Superseding Indictment, conclude that the alleged misstatements were so plainly insignificant that no reasonable client would have considered them important, or that they were so entirely unrelated to the purchase or sale of any

securities, that the government has failed to allege a crime. See In re Cabletron Sys., Inc., 311 F.3d 11, 34 (1st Cir. 2002) ("In general, the materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the court on a motion to dismiss."); see also United States v. Litvak, 808 F.3d 160, 175 (2d Cir. 2015) (explaining dismissal without a jury determination of materiality is appropriate only if the alleged "misstatements are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance" (quotations marks omitted)); U.S. Sec. & Exch. Comm'n v. Pirate Investor LLC, 580 F.3d 233, 244-45 (4th Cir. 2009) (emphasizing "expansive" reading of "in connection with" requirement, listing factors relevant to assessing whether requirement is satisfied, and noting factors should be applied "flexibl[y]" and "on a case-by-case basis").

As for a "scheme liability" theory of securities fraud, the Superseding Indictment easily survives McLellan's motion. Indeed, McLellan's assertion that the government has alleged no conduct "distinct from the alleged misstatements and omissions," Doc. No. 135 at 17-18, ignores "specific deceptive acts" described in the Superseding Indictment and attributed to McLellan and his co-conspirators, Doc. No. 204 at 25. Such acts—which reasonable jurors might view as more than simple efforts to cover up previous misrepresentations—include: soliciting information about the range of prices at which certain securities traded on a given day, then calculating and charging commissions "that would keep the . . . client-side prices within the intraday high and low prices for the securities," Doc. No. 282 at ¶¶ 18-19; and instructing a trader to ignore "written trading instructions," include a specified commission, then "delete any reference to commissions on the file of trading results he sent to" another State Street employee, id. ¶ 34. These allegations are more than sufficient to allege a "scheme" at this stage in the proceedings.

7

C. Motion to Dismiss Counts Four and Five and So Much of Count One as Charges Conspiracy to Commit Wire Fraud (Doc. No. 139)

McLellan next challenges the wire fraud charges, arguing that the Superseding Indictment does not sufficiently allege a scheme to defraud. According to McLellan, "[t]he transition management clients legitimately at issue here received the benefits of their bargains with State Street—successfully completed transitions approximately at or below the estimated costs."[8] Doc. No. 139 at 2. The agreements between the victims and State Street, says McLellan, "all centered on the implementation shortfall," or "the total cost of the transition." Id. at 5. The government strenuously disagrees with McLellan's characterization of the benefit for which the alleged victims bargained, arguing the evidence at trial will show the relevant clients negotiated with State Street "about price," i.e., "what [State Street] would charge for its services," not about pre-trade estimates of the implementation shortfall. Doc. No. 204 at 46-47.

The Superseding Indictment does not—and need not—set forth facts which permit this Court, at this time, to assess whether each alleged victim got the benefit of its bargain with State Street. The counts involving wire fraud each plainly allege that McLellan "devised a scheme and artifice to defraud," Doc. No. 282 at ¶¶ 47(b); no more is required at this stage, Stepanets, 879 F.3d at 372. Which factors motivated the alleged victims to hire State Street to conduct their transitions, whether each alleged victim received the benefit of its bargain, whether the facts demonstrate a scheme to defraud or merely to deceive, and the extent to which each victim was harmed by the fraud alleged here are disputed questions of fact. Such disputes "must be resolved

---

[8] In part, the force of McLellan's argument here depends on disregarding the transitions and transactions he characterizes as extraterritorial. See Doc. No. 139 at 5 n.4 (admitting costs of transitions for 2 alleged victims "did exceed the pre-trade estimates," but urging the Court to exclude those transitions for the reasons argued in his separate extraterritoriality motion). For the reasons given above to explain the Court's denial of McLellan's extraterritoriality motion, the specified transitions cannot be ignored for purposes of this motion. The resolution of this motion, though, does not depend on considering or disregarding such transitions.

8

at trial rather than on pretrial motions to dismiss." Id. at 374. This motion, like those before it, is DENIED.

> D. Motion to Dismiss Counts One, Four, and Five for Failure to Allege Essential Elements of the Offenses Charged (Doc. No. 136)

Finally, McLellan seeks dismissal of the conspiracy and wire fraud charges "for failure to allege essential elements of the offenses charged." Doc. No. 136 at 1. Specifically, he suggests the three challenged charges are "legally insufficient" because they do not explicitly allege that McLellan acted "knowingly and wilfully." Id. at 2. This argument borders on the frivolous.

The charging language in each of the three challenged counts tracks the relevant criminal statutes. The conspiracy charge includes the language of 18 U.S.C. § 371, identifies the underlying offenses, and incorporates earlier paragraphs describing the object, manner and means, and overt acts that are alleged with respect to the conspiracy. See Doc. No. 282 at ¶¶ 47-48 (alleging McLellan conspired to commit securities fraud, by "knowingly and willfully" engaging in described conduct, and wire fraud, by "intending to devise a scheme and artifice to defraud"); see also, e.g., id. at ¶ 9 (alleging McLellan "agreed" with others "to engage in a scheme to defraud" by doing various things, including "actively concealing" and "cover[ing] up" what he had done). Similarly, the wire fraud charges contain the language of 18 U.S.C. § 1343. Id. at ¶ 54 (including allegation that McLellan "intend[ed] to devise a scheme and artifice to defraud").

No more is required of the government at this stage. See Stepanets, 879 F.3d at 372 (instructing that "an indictment that tracks a statute's terms is legally sufficient," and that "a court must reject arguments that embrace technical niceties at the expense of common sense"); see also Frohwerk v. United States, 249 U.S. 204, 209 (1919) (Holmes, J.) ("It is argued that there is no sufficient allegation of intent, but intent to accomplish an object cannot be alleged

9

more clearly than by stating that parties conspired to accomplish it."). Accordingly, the final motion to dismiss is DENIED.

III.     CONCLUSION

For the foregoing reasons, McLellan's motions to dismiss and for related relief (Doc. Nos. 135, 136, 139, and 148) are DENIED.[9]

McLellan's requests for oral argument of these motions also is DENIED. The motions were ably and fully briefed by both parties, and the Court is satisfied that further argument would not be helpful. The applicable legal standards permit dismissal under Rule 12 only in unusual cases. This is not such a case.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[9] The Court's resolution of the motions, dictated by the well-established standards set forth above, does not constitute an endorsement of the government's (or defendant's) view of the facts nor a determination regarding the admissibility at trial of any category or item of evidence.