UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | No. 16-10094-LTS |
| ROSS MCLELLAN,<br>    Defendant | ) ) ) ) ) | |

**DEFENDANT ROSS MCLELLAN'S STATUS REPORT REGARDING LETTERS ROGATORY TO U.K. ENTITIES**

Now comes the Defendant, Ross McLellan, by and through undersigned counsel, and submits this status report in advance of the scheduled March 19 hearing on Mr. McLellan's Motions to Compel the Government to exercise its rights under the U.S.-Netherlands and U.S.-Ireland Mutual Legal Assistance Treaties ("MLATs") to assist Mr. McLellan in obtaining crucial defense evidence not otherwise accessible to him, Dkt. 275 and 276.

Mr. McLellan is filing the instant status report to notify the Court that his efforts to pursue similarly important evidence located in the United Kingdom have, as of today, proven unsuccessful and that a motion similar to the one filed regarding the U.S.-Ireland MLAT, Dkt. 276, may be necessary in the very near future to obtain the materials requested in the multiple outstanding U.K. Letters Rogatory requests.  Despite the continuing efforts of U.K. counsel, execution of the Letters Rogatory appears stalled at the City of London police level, *see infra* at 5-6.  While Mr. McLellan plans to continue to diligently pursue the Letters Rogatory process, he did not want the Court to make decisions regarding the pending motions without first providing notice of the status of his parallel efforts in the U.K and the potential that further requests for

judicial remedies may be forthcoming given that, like the materials sought by Mr. McLellan in his Ireland MLAT Motion, the documents he is seeking from the U.K. are material, not reasonably available to him, and readily accessible by the Government.[1]  *See, e.g.*, *United States v. Theresius Filippi*, 918 F.2d 244, 247 (1st Cir. 1990) (stating that the government's "deliberate omission to act" on a request for a "Special Public Interest Parole" to allow a defense witness, who was an Ecuadorian citizen, to testify "constitute[d] a violation of the Sixth Amendment right to compulsory process and, derivatively, the right to due process protected by the Fifth Amendment").

I.  *Factual Background*

On or about June 26, 2017, the Honorable Marianne B. Bowler issued several Letters Rogatory, seven of which were directed to the Judicial Authority of the U.K., seeking international judicial assistance to obtain evidence from U.K. entities.  *See, e.g.*, Electronic Order dated June 15, 2017.  Each Letter Rogatory admonished that the Court "considers . . . the evidence sought" as being "directly relevant to the issues in dispute" in this case.  *See* Dkt. 168-3, 168-4, 168-5, 168-6, and 168-8; 174-1 and 174-2.  The Letters related to three groups of entities.  First, two Letters sought evidence from transition management clients allegedly defrauded by State Street, referred to herein as the "British Government Pension Fund" and the "U.K. Corporation."  The Letters for these two entities specifically explained that "[e]vidence of what [each client] understood about the Bank's charges and the agreements governing its transition with State Street . . . bears directly on the allegations" in this case.  Dkt. 168-4 and

---

[1] The defense hopes to have more clarity on the status of the pending U.K. Letters Rogatory requests during the week of March 12-16, but if the past is a prelude to the future the defense cannot presently guarantee the Court that it will be able to obtain the requested documents in advance of trial.

168-6.  Second, and relatedly, three Letters sought evidence from consultants retained by the British Government Pension Fund, the U.K. Corporation, or other non-U.K. clients in connection with transitions charged in the Indictment.  These Letters sought "[e]vidence of what [each consultant] may have understood [and/or] discussed with [its client(s)] about the Bank's charges and the agreements governing [the client's] [transition(s)] with State Street."  Dkt. 168-3, 168-5, and 168-8.  Third and finally, two Letters related to entities that submitted competing bids for the transitions awarded to State Street and subsequently charged in the Indictment.  The Letters stated that "[e]vidence of the terms proposed by [the competing bidder] for the transitions charged in the Indictment and evidence of the bargained-for-terms and results of [any portion of a split transition awarded to the competing bidder] are relevant to what transition management clients understood about transition management compensation schemes and whether the terms proposed and fees charged by State Street were material to the clients at issue."  Dkt. 174-1 and 174-2.  Crucially, each of the seven issued Letters ultimately concluded that "justice cannot completely be done amongst the parties without the production of the documents requested."  Dkt. 168-3, 168-4, 168-5, 168-6, and 168-8; 174-1 and 174-2.

      In the ensuing eight months, Mr. McLellan has diligently pursued production of and made continuous and repeated efforts to obtain the documents requested in the Letters Rogatory, including, at minimum, the following actions.  In June of 2017, Mr. McLellan retained Kingsley Napley LLP, a U.K. law firm, in an effort to, and with the intention of, expediting service and fulfillment of the requests.  U.K. counsel had informed Mr. McLellan that there was potential to expedite the service of Letters Rogatory requests in the U.K. by, in essence, "privatizing" the service of the requests and submitting the requests directly to the U.K. Central Authority.  On June 28, 2017, Mr. McLellan, in accordance with the advice of his U.K. counsel, transmitted the

requests directly to the U.K. Central Authority by email and by Federal Express. The U.K. Central Authority acknowledged receipt of the letter requests that same day. On July 5, 2017, Kingsley Napley LLP began contacting Rob McMorran, counsel for the U.K. Central Authority, in order to expedite the processing of the requests. The U.K. Central Authority responded that they would be able to expedite the requests on their end, but that following approval by the U.K. Central Authority the requests would then be forwarded to the City of London Police for further execution.[2] On July 13, 2017, following its review of the request, Mr. Gareth Davies of the U.K. Central Authority sent a letter to Mr. McLellan's U.K. counsel stating that the requests were considered and accepted by the U.K. Central Authority and that they had been referred to the relevant authorities (*i.e.* the City of London Police) for further execution.

On July 21, 2017, Kingsley Napley LLP withdrew from its representation of Mr. McLellan citing a conflict of interest that was not uncovered during the firm's original conflict review. That same day, Mr. McLellan started his search for new counsel and shortly thereafter retained Corker Binning, another U.K. law firm specializing in international matters. On August 21, 2017, following inquiry from Corker Binning, Mr. Gareth Davies of the U.K. Central Authority updated U.K. counsel that the requests were referred to the City of London Police and that execution of the requests was being overseen by Detective Sergeant Simon Russen, who was part of the U.K. investigation into the underlying conduct alleged in this matter. On August 23, 2017, Mr. McLellan's counsel requested the U.K. Central Authority and the City of London Police to reassign the matter to an officer that was not previously involved with the investigation. On October 3, 2017, Mr. Davies informed U.K. Counsel that a new officer was appointed by the

---

[2] At the time, the U.K. Central Authority informed U.K. counsel that the City of London Police was diverting its resources from fulfilling international documentary requests to accommodate its investigations into the June 14, 2017 Grenfell Tower fire and previous terrorist attacks.

4

City of London Police to execute the requests, but that he was unable to provide the contact information. On October 10, 2017, Corker Binning once again requested the contact information of the officer assigned to the requests and for a further status update. Mr. Davies responded that he was not able to provide a further update and that there were issues raised by certain (but not all) of the subpoenaed entities that he would address with the City of London Police.

For the next month, Mr. Davies did not respond to Corker Binning's additional email and call inquiries into the status of the letters, the status of any issues raised by any of the subpoenaed entities, and the contact information of the officer assigned by the City of London Police. On November 21, 2017, after contacting Mr. Davies' manager, Corker Binning was informed that Mr. Davies had left the U.K. Central Authority and that the matter was being reassigned. On November 30, 2017, Corker Binning was informed that Mr. Paul Crome was assigned by the U.K. Central Authority. That same day, Mr. Crome emailed Mr. Harold Putnam, Clerk to the Honorable Marianne B. Bowler, indicating that Nomura and Goldman Sachs had objections and asked for clarification of the requests. On December 4, 2017, Mr. Crome forwarded the objections and the requested clarifications. On December 20, 2017, after obtaining permission to respond from Mr. Putnam, the Government, and State Street, Mr. McLellan, with the assistance of U.K. counsel, submitted a detailed response to the inquiries and objections forwarded by Mr. Crome. Despite multiple additional inquiries following the December 20, 2017 response, Mr. Crome has not provided the contact information for the officer assigned by the City of London Police or an update on when Mr. McLellan can expect to receive the subpoenaed documents, including those to which there have been, to counsel's knowledge, no objections. On March 9, 2018, during Corker Binning's last interaction with the U.K. Central Authority, Mr. Crome informed Croker Binning that he intends to contact the City of

5

London Police and to update Mr. McLellan's U.K. counsel early this week (*i.e.* the week of March 12, 2018) on the status of the letters and whether a partial production of documents that are not subject to any objection is possible. Absent learning from Mr. Crome this week that an expeditious and substantial production from the City of London Police is forthcoming (*e.g.* from the entities that are not contesting the scope of the requests), it is unlikely that the defendant will be able to obtain all or even most of the requested evidence via the Letters Rogatory process by the June 4 trial date.[3] It will then be the defendant's intention to seek a Court order requiring the Government's active intervention through both its ongoing relationship with the City of London Police and through its use of the MLAT Treaty procedures.

II.   *Conclusion.*

Wherefore, given the events to date, Mr. McLellan respectfully notifies the Court that absent a material change in circumstances this week he intends to file a motion for further relief as to the U.K. materials, including an order requiring the Government to exercise its rights under the MLAT to assist him in obtaining the U.K. materials.

Respectfully Submitted,
Ross McLellan
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: March 12, 2018

---

[3] Mr. McLellan has received from the Government a limited production including some documents from at least one State Street client, but he has not received a vast majority of the documents he has sought from the files of the relevant EMEA clients, their consultants, or competing bidders.

6

## **CERTIFICATE OF SERVICE**

  I, Martin G. Weinberg, hereby certify that on this date, March 12, 2018, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

               **/s/ Martin G. Weinberg**
               Martin G. Weinberg