UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.  ) <br> ) <br> ROSS MCLELLAN, ) <br>      Defendant ) | No. 16-10094-LTS |

**DEFENDANT ROSS MCLELLAN'S SUPPLEMENT TO HIS MOTION FOR RELIEF RELATING TO THE U.S.-IRELAND MLAT (DKT. 276)**

Now comes the Defendant, Ross McLellan, by and through undersigned counsel, and submits this supplement to his prior Motion for Relief which requested that the Court Order the Government to exercise its rights under the U.S.-Ireland Mutual Legal Assistance Treaty ("MLAT") to assist Mr. McLellan in obtaining crucial defense evidence not otherwise accessible to him in order to secure a fair trial for the defendant, or, in the alternative, to suppress testimony and evidence related to the subject matter of the pending Letters Rogatory, Dkt. 276.  As grounds and reasons therefore, Mr. McLellan states that, despite extensive efforts as described more fully in his recent Status Report, Dkt. 321, which he incorporates in its entirety into this Supplement to Dkt. 276, he has proven unable to obtain any evidence at all from the seven issued Letters Rogatory seeking evidence from entities in the United Kingdom.  This evidence – which is material to his defense and to his ability to cross-examine anticipated prosecution witnesses – remains unavailable to Mr. McLellan and should result in the same alternative remedies for the reasons requested in his Ireland MLAT motion.

1

In his March 12, 2018 Status Report Mr. McLellan described in detail his "continuous and repeated efforts" over the course of the approximately eight months following this Court's issuance of the relevant Letters Rogatory to obtain execution of those Letters.  Dkt. 321 at 3.  Despite Mr. McLellan's persistence, the Status Report noted that the requests "appear[ed] stalled at the City of London police level." *Id.* at 1.  Mr. McLellan indicated that he expected to receive an update from the U.K. Central Authority within the week of the filing.  *See id.* at 5-6.  The Status Report notified the Court that "[a]bsent learning from Mr. [Paul] Crome," Mr. McLellan's contact at the U.K. Central Authority, "that an expeditious and substantial production from the City of London Police is forthcoming . . . , it is unlikely that the defendant will be able to obtain all or even most of the requested evidence via the Letters Rogatory process by the June 4 trial date." *Id.* at 6.[1]  Since no assurance has yet been communicated by Mr. Crome to U.K. counsel working with the undersigned, this Supplement to Dkt. 276 is being filed.  In short, absent the intervention of the Government, it is highly unlikely that the defendant will receive the pivotal evidence sought from seven separate U.K. entities in time to permit its use given the current trial schedule.  At this point, with only about two and a half months remaining until trial, Mr. McLellan can only conclude that, like the evidence at issue in his Ireland MLAT motion, the evidence he is seeking from the U.K. entities is not "reasonably available" to him absent assistance from the Government.

In light of the inaccessibility of the evidence to Mr. McLellan, and its materiality to a fair trial, the Government is Constitutionally required to lend its assistance so long as the evidence is accessible to the Government as it is through the U.S.-U.K. MLAT.  Each element is satisfied

---

[1] Mr. McLellan's U.K. counsel at Corker Binning have informed the undersigned that Mr. Crome has not responded to counsel's phone calls during the week of March 12.

here. The evidence requested from two U.K. clients and their consultants is material for reasons similar to the evidence being sought from the Irish clients. *See* Dkt. 276 at 6-7; Dkt. 281 at 4-5. The evidence from competing bidders is material for the reasons explained in the Letters Rogatory themselves and in Mr. McLellan's Status Report. *See* Dkt. 321 at 3. The Government indisputably has the singular ability to compel the production of this important evidence by invoking its rights under the MLAT.[2] Indeed, as one commentator has explained, this is "automatically" true "whenever an MLAT exists, because only the government has the power to request evidence under the treaty, with which the foreign state must comply." L. Song Richardson, *Due Process for the Global Crime Age: A Proposal*, 41 Cornell Int'l L.J. 347, 376 (2008). The U.S.-U.K. Treaty requires the two countries to "provide mutual assistance" to each other in connection with "proceedings," defined broadly to include "any measure or step taken in connection with the investigation or prosecution of criminal offences." U.S.-U.K. Mutual Legal Assistance Treaty, Jan. 6, 1994, T.I.A.S. No. 96-1202, Articles 1(1) and 19(1). This language, on its face, is clearly broad enough to include requests for documents such as those that are mired in the Letters Rogatory process. *See* Richardson, *Due Process for the Global Crime Age: A Proposal*, 41 Cornell Int'l L.J. at 381 ("None of the treaties differentiate between evidence that the prosecution requires and that which the defendant requires."). Indeed, ordering the Government to submit such a request for material evidence not otherwise reasonably available to the defendant is a straightforward application of the prosecutor's duty to "seek[] justice rather

---

[2] Alternatively, without waiving the remedies requested in Dkt. 276, the Government could also assist Mr. McLellan by simply requesting expedited cooperation from the City of London Police – an agency from which it has already acquired some evidence including interview statements – in this case.

3

than victory." *United States v. Theresius Filippi*, 918 F.2d 244, 246 (1st Cir. 1990) (citation omitted); *see also* Dkt. 276 at 8-9; Dkt. 281 at 4.[3]

In light of the importance of the evidence sought from the U.K. entities and Mr. McLellan's inability to access that evidence despite diligent efforts, Mr. McLellan's Constitutional right to "present a complete defense" is in serious jeopardy. *See California v. Trombetta*, 467 U.S. 479, 485 (1984). The Government, instead of agreeing to assist the defendant through the exercise of its asymmetric powers, has instead objected to the relief sought from this Court by the defendant. Although some MLATs are unavailable to create rights for private parties, they do not, by their terms, prohibit the Government from seeking the same documents that are within the court-ordered Letters Rogatory nor prohibit a court from requiring that the Government exercise its unilateral Treaty rights in order to vindicate a defendant's right to a fair trial. Dkt. 279 at 6. Additionally, the MLATs do not address much less restrict a court from conditioning the admissibility of evidence on the Government's providing a level "playing field" for each party when it prosecutes a transnational case that relies in such substantial part on foreign witnesses and foreign testimony. *See* Richardson, *Due Process for the Global Crime Age: A Proposal*, 41 Cornell Int'l L.J. at 374 ("[W]hen prosecutors have exclusive access to material evidence that the defendant requests, they must utilize existing MLATs to obtain that evidence."); *see also* Robert Neale Lyman, *Compulsory Process in a Globalized Era: Defendant*

---

[3] As explained in Mr. McLellan's Ireland MLAT Motion, to the extent that the Court also decides to "impose[] some form of [bad faith] requirement – an element the defense contends is unnecessary in the current circumstances" – such "bad faith" may be inferred solely from the "absence of any known countervailing reason for the Government's refusal to invoke the MLAT and level the 'playing field' between the parties." Dkt. 276 at 10 (citing *Theresius Filippi*, 918 F.2d at 248); *see also* Richardson, *Due Process for the Global Crime Age: A Proposal*, 41 Cornell Int'l L.J. at 376-77 ("[A] defendant should not be required to demonstrate bad faith on the part of the government. . . . Even if the framework requires a showing of bad faith," the "intentional creation of the disparity in access to process should be sufficient.").

4

*Access to Mutual Legal Assistance Treaties*, 47 Va. J. Int'l L. 261, 282 (2006) ("MLATs . . . constitute exactly the evil that the Sixth Amendment was drafted to avoid, namely an imbalance in compulsive power between prosecution and defense . . . . They are thus plainly unconstitutional when available to the prosecution but not to the defense.").

Wherefore, for all of the foregoing reasons, as well as the reasons set forth in his Motion for Relief relating to the U.S.-Ireland MLAT, Mr. McLellan respectfully requests an order requiring the Government to exercise its rights under the MLAT to obtain the materials detailed in the Letters Rogatory issued to the seven U.K. entities, or, alternatively, excluding at trial all evidence relating to the transitions involving these entities and striking all related language from the Indictment.

Respectfully Submitted,
Ross McLellan
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: March 19, 2018

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, March 19, 2018, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg

5