UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                       )
                                                       )
UNITED STATES OF AMERICA          )
                                                       )
v.                                                      )                    No. 16-cr-10094-LTS
                                                       )
ROSS MCLELLAN                            )
                      Defendant               )
                                                       )
_____ )

## MOTION FOR JURY QUESTIONNAIRE

Now comes the Defendant Ross McLellan, by and through undersigned counsel, and hereby respectfully requests this Honorable Court to allow the submission of a jury questionnaire, attached hereto as Exhibit 1, to prospective jurors in sufficient time to allow counsel to receive the completed questionnaires at least 72 hours prior to the commencement of trial.  The use of a jury questionnaire will safeguard Mr. McLellan's Sixth Amendment right to an impartial jury, develop information for the Court and for counsel for the exercise of for-cause challenges, and facilitate the selection of an impartial, unbiased jury.

### I.     BACKGROUND

Mr. McLellan is charged with two counts of securities fraud, two counts of wire fraud, one count of wire fraud affecting a financial institution, and conspiracy.  *See* Dkt. 282.  Mr. McLellan is accused of defrauding at least six State Street transition management clients in the EMEA region, many of which are pension funds, by "(1) secretly charging commissions on securities trades conducted as part of certain transitions over and above the agreed upon fees for

1

those transitions; (2) actively concealing the hidden commissions from the affected clients and from others within State Street; and (3) taking additional steps to cover up what [he] had done." *Id.* at 4.  During the relevant time period, Mr. McLellan was an executive vice president of State Street, the global head of the Portfolio Solutions Group, and was also the president of State Street's U.S. broker-dealer subsidiary.  *See id*. at 1-2.

Following the financial crises and the growing number of scandals involving banks, there has been a prevailing bias against banks and their executives.  *See e.g.,* Johnny Ayers, HOW BANKS CAN TACKLE MILLENNIAL SKEPTICISM TECHCRUNCH (2016), https://techcrunch.com/2016/11/02/how-banks-can-tackle-millennial-skepticism/ (last visited Apr 22, 2018) ("The Millennial Disruption Index revealed that 71 percent of millennials would rather visit the dentist than listen to their banks").  The defense, through a consultant, has reviewed research reports, including national studies conducted by organizations such as Gallup and Pew Trust, to determine the prevailing attitudes of individuals concerning large banks. These research reports indicate that a portion of the population associates banks with price gouging of rates and fees, fraudulent practices, and general lack of trustworthiness.  The defense attempted to quantify the extent to which the jury pool in this District has any bias against banks and their executives.  The defense solicited responses from 603 residents in this district. Following the survey, the defense learned that nearly 50% of the 603 participants have a bias against bank executives: when asked to rate on a scale of 1 to 5 – 5 representing a high level of trust and 1 representing a very low level of trust – 16.4% of participants indicated that they have a very low level of trust and 24.4% indicated they have a somewhat low level of trust of executives at large banks.

Accordingly, in order to fulfill the constitutional mandate of the selection of an impartial jury, Mr. McLellan requests the issuance of a 5-page jury questionnaire that will: (1) provide all counsel with sufficient information concerning each juror to enable the Court and counsel to exercise for-cause challenges; (2) expedite the jury selection procedure; and (3) ensure that the jury is not tainted by bias or prejudice.

## II.   ARGUMENT

It has long been held that a suitable inquiry is permissible in order to ascertain whether a juror has any bias, opinion or prejudice that would control the fair determination by that juror of any issue to be tried. *Connors v. United States,* 158 U.S. 408, 413 (1895).  While the Constitution does not dictate a procedure for jury selection, part of the guarantee of a defendant's right to an impartial jury is affording the defendant an adequate process to identify unqualified jurors:

> *Voir dire* plays a critical function in assuring the criminal defendant that his constitutional right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.

*Morgan v. Illinois*, 504 U.S. 719, 729–30 (1992) (internal quotations and citations omitted); *Skilling v. United States*, 561 U.S. 358, 388–89 (2010) ("the District Court initially screened venire members by eliciting their responses to a comprehensive questionnaire… [t]hat survey helped to identify prospective jurors excusable for cause and served as a springboard for further questions put to remaining members of the array.").  To ensure fairness and reliability in the jury selection process, it is vital that the information available to the prosecution and the defense concerning potential jurors is accurate and thorough. *See, e.g., Jordan v. Lippman*, 763 F.2d 1265 (11th Cir. 1985) (jury selection procedures must be adequate to unearth prejudice; failure to

3

expose potential prejudice of jurors requires reversal of conviction); *United States v. Honken*, 378 F. Supp. 2d 880, 916 (N.D. Iowa 2004) ("an extensive questionnaire should be propounded to the jury, which will provide a wealth of information relevant to selection of an impartial jury").

Thus, to ensure the selection of an impartial, unbiased jury, court have "require[d] a comprehensive juror questionnaire, an expanded jury pool, individualized voir dire, and an opportunity for attorney input on the content of the voir dire." *United States v. Awadallah*, 457 F. Supp. 2d 246, 254 (S.D.N.Y. 2006); *see also United States v. Isaacson*, 752 F.3d 1291 (11th Cir. 2014) (use of jury questionnaire in a securities fraud case); *Balkany v. United States*, 2013 WL 1234950 (S.D.N.Y. Mar. 27, 2013) (use of a jury questionnaire in a wire fraud case); *United States v. Daugerdas*, 867 F. Supp. 2d 445 (S.D.N.Y. 2012) (use of a jury questionnaire in a tax shelter fraud case); *United States v. Rioux*, 930 F. Supp. 1558 (D. Conn. 1995) (use of a jury questionnaire in a mail fraud case).

Here, like in the cases cited above, the best avenue to achieve accurate and thorough information is to submit questions to prospective jurors prior to trial in the form of a jury questionnaire. A questionnaire submitted to the prospective jurors will inquire, among other things, into the attitudes of the prospective jurors with regard to any biases a prospective juror may hold against Mr. McLellan or the subject matter of this case. Given the sensitive nature of these subjects – personal finances and bias against banks, bank executives, and securities dealers – prospective jurors are more likely to answer fully and truthfully when asked privately about their views via a questionnaire, as opposed to openly in court before a group of strangers.

Additionally, use of a questionnaire allows a prospective juror an adequate opportunity to reflect on personal and complex issues. Not only does the use of a questionnaire permit prospective jurors to think about and formulate meaningful responses to the written questions posed, but prospective jurors who are pre-exposed to questions regarding their feelings and beliefs through questionnaires are more likely to give thoughtful, honest, and reflective answers to oral questions posed to them during the *voir dire* process.

Finally, a jury questionnaire will provide information necessary to ensure that no improper bias or prejudice undermine Mr. McLellan's rights to a fair trial.  The benefit derived from the use of a questionnaire far outweighs any burden of having to respond to a relatively short 5-page questionnaire.  *Aldridge v. United States*, 283 U.S. 308, 315 (1931) ("We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute.").

### III.    CONCLUSION

For all of the foregoing reasons, Mr. McLellan respectfully requests this Honorable Court to allow the submission of a jury questionnaire, attached hereto as Exhibit 1, to prospective jurors in sufficient time to allow counsel to receive the completed questionnaires at least 72-hours prior to the commencement of trial.

5

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

The undersigned counsel conferred with counsel for the Government and the

Government, by and through Stephen E. Frank, opposes this request.

Respectfully submitted,

Ross McLellan
By his Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: April 23, 2018

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, April 23, 2018, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg

6