UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | No. 16-cr-10094-LTS |
| ROSS MCLELLAN,<br>     Defendant | ) ) ) ) ) | |

**DEFENDANT ROSS MCLELLAN'S MOTION TO CONTINUE TRIAL AND FOR OTHER APPROPRIATE RELIEF**

Now comes the Defendant, Ross McLellan, by and through undersigned counsel, pursuant to the Fifth and Sixth Amendments to the United States Constitution, and hereby respectfully moves this Honorable Court for a continuance of the trial in this matter. As described in more detail below, a continuance is necessary (1) to provide Mr. McLellan the opportunity to obtain additional evidence from domestic and international entities that he reasonably expects to be both highly material to his defense and highly likely to be exculpatory; (2) to permit Mr. McLellan to review and integrate into his defense thousands of documents, comprising over a hundred thousand pages of new discovery material received over the course of the last months; and (3) to provide Mr. McLellan the opportunity to obtain the testimony of three former State Street employees, who have not agreed to voluntarily appear at trial or at a deposition. Mr. McLellan further requests this Honorable Court to Order the relief requested in Dkt 276 (requesting the Court to compel the Government to request evidence from two alleged victims in Ireland pursuant to the U.S.-Ireland Mutual Legal Assistance Treaty), Dkt 275 (requesting the Court to compel the Government to exercise its rights under the U.S.-Netherlands

1

Mutual Legal Assistance Treaty to secure Sarah Lewis' appearance at a deposition), and Dkt. 296 (requesting the Court to Order the Rule 15 depositions of Krystyna Beck and Simone Paul). As further grounds and reasons therefore, the defendant relies upon and incorporates the memorandum of law below.

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Undersigned counsel conferred with counsel for the Government, and the Government, by and through Stephen E. Frank, opposes these requests.

## MEMORANDUM OF LAW

I.  *Factual Background*

The original indictment in this case issued in March 2016, and, for almost two years thereafter, the charges against Mr. McLellan remained static: an alleged scheme to defraud transition management clients in the Europe, Middle East, and Africa ("EMEA") region. The Government produced approximately 1.35 million pages of documents and over 13,000 audio files relating to these EMEA charges. Mr. McLellan's former employer, State Street, was the primary source of the material.

Despite this voluminous discovery, the transnational nature of the case presented significant discovery and evidentiary challenges for Mr. McLellan and his defense team. The six allegedly defrauded clients are all located outside the scope of the Court's subpoena power. Two of the clients are based in the United Kingdom, two in Ireland, one in the Netherlands, and one in Kuwait. While Mr. McLellan had access to these clients' communications with State Street, those exchanges, occurring in the context of arms-length business transactions between sophisticated parties with differing interests, were an incomplete representation of the clients' and consultants' expectations, their reasons for choosing State Street as the transition manager,

2

their satisfaction with the conducting of the transitions, and the non-materiality of the trading revenues that were earned by a State Street affiliate, whether known or not known to the Transition Management client.  Crucially, Mr. McLellan lacked access to the *internal* deliberations of the six entities and their consultants regarding essential aspects of the transitions, including their selection of State Street as the Transition Manager; their reliance or lack of reliance on certain statements made to them by State Street; their assessment of whether the charging of additional revenues, if known, would be considered material; their assessment of whether the overall transition costs were considered acceptable; and the nature of their responses upon learning from State Street that rebates were available. *See* Dkt. 181 at 4.

To this end, Mr. McLellan moved for the issuance of Letters Rogatory seeking the production of documents from eleven foreign entities, including the six relevant clients, three consultants retained by those clients, and two competing bidders.  In June 2017, the Court issued the Letters Rogatory, and, in doing so, acknowledged that the evidence sought was "directly relevant to the issues in dispute." Dkt 167-1 – 167-9.  The Court subsequently granted Mr. McLellan's first motion for a continuance to allow him time to obtain and review those documents. *See* Dkt. 195.  Mr. McLellan and his defense team have engaged in diligent efforts to pursue the Letters Rogatory process over the course of the ensuing ten months, including hiring local counsel in several different countries in order to expedite the evidence gathering process. *See* Dkt. 276 at 3-4; Dkt. 321 at 3-6.

Within the last fourteen days, Mr. McLellan's efforts have finally begun to bear results. On April 11, 2018, Mr. McLellan received 647 files containing approximately 5000 pages of documents from one of the U.K. clients and from two U.K. consultants.  As expected, while the review of these materials remains ongoing, the defense has already identified highly relevant

materials bearing directly upon Mr. McLellan's defense.  Upon initial review by Mr. McLellan's defense team of the partial U.K. Letters Rogatory responses, the documents bear directly upon several potential issues that are expected to be in dispute at trial, including: (1) that these sophisticated clients were aided by experienced consultants and lawyers in negotiating these agreements and the transitions in general; (2) the clients' and their consultants' understanding that broker-dealers are often compensated via mark-ups when trading fixed income securities as riskless principal;  (3) the non-materiality of any alleged misrepresentations as to the price and fees of the transition; and (4) whether the clients had responses to their RFPs from other transition managers that would have provided less costly options to the client.  The recent U.K. Letters Rogatory productions also contain valuable impeachment material for at least two individuals expected to be significant Government witnesses based on a preliminary witness provided to the defense.[1]  Furthermore, on April 16, 2018, Mr. McLellan received 697 pages of documents in response to the Letter Rogatory issued to the Dutch client.  However, the majority of the key documents, *i.e.*, internal discussions and internal memoranda, are in Dutch, and Mr. McLellan is in the process of arranging for their translation so that his defense team is able to review them and integrate them into his defense.  Mr. McLellan reasonably expects that these documents, once translated, will materially further his anticipated trial defenses and his ability to cross examine a key witness for the Dutch client, who the Government indicates will be a prospective witness on its preliminary witness list.

Perhaps even more important than what Mr. McLellan has received are the several Letters Rogatory requests that remain outstanding.  Only four of the eleven entities subject to the

---

[1] To the extent that the Court would like further detail regarding the content and materiality of these documents, Mr. McLellan is willing to provide an *ex parte* proffer of the information received and how Mr. McLellan intends to use it to further his defense.

4

Letters Rogatory requests have provided substantial responses. Mr. McLellan has yet to receive responses from two Irish clients, one U.K. client, or the Middle Eastern based client. Most importantly, Mr. McLellan has yet to receive, despite the Letters Rogatory request or the Government's requests, documents from the "Irish Government Pension Fund", an alleged victim that forms the basis of a substantive securities fraud count and whose representatives will testify at trial. Indeed, two of the Government's prospective witnesses are representatives of one of the "Irish Government Pension Fund". After exhausting the Letters Rogatory process in Ireland, Mr. McLellan was informed that the only avenue for production of materials relevant to the two alleged victims in Ireland, including the "Irish Government Pension Fund", is a communication from the United States Attorney General's Officer to Ireland's Central Authority pursuant to the applicable Mutual Legal Assistance Treaty. *See* Dkt. 276 at 1-2. In order to secure his constitutional rights to due process, to compulsory process, and to fully present a defense, Mr. McLellan requested this Honorable Court to compel the Government to assist in the production of the requested materials through the MLAT process or, to alternatively, exclude evidence relating to the Irish transitions. *See id.* To the undersigned's knowledge, the Government has not received any particularized response to its request to have the "Irish Government Pension Fund" provide any (or all) of the requested documents. Given that Mr. McLellan has received none of the requested information – through either his efforts or the Government's efforts – from the "Irish Government Pension Fund", nor has he received responses to his Letters Rogatory request or to the Government's request for any (or all) of the documents from the second Irish client that is identified in discovery,[2] Mr. McLellan respectfully

---

[2] The defense did receive, pursuant to a U.K. Letters Rogatory request, evidence from the second Irish client's consultant relating to the transition at issue. While helpful, the production does not

requests this Honorable Court to issue the relief requested in Dkt. 276.[3]  Otherwise, Mr. McLellan will be forced to proceed without pivotal material that he needs to further his defense or to effectively cross examine the fund's representatives.  The two competing bidders subject to Mr. McLellan's Letters Rogatory requests in the U.K. (and a second U.K. client identified in discovery and a subject of the Letters Rogatory) have yet to provide documents in response to the requests, despite Mr. McLellan's timely responses to two rounds of objections and requests for clarification from the two competing bidders.  In response to the two competing entities' questions from December 10, 2017, and April 16, 2018, where the two entities requested further clarification concerning the relevance of the materials in their possession and clarification of requests for documents for three entities that are not explicitly named in the Indictment,  Mr. McLellan has provided these entities with a roadmap of dates, names, and emails that contain the requested information and agreed to significantly reduce the scope of his court authorized requests to facilitate a timely production of documents.  The defense's later response was sent on April 23, 2018, and is reasonably expected to resolve any final objections and questions from entities subject to the Letters Rogatory requests in the U.K.  Mr. McLellan hopes to receive the requested documents in the near future.

Further, while Mr. McLellan was in the midst of these efforts to obtain foreign documents, the Government introduced a fundamental, and entirely unexpected, change in the case.  On February 7, 2018, less than four months before the June 4 trial date, the Government issued a superseding indictment adding a completely new substantive count, namely an alleged

---

include any internal deliberations of the client or any communications that did not include the consultant.

[3] While the Government has produced documents from an additional U.K. based client and the Middle Eastern client, the production contained only a small subset of Mr. McLellan's requests. The Government has not produced any documents from the two Ireland based clients.

6

"Scheme to Defraud [a] U.S. Insurance Company." Dkt. 282. In the ensuing weeks, Mr. McLellan received more than 58,000 pages of additional document discovery in connection with this new count. On April 5, 2018, the Government produced an additional 747 pages of documents related to the new charge.

Beyond the immense amount of discovery received from the Government, Mr. McLellan continues to obtain material evidence from third parties. Since this Honorable Court's January 19, 2018 Order granting Mr. McLellan's request for a Rule 17(c) *duces tecum* subpoena directed to State Street, Mr. McLellan has been receiving a rolling production of documents. State Street's latest production of documents relevant to January 19, 2018 Order was received on April 4, 2018. In total Mr. McLellan has thus far received 13,221 files, totaling more than 50,000 pages of materials that he is in the process of reviewing and incorporating into his defense. These productions include documents that are essential to Mr. McLellan's defenses, including emails between two key Government witnesses – Rick Boomgaardt and Edward Pennings – documenting their transition management practices prior to Mr. McLellan becoming the global head of State Street's Transition Management business.[4]

Furthermore, on March 23, 2018, this Court granted Mr. McLellan's unopposed request for issuance of a Rule 17(c) subpoena to State Street seeking several categories of documents relevant to the new charge alleging fraud against the U.S. Insurance Company. More specifically, Mr. McLellan is seeking, among other things, relevant contractual agreements between State Street and the U.S. Insurance Company, regulatory filings relating to trading conducted on behalf of the U.S. Insurance Company, and State Street's communications (both

---

[4] Mr. McLellan is willing to provide the Court with an *ex parte* proffer demonstrating the importance of these documents and the need for additional time to review and incorporate the information into his defenses.

internally and with the U.S. Insurance Company) regarding the transition. After narrowing Mr. McLellan's requests, the U.S. Insurance Company has similarly agreed to produce, prior to trial, several categories of material documents, including relevant contractual agreements, internal and external communications regarding the transition, board presentations and notes concerning the transition, and documents sufficient to reflect the entity's membership in the Federal Home Loan Bank of New York, a prerequisite for the application of a 10-year statute of limitations. Mr. McLellan is presently waiting for the production of these documents, and reasonably believes, following discussions with the parties, that the production will consists of an additional tens of thousands of pages. Mr. McLellan is expecting to receive these documents at the end of April or the first half of May.

Finally, Mr. McLellan also seeks testimony from three former State Street lawyers. Two of these attorneys – Krystina Beck and Simone Paul – reviewed relevant contractual provisions for the Kuwaiti client at issue and, as the defense contends, approved State Street charging undisclosed revenue on the transition during their November 2-3, 2010 contractual analysis. The other attorney – Sarah Lewis – was directly involved in changes to State Street's standard transition management agreement and is believed to have had conversations with Mr. Pennings where he disclosed that State Street acts as a riskless principal and charges markups on EMEA transitions. This Court has already ordered a Rule 15 deposition of Ms. Lewis, however, she informed undersigned counsel that she is not willing to voluntarily appear at trial or a deposition, or even to be interviewed. Accordingly, Mr. McLellan moved to compel the Government to exercise its rights under the U.S.-Netherlands MLAT to secure the witness' appearance at a

deposition. *See* Dkt. 275.[5] That motion remains pending. Mr. McLellan has a pending Rule 15 Motion with respect to the other two witnesses, Krystyna Beck and Simone Paul, who have similarly refused to voluntarily appear at trial or at a deposition related to the above-captioned matter. Thus, Mr. McLellan respectfully requests this Honorable Court to Order the relief requested in Dkt. 296 so that he may attempt to compel their appearance at trial or at a deposition through the Letters Rogatory process.

Of course, at the same time he has been seeking and reviewing the evidentiary materials detailed above, Mr. McLellan has been, and will continue to be, occupied with the countless other matters requiring attention in the final period leading up to a complex federal trial. Just last Friday, forty-five days prior to the scheduled trial start date, Mr. McLellan served his expert disclosures on the Government and received a partial production of witness statements consisting of FBI 302 memoranda of interviews conducted by the Government in its investigation of this matter and 25 transcripts that he is in the process of reviewing. Further discovery is scheduled to be exchanged during the next several weeks.

II.     *Argument*

It is undoubtedly true that the decision of whether or not to grant a continuance is a matter left to the sound discretion of the Court. That discretion is, however, circumscribed "by the defendant's constitutional rights, including his rights to assistance of counsel and to the testimony of witnesses on his behalf." *United States v. Soldevila-Lopez*, 17 F.3d 480, 487 (1st

---

[5] Until July 1, 2018, when a legislative change occurs that will allow Dutch courts to compel witness testimony through the Letter Rogatory process, the only method of compelling Ms. Lewis' appearance at trial or at a deposition is through the U.S.-Netherlands Mutual Legal Assistance Treaty. *See* Dkt. 275-3. Accordingly, if trial of this matter is continued, Mr. McLellan will forthwith file a Letters Rogatory request and ask the Dutch courts to issue a subpoena for Ms. Lewis' testimony following the July 1, 2018 legislative change.

9

Cir. 1994); *see also United States v. Zimny*, 873 F.3d 38, 53 (1st Cir. 2017) ("[A] court, in deciding whether to grant a continuance, should consider whether and how a lack of continuance may or may not impair defense efforts."). Factors relevant to determining whether a continuance is necessary include: "(1) the extent of [the defendant's] diligence in preparing his defense prior to the date set for [trial]; (2) the likely utility of the continuance if granted; (3) the inconvenience to the court and the opposing party, including witnesses; and (4) the extent to which the moving party may . . . suffer[] prejudice from the denial." *Soldevila-Lopez*, 17 F.3d 480 at 488. Here, nearly all of these factors weigh in favor of granting a continuance.

First, Mr. McLellan has been more than diligent in his pursuit of relevant documents. Because of the Government's decision to charge him based primarily on transitions conducted on behalf of foreign entities, Mr. McLellan has been forced to spend almost a year navigating the intricacies of transnational evidence-gathering. *See, e.g.*, Dkt. 276 at 3-4; Dkt. 321 at 3-6. He is only now beginning to realize the results of those efforts in the form of responses to his Letters Rogatory requests. Through no fault of his own, Mr. McLellan had a substantial additional burden imposed upon him by the issuance of a superseding indictment adding a new substantive count involving an entirely different set of alleged co-conspirators, a different victim, and a different geographic region than the previous charges. Mr. McLellan has devoted significant time to reviewing the more than 58,000 pages of new discovery, as well as following-up with requests for supplemental and third-party productions to fill gaps in the information provided to date.

A modest continuance of the scheduled trial date from June 4 to mid-September would hold great utility for Mr. McLellan and would ameliorate the strong likelihood of prejudice that he otherwise faces. This has always been a highly complex case involving six alleged victims in

four different countries, and voluminous discovery including about 1.35 million pages and over 13,000 audio tapes. Due to developments, all occurring less than four months before the scheduled trial date, Mr. McLellan now has more than 100,000 total pages of documents to review and incorporate into his defense, and he expects to receive tens of thousands of additional pages in the near future. While it is true that Mr. McLellan requested these documents (other than those relating to the supplemental charge), he can hardly be faulted for seeking evidence that is directly relevant to the charges against him. The Government had the opportunity to facilitate Mr. McLellan's access to the relevant foreign documents and witnesses months ago by exercising its MLAT rights and/or using its influence with the entities involved. At this late date, the reality is that Mr. McLellan is struggling to exhaustively review and incorporate into his defense thousands of documents, some of which are in a foreign language, before the scheduled June 4 trial date.

Perhaps even more important than the large volume of documents received in recent months are the document requests that remain outstanding. Mr. McLellan is not asking this Court to continue the case indefinitely based on a mere unsubstantiated hope that he might receive relevant evidence. Rather, having finally received some assistance from the Government, Mr. McLellan has already begun to obtain relevant documents. Many of those documents are highly material to Mr. McLellan's trial defenses. Again, Mr. McLellan would be happy to submit an *ex parte* proffer to the Court including examples of such documents. Notwithstanding these recent developments, the majority of Mr. McLellan's Letters Rogatory remain outstanding. The responses received to date have only heightened Mr. McLellan's expectation that the documents he requested are highly material and possibly exculpatory. As he has already explained to the Court, Mr. McLellan believes that he is constitutionally entitled to

these documents. *See, e.g.*, Dkt. 276 at 2. Any inconvenience to the Government or its witnesses that would result from a modest three-plus month continuance should give way to Mr. McLellan's right to a fundamentally fair trial. *See United States v. Mason*, 919 F.2d 139, 1990 WL 185894 at *3 (4th Cir. 1990) (unpublished) (granting continuance to accommodate defendant's acquisition of evidence abroad through the Letters Rogatory process).

III.    *Conclusion*

Wherefore, for all of the foregoing reasons, Mr. McLellan respectfully requests an order continuing the trial in this matter until mid-September.

Respectfully Submitted,
Ross McLellan
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
Dated: April 23, 2018            owlmgw@att.net

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, April 23, 2018, a copy of the foregoing document has been served, via electronic mail, upon Assistant U.S. Attorney Stephen E. Frank and U.S. Department of Justice Trial Attorney William Johnston.

**/s/ Martin G. Weinberg**
Martin G. Weinberg