UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 16-10094-LTS |
| ) | |
| ROSS MCLELLAN, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE DUTCH PENSION FUND TRANSITION**

The government respectfully submits this response in opposition to Defendant Ross McLellan's Motion *In Limine* to Exclude Evidence Relating to the Dutch Pension Fund Transition, Dkt. 343. In support of his motion, the defendant reprises the same arguments that he advanced in his motion to dismiss on Morrison grounds, namely, that the Dutch Pension Fund transition consisted of foreign securities transactions and therefore was extraterritorial. See Dkt. 148. As the government articulated in its response, Dkt. 170, these arguments are without merit. Evidence of the Dutch Pension Fund transition is admissible on two independent grounds: First, the Dutch Pension Fund transition involves domestic wire fraud. Second, even if the Dutch pension fund transition involved no wires to or from the United States, entirely foreign conduct can be admissible as part of a properly charged domestic conspiracy.

**Background**

McLellan, a former executive vice president of State Street Corp., was indicted on March 31, 2016 on charges of securities fraud, wire fraud, and conspiracy to commit the same, in connection with a scheme to defraud at least six institutional investors who were clients of State Street's transition management business. On February 7, 2018 a superseding indictment was

filed adding an additional count relating to a U.S. insurance company victim.  Throughout the period covered in the superseding indictment, 2010 and 2011, the defendant was employed at State Street's headquarters in Boston as global head of the Portfolio Solutions Group, which housed its transition management unit.

The indictment alleges that the defendant orchestrated a scheme to defraud by secretly overcharging State Street's clients with hidden commissions on fixed income and equity securities.  Count 1 charges conspiracy to commit securities fraud and wire fraud as part of a scheme to overcharge transition clients.  As part of that count, the superseding indictment alleges that the defendant and his co-conspirators defrauded at least six clients in the Europe, Middle East, and Africa region.  The Dutch Pension Fund was one of those clients.  The defendant oversaw the scheme from Boston, and exchanged emails and made numerous phone calls in furtherance of the scheme.

## Argument

1. The Dutch Pension Fund transition is domestic wire fraud conduct, and thus part of the charged conspiracy.

The defendant contends that evidence of the Dutch Pension Fund transition is inadmissible on the grounds that it concerns entirely foreign conduct.  Yet merely because a victim of a U.S.-based scheme happens to reside abroad and the fraudulent representations occurred abroad, does not remove that conduct from the reach of the wire fraud statute.  The focus of the wire fraud statute is the use of U.S. wires that affect interstate or foreign commerce.[1]

---

[1] See, e.g., United States v. Garlick, 240 F. 3d 789, 792 –93 (9th Cir. 2001) (focus of the mail and wire fraud statutes is the misuse of the instrumentality of communication); United States v. Trapilo, 130 F.3d 547, 552 (2d Cir. 1997) ("What is proscribed is the use of telecommunications systems of the United States in furtherance of a scheme whereby one intends to defraud another of property."); United States v. Monostra, 125 F.3d 183, 187 (3d Cir. 1997) (mail and wire fraud statutes are "directed at the instrumentalities of fraud").

So long as U.S. wires are used to execute a scheme to defraud, the conduct falls within the statute's reach.  See United States v. Hayes, 99 F. Supp. 3d 409, 420 (S.D.N.Y. 2015) (presumption against extraterritoriality "irrelevant" to wire fraud and conspiracy charges where "co-conspirators purportedly caused the manipulated LIBOR to be published to servers in the United States and used United States wires to memorialize trades affected by that rate"); United States v. All Assets Held at Bank Julius, Baer & Co., CV 04-0798 (PLF), 2017 WL 1508608, at *15 (D.D.C. Apr. 27, 2017) ("a complaint alleges a domestic application of wire fraud when (1) a defendant or coconspirator commits a substantial amount of conduct in the United States, (2) the conduct is integral to the commission of the scheme to defraud, and (3) at least some of the conduct involves the use of U.S. wires in furtherance of defraud.").

Controlling case law supports this proposition.  In Pasquantino v. United States, 544 U.S. 349 (2005), the Supreme Court affirmed a conviction under the wire fraud statute where the defendants smuggled alcohol into Canada from the U.S. to avoid paying taxes to the Canadian government.  See id. at 371 ("T[he] domestic element of petitioner's conduct is what the government is punishing . . . when it prosecutes a scheme to defraud a foreign individual or corporation, or a foreign government acting as a market participant.").  Even though the misrepresentations underlying the scheme to defraud—failing to list on customs forms that the defendants had goods to declare—occurred in Canada, and the relevant property right turned on Canadian law, the defendants' conduct was chargeable in the U.S. because they had used telephones in New York to place orders with a discount liquor store in Maryland, which constituted U.S. wires in furtherance of the scheme.  Id. at 353.

The same analysis applies when the wires are between the United States and another country.  In United States v. Lyons, 740 F.3d 702 (2014), the First Circuit interpreted the phrase

"in interstate and foreign commerce" in the Wire Act, 18 U.S.C. § 1084—which is also in the wire fraud statute, 18 U.S.C. § 1343—to explicitly cover "transmissions between the United States and a foreign country." 740 F.3d at 718. The court in Lyons held that because at least one party to electronic communications was in the United States the wires were chargeable under the statute. *Id.* at 917; see also United States v. Georgiou, 777 F.3d 125, 138 (3rd Cir. 2015) (affirming wire fraud conviction when there were foreign victims and wires between the United States and other countries). In sum, wires sent to or received from a foreign country are wires that can be punished under the wire fraud statute regardless of where the actual misrepresentations were made.

The Dutch Pension Fund transition is just another instance of the defendant defrauding a client as part of his Boston-based scheme. The defendant, in his role as global head of State Street's transition management business, orchestrated the scheme to defraud the bank's clients with hidden commissions in order to boost the revenue of the global Portfolio Solutions Group. As will be demonstrated at trial, the defendant, from his position in Boston, was deeply involved in the transition for each victim-client, including by talking on the phone and sending and receiving emails from Boston—*i.e.*, using wires in interstate or foreign commerce to execute the scheme to defraud. While the defendant did not communicate directly with the employees of the Dutch Pension Fund, he did communicate with Pennings, who was located outside the United States, about the Dutch Pension Fund.

The cases the defendant cites are unavailing. Whiles some cases have required more than a simple allegation that "some domestic conduct occurred," Petroleos Mexicanos v. SK Engineering & Const. Co., 572 F. App'x 60, 61 (2d Cir. 2014), there is more than incidental conduct here. The defendant resided in the United States, conducted the scheme while based in

4

the U.S., and exchanged many wire communications originating from the U.S. with co-conspirators Pennings and Boomgaardt.  See, e.g., United States v. Kazzaz, 592 F. Appx. 553, 554–55 (9th Cir. 2014) (defendant mailed checks to U.S. and used electronic communications to transmit payment to U.S. bank); United States v. Allen, 160 F. Supp. 3d 698, 707 (S.D.N.Y. 2016) (indictment "charged that the wires used to settle payments under interest rate swap contracts, and the wires that Thomson Reuters used to publish LIBOR to subscribers in New York, originated or terminated in New York"); United States v. Coffman, 771 F. Supp. 2d 735, 738–39 (E.D. Ky. 2011) (defendant used U.S. mail and interstate wires to execute fraud scheme); United States v. Hawit, 15-CR-252 (PKC), 2017 WL 663542 at *6 (E.D.N.Y. Feb. 17, 2017) ("To be sure, the alleged fraud schemes extended beyond the United States – and may very well have had their centers of gravity outside the United States—but the schemes' contacts with the United States were substantial, and the U.S. wires were an integral part of the overall schemes.").

Because the Dutch Pension Fund transition involves domestic wire fraud conduct, it is within the scope of the charged conspiracy to commit wire fraud, and thus admissible.  It is irrelevant that the transition is not also chargeable securities fraud conduct, as the conduct need only be in furtherance of one of the objects of the conspiracy in order for it to be admissible.  Cf. United States v. Ciresi, 697 F.3d 19, 28 (1st Cir. 2012) (noting that co-conspirator statement need only be in furtherance of one object of a conspiracy in order for it to be admissible).  Accordingly, the defendants' motion should be denied.

2. Even if entirely extraterritorial, the Dutch Pension Fund transition is still admissible as part of the charged conspiracy.

Even assuming the Dutch Pension Fund transition did not involve any U.S. wires—which it did—evidence of the transition would be independently admissible as overt acts in furtherance of a domestic conspiracy.  "To prove a conspiracy under 18 U.S.C. § 371, the government must

5

furnish sufficient evidence of three essential elements: an agreement, the unlawful objective of the agreement, and an overt act in furtherance of the agreement." United States v. Hurley, 957 F.2d 1, 4 (1st Cir. 1992). When a defendant is charged with a conspiracy, the offense "is the agreement or confederation of conspirators to commit one or more unlawful acts." Braverman v. United States, 317 U.S. 49, 53 (1942). "Any conspiratorial act occurring outside the United States is within United States jurisdiction if an overt act in furtherance of the conspiracy occurs in this country." U.S. v. Endicott, 803 F.2d 506, 514 (9th Cir. 1986). "This jurisdiction also extends to acts which are not themselves illegal." Id. (citing United States v. Brown, 549 F. 2d 954, 956 (4th Cir. 1977)); see also United States v. Ricardo, 619 F.2d 1124, 1129 (5th Cir. 1980) ("[T]he district court had jurisdiction to try the defendants for a conspiracy aimed at violating United States law and intending effects in its territory even in the absence of proof of an overt act committed within this country.").[2]

Morrison does not disqualify the Dutch Pension Fund fraud from being an admissible overt act in furtherance of the conspiracy. Morrison dealt solely with the question whether certain statutes may be presumed to apply extraterritorially. Here, the Court has already *rejected* the defendant's motion to dismiss Count One on grounds of extraterritoriality. As the Court has recognized, Count One represents a domestic application of the conspiracy statute because it alleges that the agreement occurred in the U.S. and an overt act occurred in the U.S. Therefore, there is no need to even reach the question whether Section 371 applies extraterritorially, as

---

[2] More broadly, courts have routinely held that conduct can fall within the scope of a conspiracy without itself being substantively chargeable in a number of contexts. For example, "[a]ctions that cannot be prosecuted because of the statute of limitations can be considered as part of an ongoing conspiracy so long as one overt act in furtherance of the conspiracy occurred during the limitations period." United States v. Wilbur, 674 F.3d 1160, 1176 (9th Cir. 2012). Similarly, there is no reason why extraterritorial acts, including foreign transactions, cannot be included in the scope of, or in the evidence used to prove, a Section 371 conspiracy.

6

Morrison did not alter the elements of a chargeable domestic conspiracy.  Indeed, courts have reached the same conclusion of what the conspiracy statute requires post-Morrison.  See, e.g., United States v. Finch, Cr. No. 10–00333 SOM–KSC, 2010 WL 3938176 (D. Hawaii Sept. 30, 2010) (noting, post-Morrison, that "if an overt act in furtherance of a conspiracy occurs in this country, then the conspiracy falls within the jurisdiction of the United States").  What is more, the defendant cites no case law for the proposition that foreign overt acts in furtherance of a domestic conspiracy are inadmissible.

      As alleged in the superseding indictment, the purpose of the conspiracy was to make money for State Street by overcharging transition management clients through hidden commissions.  From the transition management desk in London, Pennings and Boomgaardt, with the defendant's guidance and direction from Boston, fraudulently induced clients to retain State Street for large transitions in U.S. and foreign securities.  The conspiracy included overt acts in the United States and abroad.  The Dutch Pension Fund transition was merely one of the transitions subject to the co-conspirators' scheme.  Therefore, the conduct constitutes overt acts in furtherance of the domestic conspiracy and is admissible.

## Conclusion

For the foregoing reasons, the government respectfully requests that the defendant's motion be denied.

Respectfully submitted,

| | |
|---|---|
| SANDRA MOSER<br>Acting Chief, Fraud Section<br>Criminal Division | ANDREW E. LELLING<br>UNITED STATES ATTORNEY |
| By: */s/ William E. Johnston*<br>WILLIAM E. JOHNSTON<br>Trial Attorney | By: */s/ Stephen E. Frank*<br>STEPHEN E. FRANK<br>Assistant U.S. Attorney |

## CERTIFICATE OF SERVICE

I certify that on May 18, 2018, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

/s/ *William E. Johnston*
WILLIAM E. JOHNSTON