UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 16-10094-LTS |
| | ) |
| ROSS MCLELLAN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE INTRODUCTION OF
SELF-SERVING HEARSAY AND UNDESIGNATED AUDIO RECORDINGS**

The government respectfully submits this motion *in limine* to preclude the defendant

from (1) introducing the defendant's own self-serving hearsay statements either on cross-

examination or as part of the defendant's case-in-chief, or introducing the hearsay statements of

the defendant's alleged co-conspirators; and (2) playing audio recordings as purported

impeachment in the presence of the jury during the cross-examination of government witnesses,

and/or introducing previously undesignated recordings as extrinsic evidence of purported

inconsistent statements.[1]

**Background**

Discovery in this case involves well over a million documents and emails and thousands

of audio recordings.  In preparation for trial, the government and the defense have exchanged

preliminary exhibit lists and have identified audio recordings that they intend to use as part of

their respective cases-in-chief.  For his part, the defendant has identified nearly 200 emails and

audio recordings that he apparently proposes to introduce, many of which contain his own prior

---

[1] Pursuant to Local Rule 7.1(a)(2), the government has conferred with counsel for the
defendant, who has indicated that he opposes this motion.

statements and those of his alleged co-conspirators.  In addition, the defendant has indicated that

he "reserves the right to utilize and rely on recordings provided in the government's exhibit list

and, further to rely on  tapes which may be used during the cross examination of the

government's witnesses," and which he has not identified.  See Exhibit A, attached hereto.[2]  In

discussions with government counsel, the defense has indicated that it does not intend to provide

advance notice of audio recordings that it may use for impeachment purposes, and that it intends

to prepare only partial transcripts of those recordings, reflecting the portions of the recordings it

intends to use.

## Argument

The government respectfully submits that the Court should preclude the defendant from

introducing his own self-serving prior statements, and thereby effectively testifying at trial

without subjecting himself to cross-examination.  Likewise, the Court should preclude the

defendant from offering the out-of-court statements of his co-conspirators, which are likewise

hearsay as to him.  Finally, the Court should preclude the defendant from impeaching witnesses

by playing audio recordings in the presence of the jury, and/or by introducing previously

undesignated recordings as extrinsic evidence of purported inconsistent statements.

I.      The Defendant Should Not Be Permitted To Introduce His Own,
        Self-Serving Statements or Those of His Agents and Co-Conspirators

    A. Applicable Law

Fed. R. Evid. 801(d)(2)(A) provides that "[a] statement is not hearsay if . . . the statement

is offered against a party and is his own statement, in either his individual or a representative

---

[2] With the assent of the defendant, the government respectfully moves to file its exhibits
to this motion under seal, insofar as they remain subject to the protective order in this case, and
include emails with and other references to third parties.

capacity. . ." The rule "is designed to exclude the introduction of self-serving statements by the party making them." United States v. Palow, 777 F.2d 52, 56 (1st Cir. 1985). Admissibility of admissions by a party-opponent is the result of "the adversary system rather than satisfaction of the conditions of the hearsay rule." Fed. R. Evid. 801(d)(2) advisory committee's note. Pursuant to Rule 801(d)(2)(A) and this rationale, the government is permitted to introduce inculpatory statements made by the defendant, but a defendant is not permitted "to introduce his or her own statements through the testimony of other witnesses." United States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005); United States v. Cardena, 2016 U.S. App. LEXIS 20685, at*57 (7th Cir. Ill. Nov. 18, 2016) ("Rule 801(d)(2)(A) simply admits [] statements made by one party, but offered as evidence by the opposing party." (quoting United States v. Reed, 227 F.3d 763, 770 (7th Cir. 2000)); United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir. 1996), cert. denied, 522 U.S. 934 (1997) (observing "[t]he rules do not . . . provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party"). see also United States v. Diaz, 820 F. Supp. 2d 301, 305 (D.P.R. 2011) ("While the government may seek to admit [] testimony under Rule 801(d)(2), as a party opponent, the defendants cannot.").

B. The Defendant's Prior Statements, and Those of His Agents and Co-Conspirators, Are Inadmissible Hearsay When Offered by Him

The defendant should not be permitted, during cross-examination or as part of his case-in-chief, to elicit or introduce evidence concerning his own, self-serving prior statements. Such evidence is hearsay, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The defendant may not seek to introduce his own statements under the provisions of Rule 801(d)(2), because that rule only permits the introduction of statements by the defendant, or his agents or co-conspirators, where they are offered *against* him. See Palow, 777 F.2d at 56

3

(noting rule "requires that the admission at issue be contrary to a party's position at trial").  If

defendants were permitted to introduce their own, out-of-court statements for their truth, "parties

could effectuate an end-run around the adversarial process by, in effect, testifying without

swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the

jury." McDaniel, 398 F.3d at 545.  Accordingly, such evidence should be barred as inadmissible

hearsay.

Nor has the defendant identified any other hearsay exception that would permit him to

introduce his own statements, or those of his co-conspirators.  To the extent such statements are

attributable to his co-conspirators, for example, they are not admissible under Rule 803(3) to

show the defendant's state of mind, because that rule "expressly relates to "a statement of the

*declarant's* then existing state of mind." United States v. Gomez, 927 F.2d 1530, 1535–36 (11th

Cir. 1991) (finding statement inadmissible under Rule 803(3) where defendant "attempted to

introduce the statement not to show [declarant's] state of mind, but to show his") (alteration and

internal quotation marks omitted).

Likewise, the defendant should not be permitted to circumvent the general prohibition on

introducing his own self-serving out-of-court statements for their truth by labeling them "state of

mind" evidence, or purporting to introduce them simply to prove that they were made. See, e.g.,

United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 3647686, at *4 (E.D.N.Y. July 1,

2016) ("The Court is not persuaded by Defendant's argument that the statements are admissible

simply to show that the statement was made, as an apparently veiled attempt to introduce the

statements for their truth.").  Indeed, Rule 803(3) is narrowly circumscribed. See United States

v. Sabean, 885 F.3d 27, 41 (1st Cir. 2018) ("the exception is not 'a sweeping endorsement of all

state-of-mind evidence'") (further citation omitted).  Among other things, it expressly excludes

"a statement of memory or *belief* to prove the fact remembered or *believed*" (emphasis added),

and therefore may not be used to offer generic "state of mind" evidence in support of a good

faith defense. See, e.g., United States v. Brown, 680 F. App'x 583, 585 (9th Cir.), cert. denied,

138 S. Ct. 276 (2017) ("Brown's 'attempt to introduce[, through FRE 803(3),] statements of her

belief (that she was not violating the law) to prove the fact believed (that she was acting in good-

faith) [was] improper.'") (further citation omitted); United States v. Sayakhom, 186 F.3d 928,

937 (9th Cir.), opinion amended on other grounds, 197 F.3d 959 (1999) (defendant's "attempt to

introduce statements of her belief (that she was not violating the law) to prove the fact believed

(that she was acting in good faith) is improper"); United States v. Emmert, 829 F.2d 805, 810

(9th Cir. 1987) ("[T]he state-of-mind exception does not permit the witness to relate any of the

defendant's statements as to why he held the particular state of mind, or what he might have

believed that would have induced the state of mind."); United States v. Cohen, 631 F.2d 1223,

1225 (5th Cir. 1980) (same, and noting:  "If the reservation in the text of the rule is to have any

effect, it must be understood to narrowly limit those admissible statements to declarations of

condition—"I'm scared"—and not belief—"I'm scared because Galkin threatened me.").

　　　While there are numerous examples of such inadmissible statements among the

defendant's preliminary exhibits, the government summarizes here a few representative

examples:

- The defendant proposes to introduce a pair of calls with co-conspirator Rick Boomgaardt, after the fraud on the British Government Pension Fund was discovered, in which he purports to report on the reaction of other bank executives, including the bank's senior lawyers.  In one call, the defendant contends that "David took a look at the contract and said that's my money, I keep it," and that "[f]rom a legal point of view, I'm kind of shocked but Ed was right." (SS1_01342027).  In the other, he contends that the legal department was "divided" on what to do.  (SS1_01342055).  The defendant's self-exculpatory statements are not admissible under any theory.  Save for the isolated statement that he was "shocked," they do not reflect his state of mind at the time of the call,

much less his state of mind at the time he is alleged to have engaged in fraud.  See United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) ("A declaration of then-existing state of mind under FRE 803(3), however, must convey statements that 'face forward, rather than backward.'").  The statement that "[f]rom a legal point of view . . . Ed was right," is at most a statement of belief that is not admissible either for that purpose or for its truth.  The statements about what "David" purportedly said, and what other members of the legal department purportedly thought or said, are inadmissible double-hearsay.

- The defendant proposes to introduce a call between himself and another State Street executive concerning the compensation of his co-conspirator, Ed Pennings.  (SS1_01325500).  In addition to being irrelevant, the call is pure hearsay, inadmissible for any purpose.

- The defendant proposes to introduce a call between himself and an unindicted co-conspirator concerning foreign exchange trading and the profits the foreign exchange desk will earn from trading a transition.  (SS1_01332328).  The call is irrelevant hearsay.  It does not include any statements of the defendant's condition, and is inadmissible pursuant to the state of mind exception.

- The defendant proposes to introduce numerous calls between his co-conspirators, Rick Boomgaardt and Ed Pennings, or between those co-conspirators and third parties.  In one such call, for example, Pennings and an unindicted co-conspirator discuss whether English or Irish law applies to a contract with the Irish Government Pension Fund, one of the victims in this case.  (SS1_01325856).  Inanother, Pennings and an unindicted co-conspirator discuss competing bids by other banks, and whether executives of the Middle Eastern Sovereign Wealth Fund understand what they are being charged.   (SS1_0 1325643).  In another, Pennings and Boomgaardt discuss what they need to bid in order to win a transition from the Middle Eastern Sovereign Wealth Fund.  (SS1_01326122).  In another, Boomgaardt and a transition management consultant discuss how much State Street would need to bid to win a transition assignment from a client unrelated to this case.  (SS1_01327455).  In another, Boomgaardt and another transition management consultant discuss the terms of State Street's contract with another transition management client unrelated to this case.  (SS1_01332509).  In another, a third party advises Boomgaardt that McLellan "seems to understand that the rest of the world is different from the U.S." (SS1_01332924).  These statements, which do not involve the defendant and were presumably unknown to him until they were produced in discovery, are pure hearsay, inadmissible for any conceivably legitimate purpose.

- The defendant proposes to introduce an email exchange between himself and another senior State Street executive in which the defendant asserts that he "[t]raded  $35.2 billion FX with Snyder this year," and the other executive responds:  "[T]hat's easily 15-20 million in revs."  See Exhibit B.  The defendant likewise seeks to introduce an email he received purporting to summarize

"greenbook" revenue sharing reports for foreign exchange.  See Exhibit C.  And he seeks to introduce an email exchange with a trader in London discussing how much revenue the foreign exchange desk generates.  See, e.g., Exhibit D.  In addition to being irrelevant, these emails are hearsay, which the defendant plainly seeks to offer to prove the truth of the matters asserted:  that he in fact conducted billions of dollars in foreign exchange trading with another State Street unit, that the foreign exchange unit generated millions of dollars in revenue by applying spreads to client trades, and that McLellan's unit received a cut of foreign exchange revenue.  The defendant's hearsay statements do not reflect statements of his condition, and the fact that the statements were made has no bearing on this case and should not be used to circumvent the hearsay rules.

- The defendant seeks to introduce several lengthy emails he drafted to other State Street employees summarize his unit's performance in 2010, see Exhibit E; and 2011, see Exhibit F; as well as another State Street executive's responses praising his performance, see Exhibit G ("You are a great leader – this is a perfect way to end the year,"); Exhibit H ("YEAH!"); , Exhibit I ("Woo-hoo! Congrats.").  Again, the defendant's out-of-court statements concerning revenue and performance are hearsay.  They do not reflect statements of his condition, and are thus not admissible under the state-of-mind exception.  Nor is the fact that another executive called McLellan "a great leader," or praised his performance, relevant or admissible for any legitimate purpose.

- The defendant seeks to introduce a series of emails between himself and members of State Street's legal and compliance departments concerning the use of State Street's fixed income "rates" desk to trade certain bonds.  See Exhibit J; Exhibit K; Exhibit L; Exhibit M; Exhibit N; Exhibit O.  The defendant's hearsay statements do not reflect statements of his condition.  Nor should the defendant be permitted to introduce his out-of-court exchanges with legal and compliance officers for the fact that the statements were made.  Doing so would be little more than a thinly veiled attempt to argue that his actions in applying hidden spreads while misleading clients about what they were being charged were, in fact, sanctioned by the legal and compliance departments, or that he believed them in good faith to be so, while avoiding the adversary process.  The defendant should not be permitted to make a quasi advice-of-counsel argument through hearsay statements without subjecting himself to cross-examination about, for example, what he told the legal department about what he was doing.

- The defendant seeks to introduce multiple email chains concerning unrelated transitions that seem to suggest that he sought to disclose commissions in those cases.  See, e.g., Exhibit P; Exhibit Q; Exhibit R.  These emails, concerning other transitions not at issue in this case, are irrelevant.  They do not reflect statements of the defendant's condition, and are thus not admissible pursuant to the state-of-mind exception.  The fact that the defendant made statements concerning the disclosure of other commissions in other transitions does not render these statements relevant or admissible.

- The defendant seeks to introduce numerous email exchanges with his co-conspirators, and with other State Street executives, from late August and September 2011—following the discovery of his fraud against the British Government Pension Fund—in which he points them to various sections of State Street's contract with that entity.  See, e.g., Exhibit S; Exhibit T.  These statements are pure hearsay.  They do not reflect the defendant's state of mind at the time they were sent, much less his state of mind when actually committing the charged fraud.  Nor is the fact that the defendant pointed to the contract after the fraud was exposed admissible for any legitimate evidentiary purpose.  Rather, it is little more than an attempt to use his own statements to exculpate himself by insinuating that the contract permitted his actions, or that he had a good-faith belief it did so, without subjecting himself to cross-examination.

II.     The Defendant Should Be Precluded From Playing
        Previously Undesignated Audio Before the Jury

The defendant should also be precluded from playing audio recordings as purported impeachment in the presence of the jury during the cross-examination of government witnesses, or from introducing previously undesignated recordings as extrinsic evidence of purported inconsistent statements.

A.  Applicable Law

"Under Fed. R. Evid. 801(d)(1)(A), a declarant's prior inconsistent statements are hearsay and inadmissible as substantive evidence unless they were made 'under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or at a deposition.'"  United States v. Navedo-Concepcion, 73 F. App'x 451, 453 (1st Cir. 2003) (citing Fed. R. Evid. 801(d)(1)(A)). Statements that do not meet the requirements of the rule are "inadmissible for the truth of the matter asserted," but may nonetheless be admitted, in certain circumstances, as extrinsic impeachment evidence pursuant to Federal Rule of Evidence 613(b).  That Rule "applies when two statements, one made at trial and one made previously, are irreconcilably at odds. In such an event, the cross-examiner is permitted to show the discrepancy by extrinsic evidence if necessary—not to demonstrate which of the two is true but, rather, to show that the two do not

8

jibe (thus calling the declarant's credibility into question)." <u>United States v. Winchenbach</u>, 197 F.3d 548, 558 (1st Cir. 1999).  Rule 613(b), however, provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same, and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."  Accordingly, pursuant to the plain language of the Rule, extrinsic evidence is admissible, in the Court's discretion, only if: (1) the extrinsic evidence constitutes a prior "inconsistent" statement; (2) the witness was "afforded an opportunity to explain or deny the same;" and (3) the opposite party—in this instance, the government—was "afforded an opportunity to interrogate the witness thereon."

B. The Defendant Should Be Required To Provide Advance Notice of Audio Recordings Used for Impeachment and Otherwise To Comply with Rule 613

The defendant has indicated his intention to cross-examine witnesses using recordings he has not previously identified to the government.  This suggestion raises two inter-related concerns:  <u>first</u>, the defendant should not be permitted to impeach witnesses by playing audio recordings of purported prior inconsistent statements in the presence of the jury without complying with the requirements of Rule 613; and <u>second</u>, the defendant should not be permitted to introduce such recordings as extrinsic evidence without, *inter alia*, providing sufficient notice to the government of its intention to do so, such that the requirements of Rule 613 can, in fact, be met.

<u>First</u>, the defendant should be precluded from playing audio of purported prior inconsistent statements in the presence of the jury—even if he does not seek to formally introduce such statements into evidence—until he has satisfied the requirements of Rule 613. Among other things, this will require that the Court find that the prior statements were

inconsistent, and that the introduction of extrinsic evidence is warranted.  See, e.g., United States

v. Hudson, 970 F.2d 948, 956 (1st Cir. 1992) ("a trial court is free to use its informed discretion

to exclude extrinsic evidence of prior inconsistent statements on grounds of unwarranted

prejudice, confusion, waste of time, or the like").  Playing the audio before the jury in the

absence of such a finding would effectively nullify Rule 613 insofar as, once published to the

jury, the evidence will, for all intents and purposes, have been admitted.  The bell cannot be

unrung.  In the meantime, the defendant can seek to impeach the witness by playing any audio

for the witness and government counsel over headphones, or outside the presence of the jury, and

by providing a full transcript of the recording.

Second, because none of the audio recordings in this case were made under oath subject

to the penalty of perjury, they are inadmissible as prior inconsistent statements under Rule

801(d)(1)(A), and the only basis to admit them on cross-examination is as extrinsic impeachment

evidence, in compliance with Rule 613.  That rule requires, on its face, that the witness be

afforded an opportunity to explain or deny the statements, and that the government be afforded

an opportunity to interrogate the witness thereon.

In the context of this case, in which State Street has produced thousands of audio

recordings—only a fraction of which either side has reviewed, much less transcribed—and

where those recordings are some seven or eight years old, a witness cannot be expected

meaningfully to explain or deny statements unless he is, at a minimum, provided an adequate

opportunity to review them in context.[3]  Likewise, the government cannot be expected

---

[3] The voluminous discovery in this case underscores the importance of both sides complying with the Court's directives concerning the identification of likely exhibits, so as to avoid the specter of a trial by ambush.  For that reason, the government has, at the defendant's request, provided early disclosure of its exhibits, its likely witnesses, and the prior statements of

meaningfully to interrogate a witness on such statements without sufficient notice of what the

statements are.  At a minimum, then, this requires that the defense prepare full transcripts of the

statements—not the partial transcripts it has promised.  Even with such transcripts, however, the

government and the witness will need an opportunity to listen to the statements in their

entirety—not only to ensure that the transcripts are accurate, but also because the transcripts

themselves are, of course, not evidence.

The defense's proposal to spring excerpts of recordings, with partial transcripts, on the

government and its witnesses during trial does not comply with either the letter or the spirit of

Rule 613.  That is particularly the case given the importance of cross-examination to a defense

case—and the blurry distinction between a defendant's "case-in-chief" and materials the defense

knows ahead of time that it will use in cross-examination.[4]  Indeed, the defense has undoubtedly

---

its witnesses.  The defense has responded by producing a list of more than two dozen witnesses,
which the government respectfully submits is overbroad and unrealistic, and does not serve the
purposes for which the Court requires that witness lists be disclosed.  Likewise, the defense has
asserted that it is not in possession of *any* prior witness statements discoverable pursuant to Fed.
R. Crim. P. 26.2—save the testimony of one proposed expert in one prior proceeding and
statements the government has produced to the defense.

[4] Cf. United States v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014) (noting that
"because of the immense volume of data produced by the Government—measured in terabytes—
the requirements of Rule 16 can only be satisfied by identifying the specific documents which
the Defendant intends to use at trial"); United States v. Hsia, No. CRIM. 98-0057 (PLF), 2000
WL 195067, at *1 (D.D.C. Jan. 21, 2000) ("Nor does the defendant satisfy her obligations under
the Rule merely by providing the government with the thousands of pages of discovery she
received from the government and stating that the documents upon which she intends to rely are
found somewhere therein. Although the Rule does not specifically say that the parties must
identify the specific documents upon which they may rely at trial, its purpose is to avoid surprise
and gamesmanship; 'it definitely contemplates reciprocity in the production of evidence that both
parties intend to introduce in their case-in-chief at trial.'"); see also Hsia, 2000 WL 195067, at *2
("The Court will evaluate the purpose of any cross-examination in the context of the trial.  If
defendant seeks to introduce evidence through cross-examination that the Court finds is part of
her case-in-chief and defendant has not provided the evidence to the government in discovery,
the Court will remedy the deficiency in providing discovery by using the sanctions identified in
Rule 16(d)(2) of the Federal Rules of Criminal Procedure, including the possible exclusion of

already identified the limited set of recordings, out of the many thousands produced, that it is

likely to use for that purpose.  Failing to identify those recordings to the government in advance

will necessarily disrupt the orderly flow of the proceedings, necessitating repeated breaks for the

witness and the government to listen to the audio in order to be afforded a meaningful

opportunity for the witness to explain or deny the statements, and for the government to

interrogate the witness about them.  For that reason alone, the defense should be required to

provide meaningful notice of the recordings it intends to use on cross-examination, together with

full transcripts.

### Conclusion

For the foregoing reasons, the government respectfully requests that the defendant be

precluded from (1) introducing his own self-serving hearsay statements either on cross-

examination or as part of his case-in-chief, or introducing hearsay statements of his alleged co-

conspirators; and (2) playing audio recordings in the presence of the jury during the cross-

examination of government witnesses, and/or introducing previously undesignated recordings as

extrinsic evidence of purported inconsistent statements.

Respectfully submitted,

| | |
|---|---|
| SANDRA MOSER | ANDREW E. LELLING |
| Acting Chief, Fraud Section | United States Attorney |
| Criminal Division | |
| | |
| By:   _/s/ William E. Johnston_ | By: _/s/ Stephen E. Frank_ |
| WILLIAM E. JOHNSTON | STEPHEN E. FRANK |
| Trial Attorney | Assistant U.S. Attorney |

---

evidence not disclosed. <u>See</u> Rule 16(d)(2), Fed. R. Crim. P.  Defendant therefore proceeds at her
risk by failing to disclose any documents she intends to use at trial.").

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 21, 2018, this document was filed through the ECF system, which

will provide electronic notice to counsel as identified on the Notice of Electronic Filing.


<u>/s/ *Stephen E. Frank*   </u>
STEPHEN E. FRANK