UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 16-10094-LTS |
| ROSS MCLELLAN, | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
OF STATEMENTS OR REACTIONS BY STATE STREET EXECUTIVES**

The government files this motion *in limine* to exclude evidence of reactions or comments by State Street executives after the scheme to charge hidden commissions was uncovered. Such after-the-fact comments by State Street executives who were uninvolved in the scheme and had limited access to the relevant facts are irrelevant to the defendant's guilt or innocence and are substantially more prejudicial than probative. Allowing such evidence will distract the jury from its evaluation of the charged co-conspirators' conduct, and runs the risk of turning the trial into an unnecessary referendum on State Street's handling of an unfolding scandal. If the Court allows such evidence, the government would seek to introduce the deferred prosecution agreement entered into by State Street to rebut the suggestion that State Street somehow sanctioned the conduct at issue.

**Background**

The Superseding Indictment alleges that defendant Ross McLellan's scheme to overcharge its transition management clients through hidden commissions gradually started to unravel beginning in June 2011. At that time, one of State Street's clients, the British Government Pension Fund, discovered and questioned a mark-up that had been applied to U.S.

bonds as part of its April 2011 transition.  Rather than acknowledge the truth—that the commissions had been intentionally applied—the defendant and his co-conspirators decided to lie to the client and claim that the commissions had been "inadvertently applied."  They further suggested that the U.S. commissions were the extent of the overcharges, despite the fact that they had secretly applied even higher commissions to European bonds.  After receiving a refund for the overcharges on the U.S. trades, the British Government Pension Fund requested that a third-party firm be retained to audit the transition.  That firm, Inalytics, requested data that would have revealed the commissions on European trades.  As part of a desperate effort to assuage Inalytics' concerns, McLellan in late August ordered his co-conspirator, Edward Pennings, to draft a misleading letter to Inalytics on behalf of a State Street compliance officer attesting to the accuracy of the refund.  Ultimately, one of McLellan's co-conspirators, Richard Boomgaardt, declined to send the misleading letter and informed a senior executive at State Street's office in London about the overcharges at the end of August 2011.  Executives at State Street in Boston and London thereafter initiated an internal investigation and within months, the defendant and Pennings, and later Boomgaardt, were suspended and eventually fired.

During this time period, certain State Street executives made supportive comments to McLellan.  After McLellan's termination, one of those executives also supported McLellan's effort to have State Street retain McLellan as a consultant, though this effort was ultimately squelched.

The defendant has identified as potential exhibits multiple documents and communications from September 2011 and later, following the initial discovery of his fraud.  For example, the defendant has marked a draft agreement from early 2012—months after his termination—between State Street and the defendant's consulting firm, Harbor Analytics.  The

defendant has also marked an email dated September 27, 2011, in which an executive at State Street reports to McLellan that a third executive agreed with him that "this"—presumably the investigation into the defendant's conduct, though the email does not actually say that—was "overblown." See Ex. A, attached hereto. Other emails from that same time period contain the defendant's statements, see Ex. B, or summaries of findings by individuals gathering information for the internal investigation who are unlikely to testify, see Ex. C, Ex. D.

## Argument

The defendant should be precluded from introducing into evidence any reactions or comments by State Street executives regarding the defendant's conduct after it was uncovered at State Street on or about August 26, 2011. *Ex post* reactions—consisting of hearsay statements from individuals unlikely to testify—by uninvolved executives at State Street bank are not relevant to the defendant's guilt or innocence. The internal investigation at State Street was a piecemeal process that only gradually uncovered the full scope of the defendant and co-conspirators' conduct. Comments by defendant's colleagues who had incomplete access to information are likely to be inaccurate and misleading. Even if marginally relevant, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice and jury confusion.

Courts have routinely refused to admit evidence of views developed after the fact by factfinders or actions taken by employers, finding it has little probative value and creates a high risk of jury confusion. See, e.g., United States v. Aleynikov, 785 F. Supp. 2d 46, 75 (S.D.N.Y. 2011), reversed on other grounds, 676 F.3d 71 (2d Cir. 2012) ("whether or not [former employer] sued [the defendant] after the defendant took the source code had no bearing on the defendant's intent the time he took the code"); United States v. Noske, 117 F.3d 1053, 1058 (8th

Cir. 1997) (affirming district court's exclusion of evidence of IRS agent's earlier recommendation to not charge defendant because agent "did not have the benefit of most of the evidence against [the defendant], which was gathered later" and "[e]ven if relevant, the minimum probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury"); United States v. Klein, 16-cr-442 (JMA), 2017 WL 1316999, at *9 (E.D.N.Y. Feb. 10, 2017) (excluding evidence of SEC charging decision, which differed from DOJ's, because it would only "divert[] the jury's attention away from the question whether the prosecution has satisfied its burden of proof"). But see United States v. Gluk, 831 F.3d 608, 616 (5th Cir. 2016) (holding that an SEC memorandum of investigation was admissible and relevant).

Evidence that supervisors approved of the defendant's conduct may be marginally relevant to defendant's intent, but only if it can be shown that this approval or acquiescence was contemporaneous with his conduct.  Cf. United States v. Litvak, 808 F.3d 160, 190 (2d Cir. 2015) (noting defendant's claim that he "held an honest belief that his conduct was not improper or unlawful, a belief the jury may have found more plausible in light of his supervisors' approval of his colleagues' substantially similar behavior").  If the defendant nevertheless is permitted to offer these *ex post* comments and actions by State Street, the government respectfully submits that it should be permitted to introduce into evidence the defendant's suspension by State Street and State Street's deferred prosecution agreement with the government, to rebut the incorrect suggestion that State Street condoned the defendant's conduct.

**Conclusion**

For the foregoing reasons, the government respectfully requests that the defendant be precluded from eliciting evidence regarding *ex post* comments by State Street executives and employees.

Respectfully submitted,

| | |
|---|---|
| SANDRA MOSER | ANDREW E. LELLING |
| Acting Chief, Fraud Section | United States Attorney |
| Criminal Division | |
| | |
| By: */s/ William E. Johnston* | By: */s/ Stephen E. Frank* |
| WILLIAM E. JOHNSTON | STEPHEN E. FRANK |
| Trial Attorney | Assistant U.S. Attorney |

**CERTIFICATE OF SERVICE**

I certify that on May 21, 2018, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

/s/ *William E. Johnston*
WILLIAM E. JOHNSTON