UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                          )
                                                          )
UNITED STATES OF AMERICA                )
                                                          )
        v.                                                )        No. 16-10094-LTS
                                                          )
ROSS MCLELLAN,                              )
        Defendant                                     )
                                                          )
_____ )


**DEFENDANT ROSS MCLELLAN'S REQUESTS
FOR INSTRUCTIONS TO THE JURY**

Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (telephone)
(617) 338-9538 (fax)
owlmgw@att.net


Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

**Request No. 1**

**Elements of the Offense: Securities Fraud**

In order to prove Mr. McLellan guilty of the securities fraud offenses charged in Counts Two and Three, the government must prove beyond a reasonable doubt the following four elements:

(1)     In connection with the purchase or sale of the security identified in that count, Mr. McLellan made an untrue statement of a fact;

(2)     The statement or conduct related to a fact that would be material to a reasonable investor;

(3)     Mr. McLellan acted willfully, knowingly, and with the intent to defraud; and

(4)     Mr. McLellan knowingly used, or caused to be used, wire communications in interstate or foreign commerce in furtherance of the fraudulent conduct.

You will need to determine whether the government has proven all four elements each of Counts Two and Three, separately. I will now explain the elements in greater detail.

---

**Authority**: Adapted from Jury Instructions, *United States v. Litvak*, No. 13-00019 (D.Conn.), Doc. 523 at 43.

**Request No. 2**

**Securities Fraud—False Statements[1]**

The first element of the crime of securities fraud charged in Counts Two and Three is that, in connection with the purchase or sale of the securities at issue in the count of the Indictment you are considering, Mr. McLellan made an untrue statement of fact.   A statement, representation, claim, or document is false if it is untrue when it was made and was then known to be untrue by the person making it or causing it to be made. A representation or statement is fraudulent only if it was falsely made with the intent to deceive.

This case is one predicated upon allegations of affirmative false statements. You cannot convict Mr. McLellan based on omissions to state something, even if the omitted statement was necessary to make what was said not misleading. You must find that Mr. McLellan, as part of the alleged fraudulent scheme, made affirmative false statements to transition management clients.

If you find beyond a reasonable doubt that Mr. McLellan made an untrue statement of a fact, then you must be unanimous as to at least one such statement that you find to have been false.

---

[1] The government has explicitly disavowed reliance on an omissions theory. *See* Government's Response in Opposition to Defendant's Motion to Sever Count 6 (Doc. 298) at 6 ("Despite McLellan's best efforts to turn this into an omissions case, this is a case about *affirmative* misrepresentations that McLellan personally made or directed" (emphasis in original)). These requested instructions have not, therefore, included instructions regarding omissions or any other theory of securities fraud or wire fraud.

**Request No. 3**

**In Connection With the Purchase or Sale of Securities**

False statements do not violate the securities fraud statutes under which Mr. McLellan is charged unless they were made in connection with the purchase or sale of a security. That means that the statement must have coincided with a securities transaction. Statements made after the investor's decision to buy or sell a security are not statements made in connection with the purchase or sale of a security. A misrepresentation is not made in connection with the purchase or sale of a security unless it is material to a decision by one or more individuals to buy or to sell a covered security. Deception of the purchaser or seller alone does not suffice; the deceptive conduct must be in connection with the purchase or sale of a security. False statements made to induce a transition management client to choose State Street as its transition manager are not statements made in connection with the purchase or sale of a security. Similarly, decisions to charge markups or commissions made after the securities transaction has been completed are not made in connection with the purchase or sale of a security, nor are statements provided to the clients after the completion of the securities transaction.

Unless you find beyond a reasonable doubt that any false statements made by McLellan were made before the transition management client decided to purchase or sell a security, you must find Mr McLellan not guilty of securities fraud.

---

**Authority**: Adapted from Jury Instructions, *United States v. Litvak*, No. 13-00019 (D.Conn.), Doc. 523 at 44-46. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006)("The requisite showing . . . is "deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller"); *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1066 (2014)("[a] fraudulent misrepresentation or omission is not made 'in connection with'

. . . a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security'"); *Bosio v. Norbay Sec., Inc.*, 599 F.Supp. 1563, 1566 (E.D.N.Y. 1985)(misstatements must have occurred "*prior to or contemporaneous with* the sale of securities" (emphasis added by court)); *Arst v. Stifel, Nicolaus & Co.*, 86 F.3d 973, 977 (10th Cir.1996)(deceptive conduct that occurred after investor's decision to sell shares was not "in connection with" sale of security); *MathStar, Inc. v. Tiberius Capital II, LLC*, 712 F.Supp.2d 870, 881 (D.Minn. 2010)("As a matter of law, conduct actionable under Rule 10b-5 must occur before investors purchase the securities"); *Seattle First Nat. Bank v. Carlstedt*, 678 F.Supp. 1543, 1547 (W.D.Okla. 1987)("Activities that occur after a plaintiff's purchase of a security cannot form the basis for liability under Rule 10b-5"); *Troyer v. Karcagi*, 476 F. Supp. 1142, 1153 (S.D.N.Y. 1979)("because the misrepresentation was allegedly made after the purchases and sales listed on the computer printout, the alleged misrepresentation could not be in connection with these purchases and sales").

**Request No. 4**

**Securities Fraud—Materiality**

If you find that the government has proven beyond a reasonable doubt that a false statement was made in connection with the purchase or sale of a security, you must next determine whether the fact misstated was material under the circumstances. In order for you to find that a misrepresentation was material, the government must prove beyond a reasonable doubt that there was a substantial likelihood that the misstated fact would have been viewed by a reasonable investor as having significantly altered the total mix of information available with respect to a decision whether to purchase or sell a security. Note that this is an objective standard: the question is whether the statement, in the view of the reasonable investor in the position of the transition management client, would have significantly altered the total mix of information available with respect to a decision whether to purchase or sell a security, not whether the transition management client subjectively believed that it did.

To "significantly alter the total mix of information available" means to meaningfully affect a reasonable investor's consideration about whether to buy or sell a security, and at what price. In order to be material, the false statement must be of such importance that it could reasonably be expected to cause or induce a reasonable investor to act or not act with respect to the securities transaction at issue.

A statement is not shown to be material merely because it may be important to the reasonable investor. Importance and materiality are not the same thing. A statement is material only if it is capable of significantly altering the total mix of information available to the reasonable investor that the investor would consider in deciding whether to buy or sell a security.

5

**Authority:** Adapted from Jury Instructions, *United States v. Litvak*, No. 13-00019 (D.Conn.), Doc. 523 at 47-49. *See In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744, 750 (1st Cir. 2016)("a fact is material where there is 'a substantial likelihood that' its disclosure 'would have been viewed by the reasonable investor as having significantly altered the total mix of information made available'"); *United States v. Vilar*, 729 F.3d 62, 92 (2d Cir. 2013)(misrepresentation is material only "when there is a substantial likelihood that a reasonable investor would find [the misrepresentation] important in making an investment decision"); *City of Pontiac Policemen's and Firemen's Retirement Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014)("while importance is undoubtedly a necessary element of materiality, importance and materiality are not synonymous" (emphasis omitted)).

**Request No. 5**

**False Statements that Do Not Affect Decision to Buy or Sell a Security
Are Not Material**

Misstatements that do not affect the decision whether to buy or sell a particular security are not material within the meaning of the securities fraud statutes. Even if a misstatement was material to another decision by the transition management or potential transition management client, such as the decision regarding whether to select State Street's transition management services, it is not material as that term is used in the context of the securities fraud statutes under which Mr. McLellan is charged. Statements that affected only the relationship between State Street and the transition management client are not material under the securities laws. If you find that false statements were made but that they affected only the decision to use State Street as the transition manager or other aspects of the contract between State Street and the client but did not affect the decision of the transition management client to buy or sell a particular security, you must find Mr. McLellan not guilty.

---

**Authority:** *See Trustees of Hotel Employees & Rest. Employees Int'l Union Pension Fund v. Amivest Corp.*, 733 F.Supp. 1180, 1186 (N.D.Ill. 1990)(misstatements that "do[] not affect the decision to make the investment in which the loss complained of occurred [are] not actionable under Rule 10b-5"); *SEC v. Pirate Investor LLC,* 580 F.3d 233, 240 (4th Cir. 2009) ("[A] fact stated or omitted is material if there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security"); *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000)("Material information is information that would be important to a reasonable investor in making his or her investment decision"); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)("A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock"); *SEC v. Goble*, 682 F.3d 934, 44 (11th Cir. 2012)("a misrepresentation that would only influence an individual's choice of broker-dealers cannot form the basis for §10b securities fraud liability"); *Taylor v. Westor Capital Group*, 943 F.Supp.2d 397, 403 (S.D.N.Y. 2013)(complaint failed to state claim under Rule 10b-5 where the alleged fraud "pertains not to the sale of the securities or the value of the securities

themselves, but to the terms of the relationship between the broker and the customer"); *Trustees of Hotel Employees & Rest. Employees Int'l Union Pension Fund v. Amivest Corp.*, 733 F.Supp. 1180, 1185-86 (N.D.Ill. 1990)(complaint dismissed where fraud alleged related only to Trustees' relationship with defendant and "was not related to a decision whether or not to invest in a particular security;" trustees alleged "only that they should have received the commissions that were retained by Amivest" but failed to allege "any facts that would indicate that they would not have purchased the mutual funds absent the alleged fraud"); *Bischoff v. G.K. Scott & Co.*, 687 F. Supp. 746, 749 (E.D.N.Y. 1986)("In general, misrepresentations made by brokers inducing the opening of an account are not actionable under the federal securities laws. Because such broker misrepresentations are connected to the broker's efforts to attract the investor's business, and are not tied to a particular trade, they do not meet the Rule 10b-5 requirement that an actionable misrepresentation be in connection with the purchase or sale of securities"); *Williamsport Firemen Pension Boards I & II v. E. F. Hutton & Co.*, 567 F.Supp. 140, 144 (M.D. Pa. 1983)(dismissing count of complaint because allegations of misrepresentations with respect to commissions to be earned by defendants "have no causal connection to the purchase by the Pension Boards of any particular securities. The alleged fraud involves only the general relationship between the Defendants and the Pension Boards").

**Request No. 6**

**Sophistication of Investor**

For the purposes of this case, a "reasonable investor" is a reasonable institutional investor seeking to transition assets or engaged in transitioning assets. In determining whether the stated fact is material, you must consider the sophistication of the transition management clients and the sorts of information available to the transition management clients. You should consider all the evidence about what such a reasonable sophisticated investor would consider important when making an investment decision, and approach the question of materiality objectively. You must assess whether the false statement was material to the transition management client as of the time of the decision to buy or sell a security, and not based upon a hindsight view.

---

**Authority:** *See United States v. Litvak*, 808 F.3d 160. 183-85 (2d Cir. 2015)(sophistication of investors and specifics of market at issue relevant to materiality).

9

**Request No. 7**

**Markups/Markdowns**

During the presentation of evidence, you have heard about two general types of securities: equity securities and fixed-income securities. You have also heard about "markups," that is, the difference between the price charged to a customer for a security by a broker-dealer acting as a principal, including riskless principal transactions, and that security's "prevailing market price," and "markdowns," that is, the difference between the price paid to a customer for a security by a broker-dealer, again acting as principal or riskless principal, and the "prevailing market price" of the security. The securities laws and regulations of the United States do not require the disclosure of the amount of a markup or markdown charged for a fixed-income security in a riskless principal or principal transaction unless the markup/markdown was excessive, which is generally regarded as a markup/markdown that exceeds 5% or 500 basis points. Such disclosure is also not required under the securities laws of the United Kingdom.

---

**Authority:** Allen Ferrell, The Law and Finance of Broker-Dealer Mark-Ups 4, 9 (2011), available at http://www.finra.org/sites/default/files/NoticeAttachment/p123492.pdf (last visited December 1, 2016); *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 189 (2d Cir. 1998)("The markup on a security is the difference between the price charged to the customer and the prevailing market price"); *Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.*, 132 F.3d 1017, 1033 (4th Cir. 1997). (while "securities brokers are required to disclose markups in equity securities, . . . there is no requirement for a broker to disclose the amount of a markup charged for a debt security in a riskless transaction"); *Press v. Chemical Inv. Servs Corp.* 166 F.3d 529, 534 (2d Cir. 1999)(Markups/markdowns on debt securities, *i.e.*, bonds, must be disclosed only when there is a fiduciary relationship or when the markup/markdown is excessive); *see also Ettinger v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 835 F.2d 1031, 1035 (3d Cir. 1987)(noting that in 1982, the SEC withdrew a proposed amendment to Rule 10b-5 that would have required the disclosure of markups in riskless principal transactions in non-municipal debt securities).

## Request No. 8

### Securities Fraud—Knowingly/Wilfully/Intent to Defraud

The third element of the crime of securities fraud charged in Counts Two and Three is that Mr. McLellan participated in the scheme to defraud knowingly, willfully, and with the intent to defraud.

"Knowingly" here means to act voluntarily and deliberately, rather than mistakenly or inadvertently, with an understanding of the nature of his action, and not because of ignorance, mistake, accident, or carelessness. Whether Mr. McLellan acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.

"Willfully" here means to act with the intent to do something that the law forbids, that is to say, with the bad purpose either to disobey or to disregard the law. The government must prove that Mr. McLellan knew that he was acting unlawfully and in violation of United States securities laws. He cannot be convicted based on acts or statements that were due to negligence, inadvertence, or mistake.

To act with "intent to defraud" here means to act willfully and with the specific intent to deceive. An act is intentional only if it is deliberate and purposeful. That is, to be intentional, Mr. McLellan's acts must have been the product of his conscious objective, rather than the product of mistake or accident. The misrepresentation or omission must have had the purpose of inducing the transition management client to undertake some action.

The question of whether Mr. McLellan acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other fact question. This question involves Mr. McLellan's state of mind. Direct proof of knowledge and fraudulent intent is almost never available.

11

It would be a rare case where it could be shown that a person wrote or stated that, as of a given time in the past, he committed an act with fraudulent intent. I instruct you that such direct proof is not required.

Knowledge and intent may be proven by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom. Circumstantial evidence, if believed, is of no less value than direct evidence. In either case, whether the evidence is circumstantial or direct, the government must prove the essential elements of the crime charged beyond a reasonable doubt.

If you find that, as to a count of securities fraud, the government has not proved beyond a reasonable doubt that Mr. McLellan was a knowing participant in the scheme or that he had the intent to defraud, you must return a verdict of not guilty on that count.

---

**Authority:** Adapted from Jury Instructions, *United States v. Litvak*, No. 13-00019 (D.Conn.), Doc. 523 at 50-52.

**Request No. 9**

**Good Faith**

Because an essential element of the crimes charged in Counts Two and Three is intent to defraud, if you find that Mr. McLellan acted in good faith, or held an honest belief that his actions (as charged in a given count) were proper and not in furtherance of any unlawful activity, you cannot convict him of that count. Mr. McLellan, however, has no burden to prove a defense of good faith. The burden is on the government to prove beyond a reasonable doubt Mr. McLellan's fraudulent intent.

False representations or statements do not amount to securities fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. If you find that Mr. McLellan had an honest belief in the truth of a representation, regardless of how inaccurate the statement may have turned out to be, or an honest belief that his actions were lawful and proper, then the government has not proven fraudulent intent and you must find Mr. McLellan not guilty.

---

**Authority:** Adapted from Jury Instructions, *United States v. Litvak*, No. 13-00019 (D.Conn.), Doc. 523 at 50-52.

13

## Request No. 10 [2]

## No Extraterritorial Application of United States Securities Law

I have defined for you the elements of the securities fraud offenses with which Mr. McLellan is charged, but there is an important limitation on the reach of the securities fraud prohibitions of the United States about which I will now instruct you. The focus of the statutes that Mr. McLellan is accused of violating is solely upon purchases and sales of securities in the United States, that is, domestic securities transactions. Even if you find that Mr. McLellan engaged in fraudulent conduct in connection with the purchase or sale of a security, as I have defined those elements for you,  you cannot convict Mr. McLellan unless you also find beyond a reasonable doubt that that fraudulent conduct was in connection with the purchase or sale of securities in the United States.

A purchase or sale of securities is a domestic securities transaction only if (1) the purchase or sale of securities is conducted over an American stock exchange, or (2) the purchase or sale of securities took place in the United States. The fact that Mr. McLellan's conduct took place in the United States is irrelevant to the question whether the securities transactions in question were domestic securities transactions.

A purchase or sale of securities occurs in the United States if it involves the purchase or sale of a security listed on an American stock exchange and the purchase or sale occurs over that exchange. If a security is not listed on an American stock exchange, then the question is whether the purchase or sale of that security took place in the United States. A purchase or sale of that security

---

[2] In requesting this instruction, McLellan does not waive any of the arguments raised in his Motion to Dismiss Counts Two and Three and So Much of Count One as Charges Conspiracy to Commit Securities Fraud, to Exclude Evidence of Extraterritorial Transitions and Transactions, and Motion for Related Discovery (Doc. 148).

takes place in the United States under two circumstances: (1) if irrevocable liability to complete the transaction was incurred in the United States or (2) if title to the security passed within the United States. Irrevocable liability to complete the transaction means the point in time when the parties become contractually obligated to go through with the purchase or sale of the security at issue. Factors relevant to this determination include, but are not limited to, facts relating to the formation of the purchase or sale agreement, where the purchase or sale orders are placed, where title to the security is passed, and where the monies involved in the purchase or sale change hands. The location of the broker does not determine where irrevocable liability is incurred, although it may be relevant to your determination to the extent that the broker carries out tasks that irrevocably bind the parties to buy or sell the security at issue.

If the securities transactions you are considering were not conducted over an American stock exchange, if irrevocable liability for the purchase or sale of the securities in question was incurred outside the United States, for example, in the United Kingdom, and if title to the securities did not pass in the United States, then the transaction in question is not a domestic securities transaction and cannot provide the basis for a conviction for violation of the statutes under which Mr. McLellan is charged.

Accordingly, you cannot convict Mr. McLellan on either Count Two or Count Three unless you find beyond a reasonable doubt that the securities transactions with respect to which Mr. McLellan knowingly and intentionally engaged in fraudulent conduct prohibited by the applicable statutes, as I have defined it for you, were domestic securities transactions of the United States. Similarly, you cannot convict Mr. McLellan of conspiring to commit securities fraud, as charged in Count One, unless you find beyond a reasonable doubt that he knowingly, wilfully, and intentionally

entered into a conspiratorial agreement to commit securities fraud in connection with domestic, as opposed to foreign, purchases or sales of securities.

---

**Authority**: *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247, 266-67 (2010); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 180–81 (2d Cir. 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67-70 (2d Cir. 2012).

**Request No. 11**

**Wire Fraud—Elements of the Offense**

Mr. McLellan is charged with violating the federal statute making wire fraud illegal.

For you to find Mr. McLellan guilty of wire fraud, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that there was a scheme, substantially as charged in the indictment, to defraud or to obtain money or property by means of false or fraudulent pretenses;

Second, that the scheme to defraud involved the misrepresentation of a material fact or matter or the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement or assertion concerning a material fact or matter;

Third, that Mr. Mclellan knowingly and willfully participated in this scheme with the intent to defraud; and

Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, Mr. McLellan caused an interstate or foreign wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate or foreign wire communication would be used, on or about the date alleged.

---

**Authority:** Pattern Criminal Jury Instructions for the District Courts of the First Circuit §4.18.1343.

17

**Request No. 12**

**First Element—Scheme to Defraud**

A scheme includes any plan, pattern or course of action.  It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme or that the alleged scheme actually succeeded in defrauding anyone.  But the government must prove beyond a reasonable doubt that the scheme was substantially as charged in the indictment.

The term "defraud" means to deceive another in order to obtain money or property. However, you must bear in mind that misrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim that affects an essential element of the bargain. You may infer such contemplated harm only if there was a discrepancy between the benefits reasonably anticipated and the actual benefits which the defendant delivered or intended to deliver. Thus, if you find that the transition management clients at issue received the benefits that they bargained for, then you must find Mr. McLellan not guilty.

A breach of contract does not by itself constitute a scheme to defraud. You cannot find that there was a scheme to defraud unless you find the elements that I have described to you  beyond a reasonable doubt. And just because some of the actions or statements you have heard about may strike you as sharp dealing or unethical conduct, that alone does not amount to a scheme to defraud.

The scheme to defraud in this case is alleged to have been carried out by making false or fraudulent statements and representations. A representation or statement is false if it is untrue when made and was known to be false by the person making it or causing it to be made.

18

**Authority:** Pattern Criminal Jury Instructions for the District Courts of the First Circuit §4.18.1343; *United States v. Raza*, 876 F.3d 604, 623 (4th Cir. 2017); *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970); Jury Instructions, *United States v. Johnson*, No. 16-457 (D.Conn), Doc. 162 at 32; *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990); *United States v. Weimert*, 819 F.3d 351, 357 (7th Cir. 2016).
.

**Request No. 13**

**Second Element—Materiality**

The second element that the government must prove  beyond a reasonable doubt is that the alleged false or fraudulent representations were material under the circumstances. A material fact or matter is one that has a natural tendency to influence or be capable of influencing the decision of the decisionmaker to whom it was addressed. As I instructed you with respect to the securities fraud offense, you should also consider the evidence you have heard about the sophistication of the transition management clients at issue and ask yourselves whether such sophisticated clients would consider the charged false or fraudulent representations significant to their decisions to choose State Street as their transition manager. Statements made after the decision to select State Street as the client's transition manager are not, therefore, material to that decision.

As with the materiality element of securities fraud, in considering whether an alleged misstatement was material, importance and materiality do not mean the same thing. A statement is material only if it would reasonably be expected to be significant to a reasonable person in the position of the person to whom the statement is made in making a decision. A statement is not shown to be material merely because it may be important to the reasonable transition management client. A statement is material only if it was capable of influencing the decisionmaking of the particular prospective transition management client to which the statement was made and if a reasonable person in the position of the person to whom he statements is made would have relied on it in making his decision.

Deception about negotiating positions are not material for purposes of mail and wire fraud statutes.

20

**Authority:** *See* page 5, *supra*; Pattern Criminal Jury Instructions for the District Courts of the First Circuit §4.18.1343; *Universal Health Servs., Inc. v. United States*, ——U.S. ——, 136 S.Ct. 1989, 2002-03 (2016); *United States v. Weimert*, 819 F.3d 351, 357-58 (7th Cir. 2016).

**Request No. 14**

**Third Element—Intent to Defraud**

The third element that the government must prove  beyond a reasonable doubt is that Mr. McLellan participated in the charged scheme to defraud knowingly, wilfully, and with the specific intent to defraud.

A person acts  "knowingly" if he was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake or accident.

An act is "willful" if done voluntarily and intentionally, and with the specific intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

Intent or knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind. In determining what Mr. McLellan knew or intended at a particular time, you may consider any statements made or acts done by Mr. McLellan and all other facts and circumstances received in evidence that may aid in your determination of Mr. McLellan's knowledge or intent.

---

**Authority:** Pattern Criminal Jury Instructions for the District Courts of the First Circuit §4.18.1343.

**Request No. 15**

**Good Faith**

Since intent to defraud is an essential element of the offense, it follows that a good faith misunderstanding of the requirements of the law on the part of Mr. McLellan is a complete defense to a charge of wire fraud. If you find that Mr. McLellan believed in good faith that State Street's contracts with its transition management clients permitted State Street to take undisclosed markups/markdowns and commissions, or that he believed in good faith that securities law and practices in the United Kingdom allowed for undisclosed markups/markdowns and commissions on the transactions conducted for EMEA clients, or that he believed that Mr. Pennings had disclosed the markups/markdowns or commissions, then you must find Mr. McLellan not guilty.

It is for you to decide whether Mr. McLellan acted in good faith, that is, whether he sincerely misunderstood the requirements of the law, or whether he knew what he was required to do and deliberately did not do so. Keep in mind, however, that Mr. McLellan has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and lack of good faith  beyond a reasonable doubt.

## Request No. 16

## Fourth Element—Use of Interstate or Foreign Wires

An "interstate or foreign wire communication" includes a telephone communication from one state to another or between the United States and a foreign country.  The term also includes a wire transfer of funds between financial institutions as well an e-mail transmission or other internet communication.  The wire communication does not itself have to be essential to the scheme, but it must have been made for the purpose of carrying it out. The use of the wires must have had some tendency to facilitate execution of the fraud. There is no requirement that Mr. McLellan himself was responsible for the wire communication, that the wire communication itself was fraudulent or that the use of wire communications facilities in interstate commerce was intended as the specific or exclusive means of accomplishing the alleged fraud.  But the government must prove beyond a reasonable doubt that Mr. McLellan knew, or could reasonably have foreseen, that use of a wire communication would follow in the course of the scheme.

---

**Authority:** Pattern Criminal Jury Instructions for the District Courts of the First Circuit §4.18.1343; *United States v. Tavares*, 844 F.3d 46, 59 (1st Cir. 2016).

24

**Request No. 17**

**Affecting a Financial Institution (Count 6)**

As to Count 6, in addition to the elements of wire fraud that I have defined for you, if you find that [U.S. Insurance Company][3] was a financial institution, as I have defined that term for you, you must next consider whether it was affected by the fraudulent scheme that you have found to exist. To affect a financial institution as that term is used in the statute, there must have been some negative consequence to the specific financial institution charged in the indictment. That means that the financial institution itself must have suffered an actual loss or been exposed to a realistic prospect of loss. Unless you find  beyond a reasonable doubt that [the U.S. Insurance Company] suffered actual losses from the alleged fraudulent scheme or was exposed by the alleged fraudulent scheme to a realistic prospect of loss, you cannot convict Mr. McLellan on Count 6.

---

**Authority**: *United States v. Agne*, 214 F.3d 47, 51 (1st Cir. 2000); *see also United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998)(whether the fraud affected a financial institution is a question for the jury).

---

[3] Because these Requests for Instructions are being filed publicly, McLellan has not included the actual names of the entities referenced herein, but has instead used the pseudonym by which they are referenced in the Superseding Indictment.

**Request No. 18**

**No Extraterritorial Application of 18 U.S.C. §1343**

Like the securities fraud statutes of the United States about which I have already instructed you, the wire fraud statute also does not apply extraterritorially. The focus of the wire fraud statute is on the fraudulent scheme. Even if you find that Mr. McLellan participated in a scheme to defraud, as I have defined it for you, he may be punished for that conduct under the United States wire fraud statute only if (I) the fraudulent scheme involved a substantial amount of conduct in the United States; and (ii) the conduct in the United States was integral to the commission of the fraud, and (iii) at least some of the conduct involved the use of the U.S. wires. If you do not find all three of these factors satisfied, you must find Mr. McLellan not guilty.

---

**Authority:** *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014), *reversed and remanded on other grounds, RJR Nabisco, Inc. v. European Community*, ___U.S.___, 136 S.Ct. 2090 (2016); *Petroleos Mexicanos v. SK Engineering & Const. Co.*, 572 Fed. App'x 60, 61 (2d Cir. 2014); *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 103 (D.D.C. 2017); *United States v. Gasperini*, 2017 WL 2399693 at *8 (E.D.N.Y. June 1, 2017); *Elsevier, Inc. v. Grossman*, 199 F.Supp.3d 768, 784 (S.D.N.Y. 2016).

**Request No. 19**

**Aiding and Abetting—Wire Fraud**

To "aid and abet" means intentionally to help someone else commit the charged crime. To establish aiding and abetting, the government must prove beyond a reasonable doubt:

First, that the crime of wire fraud was actually committed by someone. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place.

Second, that Mr. McLellan took an affirmative act to help or cause wire fraud to be committed.

Third, that Mr. McLellan intended to help or cause the commission of wire fraud.

The second element, the "affirmative act" element, can be satisfied without proof that Mr. McLellan participated in each and every element of wire fraud. It is enough if Mr. McLellan assisted in the commission of wire fraud or caused wire fraud to be committed.

The third element, the "intent" element, is satisfied if Mr. McLellan had advance knowledge of the elements that make the principal's conduct criminal. The government must prove beyond a reasonable doubt that Mr. McLellan consciously shared the principal's knowledge of the underlying criminal act. It must also prove that his intent extended to the specific and entire crime charged.

A general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of the offense and knowledge that the offense is being committed are also not sufficient to constitute aiding and abetting.

You cannot convict Mr. McLellan of aiding and abetting based on any failure on his part to disclose markups/markdowns or commissions to transition management clients or to direct that such

27

disclosures be made. Instead, you cannot find Mr. McLellan guilty unless you find  beyond a reasonable doubt that that Mr. McLellan caused or directed Mr. Pennings or Mr. Boomgaardt to make an affirmative false statement regarding the charging of markups/markdowns or commissions.

---

**Authority:** Pattern Criminal Jury Instructions for the District Courts of the First Circuit §4.18.02(a); *Rosemond v. United States*, ___ U.S. ___, 134 S.Ct. 1240, 1248 (2014); *United States v. Encarnacion-Ruiz*, 787 F.3d 581, 588 (1st Cir. 2015).

**Request No. 20**

**Aiding and Abetting—Securities Fraud**

The requirements for aiding and abetting a securities fraud violation are somewhat different from the requirements of aiding and abetting wire fraud. In the securities fraud context, the government must prove  beyond a reasonable doubt: (1) the existence of a domestic securities law violation by the principal; (2) actual knowledge of this violation on the part of the aider and abettor, as I have previously defined it in the context of aiding and abetting wire fraud; and (3) substantial assistance provided knowingly by the aider and abettor in the achievement of the securities fraud violation.

---

**Authority:** *S.E.C. v. DiBella*, 587 F.3d 553, 566 (2d Cir. 2009); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983).

29

**Request No. 21**

**Conspiracy**

Mr. McLellan is accused of conspiring to commit a federal crime—specifically, the crimes of securities fraud and wire fraud. It is against federal law to conspire with someone to commit these crimes.

For you to find Mr. McLellan guilty of conspiracy, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to commit securities fraud and wire fraud; and

Second, that Mr. McLellan knowingly and willfully joined in that agreement; and

Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

A conspiracy is an agreement, spoken or unspoken. The conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all the details. But the government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime. Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy, but you may consider such factors.

To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed—that is to say, with bad purpose, either to disobey or disregard

the law—not to act by ignorance, accident or mistake. The government must prove two types of intent beyond a reasonable doubt before Mr. McLellan can be said to have willfully joined the conspiracy: an intent to agree and an intent that securities fraud and wire fraud be committed. Mere presence at the scene of a crime is not alone enough, but you may consider it among other factors. Intent may be inferred from the surrounding circumstances.

Proof that Mr. McLellan willfully joined in the agreement must be based upon evidence of his own words and/or actions. You need not find that Mr. McLellan agreed specifically to or knew about all the details of the crime, or knew every other co-conspirator or that he participated in each act of the agreement or played a major role, but the government must prove beyond a reasonable doubt that he knew the essential features and general aims of the venture. Even if Mr. McLellan was not part of the agreement at the very start, he can be found guilty of conspiracy if the government proves that he willfully joined the agreement later. On the other hand, a person who has no knowledge of a conspiracy, but simply happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

An overt act is any act knowingly committed by one or more of the conspirators in an effort to accomplish some purpose of the conspiracy. Only one overt act has to be proven. The government is not required to prove that Mr. McLellan personally committed or knew about the overt act. It is sufficient if one conspirator committed one overt act at some time during the period of the conspiracy.

---

**Authority:** Pattern Criminal Jury Instructions for the District Courts of the First Circuit §4.18.371(1).

31

**Request No. 22**

**Conspiracy—Concealment**

You will note that the indictment charges, in paragraphs 36-39, certain acts and statements relating to [the British Government Pension Fund] and the State Street compliance staff which the government contends were made and done to conceal the fraud charged. You cannot convict Mr. McLellan of conspiring to commit securities fraud or wire fraud based on those acts or statements unless you find beyond a reasonable doubt that those acts or statements were made or done during the life of the conspiracy, that is, before the conspiracy ended. A conspiracy endures as long as the co-conspirators are still endeavoring to attain the central criminal purposes of the conspiracy. If you find that the conspiracy charged in the indictment existed and that its central purposes had been attained before the acts or statements described in paragraphs 36-39 took place, you cannot convict Mr. McLellan of being a member of that conspiracy based on those acts and statements.

Mr. McLellan contends that, if the conspiracy charged in Count One existed (which he denies), that it ended, having achieved its central purposes, no later than May 24, 2011, when the final post-trade report was sent to the [Irish Government Pension Fund] at the completion of all trading necessary to complete that transition. You cannot convict Mr. McLellan of the conspiracy charged in Count One based on any acts done or statements made after that date unless you find beyond a reasonable doubt that the original conspiratorial agreement contained an express agreement to continue to cover up the alleged criminal activity after its objectives had been accomplished and that McLellan joined in that agreement at its origin.

You may not simply infer the existence of such an express original agreement from circumstantial evidence showing merely that the conspiracy charged was kept a secret and that the

alleged conspirators took care to cover up their crime in order to escape detection and punishment. Instead, you must find  beyond a reasonable doubt that an express original agreement to continue to conceal the crime after its completion existed.

---

**Authority:** *Grunewald v. United States*, 353 U.S. 391 (1957); *United States v. Upton*, 559 F.3d 3, 10, 14 (1st Cir. 2009); *United States v. Twitty*, 72 F.3d 228 (1st Cir. 1995).

Respectfully submitted,
By his attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (telephone)
(617) 338-9538 (fax)
owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this 21st day of May, 2018, I caused the within Motion to be served on all registered participants through its filing with this Court's CM/ECF system.

**/s/ Martin G. Weinberg**
Martin G. Weinberg

34