# EXHIBIT 1

Cornell Law School

# Legal Information Institute [LII]
OPEN ACCESS TO LAW SINCE 1992

CFR › Title 17 › Chapter II › Part 240 › Subpart A › Section 240.10b-10

# 17 CFR 240.10b-10 - Confirmation of transactions.

## § 240.10b-10 Confirmation of transactions.

**PRELIMINARY NOTE.**
This section requires broker-dealers to disclose specified information in writing to customers at or before completion of a transaction. The requirements under this section that particular information be disclosed is not determinative of a broker-dealer's obligation under the general antifraud provisions of the federal securities laws to disclose additional information to a customer at the time of the customer's investment decision.

**(a) *Disclosure requirement.*** It shall be unlawful for any broker or dealer to effect for or with an account of a customer any transaction in, or to induce the purchase or sale by such customer of, any security (other than U.S. Savings Bonds or municipal securities) unless such broker or dealer, at or before completion of such transaction, gives or sends to such customer written notification disclosing:

(1) The date and time of the transaction (or the fact that the time of the transaction will be furnished upon written request to such customer) and the identity, price, and number of shares or units (or principal amount) of such security purchased or sold by such customer; and

(2) Whether the broker or dealer is acting as agent for such customer, as agent for some other person, as agent for both such customer and some other person, or as principal for its own account; and if the broker or dealer is acting as principal, whether it is a market maker in the security (other than by reason of acting as a block positioner); and

(i) If the broker or dealer is acting as agent for such customer, for some other person, or for both such customer and some other person:

(A) The name of the person from whom the security was purchased, or to whom it was sold, for such customer or the fact that the information will be furnished upon written request of such customer; and

(B) The amount of any remuneration received or to be received by the broker from such customer in connection with the transaction unless remuneration paid by such customer is determined pursuant to written agreement with such customer, otherwise than on a transaction basis; and

(C) For a transaction in any NMS stock as defined in § 242.600 of this chapter or a security authorized for quotation on an automated interdealer quotation system that has the characteristics set forth in section 17B of the Act ( 15 U.S.C. 78q-2), a statement whether payment for order flow is received by the broker or dealer for transactions in such securities and the fact that the source and nature of the compensation received in connection with the particular transaction will be furnished upon written request of the customer; *provided, however,* that brokers or dealers that do not receive payment for order flow in connection with any transaction have no disclosure obligations under this paragraph; and

(D) The source and amount of any other remuneration received or to be received by the broker in connection with the transaction: *Provided, however,* that if, in the case of a purchase, the broker was not participating in a distribution, or in the case of a sale, was not participating in a tender offer, the written notification may state whether any other remuneration has been or will be received and the fact that the source and amount of such other remuneration will be furnished upon written request of such customer; or

(ii) If the broker or dealer is acting as principal for its own account:

(A) In the case where such broker or dealer is not a market maker in an equity security and, if, after having received an order to buy from a customer, the broker or dealer purchased the equity security from another person to offset a contemporaneous sale to such customer or, after having received an order to sell from a customer, the broker or dealer sold the security to another person to offset a contemporaneous purchase from such customer, the difference between the price to the customer and the dealer's contemporaneous purchase (for customer purchases) or sale price (for customer sales); or

(B) In the case of any other transaction in an NMS stock as defined by § 242.600 of this chapter, or an equity security that is traded on a national securities exchange and that is subject to last sale reporting, the reported trade price, the price to the customer in the transaction, and the difference, if any, between the reported trade price and the price to the customer.

(3) Whether any odd-lot differential or equivalent fee has been paid by such customer in connection with the execution of an order for an odd-lot number of shares or units (or principal amount) of a security and the fact that the amount of any such differential or fee will be furnished upon oral or written request: *Provided, however,* that such disclosure need not be made if the differential or fee is included in the remuneration disclosure, or exempted from disclosure, pursuant to paragraph (a)(2)(i)(B) of this section; and

(4) In the case of any transaction in a debt security subject to redemption before maturity, a statement to the effect that such debt security may be redeemed in whole or in part before maturity, that such a redemption could affect the yield represented and the fact that additional information is available upon request; and

(5) In the case of a transaction in a debt security effected exclusively on the basis of a dollar price:


(i) The dollar price at which the transaction was effected, and

(ii) The yield to maturity calculated from the dollar price: *Provided, however,* that this paragraph (a)(5)(ii) shall not apply to a transaction in a debt security that either:

(A) Has a maturity date that may be extended by the issuer thereof, with a variable interest payable thereon; or

(B) Is an asset-backed security, that represents an interest in or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment; and

(6) In the case of a transaction in a debt security effected on the basis of yield:

(i) The yield at which the transaction was effected, including the percentage amount and its characterization (e.g., current yield, yield to maturity, or yield to call) and if effected at yield to call, the type of call, the call date and call price; and

(ii) The dollar price calculated from the yield at which the transaction was effected; and

(iii) If effected on a basis other than yield to maturity and the yield to maturity is lower than the represented yield, the yield to maturity as well as the represented yield; *Provided, however,* that this paragraph (a)(6)(iii) shall not apply to a transaction in a debt security that either:

(A) Has a maturity date that may be extended by the issuer thereof, with a variable interest rate payable thereon; or

(B) Is an asset-backed security, that represents an interest in or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment; and

(7) In the case of a transaction in a debt security that is an asset-backed security, which represents an interest in or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, a statement indicating that the actual yield of such asset-backed security may vary according to the rate at which the underlying receivables or other financial assets are prepaid and a statement of the fact that information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions underlying yield) will be furnished upon written request of such customer; and

(8) That the broker or dealer is not a member of the Securities Investor Protection Corporation (SIPC), or that the broker or dealer clearing or carrying the customer account is not a member of SIPC, if such is the case: *Provided, however,* that this paragraph (a)(9) shall not apply in the case of a transaction in shares of a registered open-end investment company or unit investment trust if:

(i) The customer sends funds or securities directly to, or receives funds or securities directly from, the registered open-end investment company or unit investment trust, its transfer agent, its custodian, or other designated agent, and such person is not an associated person of the broker or dealer required by paragraph (a) of this section to send written notification to the customer; and

(ii) The written notification required by paragraph (a) of this section is sent on behalf of the broker or dealer to the customer by a person described in paragraph (a)(9)(i) of this section.

(b) *Alternative periodic reporting.* A broker or dealer may effect transactions for or with the account of a customer without giving or sending to such customer the written notification described in paragraph (a) of this section if:

(1) Such transactions are effected pursuant to a periodic plan or an investment company plan, or effected in shares of any open-end management investment company registered under the Investment Company Act of 1940 that holds itself out as a money market fund and attempts to maintain a stable net asset value per share: *Provided, however,* that no sales load is deducted upon the purchase or redemption of shares in the money market fund; and

(2) Such broker or dealer gives or sends to such customer within five business days after the end of each *quarterly* period, for transactions involving investment company and periodic plans, and after the end of each *monthly* period, for other transactions described in paragraph (b)(1) of this section, a written statement disclosing each purchase or redemption, effected for or with, and each dividend or distribution credited to or reinvested for, the account of such customer during the month; the date of such transaction; the identity, number, and price of any securities purchased or redeemed by such customer in each such transaction; the total number of shares of such securities in such customer's account; any remuneration received or to be received by the broker or dealer in connection therewith; and that any other information required by paragraph (a) of this section will be furnished upon written request: *Provided, however,* that the written statement may be delivered to some other person designated by the customer for distribution to the customer; and

(3) Such customer is provided with prior notification in writing disclosing the intention to send the written information referred to in paragraph (b)(1) of this section in lieu of an immediate confirmation.

(c) A broker or dealer shall give or send to a customer information requested pursuant to this rule within 5 business days of receipt of the request: *Provided, however,* That in the case of information pertaining to a transaction effected more than 30 days prior to receipt of the request, the information shall be given or sent to the customer within 15 business days.

(d) *Definitions.* For the purposes of this section:

(1) *Customer* shall not include a broker or dealer;

(2) *Completion of the transaction* shall have the meaning provided in rule 15c1-1 under the Act;

(3) *Time of the transaction* means the time of execution, to the extent feasible, of the customer's order;

(4) *Debt security* as used in paragraphs (a)(3), (4), and (5) only, means any security, such as a bond, debenture, note, or any other similar instrument which evidences a liability of the issuer (including any such security that is convertible into stock or a similar security)

and fractional or participation interests in one or more of any of the foregoing: *Provided, however,* That securities issued by an investment company registered under the Investment Company Act of 1940 shall not be included in this definition;

**(5)** *Periodic plan* means any written authorization for a broker acting as agent to purchase or sell for a customer a specific security or securities (other than securities issued by an open end investment company or unit investment trust registered under the Investment Company Act of 1940), in specific amounts (calculated in security units or dollars), at specific time intervals and setting forth the commissions or charges to be paid by the customer in connection therewith (or the manner of calculating them); and

**(6)** *Investment company plan* means any plan under which securities issued by an open-end investment company or unit investment trust registered under the Investment Company Act of 1940 are purchased by a customer (the payments being made directly to, or made payable to, the registered investment company, or the principal underwriter, custodian, trustee, or other designated agent of the registered investment company), or sold by a customer pursuant to:

(i) An individual retirement or individual pension plan qualified under the Internal Revenue Code;

(ii) A contractual or systematic agreement under which the customer purchases at the applicable public offering price, or redeems at the applicable redemption price, such securities in specified amounts (calculated in security units or dollars) at specified time intervals and setting forth the commissions or charges to be paid by such customer in connection therewith (or the manner of calculating them; or

(iii) Any other arrangement involving a group of two or more customers and contemplating periodic purchases of such securities by each customer through a person designated by the group: *Provided,* That such arrangement requires the registered investment company or its agent -

**(A)** To give or send to the designated person, at or before the completion of the transaction for the purchase of such securities, a written notification of the receipt of the total amount paid by the group;

**(B)** To send to anyone in the group who was a customer in the prior quarter and on whose behalf payment has not been received in the current quarter a quarterly written statement reflecting that a payment was not received on his behalf; and

**(C)** To advise each customer in the group if a payment is not received from the designated person on behalf of the group within 10 days of a date certain specified in the arrangement for delivery of that payment by the designated person and thereafter to send to each such customer the written notification described in paragraph (a) of this section for the next three succeeding payments.

**(7)** *NMS stock* shall have the meaning provided in § 242.600 of this chapter.

**(8)** *Payment for order flow* shall mean any monetary payment, service, property, or other benefit that results in remuneration, compensation, or consideration to a broker or dealer from any broker or dealer, national securities exchange, registered securities association,

or exchange member in return for the routing of customer orders by such broker or dealer to any broker or dealer, national securities exchange, registered securities association, or exchange member for execution, including but not limited to: research, clearance, custody, products or services; reciprocal agreements for the provision of order flow; adjustment of a broker or dealer's unfavorable trading errors; offers to participate as underwriter in public offerings; stock loans or shared interest accrued thereon; discounts, rebates, or any other reductions of or credits against any fee to, or expense or other financial obligation of, the broker or dealer routing a customer order that exceeds that fee, expense or financial obligation.

(9) *Asset-backed security* means a security that is primarily serviced by the cashflows of a discrete pool of receivables or other financial assets, either fixed or revolving, that by their terms convert into cash within a finite time period plus any rights or other assets designed to assure the servicing or timely distribution of proceeds to the security holders.

(e) *Security futures products.* The provisions of paragraphs (a) and (b) of this section shall not apply to a broker or dealer registered pursuant to section 15(b)(11)(A) of the Act ( 15 U.S.C. 78o(b)(11)(A)) to the extent that it effects transactions for customers in security futures products in a futures account (as that term is defined in § 240.15c3-3(a)(15)) and a broker or dealer registered pursuant to section 15(b)(1) of the Act ( 15 U.S.C. 78o(b)(1)) that is also a futures commission merchant registered pursuant to section 4f(a)(1) of the Commodity Exchange Act ( 7 U.S.C. 6f(a)(1)), to the extent that it effects transactions for customers in security futures products in a futures account (as that term is defined in § 240.15c3-3(a)(15)), *Provided* that:

(1) The broker or dealer that effects any transaction for a customer in security futures products in a futures account gives or sends to the customer no later than the next business day after execution of any futures securities product transaction, written notification disclosing:

(i) The date the transaction was executed, the identity of the single security or narrow-based security index underlying the contract for the security futures product, the number of contracts of such security futures product purchased or sold, the price, and the delivery month;

(ii) The source and amount of any remuneration received or to be received by the broker or dealer in connection with the transaction, including, but not limited to, markups, commissions, costs, fees, and other charges incurred in connection with the transaction, provided, however, that if no remuneration is to be paid for an initiating transaction until the occurrence of the corresponding liquidating transaction, that the broker or dealer may disclose the amount of remuneration only on the confirmation for the liquidating transaction;

(iii) The fact that information about the time of the execution of the transaction, the identity of the other party to the contract, and whether the broker or dealer is acting as agent for such customer, as agent for some other person, as agent for both such customer and some other person, or as principal for its own account, and if the broker or

dealer is acting as principal, whether it is engaging in a block transaction or an exchange of security futures products for physical securities, will be available upon written request of the customer; and

(iv) Whether payment for order flow is received by the broker or dealer for such transactions, the amount of this payment and the fact that the source and nature of the compensation received in connection with the particular transaction will be furnished upon written request of the customer; provided, however, that brokers or dealers that do not receive payment for order flow have no disclosure obligation under this paragraph.

(2) *Transitional provision.*

(i) Broker-dealers are not required to comply with paragraph (e)(1)(iii) of this section until June 1, 2003, *Provided* that, if, not withstanding the absence of the disclosure required in that paragraph, the broker-dealer receives a written request from a customer for the information described in paragraph (e)(1)(iii) of this section, the broker-dealer must make the information available to the customer; and

(ii) Broker-dealers are not required to comply with paragraph (e)(1)(iv) of this section until June 1, 2003.

(f) The Commission may exempt any broker or dealer from the requirements of paragraphs (a) and (b) of this section with regard to specific transactions of specific classes of transactions for which the broker or dealer will provide alternative procedures to effect the purposes of this section; any such exemption may be granted subject to compliance with such alternative procedures and upon such other stated terms and conditions as the Commission may impose.

[ 43 FR 47503, Oct. 16, 1978, as amended at 48 FR 17585, Apr. 25, 1983; 50 FR 37654, Sept. 17, 1985; 53 FR 40721, Oct. 18, 1988; 59 FR 55012, Nov. 2, 1994; 59 FR 59620, Nov. 17, 1994; 59 FR 60555, Nov. 25, 1994; 67 FR 58312, Sept. 13, 2002; 70 FR 37618, June 29, 2005; 79 FR 1549, Jan. 8, 2014]

About LII

Contact us

Advertise here

Help

Terms of use

Privacy

[LII]