UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA <br> v. <br> ROSS MCLELLAN, <br> Defendant | No. 16-10094-LTS |

**DEFENDANT ROSS MCLELLAN'S MOTION TO ADMIT FOREIGN DEPOSITION TESTIMONY INTO EVIDENCE AND RESPONSE TO COURT ORDER OF MAY 15, 2018 (DOC. 350)**

Now comes the defendant Ross McLellan and (1) responds to this Court's Order dated May 15, 2018 (Doc. 350), and (2) respectfully moves, pursuant to Fed. R. Evid. 804(b)(1) and Fed. R. Evid. 807, that this Honorable Court admit into evidence the deposition testimony of Krystyna Beck and Simone Paul.[1]

As reason therefor, defendant states:

1. Krystyna Beck and Simone Paul were, at all times relevant to the superseding indictment, employed as attorneys by State Street in its London office. Neither Ms. Beck nor Ms. Paul is currently employed by State Street. Ms. Paul is currently the Global Head of Investigations in the Global Markets Regulatory Compliance branch of HSBC in the U.K. and Ms. Beck is currently a Regulatory Specialist for BNP Paribas Securities Services in the U.K. Both Ms. Paul and Ms. Beck reside in the U.K. and are, accordingly, beyond the subpoena power of this Court. Both Ms. Beck

---

[1] Contemporaneously with the filing of this motion, McLellan has moved to submit the depositions to the Court under seal because of the uncertain scope of the protective orders in the parallel civil case, *SEC v. McLellan*, No. 16-cv-10874 (DPW).

and Ms. Paul have informed the undersigned counsel that they will not voluntarily appear to testify at the trial of this case.

2. In the parallel case of *SEC v. McLellan*, No. 16-cv-10874 (DPW), pursuant to Hague Convention requests, McLellan (through counsel) took the videotape deposition of Ms. Beck, who was physically located in London, on February 8, 2018; on February 7, 2018, he took the deposition of Ms. Paul. An SEC attorney cross-examined both witnesses.

3. At their depositions, both Ms. Beck and Ms. Paul gave testimony that significantly supports defendant's defenses to the securities and wire fraud charges against him, including the conspiracy charged in Count One.

4. Absent the admission of the deposition testimony of these two witnesses, defendant will be deprived of important defense evidence that cannot be obtained in any other way.

5. These witnesses are unavailable, and their deposition testimony is admissible under Rule 804(b)(1) or, alternatively, Rule 807.

As further reason therefor, defendant refers the Court to the Memorandum of Law incorporated herein.

## LOCAL RULE 7.1(a)(2) STATEMENT

The government opposes the admission of the depositions.

## MEMORANDUM OF LAW

In its Order dated May 15, 2018 (Doc. 350), the Court asked that the parties address the admissibility of the depositions, or portions of the depositions, of Ms. Beck and Ms. Paul, as well as whether the Court should make inquiry of the witnesses' State Street counsel regarding any efforts

State Street has made to secure the presence of the witnesses at trial.[2]  This Memorandum explains why, and under what authority, the deposition testimony, or at least portions of it, should be admitted into evidence.

I. **BACKGROUND.**

During November of 2010, Ms. Beck and Ms. Paul, along with other State Street legal and compliance employees, conducted a legal analysis of the contractual relationship between State Street and the "Middle Eastern Sovereign Wealth Fund" prior to the start of transition 121. Ms. Beck and Ms. Paul, as State Street U.K.'s counsel, reviewed the relevant transition management agreement and authorized, without amendment, a transition strategy that permitted State Street's affiliates to earn revenue on the transition for the "Middle Eastern Sovereign Wealth Fund" pursuant to the "affiliate" disclosure language contained in transition management agreement. The magnitude of revenue earned by State Street's affiliates, including the State Street Rates desk, State Street Global Markets LLC, and State Street Global Markets International Ltd, was not disclosed to the client. Additionally, in April 2011, Ms. Paul participated in a phone call with Herbert Smith attorneys, during which Edward Pennings disclosed to State Street counsel that State Street acted as a riskless principal for U.K. transition management clients while charging management fees for transitions, and further advised U.K. Legal and their outside counsel that the template for European, Middle Eastern, and African ("EMEA") transitions should not unduly restrict State Street's methods of generating revenues from the transition. As a result of Pennings' disclosures, Herbert Smith deleted

---

[2] McLellan has no objection to this Court's making inquiry of State Street's counsel as to the particulars of its efforts to secure the testimony of any of the three lawyers in question. State Street counsel has, however, informed the undersigned counsel that neither Ms. Beck nor Ms Paul will appear voluntarily at a second deposition or appear voluntarily as trial witnesses in this case.

agency language from State Street U.K.'s standard EMEA transition management agreement template and made additional changes to the agreement so that it would conform to existing EMEA charging practices.[3]

In the parallel case of *SEC v. McLellan*, No. 16-cv-10874 (DPW), pursuant to Hague Convention requests, McLellan (through counsel) took the videotape depositions of Ms. Beck and Ms. Paul, who were physically located in London, in February 2018. At those depositions, the witnesses were sworn, and the proceedings were conducted in conformity with standard United States deposition procedures, in that they were stenographically recorded, as well as being audiotaped and videotaped, and the witnesses were subject to both direct and cross-examination (by counsel for the SEC).

On February 14, 2018, seeking to ensure the admissibility of the testimony of Ms. Beck and Ms. Paul at the trial of this case, McLellan moved for leave under Rule 15 to take the pretrial depositions of Ms. Beck and Ms. Paul. *See* Defendant Ross McLellan's Motion for Rule 15 Depositions of Krystyna Beck and Simone Paul (filed under seal)("Rule 15 Motion"). In that motion, McLellan flagged for the Court the potential issue regarding the admissibility of depositions in the SEC case at the trial of this case that would be obviated by the granting and taking of Rule 15 depositions. *See* Rule 15 Motion at 9 n.6. The government has opposed the motion. The Court has not yet ruled on McLellan's Rule 15 Motion, and it is now exceedingly unlikely that, even were the Court to approve the taking of the pretrial depositions of Ms. Beck and Ms. Paul, that they could be

---

[3] For further background, *see* Defendant Ross McLellan's Motion for Rule 15 Depositions of Krystyna Beck and Simone Paul (filed under seal February 14, 2018), incorporated by reference herein.

taken before the fast-approaching trial date.[4] Admission of the depositions taken in the SEC case is now the only avenue available to McLellan for presenting the testimony of Ms. Beck and Ms. Paul in his defense.

## II.     THE DEPOSITIONS ARE ADMISSIBLE UNDER RULE 804(b)(1).

Rule 804(b)(1) permits the admission of prior testimony of an unavailable witness if the testimony "was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one" and that testimony "is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Ms. Beck and Ms. Paul are indisputably unavailable to appear to testify at trial. They have communicated to the undersigned counsel their unequivocal refusal to appear voluntarily, and, being residents of the U.K. are beyond the subpoena power of the United States courts. *See, e.g., United States v. Johnpoll*, 739 F .2d 702, 709 (2d Cir. 1984)(Swiss nationals who refused to come to the United States were unavailable pursuant to Rule 15); *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir. 1980)(Witnesses in Italy who were not subject to subpoena and who either refused to testify or had failed to obtain necessary travel documents were all unavailable under Rule 15); *United States v. Grossman*, 2005 WL 486735, at 3-4 (S.D.N.Y. 2005)(witness in Canada, not subject to subpoena, was unavailable under Rule 15 because he specifically declined to appear at trial).[5]

---

[4] McLellan cited the need to depose these two witnesses as support for his motion to continue the trial of this case.

[5] The depositions were, moreover, "lawful." They were taken under established procedures, with the witnesses under oath, with the formalities of depositions under United States law observed. Counsel for McLellan conducted a direct examination, and SEC counsel cross-examined. The proceedings were stenographically recorded, as well as videotaped and audiotaped. That latter is particularly important, as it will allow the jury to observe the demeanor of the witnesses. *See United States v. McKeeve*, 131 F.3d 1, 10 (1st Cir. 1997)(concluding that British deposition "substantially

Under the circumstances of this case, the SEC and the government should be regarded as the same party for purposes of applying Rule 804(b)(1). In *United States v. Sklena*, 692 F.3d 725 (7th Cir. 2012), the Court reversed the defendant's conviction because the district court refused to permit the defendant to introduce the deposition of a witness taken in conjunction with proceedings before the Commodities Futures Trading Commission ("CFTC"). In so doing, the Court concluded that the CFTC and the DOJ, *i.e.*, the prosecution in the criminal case, were the same party for Rule 804(b)(1) purposes because "the CTFC and the Department of Justice play closely coordinated roles on behalf of the United States in the overall enforcement of a single statutory scheme." *Id.* at 732.[6] The same is the case here with respect to the SEC, the government, and the securities laws.

The SEC and the DOJ closely coordinated their investigations of the events underlying this prosecution. For example, prior to the indictment and prior to the commencement of the SEC civil action, they conducted joint witness interviews. FBI 302s of post-indictment interviews of many witnesses indicate the regular presence of an SEC representative. When the SEC provided discovery to McLellan in the civil case, it also provided copies to the government. When the SEC announced its settlement with State Street in the related civil action, the SEC noted "the assistance of the U.S. Attorney's Office for the District of Massachusetts [and the] Fraud Section of the U.S. Department

---

jibe[d] with our practice and thus satisfies the rule").

[6] The *Sklena* Court cited the statutory requirement that the CTFC report its litigation activities to the DOJ, *id.* at 731, and this distinction has been relied on to distinguish *Sklena* in the SEC/DOJ context. *See, e.g., United States v. Klein*, 2017 WL 1316999, at *6 (E.D.N.Y. Feb. 10, 2017)*; United States v. Martoma*, 2014 WL 5361977, at *4 n.5 (S.D.N.Y. Jan. 8, 2014). *Klein* did note, however, that there was "no indication whatsoever that [the SEC and DOJ] coordinated their investigations here." 2017 WL 1316999, at *6. Here, as discussed in the text, *supra*, the SEC and the DOJ did closely coordinate their investigations.

of Justice." https://www.sec.gov/news/press-release/2017-159 (last visited May 15, 2018). Similarly, when the United States Attorney's Office announced its settlement with State Street in the related criminal case, *United States v. State Street Corp.*, No. 17-10008 (D.Mass.), the press release acknowledged that "[t]he SEC provided valuable assistance to the prosecution." https://www.justice.gov/opa/pr/state-street-corporation-agrees-pay-more-64-million-resolve-fraud-charges (last visited May 15, 2018). Undersigned counsel believe that the SEC provided copies of all depositions taken in *SEC v. McLellan* to the government and that the government either had actual knowledge of the schedule for the depositions of Ms. Beck and Ms. Paul or could easily have ascertained the schedule by inquiring either of the SEC or the undersigned. Given their virtually identical community of interest, the SEC and the prosecution should be regarded as the same parties for Rule 804(b)(1) purposes.

The SEC had a full opportunity to cross-examine both Ms. Beck and Ms. Paul at their depositions.[7] Moreover, the SEC had a similar motive to cross-examine Ms. Beck and Ms. Paul during their depositions as would the government at the trial of this case. Their testimony is directly relevant to what occurred in the course of the "Middle Eastern Sovereign Wealth Fund" transition, a transition that is at the center of both this prosecution, *see* Superseding Indictment at 6-8, and the SEC proceedings. *See SEC v. McLellan*, No. 16-cv-10874 (DPW)(Doc. 1) at 10-16. It would have been in the SEC's interest to seek to counter on cross-examination anything that either witness said that was favorable to McLellan's theory of the case. Demonstrating the congruity of interests, the

---

[7] Indeed, given the close working relationship between the SEC and the prosecution, government prosecutors could have sat in on the depositions in the SEC case or, if they did not, could have provided the SEC with questions it wanted asked in cross-examination. They could even with leave of court, had they sought it, or the consent of the parties, have participated in the depositions.

government, in its Motion for Leave to Intervene and for Partial Stay of Discovery, filed in the SEC case, *SEC v. McLellan*, No. 16-cv-10874 (DPW) (Doc. 15), acknowledged that the SEC proceeding and the criminal prosecution "address[] the same misconduct,"*id.* at 1, and that the "indictment and the SEC's complaint are founded on the same operative facts." *Id.* at 2. *See id.* at 5 (SEC action and this case are "based on essentially the same conduct"); *id.* (SEC action is based on same subject matter as the criminal case); *id.* at 6 ("the facts at issue in the criminal and the civil cases are largely the same"); *id.* at 7 ("the operative facts of the two cases are the same"); *id.* at 8 ("the two actions are substantively identical: both are predicated on the allegation that McLellan and Pennings conspired to add secret commissions to fixed income and equities trades performed for at least six clients of State Street's transition management business").

   The Rule 804(b)(1) "similar motive" inquiry "requires scrutiny of the factual and procedural context of each proceeding to determine both the issue in dispute and the intensity of interest in developing the particular issue by the party against whom the disputed testimony is offered." *United States v. Bartelho*, 129 F.3d 663, 672 (1st Cir. 1997). *See United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993)("similar motive" inquiry asks "whether the questioner is on the same side of the issue at both proceedings, . . . [and] whether the questioner had a substantially similar interest in asserting that side of the issue"). "Whether the motive of the United States, acting through a civil enforcement agency, is similar enough to its interests when it engages in criminal enforcement depends on a number of factors, including the substantive law each is enforcing, the factual overlap between the two proceedings, the type of proceeding, the potential associated penalties, and any differences in the number of issues and parties." *Sklena*, 692 F.3d at 732. Here, not only are the factual underpinnings of the two cases identical, but the substantive law applicable to the SEC's civil action

is the same as that at issue in this case."Both were investigating the same underlying conduct with an eye to taking enforcement action, and so they shared the same motive to find out what went on," and the SEC and the prosecution "alleged and needed to prove the same allegations." *Id.* Moreover, "the deterrent effect of a large civil penalty . . . can be similar to that of a criminal sentence." *Id.* Because the testimony of Ms. Beck and Ms. Paul would support, or detract from, the SEC's and the government's cases in equal measure, they had similar motives in cross-examining the witnesses.[8]

Even if the Court were to conclude that the SEC and the prosecution cannot be regarded as the same party, the depositions should nonetheless be admitted under a predecessor in interest theory. While the predecessor-in-interest clause does not permit the admission of deposition testimony given in a civil case against the defendant in a criminal case, "some scholars have noted that the predecessor in interest clause may be applicable in a criminal setting when it is the government against whom the testimony is offered." *United States v. McDonald*, 837 F.3d 1287, 1292 (5th Cir. 1988). "The idea travels on the right of a defendant to present evidence in his own defense." *Id.* In *McDonald*, the Court adopted a "'similarity of motive' test as a better servant of Rule 804(b)(1), and a defendant's right to obtain evidence in his defense," concluding "[i]f a party in a civil case and the government in a later criminal case have sufficiently similar motives to develop the testimony, we see no reason to conclude that the rule is necessarily and always unavailable to a criminal defendant." *Id.* at 1292-93.[9] In *United States v. Gibson*, 84 F. Supp. 2d 784, 786-87 (S.D.W. Va.

---

[8] The motives need not be identical. but merely "similar." *Bartelho*, 129 F.3d at 671.

[9] The *McDonald* Court found that the interests of the civil party and the government were not sufficiently similar, as the civil party, knowing that it would be able to cross-examine the witness at trial, did not have the same incentive to probe for inaccuracies at the deposition, but the government, knowing that the witness would assert his Fifth Amendment privilege at the criminal trial, would have had strong incentive to develop favorable testimony at the deposition. *See id.* at

2000), the court, following *McDonald*, found admissible the sworn statements of a deceased witness that the defendant wished to introduce in his defense, concluding that the prior civil plaintiff and the government in the criminal case had a sufficient community of interest, and hence, sufficiently similar motives, to develop the witness' testimony. *Cf. In re Screws Antitrust Litig.*, 526 F. Supp. 1316, 1318-19 (D. Mass. 1981)(noting cases that found government, acting as prosecutor in criminal antitrust suits, to be the predecessor in interest of subsequent civil plaintiffs in actions arising out of the same set of circumstances because of the "'community of interest' . . . that has been said to exist between government prosecutors, who through their prosecutions attempt to vindicate and protect society as a whole, and civil plaintiffs, who in suits arising from the same circumstances as criminal suits attempt to recover damages from the party that has caused them harm."). Such a community of interest surely exists between the SEC, in its capacity as the civil enforcer of the securities laws of this country, and the government in its capacity as criminal prosecutor of alleged violations of the securities laws.

The deposition testimony of Ms. Beck and Ms. Paul should be admitted under Rule 804(b)(1).

**III. EVEN SHOULD THE COURT CONCLUDE THAT THE DEPOSITIONS ARE NOT ADMISSIBLE UNDER RULE 804(b)(1), THEY SHOULD NONETHELESS BE ADMITTED UNDER RULE 807.**

Rule 807 permits the introduction of out-of-court statements if "(1) the statement has the equivalent circumstantial guarantees of trustworthiness [as Rules 803 or 804]; (2) it is offered as

---

1293. Here, by contrast, the SEC would have known that the witness would not be appearing at trial and that the deposition would be admissible at the civil trial under Rule 804(b)(1), and thus had the motive to develop at the deposition all the evidence it could that supported its own theory of the case and discredited McLellan's.

evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." The deposition testimony amply satisfies all four factors.

The testimony has multiple guarantees of trustworthiness. The witnesses were under oath in a formal proceeding, subject to both direct and cross-examination. Moreover, both witnesses were testifying regarding matters within their personal knowledge. *See, e.g., United States v. Sposito*, 106 F.3d 1042, 1049 (1st Cir. 1997)(trustworthiness established where testimony was given under oath, was based on personal knowledge, and was subject to cross-examination); *United States v. Panzardi-Lespier*, 918 F.2d 313, 316 (1st Cir. 1990)(factors indicating trustworthiness include whether testimony was given under oath and whether the witness testified about matters of personal knowledge); *Markham Concepts, Inc. v. Hasbro, Inc.*, 2017 WL 6509242, at *2 (D.R.I. Dec. 19, 2017)(finding deposition testimony sufficiently trustworthy where it was given under oath and pertained to matters of which the witness had personal knowledge).

The testimony will be offered as evidence of the following material facts:

- that McLellan and his alleged coconspirators did not, contrary to what is charged in the indictment, *see* Superseding Indictment, ¶¶38-39, conceal the markups from State Street legal and compliance personnel;

- that McLellan acted in the good faith belief that his actions were lawful and proper and consistent with U.K. EMEA practices and that U.K. attorneys reviewed the Mideast Sovereign Wealth Fund transition management agreement and the Transition Notice;

- that State Street traded as riskless principal with respect to the transitions;

- that, with the participation of State Street legal advisors, State Street amended the standard U.K. transition management template for EMEA transitions to permit State Street greater flexibility in its revenue-generating capabilities and to eliminate the requirement that all fees and charges be set out in the transition notice;

- that State Street U.K. legal personnel regularly reviewed changes to existing transition management agreements and drafted new transition management agreements;

- that McLellan supported the hiring of outside legal counsel (the Herbert Smith law firm) to review transition management agreements;

- that Pennings worked closely with State Street U.K. legal personnel;

- that it was the routine and practice of State Street U.K. legal personnel to review all new transition management agreements and amendments to transition management agreements and that it was Pennings' routine and practice to follow that practice;

- that State Street U.K. legal personnel had no role in drafting or reviewing United States transition management agreements, and State Street U.S. legal personnel had no role in drafting or reviewing U.K. transition management agreements (other than amendments to indemnification provisions);

- that State Street U.S. personnel received no training in U.K. law, and State Street U.K. personnel received no training in U.S. law;

- that U.K. transition management agreements were signed and entered into by SSBEL and not by SSGMIL, the broker dealer;

- that use of SSGMIL as State Street's broker/dealer affiliate was authorized by the transition management agreement;

- that the transition management clients were sophisticated and had their own lawyers helping them negotiate agreements; and

- that State Street U.K. legal personnel had only minimal contact with McLellan.

In support of these points, McLellan seeks the admission of, at minimum, the following portions of the deposition of Krystyna Beck: Pages 5:1-9:11, 9:12-11:17, 11:19-13:2, 13:3-14:5, 14:6-16:16, 17:10-20.3, 20:20-21:10, 21:11-22:8, 23:23-24:10, 26:5-27:6, 27:7-35:15, 36:4-40:11, 40:17-41:2, 41:3-48:7, 49:15-56:16, 56:17-58:2, and 58:3-59.6, and the following portions of the deposition of Simone Paul: Pages 8:4-18:15, 19:6-21:2, 21:8-30:25, 31:11-35:24, 40:18-45:10 (including Ex. 11, 13, 16), 46:6-46:15, 46:24-47:3, 48:25-52:9, 52:18-53:21, 54:19-55:9, 56:14-25, 57:2-66:12 (including Ex. 4), 66:22-69:13 (including Ex. 5), 70:4-74:15 (including Ex. 19), 74:25-76:8 (including Ex. 18), 77:2-79:19, 80:2- 81:5, 81:19:82:12, 83:18-84:4 (including Ex. 6).

The specifically-identified deposition transcripts provide important background evidence regarding the training and experience of the lawyers hired by SSBEL to support the EMEA transition management team, it provides relevant and material evidence regarding the participation of the U.K. legal team in the negotiation, formation, and amending of transition management agreements, and that it was the routine and practice for the EMEA transition management team to utilize and rely upon the legal team regarding the formation and interpretation of transition management agreements. Additionally, the identified excerpts of the depositions provide important and material evidence of a specific instance wherein the U.K. legal team, after reviewing the relevant transition materials, relied upon general contract language to permit State Street affiliates to earn revenue through

13

markups or markdowns, without requiring any explicit disclosure language in either the transition management agreement or the transition notice. Taken together, the identified sections of the depositions will support the good faith reliance of McLellan, who had no training in U.K. securities law and had minimal contact with State Street U.K. legal personnel, on Pennings, who worked closely with State Street U.K. legal personnel, to ensure that the transitions conformed to proper U.K. EMEA practices. The testimony further shows that EMEA clients were the responsibility of the U.K. team, which knew the applicable law and regulations and the clients' expectations.

The deposition testimony is more probative on these points than other evidence available to McLellan because the testimony will be based on the personal knowledge of the witnesses regarding conversations and events that otherwise can only be approached through fragmentary documents such as emails. Indeed, there were a number of exhibits introduced at these depositions, including notes taken by Sarah Lewis during an important telephone call relating to the "Middle Eastern Sovereign Wealth Fund" transition, that McLellan may have no other avenue to introduce.[10] These witnesses, being State Street lawyers at all times relevant to the indictment, have personal knowledge regarding transition management agreements and side letters and their legal implications under U.K. law, as well as what U.K law does and does not require in terms of disclosures.

Finally, admission of the deposition testimony will "best serve the purposes of these rules and the interests of justice." This Court is well aware of the difficulties that McLellan has encountered in obtaining evidence located in foreign countries and has recently noted that those difficulties "potentially raise[] fairness or due process considerations in a case such as this involving

---

[10] In the course of her deposition, Ms. Paul repeatedly confirmed that the notes that Ms. Lewis took during the telephone call are consistent with her memory of what was said. *See* Deposition of Simone Paul at 35, 42, 51, 52, 56.

foreign victims." Order, May 15, 2018 (Doc. 350) at 2. One of the main purposes of the residual hearsay exception is to facilitate "truth ascertainment and fair adjudication of controversies." *Sposito*, 106 F.3d at 1048. The introduction of the deposition testimony is important to McLellan's ability to fully and fairly present his defenses to the serious charges against him.

## CONCLUSION

For all the foregoing reasons, the deposition testimony of Ms. Beck and Ms. Paul should be admitted into evidence at the trial of this case.

Respectfully submitted,
By his attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (telephone)
(617) 338-9538 (fax)
owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this 21st day of May, 2018, I caused the within Motion to be served on all registered participants through its filing with this Court's CM/ECF system.

**/s/ Martin G. Weinberg**
Martin G. Weinberg