UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>)<br>) |
| v. | ) No. 16-10094-LTS |
| ROSS MCLELLAN,<br>    Defendant | )<br>)<br>)<br>)<br>) |

**DEFENDANT ROSS MCLELLAN'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE DUTCH PENSION FUND TRANSITION**

The government opposes McLellan's Motion *in Limine* to Exclude Evidence of the Dutch Pension Fund Transition ("Motion") on two grounds: (1) that the Dutch Pension Fund transition involved domestic wire fraud,[1] and (2) that the Dutch Pension Fund evidence is admissible as conduct in furtherance of a domestic conspiracy. As this reply will demonstrate, the government is wrong on both counts.

**I.   THE DUTCH PENSION FUND TRANSITION DID NOT INVOLVE DOMESTIC WIRE FRAUD.**

The government's argument rests on its assumption that the focus of the wire fraud statute is on the use of the wires. *See* Opposition at 2-3 & n.1. However, as McLellan has demonstrated at pages 12-13 & n.10 of his Motion, the better view is that the focus of the wire fraud statute is on the *scheme*, not on the jurisdictional hook. *See United States v. Brien*, 617 F.2d 299, 307 (1st Cir. 1980)("the mail and wire fraud statutes focus on the scheme, not on the implementation of it").

---

[1] Notably, the government has not suggested that the securities transactions conducted as part of the Dutch Pension Fund transition could be in any way considered domestic securities transactions.

When analyzed from the proper perspective, it is clear that the Dutch Pension Fund transition did not involve domestic wire fraud.[2]

The government once again relies on *Pasquantino v. United States*, 544 U.S. 349 (2005), and *United States v. Lyons*, 740 F.3d 702 (1st Cir. 2014), Opposition at 3-4, but, while its Opposition discusses those cases, it does not respond to McLellan's arguments regarding why those cases should not control the result in this case. *See* Motion at 10-12 & nn.8-9.[3] While it is true, as McLellan acknowledged in his motion, that McLellan communicated with Pennings about the Dutch Pension Fund transition, *see* Motion at 14-15; Opposition at 4, nothing in the wire communications that were sent to or from McLellan regarding the transition were for the purpose of executing the scheme to defraud. Instead, they were no more than routine updates on the status of the transition, having no relationship to whether undisclosed markups would be or were taken. As McLellan's Motion has

---

[2] Even if the focus of the wire fraud statute were on the use of the wires, the government has not identified a single use of the wires *for the purpose of carrying out the alleged fraud*. *United States v. Hayes*, 99 F. Supp. 3d 409, 420 (S.D.N.Y. 2015), on which the government relies, Opposition at 3, is quite different from this case. Not only does it start from the proposition that the focus of the wire fraud statute is on the use of the wires, *id* at 420-21, but because "the co-conspirators purportedly caused the manipulated LIBOR to be published to servers in the United States and used United States wires to memorialize trades affected by that rate, "*[t]he culpable conduct underlying the substantive count . . . occurred in the United States.*" *Id.* at 421 (emphasis added). The same cannot be said here, where any culpable conduct (assuming *arguendo* that there was culpable conduct) occurred entirely extraterritorially.

[3] The government also relies on *United States v. Georgiou*, 777 F.3d 125 (3d Cir. 2015). Opposition at 4. In *Georgiou*, however, the Court held that §1343 applies extraterritorially based on the foreign commerce reference in the statute. *Id.* at 137-38. *Georgiou* ignores *Morrison*'s warning that, just because a statute contains a routine jurisdictional reference to foreign commerce, does not mean that Congress intended that the statute apply extraterritorially. Under *Morrison*, the inclusion of "foreign commerce" language in §1343 does not automatically mean that the statute was intended to apply extraterritorially. Accordingly, *Georgiou*'s conclusion regarding whether the defendant's conduct violated the wire fraud statute is based on an erroneous conclusion regarding the scope of the wire fraud statute.

2

demonstrated, if, *arguendo*, there was fraud in connection with the Dutch Pension Fund (which McLellan denies), it was an entirely extraterritorial one. *See* Motion at 13-14. The government has not responded to this portion of McLellan's arguments.

The other cases on which the government relies also do not refute McLellan's arguments. *United States v. Kazzaz*, 592 Fed. App'x 553 (9th Cir. 2014), Opposition at 5, was decided based on stipulated facts that accompanied the defendant's guilty plea. Focusing on the use of the wires as the deciding factor, rather than the domestic vs. extraterritorial nature of the alleged scheme, the Court found that the stipulation to using the mails to send checks to Alabama and using electronic communications to transmit a payment to a bank in Alabama provided a sufficient domestic nexus. With the focus, as it should be, on the scheme itself, the stipulation would not suffice to demonstrate that the scheme was, in fact, a domestic one, as opposed to an extraterritorial one. *United States v. Allen*, 160 F.Supp.3d 698 (S.D.N.Y. 2016), also applied the incorrect focus; another case in the Southern District of New York, *Elsevier, Inc. v. Grossman*, 199 F.Supp.3d 768, 783 (S.D.N.Y. 2016), and one in the Eastern District of New York, *United States v. Hawit*, 2017 WL 663542 (E.D.N.Y. Feb. 17, 2016), have embraced the view that the proper focus of the statute is the scheme, not the use of the wires. *See* Motion at 13 & n.10.[4] In *Hawitt*, on which the government relies, Opposition at 5, the court not only reached the right conclusion regarding the focus of the wire fraud statute, but also the domestic conduct was far more extensive than anything the government has alleged or will prove here; among other things, the indictment alleged that the charged scheme "involved sales of broadcasting rights in the United States, the organizing of soccer matches in the

---

[4] *United States v. Coffman*, 771 F.Supp.2d 735, 738-39 (E.D.Ky. 2011), was decided at the motion to dismiss stage and relied on allegations in the indictment alleging use of domestic wires.

United States, the holding of meetings in the United States, and the use of wire facilities and financial institutions located in the United States." 2017 WL 663542, at *6 (citations omitted).

## II. THE DUTCH PENSION FUND EVIDENCE IS NOT ADMISSIBLE AS CONDUCT IN FURTHERANCE OF A DOMESTIC CONSPIRACY.

Count One charges a conspiracy to commit securities fraud and wire fraud in violation of the laws of the United States. As shown in McLellan's Motion and in the preceding section, any fraud in connection with the Dutch Pension Fund transition (again, assuming *arguendo* that there was any at all) was wholly extraterritorial and violated neither the United States securities laws nor the United States wire fraud statute. It was not conduct in furtherance of a *domestic* conspiracy.

The cases on which the government relies are not to the contrary. In *United States v. Endicott*, 803 F.2d 506 (9th Cir. 1986), Opposition at 6, the Canadian defendant was convicted of being a member of a conspiracy to commit various firearms offenses *in the United States.* The courts of the United States had subject matter jurisdiction, the Court ruled, because the foreign acts were "intended to produce detrimental effects in the United States," *id.* at 514, *i.e.*, the illegal importation of firearms into the United States. Similarly, in *United States v. Brown*, 549 F.2d 954 (4th Cir. 1977), and *United States v. Ricardo*, 619 F.2d 1124 (5th Cir. 1980), the defendants were charged with conspiracy to import drugs into the United States. In stark contrast, the acts involved in the Dutch Pension Fund transition had *no* effect on the United States, detrimental or otherwise, nor were they intended to have.

The fact that the Court denied McLellan's motion to dismiss Count One on extraterritoriality grounds, Opposition at 6, is of no moment in the present context, which focuses on the admissibility of evidence relating to the Dutch Pension Fund, not a general legal challenge to the legal validity of

Count One. In denying McLellan's motion to dismiss, the Court expressed no opinion regarding the admissibility of evidence relating to the Dutch Pension Fund transition. The motion now before the Court does not challenge the assertion of United States jurisdiction over the §371 conspiracy charged in Count One (although McLellan does not waive the arguments advanced in his motion to dismiss), which is the issue the government addresses.

## CONCLUSION

For all the reasons set forth herein and in defendant's Motion, the Motion *in Limine* to Exclude Evidence of the Dutch Pension Fund Transition should be granted.

> Respectfully submitted,
> By his attorneys,
>
> **/s/ Martin G. Weinberg**
> Martin G. Weinberg
> 20 Park Plaza, Suite 1000
> Boston, Massachusetts 02116
> (617) 227-3700 (telephone)
> (617) 338-9538 (fax)
> owlmgw@att.net
>
> **/s/ Robert M. Goldstein**
> Robert M. Goldstein
> 20 Park Plaza, Suite 1000
> Boston, MA 02116
> (617) 742-9015
> rmg@goldstein-lawfirm.com

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this 22nd day of May, 2018, I caused the within Reply to be served on all registered participants through its filing with this Court's CM/ECF system.

> **/s/ Martin G. Weinberg**
> Martin G. Weinberg