UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) ) | No. 16-CR-10094-LTS |
| ROSS MCLELLAN,<br>Defendant | ) ) ) ) ) | REDACTED COPY |

## DEFENDANT ROSS MCLELLAN'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO THE U.S. INSURANCE COMPANY TRANSITION

Now comes the Defendant, Ross McLellan, by and through undersigned counsel, pursuant to this Court's Order granting his Motion for Issuance of a Rule 17(c) Subpoena, Dkt. 331, and the Compulsory Process Clause of the Sixth Amendment, and requests the production of documents withheld and redacted by State Street Corporation (hereinafter "State Street") under an unsubstantiated claim of privilege. As grounds and reasons therefore, the defendant states that the documents are relevant, and the privilege log produced by State Street falls well-short of establishing that those documents are protected by the attorney-client privilege. Moreover, even assuming that privilege does apply, it must give way to Mr. McLellan's Sixth Amendment right to present a complete defense. As further reason therefore, the defendant refers the Court to the memorandum of law incorporated herein.

### Local Rule 7.1(a)(2) Certification

Undersigned counsel conferred with counsel for the government and the government, by and through Stephen E. Frank, takes no position on the instant request.

1

MEMORANDUM OF LAW

1. Background

In February 2018, the government chose to supersede its prior indictment, which had issued almost two years earlier, to add a new count charging a fraud against a U.S. Insurance Company. As Mr. McLellan has recently described in his Renewed Motion to Sever Count 6, prior to the relevant transition, the U.S. Insurance Company was a client of the bank's advisory arm, State Street Global Advisors ("SSGA"). Accordingly, unlike five of the six foreign-domiciled clients at issue in the separate conspiracy charged in Count 1, the U.S. Insurance Company did not enter into a Transition Management Agreement with State Street.[1] The U.S. Insurance Company did, however, have a pre-existing agreement in place with SSGA.

On March 15, 2018, Mr. McLellan filed an Unopposed Motion for Issuance of Rule 17(c) Subpoena seeking from State Street several categories of documents related to the transition conducted on behalf of the U.S. Insurance Company. Mr. McLellan requested, among other things, "[a]ll regulatory documents created and/or submitted pursuant to 17 CFR 270.17e-1 in connection with" the relevant transition; and "[a]ll internal, non-privileged email or other written communications" relating to that transition. Dkt. 323-1.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

---

[1] For these and other reasons set forth in his Renewed Motion to Sever, Mr. McLellan maintains that Count 6, relating to the U.S. Insurance Company, should be severed from the other charges in this case.

2



In its most recent, May 18, production pursuant to this Court's Rule 17(c) Subpoena, State Street provided 1,906 pages of documents.[2] More than 1,500 of those pages are, however, fully redacted, so as to contain no useable information whatsoever. State Street also produced a privilege log of concededly responsive documents purportedly withheld for privilege. Of the fifty-one documents withheld, sixteen are dated between February 7 and March 3, 2011, i.e. the time period when the domestic insurer selected State Street to transition its assets and the time period leading up to the recorded call that the government is relying on to allege conspiratorial conduct on the part of Mr. McLellan.

2. Relevance

State Street apparently conceded the relevance of the requested documents by declining to oppose Mr. McLellan's motion for a subpoena. *See United States v. Nixon*, 418 U.S. 683, 699 (1974). ██ █ ████ ██ ██ █ ██ ████ ███ ██ ████████████████████████ The government's allegations

---

[2] This was the last of a series of State Street productions pursuant to the subpoena.

against Mr. McLellan are predicated upon his alleged application of "hidden commissions to fixed income trades conducted in connection with transition management services for funds advised by the U.S. Insurance Company." Dkt. 282 at ¶ 40. ███████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████ ██████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███ ███████████████████████████████████████████
██████████████████████████ ████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████ ██████████████████████████████
███████████████████████████████████████████████
████████████████████████

3. <u>Insufficiency of Privilege Claim</u>[3]

As a matter of well-established blackletter law, the party asserting privilege, here State

---

[3] Notably, the privilege log provided by State Street relies exclusively on the "Attorney-Client" privilege. State Street has not asserted any claim regarding the separate work product privilege. Of course, because this latter privilege only applies to documents created "in anticipation of litigation," there could be no conceivable claim that this doctrine extends to documents dated from February and March of 2011. *See United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81-82 (D. Mass. 2007) (Sorokin, J.).

Street, must "establish the existence and applicability of the privilege . . . [using] sufficient information to allow the court to rule intelligently on the privilege claim." *In re Grand Jury Proceedings*, 802 F.3d 57, 65 (1st Cir. 2015) (alteration in original) (citation omitted); *see also United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (Sorokin, J.) (holding that "the party asserting the privilege . . . bears the burden of demonstrating its applicability to the documents at issue").

With respect to the over 1,500 redacted pages that appear to be omitted from the privilege log, State Street's failure to carry its burden of establishing privilege could hardly be clearer. State Street failed to provide any privilege log for these documents. This omission alone is fatal to any privilege claim. *See In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."). Making matters worse, more than 1,500 of the approximately 1,900 pages produced are fully and completely redacted. These documents do not even convey such basic information as the parties that sent and received the document, or the general subject matter to which the document relates. Without such fundamental, non-privileged information, it is impossible for Mr. McLellan or the Court to meaningfully assess the privilege claim.

State Street did, by contrast, provide a log of the fifty-one withheld documents, but that log is insufficient to sustain its privilege claims. For one thing, more than half of the documents do not include an attorney in the from, to, or cc fields. While this fact, in itself, does not necessarily foreclose the applicability of privilege, the accompanying descriptions fall well-short of establishing the requisite elements. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011) (holding that privilege applies "only" "(1) [w]here legal advice . . . is sought (2) from a

professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived" (citation omitted)). State Street's privilege log contains conclusory descriptions, representing that the relevant communications were "for the purpose of rendering legal advice" or "in connection with seeking legal advice." Clearly, the privilege does not extend to all such documents.

The withheld documents from February and March 2011, when State Street was in the midst of preparing for the U.S. Insurance Company transition and long before the prospect of litigation arose, appear particularly unlikely to be covered by privilege. The law is clear that "[t]he attorney-client privilege attaches only when the attorney acts in that capacity." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995). This basic principle becomes especially pertinent when the claim of privilege relates to in-house corporate counsel. As this Court has explained, "[a]n in-house lawyer may wear several other hats (e.g., business advisor, financial consultant) and . . . the invocation of the attorney-client privilege may be questionable in many instances." *Windsor*, 524 F. Supp. 2d at 81 (citation omitted). In order to successfully assert privilege in this corporate context, the claimant "must demonstrate that [the attorney] was acting as an attorney in relation to each of the documents at issue." *Id.* "Merely saying that [the attorney] was so acting" is not sufficient. *Id.* (citation omitted).

Here, State Street's privilege descriptions fail to demonstrate that the relevant in-house attorneys were acting in their legal, as opposed to business, capacities. Each of the withheld 2011 documents purports to relate to "legal advice" from Lance Dial, former Vice President & Counsel of SSGA. The subject matter of the "legal advice" is the same for all of the 2011 documents, and

indeed for all fifty-one documents included in the privilege log: "[U.S. Insurance Company] transition." Such a formulaic and general privilege description is patently insufficient to establish that Dial was, in fact, engaged in providing legal advice. Self-evidently, the upcoming "[U.S. Insurance Company] transition," involving billions of dollars in assets and extensive coordination between State Street Global Markets and SSGA, gave rise to a host of business-related issues. Indeed, business communications on this general topic would seem likely to far outnumber communications involving true legal advice, especially when isolated to the withheld emails during the pivotal months of February and March 2011, years before any prospect of litigation involving the transition. The mere fact that State Street says Dial was providing legal advice, without conveying any meaningful additional detail, simply does not make it so. *See Windsor*, 524 F. Supp. 2d at 81.

Even assuming, contrary to the analysis above, that the withheld 2011 documents are protected by the attorney-client privilege, that privilege must "yield to [Mr. McLellan's] Sixth Amendment right to present evidence." *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1142 (D. Mont. 2006). As Mr. McLellan has explained in prior filings, the Sixth Amendment encompasses a requirement "that criminal defendants be afforded a meaningful opportunity to present a complete defense." Dkt. 276 at 4 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). In light of this principle, evidentiary rules must not be applied in a manner that "significantly undermine[s] fundamental elements of the defendant's defense." *W.R. Grace*, 439 F. Supp. 2d at 1140 (quoting *United States v. Scheffer*, 523 U.S. 303, 315 (1998)). Here, as detailed in the above discussion of relevance, Mr. McLellan is alleged to have committed wire fraud by applying "hidden commissions" to trades conducted on behalf of the U.S. Insurance Company.

Dkt. 282 at ¶ 40. ███████████████████████

███████████████████████████████████

███████████████████████████████████

████████████ █████ ████████████████

███████████████████████████████████

████████████ ██████████████████████

███████████████████████████████████

█████████████████████████ Even after spending more than three months attempting to review and digest 70,000 plus pages of discovery specifically relating to the U.S. Insurance Company transition, ██████████████████████████

███████████████████████████████████

███████. Moreover, a review of the relevant witness statements of both State Street and U.S. Insurance Company witnesses reflect an understandable dimming of memories regarding the specifics of this transition which unlike those alleged in Counts 1-5 was never the subject of any prior regulatory or legal action.[4] In these circumstances, State Street's invocation of privilege with respect to the relevant communications is "incompatible" with Mr. McLellan's Sixth Amendment rights. *See W.R. Grace*, 439 F. Supp. 2d at 1145; *see also United States v. Renzi*, 08-CR-00212, 2009 WL 10675612, at *9 (holding that the defendant's "*ex parte* submissions demonstrate that[] at least some of the proffered evidence would be of such exculpatory value that the exclusion of such evidence would amount to a denial of [the defendant's] right to present a defense, and must

---

[4] This difficulty is, in large part, a product of the ten-year statute of limitations that the government contends applies here because the alleged fraud "affect[ed] a financial institution." 18 U.S.C. § 3293.

8

be admitted at trial over [the co-defendant's] claim of privilege").[5]

State Street's refusal to provide relevant documents to Mr. McLellan stands in sharp contrast to its openness with the government. In an interview with government agents, one State Street employee expressly stated that she prepared for the meeting by reviewing emails indicating "that legal units within [State Street] were involved in discussions about the deal." Exhibit 3. More specifically, the employee "recalled exchanges about certifications that the prices being charged were fair on which [State Street] legal personnel were included. She also recalled an email chain about timeliness of reporting on which LANCE DIAL, counsel for SSGA, was included." Exhibit 3. To undersigned counsel's knowledge, Mr. McLellan has not received the documents referenced in this interview memo. In fact, the email attached as Exhibit 1 is the only communication he has received to date relating to a possible 17e-1 certification of the fairness and reasonableness of the commissions charged to the U.S. Insurance Company in connection with the relevant transition. Without more information regarding the documents withheld by State Street and those reviewed with the employee prior to her meeting with the government, Mr. McLellan is not in a position to definitively determine whether or not a waiver has occurred. He is also not in a position to definitely know whether the emails reviewed by this witness were shared with the government. At the very least, however, State Street's overall willingness to share relevant information with the government exacerbates the unfairness resulting from its withholding this information from Mr. McLellan.

---

[5] Mr. McLellan notes that this Court has, in a civil enforcement case, declined to follow *W.R. Grace*. *See SEC v. Present*, 14-CV-14692, 2015 WL 9294164, at *2 n. 5 (D. Mass. Dec. 21, 2015) (Sorokin, J.). However, even the Supreme Court decision relied upon in *Present* acknowledged that, in certain circumstances, a criminal defendant's Sixth Amendment rights "might warrant breaching the privilege." *Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998).

9

4. Conclusion

For the foregoing reasons, Mr. McLellan respectfully requests that this Honorable Court require the production of documents withheld from State Street's May 18 production pursuant to a purported claim of privilege, as well as those produced in redacted form. Alternatively, Mr. McLellan requests that the Court conduct an *in camera* review of the documents to determine whether production is appropriate.

> Respectfully submitted,
>
> Ross McLellan
> By his Attorney,
>
> **/s/ Martin G. Weinberg**
> Martin G. Weinberg
> Mass. Bar No. 519480
> 20 Park Plaza, Suite 1000
> Boston, MA 02116
> (617) 227-3700
> owlmgw@att.net

Dated: May 22, 2018

### CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, May 22, 2018, a redacted copy of the foregoing document has been served on Stephen E. Frank via electronic mail.

> **/s/ Martin G. Weinberg**
> Martin G. Weinberg