UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 16-CR-10094-LTS |
| | ) | |
| ROSS MCLELLAN, | ) | |
|         Defendant | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT ROSS MCLELLAN'S OPPOSITION TO THE GOVERNMENT'S
MOTION *IN LIMINE* TO PRECLUDE INTRODUCTION OF INADMISSIBLE AND
IRRELEVANT THIRD-PARTY HEARSAY**

The documents subject to the instant motion *in limine* are neither inadmissible nor

irrelevant for reasons that Mr. McLellan has outlined in several prior pleadings.

**MEMORANDUM OF LAW**

First, the government seeks to exclude documents relating to the legal and regulatory

framework directly applicable to this case.  As explained in Mr. McLellan's Motion to Admit

Into Evidence 17 C.F.R. §240.10b-10 and S. 2114, these documents establish that "State Street

has no obligation to disclose markups/markdowns unless it is acting as a fiduciary, such as under

ERISA."  Dkt. 365 at 1.  The SEC Investor Bulletin similarly explains that, for bond trades

executed in a principal capacity, confirmation statements "do not break out any mark-up/mark-

down."  The FINRA rule, which, as the government notes, only became effective on May 14 of

this year, requires disclosure of markups in principal or riskless principal transactions executed

for "non-institutional customer[s]."  FINRA Rule 2232(c).  The recent promulgation of this rule

clearly implies that no such requirement existed previously, and that, to this day, there remains

no disclosure requirement for institutional customers.  Of course, in a case entirely predicated

upon allegations of misrepresentations regarding undisclosed markups, the absence of any legal

or regulatory requirement that such markups be disclosed cannot fairly be characterized as

irrelevant.  And "[c]ourts have upheld the introduction into evidence of administrative

regulations in a variety of contexts, including as evidence relating to defendant's knowledge,

intent, or state of mind."  Dkt. 365 at 3 (citing cases).  To the extent the proffered evidence

would result in any prejudice to the government, it is not "unfair" prejudice, but the prejudice

that results from any evidence harmful to the government's case.

Second, the government contends that a draft contract between State Street and Mr.

McLellan's consulting firm is inadmissible on relevance grounds.  The document, dated April

2012, is admissible to support Mr. McLellan's defense that he harbored a good-faith belief in the

legality of his actions, based in part on the approval of high-level State Street executives.  The

fact that, even after the exposure of Mr. McLellan's allegedly fraudulent scheme, and while State

Street was in the midst of investigating and gathering additional detail about that scheme, the

organization sought to continue a business relationship with Mr. McLellan is powerful

exculpatory evidence.  Again, any prejudice to the government from such evidence can hardly be

characterized as unfair.

Third, the government takes issue with the admissibility of communications between one

of the allegedly defrauded clients, the Irish Corporation, and its U.K. consultant.  As the

government acknowledges, the documents reflect discussion of State Street's bid, including as

compared to other potential bidders.  Such internal discussion is clearly relevant to whether or

not State Street made any fraudulent representations.  There is some irony in the government's

attempt to exclude these documents on hearsay grounds. The government has steadfastly resisted Mr. McLellan's request that it be required to invoke its rights under the U.S.-Ireland Mutual Legal Assistance Treaty ("MLAT"). *See* Dkt. 279. As Mr. McLellan has explained elsewhere, given the fact that the Irish Corporation is outside this Court's subpoena power, an MLAT request from the government is Mr. McLellan's only means of obtaining evidence, including witness testimony, from that entity. *See* Dkt. 276 at 1-2. With the government having refused to exercise its Treaty powers or to otherwise motivate its foreign entity witnesses to produce documents already ordered by this Court via the Letters Rogatory issuances, the "interests of justice" weigh heavily in favor of admitting out-of-court communications involving the Irish Corporation under the residual exception to the rule against hearsay. *See* Opposition to the Government's Motion *in Limine* to Exclude Evidence of Statements or Reactions by State Street Executives at 8-9 (citing Fed. R. Evid. 807).

The argument in favor of admissibility is even stronger for communications between State Street, including alleged co-conspirators Pennings and Boomgaardt, and the Irish Corporation or its consultants. Such communications, during the midst of the alleged conspiracy, are directly relevant to the key issue of whether or not any representations made by State Street were false or misleading. Of course, such an inquiry must, of necessity, occur against the backdrop of other communications between State Street and the client.

Fourth, the government asks the Court to prohibit Mr. McLellan from introducing into evidence proposals submitted by competing transition managers to the U.S. Insurance Company in relation to the very transition underlying Count 6 of the Superseding Indictment. In order to convict Mr. McLellan on this, or any other, charge, "the government will have to prove beyond a

reasonable doubt that the alleged misstatements were material." Dkt. 360 at 1-2 (citing *United States v. Weed*, 873 F.3d 68, 73 (1st Cir. 2017)). The operative materiality standard is whether "there is a substantial likelihood that [the alleged misrepresentation] would affect the behavior of a reasonable investor." *Id.* at 2 (citation omitted). This is a contextual inquiry, which involves the drawing of inferences from the details of the transition and the client's communications with State Street. Competing bids submitted by other prospective transition managers necessarily form part of this required context. Without knowing what the other options were, the jury cannot meaningfully assess whether any misrepresentation by State Street was material. The proffered evidence is, therefore, being offered solely for the fact that the competing bids were communicated to the U.S. Insurance Company, not for the truth of any assertions contained in the bid documents. Use of the documents for this purpose does not implicate the rule against hearsay. *See* Opposition to the Government's Motion *in Limine* to Preclude Introduction of Hearsay and Undesignated Audio Recordings at 4-5.

For the foregoing reasons, Mr. McLellan respectfully requests that this Honorable Court deny the government's Motion *in Limine* to Preclude Introduction of Inadmissible and Irrelevant Third-Party Hearsay.

Respectfully submitted,

Ross McLellan
By his Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Dated: May 28, 2018

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, May 28, 2018, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg