UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                         )<br>)<br>ROSS MCLELLAN,                           )<br>         Defendant                              )<br>) | No. 16-CR-10094-LTS |

**DEFENDANT ROSS MCLELLAN'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE INTRODUCTION OF HEARSAY AND UNDESIGNATED AUDIO RECORDINGS**

The government's "Motion *in Limine* to Preclude Introduction of Self-Serving Hearsay and Undesignated Audio Recordings," Dkt. 357, represents a thinly veiled, misguided attempt to derail Mr. McLellan's trial defense before it even starts.  The government, perhaps understandably, moves to exclude several documents which go to the very heart of the charges against Mr. McLellan.  If these purported hearsay statements are "self-serving" it is only because they provide powerful contemporaneous evidence of Mr. McLellan's good-faith belief in the legality of his actions.  Moreover, certain documents reflect that his alleged co-conspirators, as well, had a good-faith belief in the legality of their actions prior to their decision to seek the benefits of USSG §5K1.1 by becoming government witnesses.

The government's motion takes a true kitchen sink approach, objecting to the admissibility of nineteen documents and ten audio recordings in a mere six pages of legal argument.  The list of possible exhibits said to be inadmissible includes, among many others: (1) emails from State Street legal and compliance personnel suggesting approval of the very

1

charging practices underlying the government's case; (2) email exchanges, in the midst of the alleged conspiracy, where Mr. McLellan expressly directs the disclosure of commissions; and (3) emails and calls in which Mr. McLellan continuously cites contractual language appearing to allow the mark-ups charged.  The Court should reject the government's attempt to tilt the playing field in its favor by keeping this important evidence from the jury.  First, the vast majority of the relevant exhibits are simply ***not*** hearsay because Mr. McLellan will not offer them for the truth of the matter asserted.  Second, even assuming that some of the exhibits do constitute hearsay, they satisfy multiple exceptions to the general rule of inadmissibility, including Fed. R. Evid. 106 (rule of completeness), 803(3) (then-existing mental condition), 803(6) (business records), and 807 (residual exception).  Third, and finally, wholesale exclusion of these crucial defense exhibits would compromise Mr. McLellan's Sixth Amendment right to a complete defense.

     In the same pleading in which it argues for exclusion of dozens of substantive defense exhibits, the government also attempts to erect a false barrier to the entirely proper use of prior inconsistent statements to impeach its witnesses.  The government proposes that, in order to conduct any such impeachment, Mr. McLellan be required to lay out a roadmap of his anticipated cross-examinations before trial even begins.  This request is utterly unsupported by legal authority.  In fact, the rule relied on by the government in arguing for pre-trial disclosure, Fed. R. Evid. 613, was codified for the express purpose of abrogating the very procedure that the government now advocates.

## MEMORANDUM OF LAW

**A. Motion to Preclude Key Defense Exhibits as Purported Hearsay**

1. *<u>The Vast Majority of the Exhibits Subject to the Government's Motion are Not Hearsay.</u>*

The government seeks to reverse the well-established default rule that "[r]elevant evidence is admissible." Fed. R. Evid. 402. Its argument is almost entirely devoted to establishing that the exhibits at issue do not fall within two specific *exceptions* to the rule against hearsay, namely Fed. R. Evid. 801(d)(2) (admission by party opponent)[1] and 803(3) (then-existing mental condition). In a glaring omission, however, the government never meaningfully attempts to answer the threshold question of why those exhibits constitute hearsay in the first place. In fact, the vast majority of the exhibits that the government moves to exclude are not hearsay at all and are, therefore, properly admissible.[2]

The Federal Rules of Evidence define "hearsay" as an out-of-court "statement" offered "to prove the truth of the matter asserted in that statement." Fed. R. Evid. 801(c). "Statement," in turn, means conduct "intended . . . as an assertion." Fed. R. Evid. 801(a). This definition is expressly designed to "exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion." Fed. R. Evid. 801, advisory committee notes. For example, out of court statements in the nature of "instructions" or "directions" are "not statements of fact at all" and therefore not hearsay. *United States v. Murphy*, 193 F.3d 1, 5 (1st

---

[1] Of course, Mr. McLellan has never suggested and does not currently contend that any of the documents at issue are admissible pursuant to this exception, which is expressly limited to statements "offered against an opposing party." Fed. R. Evid. 801(d)(2).

[2] As evidenced by the examples discussed in this memorandum, the documents subject to the government's motion are clearly relevant. *See* Fed. R. Evid. 401. Indeed, the government develops no argument to the contrary.

Cir. 1999); *see also Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) ("[A] command is not hearsay because it is not an assertion of fact." (alteration in original) (citation omitted)); *United States v. Gibson*, 675 F.2d 825, 834 (6th Cir. 1982) ("[A] suggestion or an order is not subject to verification at all because such utterances do not assert facts."). The same reasoning applies to "questions." *See Baines*, 863 F.3d at 662; *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) (explaining that "questions or commands" cannot "absent some indication that the statements were actually code for something else—be offered for their truth because they would not be assertive speech at all").

Along similar lines, even where the proffered evidence involves some assertion, it is admissible so long as its significance "lies solely in the fact that it was made" and "no issue is raised as to the truth of anything asserted." Fed. R. Evid. 801, advisory committee notes; *see also Franchina v. City of Providence*, 881 F.3d 32, 50 (1st Cir. 2018) ("Out-of-court statements are considered 'nonhearsay' when they are offered not for the truth of the matter but for some other purpose."). An out-of-court statement might permissibly be offered into evidence to, for example, "show that the declarant had certain information, or entertained a specific belief . . . ; or it might be offered to show the effect of the words spoken on the listener (*e.g.*, to supply a motive for the listener's action)." *Murphy*, 193 F.3d at 5 n.2. Importantly, "ambiguous and doubtful cases" are to be "resolved . . . in favor of admissibility." Fed. R. Evid. 801, advisory committee notes. Where a document is not being offered for the "truth of the matter asserted," it does not constitute hearsay, and the applicability of any exception is beside the point. *See Murphy*, 193 F.3d at 5 ("So long as out-of-court statements are not offered for their truth, they are not hearsay; it is unnecessary to fit such statements into one particular category . . . ."

(citation omitted)).

The First Circuit has repeatedly reaffirmed that "the hearsay rule does not apply to statements that are offered to show what effect they produced on the actions of a listener." *United States v. Meserve*, 271 F.3d 314, 320 (1st Cir. 2001); *see also United States v. Legarda*, 17 F.3d 496, 498-99 (1st Cir. 1994) (finding that district court erred in not permitting the defendant to "recount statements that were allegedly made to him" to show "an effect on defendant's behavior"). Relatedly, an out-of-court statement made by or to a defendant may be admissible as "circumstantial evidence of [the defendant's] state of mind at the time." *United States v. DeSimone*, 488 F.3d 561, 568 (1st Cir. 2007); *see also United States v. Ibisevic*, 675 F.3d 342, 349 (4th Cir. 2012) (holding that prior statement by the defendant was not hearsay because it was offered "merely to prove that [he] expressed [his] belief" (alterations in original) (citation omitted)); *Gibson*, 675 F.2d 834 (explaining that statement heard by the defendant "could have been received properly on the issue of [the defendant's] belief or state of mind in consequence of the utterance").

A straightforward application of these principles makes clear that the vast majority of the documents within the scope of the government's motion are not hearsay. In order to illustrate this fact, this memorandum discusses selected examples of relevant exhibits. The memorandum does not, however, describe Mr. McLellan's intended non-hearsay use for all of the possible exhibits that the government moves to exclude. To lay out the relevance of each document in detail, Mr. McLellan would be forced to prematurely and improperly divulge trial strategy. Mr. McLellan would request the opportunity to provide a more fulsome explanation of relevance on an *ex parte* basis if the Court intends to rule pre-trial as to evidentiary objections made by the

government on a document-by-document basis.

In perhaps the clearest example of its flawed evidentiary theory, the government moves to exclude "a series of [November 2 and 3, 2010] emails between [Mr. McLellan] and members of State Street's legal and compliance departments concerning the use" of an internal broker-dealer to trade bonds on behalf of one of the allegedly defrauded clients. Dkt. 357 at 7. In one such email, a State Street lawyer forwarded to Mr. McLellan a message indicating that the legal department was reviewing the upcoming transition and suggesting that, absent a contractual prohibition on trading with affiliates, the transition should be allowed to go forward. *See* Govt. Ex. L. It is self-evident that the importance of this document does not lie in the truth of any assertion made by the lawyer (*e.g.*, that State Street legal was, in fact, reviewing the relevant documentation and thought State Street could trade through an affiliate). Rather, the mere fact that the declarant communicated and Mr. McLellan received this information is, in the context of this case, powerful evidence of his good faith. *See United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) ("In a fraud case . . . the advice-of-counsel defense is not an affirmative defense . . . . Rather, the claimed advice of counsel is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an unlawful intent." (citation omitted)); *United States v. Moran*, 493 F.3d 1002, 1013 (9th Cir. 2007) (holding that defendant in tax fraud case "was entitled to testify about what outside experts told her" in support of a "good faith" defense); *United States v. Leake*, 642 F.2d 715, 718, 720 (4th Cir. 1981) (explaining that evidence that defendant charged with misappropriation of federal funds had been told the relevant spending was "authorized" "was not offered to prove that the money was, in fact, used" for a legitimate purpose, but rather

merely "to show that [the defendant] believed" that to be the case). In another key email relating to this same transition, Mr. McLellan expressly asked State Street's global head of compliance about the permissibility of charging mark-ups. *See* Govt. Ex. J. Mr. McLellan's question contains no "assertive speech at all." *Rodriguez-Lopez*, 565 F.3d at 314. And the mere fact that Mr. McLellan asked this question of the bank's compliance department, thus disclosing his belief that the taking of non-disclosed markups was known to and accepted by compliance in circumstances where a second State Street affiliate is not involved, strongly supports his good-faith belief in the legality of his actions and counters the government's narrative of internal concealment. The government's contention that Mr. McLellan should not be permitted to introduce these emails "without subjecting himself to cross-examination about . . . what he told the legal department" creates an unsupportable burden requiring Mr. McLellan to waive Fifth Amendment rights as the sole predicate for presenting evidence necessary to vindicate his Sixth Amendment rights. Dkt. 357 at 7. Moreover, any professed fear of distortion is misplaced, as the government has the ability to offer evidence of Mr. McLellan's statements as admissions by a party opponent. *See* Fed. R. Evid. 801(d)(2).

The government's attempt to exclude certain communications from another important time period, late August 2011, must fail for similar reasons. At this time, the alleged co-conspirators were discussing whether to rebate commissions charged to the British Pension Fund. In one email, Mr. McLellan sent State Street's global head of compliance contractual language permitting mark-ups charged through affiliated broker-dealers. *See* Govt. Ex. S. Here, Mr. McLellan is simply quoting from the relevant contract. He is not asserting the truth of any facts whatsoever. The document is admissible as "circumstantial evidence" of Mr. McLellan's

intent in taking certain contemporaneous actions, which the government goes to great lengths to characterize as concealment of an illegal scheme. *DeSimone*, 488 F.3d at 568; *see also United States v. Diaz*, 597 F.3d 56, 65 n.9 (1st Cir. 2010) ("[U]tterances that help to clarify or define ambiguous conduct are not hearsay" (citation omitted)); *United States v. Thiel*, 619 F.2d 778, 781 (8th Cir. 1980) (stating that defendant charged with failing to file tax return should have been permitted to introduce a letter he sent to the IRS "for the purpose of showing his mental state at the time the alleged offense was committed"). It does not matter whether the contractual language cited by Mr. McLellan did, in fact, support the mark-ups charged. Rather, it is Mr. McLellan's very reliance on the contractual language that serves as the linchpin of his good-faith defense.

The August 2011 emails highlight yet another non-hearsay purpose for which out-of-court statements may be admitted, namely "to provide relevant context or background." *Meserve*, 271 F.3d at 319. The government has alleged a conspiracy extending from February 2010 through September 2011. Dkt. 282 at ¶ 9. The illicit agreement is said to have entailed "secretly charging commissions on securities trades," as well as "actively concealing the hidden commissions from the affected clients and from others within State Street." *Id.* The government has recently reaffirmed its position that the charged conspiracy extended "through September 2011." Dkt. 354 at 2. It has also described the conspiracy as "open-ended in nature." *Id.* The government advanced this argument in an effort to counter Mr. McLellan's motion to exclude purportedly "devastating" evidence "of his actions in the summer of 2011." Dkt. 354 at 3. Now, in a motion filed just three days later, the government seeks to exclude Mr. McLellan's communications from the very same time period. This abrupt reversal of course should not be

permitted. In light of the government's express theory that Mr. McLellan and his alleged co-conspirators were involved in a scheme to conceal commissions charged to the British Pension Fund in August 2011, contemporaneous communications involving those parties about this very same subject are part and parcel of the alleged conspiracy, akin to security camera footage depicting an alleged robbery. Mr. McLellan should be allowed to introduce these out-of-court statements, which not only provide crucial "context," *Meserve*, 271 F.3d at 319, but also "discredit the Government's claim" of concealment. *United States v. White*, 87 F. App'x 566, 569 (6th Cir. 2004).

The government's argument to the contrary implicates another evidentiary rule, namely the so-called rule of completeness. Under that provision, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The rule of completeness "operates to ensure fairness" where a party's selective evidentiary presentation creates a risk of "misunderstanding or distortion." *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001) (citation omitted). Crucially, the First Circuit has interpreted this rule "to facilitate the introduction of otherwise inadmissible evidence." *United States v. Bucci*, 525 F.3d 116, 133 (1st Cir. 2008). In the present case, the government has provided a list of 285 documents and audiotapes that it may attempt to introduce at trial.[3] Dozens of these proposed exhibits consist of communications involving the alleged co-

---

[3] What's more, in a professed attempt "to streamline the presentation of the evidence," the government has expressed its intention to offer these exhibits "in bulk at the outset of the trial." Dkt. 364 at 8. Such a practice should include the defense's being able to offer its exhibits in bulk at the same time.

conspirators during one of two crucial time periods: (1) November 2 and 3, 2010, when State Street, including legal and compliance personnel, was in the process of reviewing an upcoming transition for the Middle Eastern Sovereign Wealth Fund; and (2) August 2011, when the alleged co-conspirators were discussing a possible rebate of commissions charged to the British Pension Fund. Despite its stated intent to utilize numerous communications from these important days, the government has moved to exclude eleven proffered defense exhibits stemming from the same timeframes and relating to the exact same events. *See* Govt. Exs. H, J, K, L, M, N, O, S, and T; Dkt. 357 at 5 (arguing for exclusion of two audio files). This is precisely the type of "distortion" that the rule of completeness aims to prevent. *Simonelli*, 237 F.3d at 28.

The government also moves to exclude an email chain in which Mr. McLellan is asked whether he "know[s] anything about being instructed not to disclose fixed income comm[issions]." Mr. McLellan ultimately responds, "make sure [the trader] gives [the client] the comms for this deal as it is explicitly stated in the agreement as i pulled it today." *See* Govt. Ex. P. Mr. McLellan's instruction to disclose the commissions is not an assertion and, therefore, not hearsay. *See Murphy*, 193 F.3d at 5; *Baines*, 863 F.3d at 662; *Gibson*, 675 F.2d at 834. To the extent that the latter part of the statement contains an assertion regarding the requirements of the particular contract, it is not being offered for the truth of the matter asserted (*i.e.*, that the contract required disclosure), but rather as circumstantial proof of Mr. McLellan's good faith. The government's cursory suggestion that this email chain is "irrelevant" borders on the frivolous. Dkt. 357 at 7. The exchange demonstrates that, during the course of an alleged "open-ended" conspiracy to charge hidden commissions "where the opportunity presented itself," Mr. McLellan specifically instructed that commissions be disclosed when required by

10

contract. Dkt. 354 at 2 (citation omitted). It would be difficult to imagine stronger evidence of Mr. McLellan's good faith.

2. *The Exhibits Satisfy Multiple Exceptions to the Rule against Hearsay.*

Even assuming, contrary to the above analysis and the government's lack of developed argument on this point, the Court finds that some of the relevant documents or calls fall within the definition of hearsay, they nonetheless satisfy several exceptions to the general rule of inadmissibility. First, under Fed. R. Evid. 803(3), an out-of-court statement "of the declarant's then-existing state of mind (such as motive, intent, or plan)" is admissible for its truth. As an initial matter, which the government utterly fails to acknowledge in its briefing, this exception has no application to out-of-court statements offered only as "circumstantial evidence" regarding state of mind. *DeSimone*, 488 F.3d at 568; *see also United States v. Sabean*, 885 F.3d 27, 41 (1st Cir. 2018) (discussing Rule 803(3) but separately acknowledging alternative argument that "as long as the significance of an out-of-court declarant's statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay" (citation omitted)). Rather, it allows assertions of "motive, intent, or plan" to be admitted for the truth of those assertions. To the extent that some of the possible exhibits at issue in the government's motion may contain implied assertions (*e.g.*, an assertion of Mr. McLellan's belief that the contract language supported the charges in question), they are nonetheless admissible under Rule 803(3).

The government reads a caveat to this exception so broadly that it essentially swallows the rule. Rule 803(3) is expressly inapplicable to "a statement of memory or belief [offered] to prove the fact remembered or believed." Crucially, this language does not prohibit a statement

of belief from being offered to prove the existence of the belief itself.  Rather, "[t]he bar applies only when the statements are offered to prove the truth of *the fact underlying* the memory or belief."  *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052-53 (9th Cir. 2013) (emphasis added) (holding that evidence of "delusional" plaintiff's out-of-court statement that he "felt he was being raped" in jail was admissible "not to prove 'the fact remembered or believed' [*i.e.*, the rape] but the 'mental feeling'" of the plaintiff); *see also* Fed. R. Evid. 803, advisory committee notes (explaining that rule does not allow "state of mind . . . to serve as the basis for an inference of *the happening of the event* which produced the state of mind" (emphasis added)).  Here, none of the evidence at issue is offered to prove the underlying fact that the relevant contracts permitted the mark-ups.  Instead, it is being offered to establish Mr. McLellan's belief in the permissibility of the charges, *i.e.* good faith.  Multiple cases cited by the government are distinguishable on this basis.  *See Wagner*, 747 F.3d at 1052-53 (distinguishing *United States v. Emmert*, 829 F.2d 805 (9th Cir. 1987) and *United States v. Cohen*, 631 F.2d 1223 (5th Cir. 1980)).

In order to be admissible under Rule 803(3), an out-of-court statement "must mirror a state of mind, which, in light of all the circumstances, including proximity in time, is reasonably likely to have been the same condition existing at the material time."  *Sabean*, 885 F.3d at 41 (citation omitted).  Here, all of the statements at issue were made during the course of the alleged conspiracy, thus satisfying this contemporaneity requirement.  Many of the cases relied upon by the government are distinguishable on this basis.  *See United States v. Gomez*, 927 F.2d 1530, 1535-36 (11th Cir. 1991) (affirming exclusion of out-of-court statement post-dating the defendant's involvement in the alleged conspiracy and recounting the declarant's "memory of

her prior statement" to the defendant); *United States v. Ahmed*, No. 14-CR-277, 2016 WL 3647686, at *4 (E.D.N.Y. July 1, 2016) (holding that out-of-court statements made to government agents were "too remote in time to the events in question" to be admissible); *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (excluding "out-of-court statements to law enforcement officers" that provided an "explanation of past events").

In addition to communications that include Mr. McLellan himself, the government objects to the introduction of certain calls involving alleged co-conspirators Pennings and Boomgaardt. The government posits that because these calls "do not involve the defendant and were presumably unknown to him until they were produced in discovery," they are necessarily "inadmissible for any conceivably legitimate purpose." Dkt. 357 at 6. This argument overlooks the fact that "[t]he federal courts follow the bilateral approach to conspiracy under which unless at least two people commit the act of agreeing, no one does." *United States v. Harris*, 733 F.2d 1005 (2d Cir. 1984) (citation omitted). In this sense, each co-conspirator's "fate [i]s linked to" the others', and circumstantial evidence of Pennings and/or Boomgaardt's state of mind is independently relevant to the conspiracy charge against Mr. McLellan. *Id.* at 1006; *see also Moran*, 493 F.3d at 1014-15 (explaining that the defendants "were charged as coconspirators" and that "testimony sought from [one defendant] concerning professional opinions about the tax scheme with which they were jointly charged would have been relevant as circumstantial evidence to prove the state of mind of her husband and coconspirator"). The audiotapes cited by the government are all relevant as non-hearsay circumstantial evidence to prove state of mind, or, alternatively, admissible under Rule 803(3).

For the reasons outlined in Mr. McLellan's Opposition to the Government's Motion *in*

*Limine* to Exclude Evidence of Statements or Reactions by State Street Executives, the emails subject to the instant motion are also admissible as business records, Fed. R. Evid. 803(6), and under the residual exception to the rule against hearsay, Fed. R. Evid. 807. Opp'n at 6-9. Each of the nineteen emails attached to the government's motion is a contemporaneous communication among State Street employees with personal knowledge of the events recorded therein. Moreover, in considering the "interests of justice" under Rule 807, it is worth noting that the government has played an active role in barring Mr. McLellan's access to evidentiary alternatives. It has, for example, opposed Mr. McLellan's request for Rule 15 depositions of the two attorneys who, in November 2010, expressly approved the use of an internal broker-dealer in a transition conducted on behalf of one of the allegedly defrauded clients. It is simply unjust for the government to, on the one hand, attempt to deny Mr. McLellan's access to witness testimony, while, at the same time, contending that the contemporaneous out-of-court communications by those same witnesses should be excluded as hearsay. Again, to the extent the Court wishes to rule on the admissibility of particular documents prior to trial, Mr. McLellan respectfully requests the opportunity to provide an *ex parte* explanation of his intended use for each exhibit and why that intended use does not violate the general rule against hearsay.

3. *Exclusion of the Exhibits would Violate Mr. McLellan's Sixth Amendment Right to a Complete Defense.*

Finally, assuming that the Court disagrees with Mr. McLellan on every one of the evidentiary points discussed above, wholesale exclusion of the twenty-nine possible defense exhibits cited in the government's motion would result in a denial of Mr. McLellan's Sixth Amendment right "to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). As Mr. McLellan has argued elsewhere, rules of evidence must give way to this

Constitutional guarantee when the two are incompatible.  *See* Dkt. 379 at 8 (citing *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006)); *see also United States v. Scheffer*, 523 U.S. 303, 315 (1998) (explaining that Court has invalidated evidentiary restrictions that "significantly undermined fundamental elements of the defendant's defense").  Here, the exhibits targeted by the government include (1) emails from State Street legal and compliance personnel suggesting approval of the very charging practices alleged to have been fraudulent; (2) email exchanges, in the midst of an alleged "open-ended" conspiracy to charge undisclosed commissions wherever "the opportunity presented itself," Dkt. 354 at 2, in which Mr. McLellan expressly directed disclosure of commissions to the client; and (3) emails and calls from the very same time period in which the government perceives "devastating" evidence of guilt, Dkt. 354 at 3, where Mr. McLellan repeatedly cites contractual language and ongoing review by legal/compliance as informing his actions.  These pieces of evidence, among others, are central to the charges against Mr. McLellan and vital to his good-faith defense.  Exclusion of the evidence would, therefore, significantly undermine his defense effort.

**B.  Motion to Require Pre-Trial Disclosure of Impeachment Audios**

In another attempt to invert a well-worn principle of law, the government asks that this Court preclude Mr. McLellan from using audio recordings to impeach its witnesses without providing advanced notice.  This request runs counter to the general rule that criminal defendants are not required to disclose impeachment evidence prior to trial.  *See, e.g.*, *United States v. Eason*, 829 F.3d 633, 638 (8th Cir. 2016); *United States v. Gray-Burriss*, 791 F.3d 50, 57 & n.2 (D.C. Cir. 2015) (citing cases).

The government points to Fed. R. Evid. 613 as the legal authority for this aspect of its

motion. The rule provides, in pertinent part that, "[w]hen examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney." Fed. R. Evid. 613(a). The ensuing subsection adds that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it." Fed. R. Evid. 613(b).

As the First Circuit unequivocally stated in the only applicable case cited by the government, Rule 613 contains "no specification of any particular time or sequence." *United States v. Hudson*, 970 F.2d 948, 955 (1st Cir. 1992) (citation omitted). The Rule, therefore, lends no support to the suggestion that pre-trial disclosure of full transcripts is required. *See id.* (holding that Rule 613(b) was satisfied so long as the witness was "available to be recalled in order to explain the [inconsistent] statement during the course of the trial"). To the extent necessary, immediately prior to using an audio to impeach a government witness, Mr. McLellan can provide transcripts sufficient to review for Rule 613 purposes, or, for audios with respect to which no transcript has been prepared, a substantially verbatim summary of the portion of the call that counsel intends to play.[4] Nothing more is required by Rule 613.

The government explains the purported need for pre-trial disclosure by stating that the

---

[4] The government's contention that it must be able to review the transcripts prior to trial is belied by its acknowledgement that "the transcripts themselves are, of course, not evidence." Dkt. 357 at 11. Mr. McLellan has no legal obligation to provide the jury, much less the government or its witnesses, with any transcripts. Rather, transcripts simply serve as aids for the jury's reception and consideration of evidence. *See United States v. Carey*, No. 01-2439, 2003 WL 329041, at *5 (1st Cir. Feb. 14, 2003).

witnesses should have "an adequate opportunity to review [the audios] in context," presumably prior to their trial testimony. Dkt. 357 at 10. Ironically, this is akin to the very procedure that Rule 613 was expressly intended to abrogate. The Rule was codified against the background norm that "a cross-examiner, prior to questioning the witness about his own prior statement in writing, must first show it to the witness." Fed. R. Evid. 613, advisory committee notes. Rule 613 was designed to "abolish[] this useless impediment[] to cross-examination." *Id.* The language requiring disclosure, upon request, to the "adverse party's attorney" is not to the contrary. Again, as the First Circuit has acknowledged, the Rule does not provide any specific time for such disclosure. Mr. McLellan intends to disclose the relevant audios, and provide transcripts or summaries to the extent required, immediately prior to using them in cross-examination. This is more than enough to satisfy Rule 613(a)'s requirement of disclosure to opposing counsel, which was solely intended "to protect against unwarranted insinuations ***that a statement has been made*** when the fact is to the contrary." Fed. R. Evid. 613, advisory committee notes (emphasis added); *see also Hall v. Clifton Precision*, 150 F.R.D. 525, 529 n.8 (E.D. Pa. 1993) ("[T]he requirement that counsel be shown the document exists only to assure counsel that the document actually exists, not to allow counsel to prepare the witness to testify about it."). Here, of course, there can be no dispute that statements reflected in State Street audio recordings were, in fact, made. *See* Dkt. 364 at 7-8 (representing that the authenticity of these recorded calls is not disputed).

Aside from being unsupported by legal authority, requiring pre-trial disclosure of all audios to be used for impeachment purposes would not be practical. The government's principal witnesses have presented different narratives in a variety of different settings. Therefore, Mr.

17

McLellan is not in a position to fully predict their trial testimony, or any resulting inconsistencies with prior statements, until the witnesses provide that testimony.  To the extent Mr. McLellan is able to identify potentially relevant recordings, the government has access to all of the same files and has an equal, if not greater, ability to do so.  If, as the government represents, it has reviewed "only a fraction" of the audios, that is simply not Mr. McLellan's fault.  Dkt. 357 at 10.  The government's failure to review all relevant audio evidence pre-trial does not alter the Federal Rules of Evidence.

The government's suggestion that it is a potential victim of "trial by ambush" rings hollow.  Dkt. 357 at 10 n.3.  No unfairness will result from Mr. McLellan's possible, and proper, use of prior inconsistent statements of government witnesses for impeachment purposes.  Indeed, the relevant audio recordings have been in the government's possession far longer than the defendant's, and the government has been aided by State Street which has provided a selection of allegedly inculpatory audios for the prosecution as part of its "corporate cooperation" against Mr. McLellan.  After having several years to investigate this matter, the government cannot credibly claim that it has had insufficient opportunity to prepare.  This is especially so given the government's virtually unfettered access to its own witnesses as well as to State Street in general.  In short, it is not Mr. McLellan's responsibility to ensure that government witnesses testify in a manner consistent with their past statements.[5]

---

[5] The government's complaints on this point are rendered even less convincing in light of its recent assertion that superseding the indictment less than four months prior to trial to add an entirely new substantive count, entailing over 58,000 pages of new document discovery, posed only a "minimal" evidentiary burden.  Dkt. 298 at 1.

## C. Conclusion

For the foregoing reasons, Mr. McLellan respectfully requests that this Honorable Court deny the government's Motion *in Limine* to Preclude Introduction of Self-Serving Hearsay and Undesignated Audio Recordings.

Respectfully submitted,

Ross McLellan
By his Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Dated: May 28, 2018

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, May 28, 2018, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg
