UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | No. 16-10094-LTS |
| ROSS MCLELLAN,<br>Defendant | ) ) ) ) ) | |

**DEFENDANT ROSS MCLELLAN'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF STATEMENTS OR REACTIONS BY STATE STREET EXECUTIVES**

In striking contrast to the position it took in its Response in Opposition to Defendant's Motion *in Limine* to Exclude Evidence of Concealment (Doc. 354)("Concealment Opposition"), in which it vigorously contended that the charged conspiracy continued in full force through the entire duration charged—February 2010 through September 2011— now, when it better suits its purposes, the government says that the alleged conspiracy "started to unravel beginning in June 2011." Government's Motion *in Limine* to Exclude Evidence of Statements or Reactions by State Street Executives (Doc. 359)("Motion") at 1. Only then is the government able to label the challenged evidence "*[e]x post*" and irrelevant. Motion at 1-2.  The essential flaw in the government's arguments is that they take an unacceptably myopic view of relevance and give no weight to the Sixth Amendment guarantee of "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). This Motion is yet another part of the government's efforts to prevent McLellan from defending against the serious charges leveled in this case and should be rejected.

The only real argument advanced by the government is that the proffered exhibits are not relevant (although it does include a passing mention of hearsay). *See* Motion at 3-4. As this Response will demonstrate, the evidence that the government has identified (and the classes of exhibits that they exemplify) are relevant and admissible in support of McLellan's defenses. Also contrary to the government's arguments, the challenged exhibits will not "distract the jury from its evaluation of the charged coconspirators' conduct." Motion at 1. Quite the contrary, the evidence is directly relevant to the conduct of the parties involved here, including the alleged *uncharged* coconspirator, State Street. Nor, as will be clear from the discussion of the exhibits at issue that follows, is there the slightest "risk of turning the trial into an unnecessary referendum on State Street's handing of an unfolding scandal." *Id.*

At the outset, it is important to stress that relevance is not an exacting standard. Relevant evidence is "evidence having *any* tendency to make the existence of any fact that is of consequence" more or less probable. Fed. R. Evid. 401 (emphasis added). This standard is "quite expansive" and creates a "not-too-difficult-to-meet standard." *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010). To be relevant, "the evidence need not definitively resolve a key issue in the case—it need only move the inquiry forward to some degree." *Id.* (citations omitted). Thus, any evidence that has a *tendency* to make it less probable that McLellan had the requisite culpable *mens rea*—essential elements of each of the offenses with which McLellan is charged—is relevant.

In considering the admissibility of the challenged exhibits, it is also important to keep in mind that the Federal Rules of Evidence are to be "construed so as to administer every proceeding fairly . . . to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102. *See, e.g., United States v. Bailey*, 581 F.2d 341, 347 (3d Cir. 1978)(Rule 102 provides "some leeway

. . . for the courts . . . which could cover the anomalous situation calling for admission of hearsay not covered by an enumerated exception"); *see also United States v. Carneglia*, 256 F.R.D. 384, 396 (E.D.N.Y. 2009)(ruling *in limine* that hearsay evidence was admissible despite the fact that it came within no exception to the hearsay rule because the defendant was disadvantaged by the delay in bringing charges against him). Here, we have the "anomalous situation" where McLellan has been seriously disadvantaged by his inability to obtain foreign evidence and the government's intransigence in refusing to assist him.[1]

### I. EXHIBIT B AND ANY SIMILAR EMAILS TO WHICH THE GOVERNMENT MAY OBJECT IN THE FUTURE.

Exhibit B to the government's Motion is an email sent by McLellan to State Street's General Counsel and State Street's Global Head of Legal, explaining how the British Government Pension Fund transition was conducted and how State Street was compensated for the execution of the transition. It further sets forth McLellan's understanding that the contract did not require State Street to disclose every revenue source, seeks clarification from the heads of the State Street legal department regarding whether State Street was required to disclose every State Street revenue stream to the client, and discusses whether further rebates to the British Government Pension Fund should be made. It is dated September 5, 2011, right in the midst of the time that the government contends

---

[1] The government also argues that it should be permitted, if the challenged evidence is admitted, to introduce State Street's deferred prosecution agreement "to rebut the suggestion that State Street somehow sanctioned the conduct at issue." Motion at 1, 4. In a separate filing, McLellan has shown why State Street's DPA should not be admitted into evidence. *See* Motion *in Limine* to Exclude the State Street Deferred Prosecution Agreement (Doc. 373). In any event, there is nothing in the DPA or the appended Statement of Facts that would rebut the suggestion that State Street condoned the markups. State Street is, after all, an unindicted coconspirator, and it was it, not McLellan, that reaped the profits that the markups represented.

in its Concealment Opposition that McLellan was, as an integral part of the conspiracy charged, actively concealing the undisclosed markups from State Street legal personnel. It was written in response to an email inquiring about whether State Street should rebate to the British Government Pension Fund the approximately $2 million in markups that State Street took on U.K. trades conducted as part of that transition.

This evidence is directly relevant to rebut the government's contention that McLellan concealed relevant facts from State Street counsel; indeed, it shows quite the opposite—that rather than engaging in concealment, McLellan was being fully transparent with the heads of the State Street legal department regarding the charging of undisclosed markups. Moreover, it provides important support for McLellan's defense that he believed in good faith that his actions were lawful. Were there an inculpatory September 5, 2011, email, the government would be clamoring for its admission, but, because the email is exculpatory and supportive of McLellan's defenses, the government opposes its introduction.

The government complains that the email should not be admitted because it contains statements of McLellan, Motion at 3, but this is no bar to admissibility. The email is not hearsay, as it will not be offered for the truth of the statements made therein. What is critical for present purposes is that the statement was made—that McLellan made these disclosures to State Street counsel during the period that the government contends that McLellan was concealing from State Street counsel the taking of markups on the British Government Pension Fund transition. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee note. In addition, the email is directly relevant to McLellan's state of mind, and "[w]here,

as here, the statement is offered as circumstantial evidence of [a defendant's] state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted." *United States v. Salameh*, 152 F.3d 88, 112 (2d Cir. 1998). *See, e.g., United States v. DeSimone*, 488 F.3d 561, 568 (1st Cir. 2007)(An out-of-court statement made by or to a defendant may be admissible as "circumstantial evidence of [the defendant's] state of mind at the time."); *United States v. Yagi*, 2013 WL 10570994, at *3 (N.D. Cal. Oct. 17, 2013)(defendant's emails were "not hearsay as they [were] are not being offered for the truth of the matter asserted, but rather as circumstantial evidence of Defendant Wong's state of mind").[2]

The email is also admissible under Fed. R. Evid. 803(3) as a statement of McLellan's then-existing state of mind. To be admissible under Rule 803(3), the declaration "must mirror a state of mind, which, in light of all the circumstances, including proximity in time, is reasonably likely to have been the same condition existing at the material time." *United States v. Sabean*, 885 F.3d 27, 41 (1st Cir. 2018). The material time here is the pivotal August 22, 2011, to September 30, 2011, time span, the period during which the government will seek to prove that McLellan was actively concealing the markups from State Street legal personnel. The statement to Phelan has direct bearing on McLellan's state of mind at that time and is highly relevant to dispute the charge that he engaged in concealment relative to the British Government Pension Fund markups. In addition, the admission of the email is necessary in the interests of completeness, "because it was necessary to complete the

---

[2] For further discussion of this basis for admissibility, *see* Defendant Ross McLellan's Opposition to the Government's Motion *in Limine* to Preclude Introduction of Hearsay and Undesignated Audio Recordings at 5.

5

story of the charged offenses." *United States v. Leavitt*, 878 F.2d 1329, 1339 (11th Cir. 1989).[3]

## II. EXHIBIT C AND ANY SIMILAR EMAILS TO WHICH THE GOVERNMENT MAY OBJECT IN THE FUTURE.

The two pertinent portions of Exhibit C are the trade confirmations attached to the June 22, 2012, email and the email sent on April 6, 2011, the day before trading began on the third tranche of the Irish Government Pension Fund transition, by the Equity Trading Division Manager for State Street Global Market ("SSGM"), to a State Street compliance officer, seeking her advice regarding how to properly report markups taken on the trades to be conducted. The June 22, 2012, email was included in the exhibit to provide context for the trade confirmations, and McLellan does not seek to have the email itself admitted into evidence. Since the government's objection to this exhibit is that it is a "summar[y] of findings by individuals gathering information for the internal investigation," Motion at 3, it may be that the government does not object to the April 6, 2011, email or the trade confirmations.

The relevance of these exhibits is obvious: they show SSGM traders actively seeking to ensure that they complied with the applicable disclosure requirements after the client itself requested "net (marked up) prices" and trade confirmations showing that the markups were disclosed. The email provides direct refutation of the government's contentions that markups were taken secretly, without disclosure to the client, and that State Street compliance personnel were kept in the dark about markups being taken.

The trade confirmations are clearly admissible under Fed. R. Evid. 803(6) as State Street

---

[3] For further discussion of the rule of completeness, *see* Defendant Ross McLellan's Opposition to the Government's Motion *in Limine* to Preclude Introduction of Hearsay and Undesignated Audio Recordings at 8-10, incorporated by reference herein.
6

business records: they were made at or near the time of the trade (a fact established by the dates on the trade confirmations) by someone with knowledge, they were kept in the regular course of State Street's business, and producing trade confirmations was a regular practice of State Street (indeed, it was required by law).

The email is also admissible under Rule 803(6). The present-day fact of the matter is that large international corporations such as State Street cannot function without email, which has become the primary mechanism for business communications. *See, e.g., Rogers v. Oregon Trail Elec. Consumers Co-op.*, Inc., 2012 WL 1635127 at *8 (D. Or. May 8, 2012)("The fact remains . . . that as businesses look to communicate in a cheaper and more efficient manner, formal memoranda and paper communication increasingly have given way to email and other electronic media"). State Street not only regularly uses email to conduct its business but also keeps and maintains company emails, as shown by the huge volume of State Street emails produced by State Street to the government and to McLellan. Courts have increasingly recognized that emails should, if the proper foundation is laid, be admissible as business records.[4] At trial, if the government contests the admissibility of the email or the trade confirmations as business records, McLellan will lay the necessary foundation for the their admission.

Admission of the email and the trade confirmations will further the interests of justice. This

---

[4] *See, e.g., Braggs v. Dunn*, 2017 WL 426875, at *1 (M.D. Ala. Jan. 31, 2017); *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 141 (S.D.N.Y. 2015); *United States v. Parnell*, 2015 WL 3447250 at *8 (M.D. Ga. May 28, 2015); *Kearney Partners Fund, LLC v. United States*, 2013 WL 12153527 at *1 (M.D. Fla. Sept. 13, 2013);*Volterra Semiconductor Corp. v. Primarion, Inc.*, 2011 WL 4079223 at *7 (N.D.Cal. Sept. 12, 2011); *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, 2008 WL 1999234 at *12-*13(S.D. Tex. May 8, 2008); *Pierre v. RBC Liberty Life Ins.*, 2007 WL 2071829 at *2 (M.D.La. July 13, 2007); *DirecTV, Inc. v. Murray*, 307 F.Supp.2d 764, 772-73 (D.S.C. 2004); *see also Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 189 (E.D.N.Y. 2011) (finding email likely to be admissible at trial).

Court is well aware of the difficulties that McLellan has encountered in obtaining evidence located in foreign countries and has recently noted that those difficulties "potentially raise[] fairness or due process considerations in a case such as this involving foreign victims." Order, May 15, 2018 (Doc. 350) at 2. The problems with respect to obtaining evidence from the Irish Government Pension Fund are particularly acute. As the Court is aware, McLellan has been unable to obtain documents from the Irish Government Pension Fund, and the government has refused to provide him any assistance in the matter. Nevertheless, the government will be presenting witnesses from the Irish Government Pension Fund. This email and the trade confirmations provide an important counterpoint to the government's theory of fraud in connection with the Irish Government Pension Fund transition and should be admitted into evidence.

The April 6, 2011, email is also admissible for a non-hearsay purpose, *i.e.*, not for the truth that the Irish Government Pension Fund requested net pricing, but instead to show that State Street compliance was made aware that markups were being taken on transition trades.

### III. EXHIBIT D AND ANY SIMILAR EMAILS TO WHICH THE GOVERNMENT MAY OBJECT IN THE FUTURE.

Exhibit D is an email from an attorney from the Herbert Smith law firm, outside U.K. counsel brought in to consult regarding a transition conducted for the Middle Eastern Sovereign Wealth Fund, to the head of State Street EMEA's legal department, and State Street's Managing Counsel for Global Markets, EMEA, recounting the contents of a conference call that took place on April 11, 2011, regarding the existing transition management agreement template and the changes it needed. The attorney was a participant in the conference call, as was Ed Pennings. It is highly relevant, as it concerns State Street's practices relative to fees and costs charged to EMEA transition

management clients. This email should be admitted under Fed. R. Evid. 807, which permits the introduction of out-of-court statements if "(1) the statement has the equivalent circumstantial guarantees of trustworthiness [as Rules 803 or 804]; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." The email has sufficient guarantees of trustworthiness, as the attorney had no reason not to provide State Street counsel with an accurate accounting of what transpired during the conference call, the contents of which concern matters at issue in this case and are thus relevant, as are the handwritten notes that she took during the call, which McLellan will also seek to admit. While Pennings was a participant in the call, he will be testifying as a cooperating government witness, and McLellan should not be forced to be dependent on the possibility that Pennings will actually be truthful regarding the contents of the call. Admission of this email "will best serve the purposes of these rules and the interests of justice." As the Court is aware, McLellan has been unable to depose the attorney, and she has adamantly refused to participate voluntarily in these proceedings, either through deposition or trial appearance.

The email is also admissible as evidence of Pennings' then-state of mind. *See* Defendant Ross McLellan's Opposition to the Government's Motion *in Limine* to Preclude Introduction of Hearsay and Undesignated Audio Recordings at 13, incorporated by reference herein.

### IV. EXHIBIT A AND ANY SIMILAR EMAILS TO WHICH THE GOVERNMENT MAY OBJECT IN THE FUTURE.

Exhibit A is an email from a State Street executive, to McLellan dated September 27, 2011, recounting the opinion of their boss that the British Government Pension Fund matter was

"overblown." This email is not hearsay, as it is not being offered for the truth of the matter asserted. *See Franchina v. City of Providence*, 881 F.3d 32, 50 (1st Cir. 2018)("Out-of-court statements are considered 'nonhearsay' when they are offered not for the truth of the matter but for some other purpose.").[5] Instead, this exhibit is offered as evidence of McLellan's good faith and lack of criminal *mens rea* during the period when the government alleges that McLellan was engaging in concealment relating to the British Government Pension Fund. The government contends that McLellan tried to hide from the British Government Pension Fund that markups were taken on U.K. trades so that State Street would be able to keep the roughly $2 million in markups it had taken on those transactions and also that he tried to conceal these matters from State Street itself. This email, and the effect it would have had on McLellan, are directly relevant to show that McLellan did not oppose the rebate to the client to further the alleged fraud but rather because he believed in good faith that the taking of markups on those transactions was permissible and that his own opinion was reinforced by the views of other senior management executives who wrestled for more than a month with the decision regarding whether to rebate additional markups to the British Government Pension Fund. "[T[he hearsay rule does not apply to statements that are offered to show what effect they produced on the actions of a listener." *United States v. Meserve*, 271 F.3d 314, 320 (1st Cir. 2001); *see also* Defendant Ross McLellan's Opposition to the Government's Motion *in Limine* to Preclude Introduction of Hearsay and Undesignated Audio Recordings at 5.

If the Court had doubts regarding the admissibility of the email because it was sent late in September 2011, McLellan requests that the Court defer ruling until the time of trial, which will

---

[5] For further discussion of why evidence such as this email is not hearsay, *see* Defendant Ross McLellan's Opposition to the Government's Motion *in Limine* to Preclude Introduction of Hearsay and Undesignated Audio Recordings at 4-5, 10-11.

permit the Court to assess the government's evidence regarding how long the alleged conspiracy lasted.

## CONCLUSION

For all the foregoing reasons, the government's Motion *in Limine* should be denied.

Respectfully submitted,
By his attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (telephone)
(617) 338-9538 (fax)
owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this 28th day of May, 2018, I caused the within Response to be served on all registered participants through its filing with this Court's CM/ECF system.

**/s/ Martin G. Weinberg**
Martin G. Weinberg