UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-10094-LTS |
| | ) | |
| ROSS MCLELLAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S RENEWED MOTION TO SEVER COUNT SIX**

The government respectfully submits this response in opposition to the defendant's renewed motion to sever Count Six.  The Court has already decided that McLellan has "no basis" for his severance request.  Dkt. 306 at 2.  The defendant's renewed motion adds nothing to change that calculus.

In reaching its prior conclusion, the Court noted that (1) the scheme to defraud the U.S. Insurance Company charged in Count Six was "similar (though not identical) [to the] schemes to defraud the foreign victims identified in connection with the original charges"; (2) the alleged conduct occurred "during the same time period relying on assistance from at least some of the same individual traders"; and (3) the alleged "conduct supports wire fraud charges under the same general criminal statute."  Id. at 3.  The Court further noted that "at least several of the same witnesses will testify about facts material to proving all six counts in the Superseding Indictment," and that "it appears likely that much, though perhaps not all, of the evidence admissible at a trial of Counts 1 through 5 also would be admissible at a trial of Count 6, and vice versa, under Federal Rules of Evidence 404(b) and 403."  Id.  None of those facts has changed.

As an initial matter, the defendant's contention that "there is no meaningful overlap in the evidence or witnesses" between Count Six and the remaining counts is untrue. As the defendant concedes in the same motion, the government intends to call as witnesses two fixed-income traders who were involved in the trading of bonds for *both* the U.S. Insurance Company *and* other alleged victims. Their testimony will provide important evidence about the domestic *and* foreign frauds, and will establish the common nature of the schemes, including, *inter alia*, the fact that McLellan personally directed them to charge hidden commissions in contravention of the written trading instructions they received for the transitions conducted for the U.S. Insurance Company *and* the EMEA victims; that the receipt of such instructions from McLellan was highly unusual; and that the charging of hidden commissions was unprecedented in their experience at State Street and contrary to their understanding of how the bank charged its customers. One of the defendant's co-conspirators in the EMEA fraud, Edward Pennings, will testify that the defendant made contemporaneous admissions to him about the fraud on the U.S. Insurance Company. The government will also call a federal agent to testify about admissions the defendant made about State Street's charging practices when he was interviewed in early 2012, shortly after the scheme was uncovered and he was fired from the bank. And the government intends to call another agent or keeper of records to introduce additional documents and records containing admissions of the defendant. All of those admissions are relevant to the frauds on the U.S. Insurance Company *and* on the EMEA victims.

More broadly, the general background testimony concerning the nature and operation of the transition management business, the business context in which the defendant committed the alleged frauds, and his motives will all be relevant and overlapping with respect to the U.S. Insurance Company and the EMEA victims.

McLellan's remaining arguments are likewise untrue, frivolous, or both.

First, McLellan's contention that Counts One through Five differ from Count Six because they are "subject to foreign laws," is untrue. Foreign law is irrelevant to this proceeding. Similarly, McLellan's contention that Count Six should be severed because it does not involve a transition management agreement ("TMA") is frivolous. Indeed, as McLellan concedes, one of the transitions at issue in Count One—the transition for the Dutch Pension Fund—*also* did not involve a transition management agreement. More importantly, McLellan's contention that each of the counts "must be examined in light of the governing TMA" is untrue. Notwithstanding McLellan's effort to turn this into a breach of contract case, or a dispute about foreign law, he is charged with committing a knowing and intentional fraud. No contract and no law—in Europe *or* the United States—permits a banker to lie to his clients to separate them from their money. That is what McLellan is charged with doing.

Second, McLellan's contention that the affirmative misrepresentations charged in Counts One through Five "derive exclusively from EMEA's employees—principally Edward Pennings and/or Rick Boomgaardt," and that McLellan himself "is not alleged to have personally made a single affirmative misrepresentation to a single victim charged" in those counts, Dkt. 353 at 3, is untrue. While McLellan seeks to rely on his lack of direct contact with the victims as a defense, the evidence will show that McLellan personally directed or approved the misrepresentations that were made to the EMEA victims, including by supplying specific verbiage his co-conspirators used. Likewise, many of the affirmative misrepresentations to the U.S. Insurance Company were made at McLellan's direction or with his approval by one of his unindicted co-conspirators, the front-line salesperson for that account.

Third, McLellan's contention that Count Six involves a different statute is silly (and has already been specifically rejected by the Court).  Count Six requires only that the government prove one additional element:  that State Street, and/or the U.S. Insurance Company, were "financial institutions" that were "affected" by the defendant's fraud.  The evidentiary issues associated with this element are hardly the stuff of severance.  Relatedly, McLellan's contention that he would oppose the introduction of State Street's Deferred Prosecution Agreement ("DPA") in a trial of Counts One through Five but would seek to introduce it with respect to Count Six "as affirmative evidence that there is no realistic prospect of loss for State Street as a result of the DPA's existence," Dkt. 375 at 1, is absurd.  The government has suggested that it would seek to introduce the DPA only in two circumstances:  (1) if McLellan is permitted to argue that in September 2011 and thereafter, following the discovery of his fraud on the British Government Pension Fund, State Street and/or its senior executives condoned or ratified his conduct; and (2) if McLellan disputes the fact that State Street was "affected" by McLellan's conduct with respect to the U.S. Insurance Company.[1]  Moreover, McLellan's contention that he would seek to introduce the DPA as evidence that State Street did *not* suffer a new or increased risk of loss as a result of the U.S. Insurance Company fraud ignores the fact that the risk of increased loss is measured not from time the fraud is *discovered* (in this case, after the DPA had been executed), but rather from the time the fraud is *committed*.  See, e.g., United States v. Mullins, 613 F.3d 1273, 1280 (10th Cir. 2010) (rejecting argument that because fraudulent loans

---

[1] The government has separately moved to preclude McLellan from making the former argument (which would obviate the need to introduce the DPA in response), and has offered to stipulate to facts concerning the increased risk of loss to State Street (which would likewise obviate the need to introduce the DPA for that purpose).

4

had already been paid off "before fraud was discovered" a financial institution was not affected). It further ignores the fact that State Street was obligated to report the fraud on the U.S. Insurance Company to the government pursuant to the DPA, and has, in the wake of that disclosure, incurred substantial losses, including attorneys' fees related to the government's investigation, auditor fees, and a likely seven-figure loss associated with its liability to the U.S. Insurance Company.

Fourth, McLellan's contentions regarding the burdens of discovery, and his purported need for additional discovery with respect to Count Six, are overstated. McLellan's motion practice to date has made clear that he will *never* be satisfied with the amount of discovery he has obtained—the exculpatory documents he seeks seem somehow always to be the documents he has yet to receive. In any event, the key documents relevant specifically to Count Six number just a few dozen pages: a small number of emails (some of which were included in the government's original production, which included the defendant's entire email box for the relevant period), the proposal State Street submitted to win the assignment, the pre-trade and post-trade reports, and two audio recordings of the defendant instructing traders what commissions to add (one of which was included in the government's original production).[2] Months ago, the government provided the defendant with a binder of these "hot documents" to expedite his review. The remaining discovery the government has provided, or that the defendant has demanded from State Street or the U.S. Insurance Company, numbers in the

---

[2] As the defendant himself points out, there was no transition management agreement associated with the deal.

thousands of pages (the bulk of it redundant), and was produced in the form of a searchable electronic database.[3]

McLellan's argument that he "would never be forced to trial in less than four months" were Count Six a stand-alone case, Dkt 353 at 11, is debatable but also irrelevant. Count Six is *not* a stand-alone case. It did not arise in a vacuum, nor is the conduct it alleges different in kind from the conduct previously alleged.[4] Rather, Count Six alleges a scheme conducted at the same time, in the same manner, and involving some of the same players, as Counts One through Five.[5]

---

[3] The defendant's contention that he is expecting additional productions from the U.S. Insurance Company is likewise exaggerated. On Saturday, four days after the defendant's supplemental brief was filed, the U.S. Insurance Company made that production. It consists of 11 pages. The government has been advised by counsel for the U.S. Insurance Company that this completes its production to the defendant, with the exception of links it intends to provide to publicly available filings that simply describe the role of the U.S. Insurance Company (and its affiliates) as service providers and managers to the defrauded funds.

[4] Indeed, it is commonplace in this district (and others) for indictments to be superseded, and to proceed to trial, far less than four months before trial. Cf. United States v. Grossman, 843 F.2d 78, 82 (2d Cir. 1988) (affirming conviction where securities fraud indictment was superseded two days before trial to add ten counts involving new transactions, to identify a new unindicted co-conspirator, and to expand the date range of the conspiracy from one week to more than one year).

[5] The government will not rehearse here its prior arguments addressing the admissibility of this same evidence pursuant to Fed. R. Evid. 404(b) and 403, insofar as the defendant's renewed arguments simply repeat his prior arguments, which the Court has already rejected. See United States v. Brissette, No. 16-CR-10137-LTS, 2018 WL 1399293, at *4 (D. Mass. Mar. 19, 2018) (Sorokin, J.) (noting that reconsideration permitted "only if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust") (citation and further quotation marks omitted).

The fact that the defendant's conduct complicates his defense by providing additional, inconvenient evidence of his guilt is not a basis for severance.

## Conclusion

For the foregoing reasons, the government respectfully requests that the defendant's renewed motion for severance of Count Six be denied.

Respectfully submitted,

| | |
|---|---|
| SANDRA MOSER<br>Acting Chief, Fraud Section<br>Criminal Division | ANDREW E. LELLING<br>United States Attorney |
| By: /s/ William E. Johnston<br>WILLIAM E. JOHNSTON<br>Trial Attorney | By: /s/ Stephen E. Frank<br>STEPHEN E. FRANK<br>Assistant U.S. Attorney |

## CERTIFICATE OF SERVICE

I certify that on May 28, 2018, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

/s/ Stephen E. Frank
STEPHEN E. FRANK