UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 16-10094-LTS |
| ROSS MCLELLAN, | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
*IN LIMINE* TO ADMIT FOREIGN DEPOSITION TESTIMONY INTO EVIDENCE**

The government respectfully submits this response in opposition to the defendant's motion *in limine* to admit into evidence the civil deposition testimony of two former State Street attorneys, Krystyna Beck and Simone Paul. The gravamen of the defendant's motion is that the testimony should be admitted because the witnesses are purportedly "unavailable," insofar as they are beyond the subpoena power of the Court, will not agree to testify voluntarily, and there is insufficient time remaining before trial to compel their testimony via letters rogatory. Left unsaid is that this situation is entirely a product of the defendant's own making: having recognized the purportedly "relevant and essential" nature of their testimony more than a year ago, and moved to compel that testimony for purposes of the parallel civil proceedings, the defendant chose *not* to simultaneously compel their testimony for purposes of this case—instead selecting a path that would shut the government out of the depositions and allow him to "lock in" the witnesses' testimony in a one-sided proceeding, while gambling that he would then be able to get a second bite at the apple at trial, or persuade the Court to admit their one-sided testimony instead. Such tactical maneuvering should not be permitted.

The testimony should not be admitted because the witnesses are not unavailable in the sense contemplated by Rule 804, and because the Securities and Exchange Commission ("SEC"), the plaintiff in the civil proceeding, did not have a similar motive to cross-examine the witnesses fully in the depositions, as the government would have to cross-examine them at trial—and the SEC did not, in fact, do so. The testimony is also not admissible pursuant to the residual hearsay exception, for the reasons set forth below.

    I.    The Defendant's Strategic Choices, *Not* His Inability To Compel Witness Testimony, Have Yielded the Present Situation

The defendant's contention that, absent the depositions, he will be "deprived of important defense evidence that cannot be obtained in any other way," Def. Br. at 2, is untrue and ignores the fact that his purported inability to obtain the evidence he seeks is a situation of his own making. Likewise, the government respectfully disagrees with the Court's suggestion, in its recent Order, that "the more limited power available to McLellan to compel production of witnesses or documents from outside the United States as compared to within the United States potentially raises fairness or due process considerations in a case such as this one involving foreign victims." Dkt. 350 at 2. Indeed, the relevant fairness concerns here are the *government's* and the *public's* right to a full and fair trial—including the right to cross-examine defense witnesses—*not* McLellan's right to call witnesses. This is demonstrated by the fact that McLellan *did*, in fact, compel the testimony of Beck and Paul—which is why their depositions occurred. Yet McLellan made a strategic choice to seek that testimony *only* in the parallel civil proceedings—despite the fact that when he moved to do so, in March 2017, this case had been pending for a year, and despite the fact that he advised Judge Woodlock in the civil case that the requested testimony was "relevant and essential to [his] understanding of what was permitted under the relevant [transition management] contracts and authorized by State Street's legal

2

team." SEC v. McLellan, 16-cv-10874-DPW, Dkt. 26 at 3.  McLellan, represented by highly experienced and capable counsel, knew exactly what he was doing.  He did not make a simultaneous motion for a Rule 15 deposition—which would have permitted any depositions to be used in the criminal case, but would have meant that the government had a full and fair opportunity to object to his questions and his use of hearsay exhibits and to cross-examine the witnesses.  Instead, he chose to take the risk of having to seek successive letters rogatory again, closer to trial, if he wanted to use their testimony in this case.  That was a considered decision.  Now, having run out of time to pursue the letters rogatory process a second time before trial, McLellan cannot complain of an inability to obtain the testimony he deliberately chose not to seek in a timely way.[1]  The remedy the defendant seeks—admitting all or part of depositions to which the government was not a party—would be profoundly unfair to the prosecution.  It would deprive the government of its right to the adversary process, validate the defendant's decision to use the civil proceedings as an end-run around the criminal rules, and set a dangerous precedent.

    II.       The Defendant Has Not Satisfied the Requirements of Rule 804(b)(1)

The defendant's attempt to introduce the prior deposition testimony does not satisfy the requirements of Federal Rule of Evidence 804(b)(1) for admitting the prior testimony of unavailable witnesses, because the witnesses are not unavailable within the meaning of the rule

---

[1] At some point, litigants need to live with the choices they make.  For its part, the government has likewise been unable to obtain the testimony of a key witness who resides in the United Kingdom, who voluntarily agreed to a proffer interview, but more recently declined to appear for testimony at trial, even via video conference.  Like the defendant, the government could have sought to compel her testimony—but having not moved to do so in a timely way, is now unable to do so in time for the trial, and must live with the consequences of its decision.

and the SEC did not have a similar motive as the government would have at trial to develop their testimony.

Federal Rule of Evidence 804(b)(1) provides that the Court may admit "former testimony" given at a "lawful deposition" so long as (a) "the declarant is unavailable as a witness" at trial and (b) the adverse party had "an opportunity and similar motive to develop" the testimony through cross-examination. A declarant is considered "unavailable" if he "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance." Fed. R. Evid. 804(a)(5)(A). "[T]he similar-motive inquiry under Rule 804(b)(1) requires scrutiny of the factual and procedural context of each proceeding to determine both the issue in dispute and the intensity of interest in developing the particular issue by the party against whom the disputed testimony is offered." United States v. Bartelho, 129 F.3d 663, 672 (1st Cir. 1997). "The nature of the two proceedings—both what is at stake and the applicable burden of proof—and, to a lesser extent, the cross-examination at the prior proceeding—both what was undertaken and what was available but forgone—will be relevant though not conclusive on the ultimate issue of similarity of motive." United States v. DiNapoli, 8 F.3d 909 (2d Cir. 1993) (*en banc*).

As an initial matter, neither Beck and Paul are "unavailable" for purposes of Rule 804(b)(1), because, as set forth above, the defendant has not pursued "reasonable means" to secure their attendance. There is no dispute that McLellan would have been able to compel their attendance at a Rule 15 deposition or by video had he started the process of seeking letters rogatory in March 2017—when he did so for purposes of the civil case—or even at some reasonable later point. Instead, he waited until February 2018 to initiate the process—by which point this case had been pending for some 23 months, and the first trial date had already passed.

4

Indeed, this Court first adjourned the trial date on July 7, 2017—more than 15 months after McLellan was indicted— based specifically on the defendant's claimed need to obtain evidence from abroad via letters rogatory.  In granting that request, the Court noted that the delay would "accommodate[] the timeline for the letters rogatory," and that it did "not anticipate any further continuances in the scheduling of the trial."  Dkt. 195 at 2.  Still, the defendant waited another *seven months* to seek the testimony of Beck and Paul in this case.  Witnesses are not "unavailable" in such circumstances, where their unavailability is purely a product of the defendant's own inaction.  See Unicolors, Inc. v. Urban Outfitters, Inc., 686 F. App'x 422, 425 (9th Cir. 2017) (witness not "unavailable" where defendant "failed to use reasonable means to procure [witness's] attendance; it did not seek to determine whether [plaintiff] would make [witness] available as a witness until two weeks before trial and only began attempting to serve [witness] four days before trial").  In short, the defendant's decision to wait until shortly before trial to initiate a process he was fully aware would take time to compel the testimony of witnesses about whose existence he was fully aware does not satisfy his burden of using "reasonable means" to procur their attendance.

Nor did the SEC in the prior proceedings have a "similar motive to develop" the witnesses' testimony, and it did not, in fact, do so.  Indeed, courts have repeatedly declined to permit the introduction of SEC depositions against the government in criminal proceedings, concluding that the SEC in civil depositions does not have similar motives as the government does in criminal trials.  See, e.g., United States v. Martoma, No. 12 CR. 973 PGG, 2014 WL 5361977, at *4 (S.D.N.Y. Jan. 8, 2014) (noting that "USAO and the SEC cannot be regarded as the 'same party'" for purposes of Rule 804(b)(1) and quoting United States v. Whitman, 12 Cr. 125(JSR) (S.D.N.Y.2012) (Transcript of Proceedings on Aug. 14, 2012) at 2305–07, for the

proposition that SEC and U.S. Attorney not "same party" where U.S. Attorney played no role in deposition and no representative of U.S. Attorney's Office attended); cf. United States v. Kennard, 472 F.3d 851, 856 (11th Cir. 2006) (defendants failed to meet burden of demonstrating that SEC's motive in questioning witness at prior investigative deposition was the same as government's motive in criminal prosecution).

Judge Gardephe's decision in Martoma is instructive. In that case, the court *rejected* the defendant's effort to admit a deposition taken by the SEC of his former employer, even though the SEC provided the prosecutor an update on the deposition while it was in progress, and again immediately after it concluded. While Martoma involved an investigative deposition, rather than a deposition in preparation for trial, the court's discussion of the differences between the SEC's motive to examine the witness and the government's motive to cross-examine him during a criminal trial is equally applicable here. The court noted that "a lower standard of proof is applicable in a civil enforcement proceeding, and given that the vast majority of SEC enforcement actions end in settlements, the SEC's 'motivation and intensity of the examination is wholly different from what would be the case in [a prosecution brought by] the U.S. Attorney's Office.'" Martoma, 2014 WL 5361977, at *4.

The same is true here, as a simple examination of the civil deposition transcripts reveals. McLellan's counsel conducted an examination of Ms. Beck that spanned some 59 transcript pages. The SEC's cross-examination, by contrast, included 6 questions that consumed less than 3 pages. Similarly, the direct and re-direct examination of Ms. Paul spanned 86 pages of transcript. The cross-examination consumed just 6 pages. The SEC's restrained approach—which ignored entire categories of questions posed by McLellan's counsel—is understandable. Its case is on hold and a trial is unlikely. Moreover, even if a civil trial does occur, it will happen

only after the trial of this case has concluded, and the SEC's burden of proof will be substantially lower than the government's here.

Moreover, unlike Martoma, the government and the SEC were not in contact during the Beck and Paul depositions. The government had no insight into what the witnesses said, or the questions posed by the SEC on cross-examination, until after the proceedings had concluded, and did not receive transcripts until weeks later. Likewise, the SEC attorneys conducting the deposition had no insight into the issues that will be contested at the criminal trial. They had no knowledge of the government's order of proof and no indication of what witnesses it intends to call. They were not party to the extensive motion practice in this case (much of which occurred after the depositions). They were simply not similarly situated to the government, did not have the same information, and did not have the same incentives to cross-examine defense witnesses.[2]

### III. The Residual Hearsay Exception Does Not Apply and the Defendant Has Failed to Satisfy Its Requirements

The defendant's alternative attempt to offer the deposition testimony pursuant to the residual hearsay exception should also be rejected. "Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances." United States v. Awer, 770 F.3d 83, 94 (1st Cir. 2014). Those circumstances are not present here, where the defendant

---

[2] The defendant's reliance on the "predecessor-in-interest" language in Rule 804(b)(1) is likewise unavailing. On its face, the language suggest that it applies only where *both* proceedings were civil. But see United States v. McDonald, 837 F.2d 1287, 1292-93 (5th Cir. 1988) (suggesting the predecessor-in-interest clause may be applicable in a criminal setting when testimony offered against the government, but rejecting application in that case). Even to the extent it is applicable, however, numerous courts have concluded that "the term 'predecessor in interest' actually adds quite little to the rest of the requirements of the rule." Culver v. Asbestos Defendants (BP), No. C 10-03484 SI, 2010 WL 5094698, at *4 (N.D. Cal. Dec. 8, 2010) (citing conclusions in the Third, Fourth and Sixth Circuits).

simply delayed in moving to compel the attendance of the witnesses whose testimony he now seeks to introduce.

As an initial matter, the defendant should not be permitted to rely on the residual hearsay exception as an end-run around the requirements of Rule 804(b)(1). The residual hearsay rule "states explicitly that it applies only to 'statement[s] not specifically covered by any of the foregoing exceptions.' Since former testimony is 'specifically covered' by Rule 804(b)(1), subsection (b)(5) [which was subsequently transferred to Rule 807] cannot be employed as a means of circumventing its requirements." United States v. Barrett, 598 F. Supp. 469, 482 (D. Me. 1984), aff'd, 766 F.2d 609 (1st Cir. 1985) (rejecting application of residual hearsay rule to admit prior trial testimony after rejecting application of Rule 804(b)(1)).[3]

---

[3] The cases on which McLellan relies are not to the contrary. In both United States v. Sposito and United States v. Panzardi-Lespier, the court did not consider Rule 804(b)(1), but simply considered the prior testimony under Rule 804(b)(5). See Sposito, 106 F.3d 1042, 1048 (1st Cir. 1997); Panzardi-Lespier, 918 F.2d 313, 316 (1st Cir. 1990). The circumstances of those cases were also very different. In Sposito, the prior testimony was from a criminal trial, and featured vigorous cross-examination, and the declarant was found unavailable only after he was first held in contempt for refusing to testify after being immunized. 106 F.3d at 1046, 1049. Likewise in Panzardi-Lespier, the court noted the "special circumstances" of the case—including "that the declarant was unavailable because he had been murdered, and that one of the co-defendants had actually been charged with this murder"—and noted that the testimony was extensively corroborated by other evidence. 918 F.2d at 316. But see Markham Concepts, Inc. v. Hasbro, Inc., C.A. No. 15–419 WES, 2017 WL 6509242 (D.R.I. Dec. 19, 2017) (rejecting the application of Rule 804(b)(1) but admitting testimony pursuant to Rule 807). In Markham Concepts, however—a civil case from the District Court of Rhode Island—the declarant was deceased, and *both* the plaintiffs and the defendant were successors-in-interest of the litigants in the prior proceeding. Id. at *2.

Moreover, the Sposito Court summarized "the policies served by the residual hearsay exception," as providing flexibility "to deal with new and unanticipated situations," "preserv[ing] the integrity of the specifically enumerated exceptions," and "facilitat[ing] the basic purpose of the Federal Rules of Evidence: truth ascertainment and fair adjudication of controversies." 106 F.3d at 1049. Those policies counsel *against* admission of the deposition testimony here. The situation here is not new or unanticipated—the defendant simply failed to seek the witnesses' testimony in a timely way. The enumerated exceptions—specifically, Rule 804(b)(1)—deal with the situation and, as the Barrett Court

In any event, the testimony does not satisfy the requirements of the residual hearsay rule because it is not reliable, it is not evidence of a material fact, and it is not more probative on the points for which it is offered than other evidence that McLellan can obtain.

First, the evidence is not reliable because, as noted, it was not subject to meaningful cross-examination. While the government does not suggest that either witness failed to tell the truth, there is reason to believe that the witnesses may have been confused by some of the questions posed to them—a confusion that, in the absence of the ability to cross-examine them, the government has no way to establish. This would potentially mislead the jury and result in a denial of the government's right to a fair trial.

The testimony is also not reliable because the defendant seeks to use it as an opportunity to introduce other hearsay, including exhibits reflecting his own statements (to which the government has separately objected), and even an exhibit reflecting the handwritten notes of another third party, attorney Sarah Lewis, who is not expected to testify at trial. Accordingly, McLellan seeks to use the testimony to introduce double hearsay: Lewis's notes of what other people purportedly said. Those notes are not reliable evidence, they are not admissible, and they should not be admitted simply because the defendant asked a witness objectionable questions about them in a deposition at which the government was not present and had no opportunity to object.

Second, the testimony is not evidence as to material facts. As just one example, McLellan contends that it serves to prove that he did not "conceal the markups from State Street

---

made clear, the residual exception should not be used to circumvent those requirements. And the ascertainment of truth and fair adjudication of controversies weighs against the introduction of one-sided testimony in such circumstances, in contravention of the adversary process.

legal and compliance personnel." Def. Br. at 11. That is untrue, and the defendant does not cite a single portion of the deposition transcripts in support of this proposition. Indeed, there is *no* evidence that McLellan or his co-conspirators disclosed the hidden markups to State Street legal and compliance personnel, because they didn't. Neither Beck nor Paul testified that the markups were disclosed to them. Indeed, the evidence is precisely the opposite.

As another example, the testimony does not provide evidence that McLellan believed his actions to be "lawful and proper" based on the attorneys' review of the Middle Eastern Sovereign Wealth Fund transition management agreement. Id. Of course, neither witness *could* provide evidence as to what *McLellan* believed, and they did not do so. Neither witness spoke with McLellan in the relevant period; two of the six EMEA transactions with which McLellan is charged (including one for the Middle Eastern Sovereign Wealth Fund) occurred *before* the witnesses reviewed the Middle Eastern Sovereign Wealth Fund's transition management agreement; they did not review the agreement for anything to do with what McLellan is charged with doing; and the remaining transitions at issue in this case operated under *different* contracts.

Third, the deposition testimony is not more probative on the points for which it is offered than other evidence that McLellan can obtain. For example, McLellan does not need the attorneys' testimony to prove that "transition management clients were sophisticated and had their own lawyers helping them negotiate transition agreements." Def. Br. at 13. At trial, five transition management clients will testify, and McLellan can examine them on this point. McLellan also has retained experts who he has suggested will offer similar (albeit objectionable) opinions. And he has subpoenaed a U.S.-based State Street attorney, Melissa McKay, who can be asked similar questions. Likewise, McLellan does not need the attorneys' testimony to prove that "U.K. transition management agreements were signed and entered into by SSBEL and not

by SSGMIL, the broker dealer." Id. at 12.  The agreements are marked as exhibits and speak for themselves.  Similarly, McLellan does not need the lawyers' testimony as evidence that "Pennings worked closely with State Street U.K. legal personnel."  This point can be established through the examination or cross-examination of other witnesses, including Pennings himself, who will testify as part of the government's case-in-chief.

For all these reasons, McLellan's attempt to circumvent the requirements of Rule 804(b)(1) through Rule 807—and to use the residual hearsay rule as a work-around for his own failure to seek the testimony of Beck and Paul sooner—should be rejected.

## **Conclusion**

The Court recently rejected McLellan's renewed request for a continuance, Dkt. 339, reaffirming its earlier decision "that this trial will not be continued again"—a decision made when it first granted the defendant's request for a "generous extension" of the trial date last year, Dkt. 195 at 2.  In reaching its decision, the Court properly rejected the defendant's argument that, more than two years after his indictment—having gathered reams of documents from numerous third parties, in addition to the more than one million documents and thousands of audio recordings he received from the government; having retained investigators to approach potential witnesses; and having identified numerous current and former State Street employees, including U.S.-based attorneys and high-level executives as witnesses—he needs *still more* time to gather *still more* evidence from abroad.  Having made that decision, the Court should not now require the government to bear the negative consequences of the defendant's choice not to compel the testimony he seeks when he had plenty of time and extensive resources to do so.

For that reason, and for all the reasons set forth above, the government respectfully requests that the defendant's motion to admit foreign deposition testimony be denied.

Respectfully submitted,

| | |
|---|---|
| SANDRA MOSER<br>Acting Chief, Fraud Section<br>Criminal Division | ANDREW E. LELLING<br>United States Attorney |
| By:  */s/ William E. Johnston*<br>WILLIAM E. JOHNSTON<br>Trial Attorney | By: */s/ Stephen E. Frank*<br>STEPHEN E. FRANK<br>Assistant U.S. Attorney |

## CERTIFICATE OF SERVICE

I certify that on May 28, 2018, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

/s/ *Stephen E. Frank*
STEPHEN E. FRANK