UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) ) v. ) ) ) ROSS MCLELLAN, ) Defendant ) ) ) | No. 16-CR-10094-LTS |

### STATE STREET'S OPPOSITION TO DEFENDANT ROSS MCLELLAN'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO THE U.S. INSURANCE COMPANY TRANSITION

State Street Bank and Trust Company, a non-party in this action, respectfully submits this opposition to McLellan's motion to compel the production of privileged documents relating to the transition conducted for the U.S. Insurance Company.  Contrary to McLellan's assertions, State Street's privilege invocations were entirely proper.

McLellan's motion should be denied on numerous grounds.  He makes no argument that State Street has waived a privilege by sharing privileged information with a third party (which State Street has not done), and instead advances arguments about purported deficiencies in State Street's explanation of its privilege assertion.  There was nothing wrong with State Street's initial explanations, but in an effort to avoid a dispute, State Street has provided McLellan supplemental logs that provide the information he claims was lacking.  His motion should therefore be denied as moot.

In addition, McLellan has no constitutional right to invade State Street's privilege. McLellan's last-ditch argument is based almost entirely on a decision from the District of

1

Montana that this Court and others have recognized is inconsistent with Supreme Court precedent.

For these reasons, which are explained further below, State Street respectfully requests that the Court deny McLellan's motion.

## BACKGROUND

On March 15, 2018, State Street received a broad Rule 17(c) Subpoena from McLellan concerning a transition State Street conducted for the U.S. Insurance Company at issue in the indictment.  In recognition of the upcoming trial date, State Street conducted the expansive review McLellan requested on an expedited basis, notwithstanding the extraordinary burden and expense it imposed.  State Street ultimately produced, on a rolling basis, 54,962 pages of documents.

A very small fraction of the documents State Street produced in its final production—45 in total—were produced in a redacted form to protect State Street's privileges.  The basis for those redactions was apparent from the unredacted portions of the document, or its cover email, *e.g.*, the author, recipients, date of the document, and context revealing that the redacted information was privileged.  McLellan complains in his brief that a few documents were entirely redacted, but he does not inform the court that each of those documents was an attachment to a parent email that provides the necessary information to support the redaction.[1]

In addition, State Street withheld 51 privileged documents from production.  It produced a privilege log on May 18, 2018, which detailed for each withheld document:  (i) the document

---

[1] Consistent with his efforts to portray State Street's redactions as more significant than they are, he touts the page count of the redacted documents.  Of the 1,592 overall pages, the overwhelming majority consists of three duplicate, 500-page spreadsheets generated for State Street counsel Melissa Mckay long after the U.S. Insurance Company transition was completed.  These documents have nothing whatsoever to do with the Rule 17e-1 issue that is the focus of McLellan's motion.

type; (ii) subject of the email or file name of the document; (iii) all names in the to/from/cc/bcc fields of emails; (iv) the date and time of the email; (v) the privilege State Street asserted; and (v) a general description of the basis for the privilege assertion.  In nearly all instances, the description identified the name of the lawyer who was being asked for, or was rendering, legal advice.  Those lawyers, Melissa McKay, Lance Dial, and Nathan Chaney, worked exclusively within State Street's Legal Department and did not serve in a business function.

## ARGUMENT

### I.      McLellan's Premature Motion Is Moot

It is unfortunate that McLellan has taken up the Court's resources by prematurely filing a motion that could have been resolved, or at the very least, substantially narrowed, if he had met and conferred with State Street as he is required to do by Local Rule 7.1(a)(2).  The very first time McLellan expressed any complaint to State Street about its redactions or the content of State Street's privilege log was when he served this motion to compel.  McLellan never attempted to meet and confer with State Street before filing it.  Indeed, McLellan's certification that he purportedly complied with Local Rule 7.1(a)(2) states that he conferred with the *government*, not State Street.

This is not a technical failing.  Although State Street is confident that its redactions and initial privilege assertions were entirely proper, it would have agreed to provide additional information as part of a good-faith effort to avoid, or at least narrow, a dispute that may require the Court's attention.  To that end, State Street has concurrently provided McLellan a supplemental log that gives him even more information about the documents State Street withheld or redacted.  A copy is attached as Exhibit A.

Given McLellan's failure to comply with the meet and confer requirement, and State Street's provision of supplemental information, the Court should deny McLellan's motion as moot. *See, e.g., Daniels v. Am. Power Conversion Corp.*, 2007 WL 539643, at *4 (D.R.I. Feb. 15, 2007) (denying motion to compel because plaintiff produced a privilege log, "thereby mooting plaintiff's request"); *EEOC v. Tepro, Inc.*, 2014 WL 12562856, at *1 (E.D. Tenn. Aug. 29, 2014) (denying defendant's motion to compel as moot after plaintiff served supplemental log providing the information defendant complained was missing from the initial log); *In re Atmel Corp. Derivative Litig.*, 2010 WL 358533, at *1 (N.D. Cal. Jan. 29, 2010) (denying a motion to compel as moot after plaintiff stated that it would provide an updated privilege log).

While State Street is hopeful that the additional information it provided will entirely resolve any dispute McLellan may have, it remains willing to meet and confer with him about any particularized objections he may have. Even with trial approaching, that is the more efficient solution. For example, the only argument McLellan makes as to relevance or an informational need concerns documents relating to 17 CFR § 270.17e-1, which McLellan refers to as Rule 17e-1. As reflected in State Street's supplemental logs, only 5 of the documents State Street redacted or withheld concern that topic. While State Street does not believe McLellan has articulated a good basis for State Street's production of any documents, his broad waiver request is especially unnecessary for the substantial majority of State Street's privileged documents that have nothing to do with Rule 17e-1.

## II.     State Street Has Adequately Identified The Basis For Its Privilege Assertions

Although the party asserting a privilege has the burden to explain it, "[p]rivilege logs do not need to be precise to the point of pedantry." *See also In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001). State Street's initial assertions, whether through the log of withheld

documents or the context surrounding its redactions, provided ample information for McLellan to understand the basis of State Street's privilege assertion. *See, e.g., Bacchi v. Massachusetts Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 274 (D. Mass. 2015) (privilege log and/or redactions are sufficient if they "allow one to determine for each communication who created it, when it was created, to whom it was sent, the nature of the communication, and the subject matter to which the communication referred.").

Although McLellan seeks the production of all documents State Street withheld or redacted, regardless of their subject matter, he makes precious few arguments about particular log entries or redactions. Each of those arguments is now moot as State Street has now gone even further in explaining its privilege assertions and provided McLellan a supplemental log with additional information about the withheld or redacted documents. *See, e.g., ACQIS, LLC v. EMC Corp.*, No. 14-CV-13560, 2017 WL 2818984, at *3 (D. Mass. June 29, 2017) (deficiencies in privilege log could be cured "with, for example, information showing a connection between the information in the communication and a particular attorney or law firm, or information showing that the disputed document contains information from another undisputed document that is privileged.").

Indeed, even if there was a deficiency in State Street's initial assertions (which there was not), it would not warrant the widespread waiver McLellan seeks. For example, in *United States v. Philip Morris, Inc.*, 314 F.3d 612 (D.C. Cir. 2003), the trial court had found that a defendant waived a privilege by failing to log a certain document. The D.C. Circuit reversed, explaining that "[w]aiver is not automatic" and that "[a]s the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Id*. at 618; *see also In re Dep't of Justice Subpoenas to*

*ABC*, 263 F.R.D. 66, 71 (D. Mass. 2009) (Saris, J.)  (waiver of privilege is only appropriate where the responding party's conduct evinces a "deliberate pattern of delay" and is "egregious") (*citing Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 9–11 (1st Cir. 1991) (finding waiver of privilege when, three months after being served with a subpoena, a party "neither produced the requested documents, objected to the request, nor sought an extension of time from the district court within which to act."); 8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2016.1 ("Unless there has been a bad-faith failure to comply with a reasonable identification effort, automatically finding a waiver of the privilege would be unduly harsh").

Absent such circumstances, courts address deficiencies by allowing the party to supplement.  *See, e.g., LNV Corp. v. Hook*, 2015 WL 6153291, at *3 (D. Colo. Oct. 20, 2015) (allowing plaintiff to correct a privilege log that did not identify the recipients of many documents); *Cashman Equip. Corp. v. Rozel Operating Co.*, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009) ("[T]he majority approach by courts, when confronted by a privilege log that is technically deficient and that does not appear to have been prepared in bad faith, is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver").

In the logs attached as Exhibit A, State Street identifies, for both redacted and withheld documents:  (i) the author of all communications;[2] (ii) the recipient of all communications; (iii) the type of document or communication withheld; (iv) whether the document or communication sought, discussed, or implemented legal advice; (v) the name of the attorney from whom legal advice was sought or obtained; (vi) the subject matter on which legal advice was rendered, (vii)

---

[2]     There are seven documents for which State Street was not able to determine the author.  State Street was, however, able to determine that the documents were privileged based on the content of the cover email to which they were attached.

the date of the communication, if any; and (viii) the subject line of any communications.

Nothing more is required.  *See, e.g., In re Grand Jury Subpoena*, 274 F.3d 563 at 576

("[p]rivilege logs do not need to be precise to the point of pedantry."); *Bacchi v. Massachusetts*

*Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 274 (D. Mass. 2015) (privilege log and/or redactions are

sufficient if they "allow one to determine for each communication who created it, when it was

created, to whom it was sent, the nature of the communication, and the subject matter to which

the communication referred."); *Neelon v. Krueger*, No. 12-CV-11198-IT, 2015 WL 1037992, at

*4 (D. Mass. Mar. 10, 2015) (an adequate privilege log might include, as an example, "precise

dates, an identification of the nature of the communications, the approximate number of

documents involved, the name of all individuals receiving or sending particular communications,

and the general subject matter of the withheld documents").

McLellan muses that individual lawyers State Street identified might have been giving

business advice, not legal advice.  If that were so, State Street would not have withheld or

redacted the document.  Moreover, McLellan has overlooked the fact that the privilege

descriptions in State Street's logs specifically state that the document concerned "legal advice."

McLellan's motion provides no basis to question the sincerity or accuracy of those descriptions.

Furthermore, McLellan's musings that the State Street lawyers involved in the privileged

communications might have been providing business advice amounts to idle speculation.  Those

lawyers, Melissa McKay, Lance Dial, and Nathan Chaney, worked exclusively within the Legal

Department.  "There is a presumption that a lawyer in the legal department or working for the

general counsel is most often giving legal advice, while the opposite presumption applies to a

lawyer . . . who works for the Financial Group or some other seemingly management or business

side of the house."  *Boca Investerings P'ship v. United States,* 31 F. Supp. 2d 9, 12 (D.D.C.

1998).[3]

McLellan also cannot reasonably complain that a few of the documents State Street withheld were communications between non-lawyers.  In those cases, State Street has explained that the individuals were discussing, seeking, or implementing legal advice as well as the general subject matter of the advice and the name of the State Street lawyer who was involved.  *See, e.g.,* Ex. A. Entry Nos. 9, 16, 19, 29, 31. "The fact that communications are between non-lawyers does not per se waive the privilege." *Crane Sec. Techs., Inc. v. Rolling Optics*, *AB*, 230 F. Supp. 3d 10, 21–22 (D. Mass. 2017).  McLellan's motion fundamentally "disregards the realities of communications between attorneys and clients and between non-lawyers who share a common legal interest." *Id.* at 21; *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) ("[C]ommunications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege.").

## III.     McLellan Has No Constitutional Right To Invade State State's Privileged Communications

McLellan's last-ditch argument that he has a Sixth Amendment right to State Street's privileged communications is also unavailing.  His argument is based almost entirely on a single trial court decision from the District of Montana, which has no support in the law of this circuit or district.

---

[3] McLellan's reliance on United States v. Windsor Capital Corp., 524 F. Supp. 2d 74, 81 (D. Mass. 2007), is misplaced.  First, in Windsor Capital, the in-house counsel in question served not only as a lawyer, but as trustee of several entities implicated in the litigation.  As discussed above, Mr. Dial, Ms. McKay, and Mr. Chaney worked exclusively within the Legal department.  More importantly, Windsor Capital did not hold that the privilege was waived or inapplicable because of any alleged failure on Windsor's part adequately to distinguish between an in-house lawyer's business and legal roles, nor did it even find such a failure.  To the contrary, the majority of challenged documents in Windsor Capital were held to be privileged, and the few exceptions were held not to be privileged based on the descriptions in Windsor's privilege log and associated documents.  State Street submits that the descriptions in its privilege log, particularly as amended, are sufficient for the Court to determine whether the privilege attaches, as it did in Windsor Capital.

It should go without saying that the attorney-client privilege is "the most venerable of the safeguards afforded to confidential communications and is enshrined as such in the federal common law." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011) *(citing Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Moreover, the Supreme Court has made clear that a criminal defendant "does not have an unfettered right to offer testimony that is . . . privileged." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *see also United States. v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005) ("The right to present a defense . . .  does not displace traditional testimonial privileges").

The Supreme Court also rejected efforts to subject the attorney-client privilege to a balancing test, like the one for which McLellan advocates, which would somehow weigh the benefits of maintaining the privilege against the potential benefits of disclosure.  Specifically, in *Swidler & Berlin v. United States*, the Supreme Court held that the attorney-client privilege survived a client's death, and in so doing, rejected an argument that the privilege should yield if maintaining it would result in "extreme injustice" or the information sought was "of substantial importance."  524 U.S. 399, 406-09 (1998)  "Balancing *ex post* the importance of the information against client interests, even limited to criminal cases, introduces substantial uncertainty into the privilege's application.  For just that reason, we have rejected use of a balancing test in defining the contours of the privilege." *Id* at 409.  That should be the end of McLellan's argument, particularly insofar as he has made no persuasive showing of need, let alone showing something like "extreme injustice" that was insufficient in *Swidler & Berlin.*

Moreover, the Montana case McLellan cites in support of his argument, *United States v. W.R. Grace*, 439 F. Supp.2d 1125 (D. Mont. 2006), has been repeatedly criticized as being

inconsistent with *Swidler & Berlin* and other authority. [4]  Indeed, this Court did so in *SEC v.*

*Present*, explaining that *Grace* did not "contain much persuasive value" because it does not

discuss *Swidler & Berlin's* rejection of a balancing analysis.  2015 WL 9294164, at *2 & n.5 (D.

Mass. Dec. 21, 2015) (Sorokin, J.).  The Southern District of New York has added that "it is hard

to square the *Grace* Court's holding with the Supreme Court's emphatic 'reject[ion]' of the 'use

of a balancing test in defining the contours of the [attorney-client] privilege,' let alone its

observation that 'there is no case authority for the proposition that the privilege applies

differently in criminal and civil cases.'"  *United States v. Wells Fargo Bank, N.A.*, 132 F.

Supp.3d 558, 565 (S.D.N.Y. 2015) (quoting *Swidler & Berlin*, 524 U.S. at 408—09).

McLellan goes even further astray when he suggests that State Street may have provided

the information he seeks to the government.  State Street has done no such thing.[5]  Indeed,

McLellan belies his own argument by conceding that he "*is not in a position*" to argue that a

waiver occurred.  Br. at 9 (emphasis added).[6]  McLellan instead puts the cart in front of the horse

and asks for privileged documents to help him assess whether there has been a waiver.  That is

not how privileges work.

---

[4]      Even if *W.R. Grace* were controlling (or even persuasive), it is inapposite here.  *W.R. Grace*
involved several criminal defendants who sought to present a defense based on the advice of counsel.  Although
McLellan dances near that possible defense, it is telling that he is careful to avoid asserting such a position.  *See* Br.
at 4 (referring to McLellan's "*apparent* reliance" on SSGA's purported conclusions).
[5]      If State Street had, McLellan would have received the information from the government, either in
a document production or in a Form 302 report.
[6]      This concession also belies McLellan's musings that a mid-level manager, who was not
represented by State Street's counsel, *might* have shared privileged information with the government during her
interview.  McLellan floats this possibility based on a passing reference in a Form 302 report that this witness
recalled exchanges about certifications that the prices being charged were fair, on which legal personnel were
included.  *See* McLellan Mot. Ex. 3.  But the report he cites undercuts that assertion as it provides a summary of the
documents discussed during the interview, and even cites them by Bates number.  *See id.*  Those documents
contained no privileged information, and McLellan makes no argument to the contrary.  Furthermore, even if the
witness had revealed some privileged information, it would not amount to a waiver as she had no authority to waive
the company's privilege.  *See, e.g.*, *Bingham v. Supervalu Inc.*, 2014 WL 12792989, at *4 (D. Mass. July 11, 2014),
objections overruled, 2014 WL 5426955 (D. Mass. Oct. 24, 2014) ("[T]he power to assert or waive the 'corporate
attorney-client privilege rests with the corporation's management and is normally exercised by its officers and
directors.'" (quoting *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348 (1985) (additional
citation omitted)).

## CONCLUSION

For the foregoing reasons, State Street respectfully requests that the Court deny McLellan's Motion to Compel Production.

Respectfully submitted,

*/s/ John J. Butts*
John J. Butts (BBO No. 643201)
Harry Weiss (BBO No. 521180)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000
john.butts@wilmerhale.com

Dated: May 29, 2018

## CERTIFICATE OF SERVICE

I, hereby certify that on this date, May 29, 2018, a redacted copy of the foregoing document has been served on counsel of record in this matter via electronic mail.

*/s/ John J. Butts*
John J. Butts

11