UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

                 )
                 )
UNITED STATES OF AMERICA    )
                 )
     v.             )    No. 16-10094-LTS
                 )
ROSS MCLELLAN,       )
     Defendant       )
                 )
_____ )

**DEFENDANT ROSS MCLELLAN'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION TO ADMIT FOREIGN DEPOSITION TESTIMONY**

The government's efforts to portray itself as somehow a victim of McLellan's strategic machinations would be laughable did it not have such serious potential ramifications for McLellan's Sixth Amendment right to "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). The position in which McLellan now finds himself is not due to any artful strategy on his part but instead to the formidable procedural obstacles placed in the way of a defendant seeking to obtain foreign evidence—obstacles that the government has steadfastly refused to assist McLellan in overcoming by repeatedly opposing motions such as the motions to depose former State Street attorneys and the motion to exercise its MLAT powers to acquire otherwise unattainable documents from Ireland. The fairness concerns here do not lie with the government, but instead, as this Court has indicated, with McLellan. Order (Doc. 350) at 2.

The government's argument that McLellan made a strategic choice to seek the depositions of Ms. Beck and Ms. Paul only in the civil SEC proceedings simply ignores reality. McLellan could not move for Rule 15 depositions *simultaneously* with seeking the depositions in the civil case because, not knowing what the witnesses would actually say, he would not have been able to satisfy

the "exceptional circumstances" requirement of Rule 15.[1] Had he so moved in March 2017, when

he sought the civil depositions, the government would unquestionably have vigorously opposed the

motion on this ground. The government's contention that, had McLellan only moved for Rule 15

depositions in March 2017 he would now have admissible depositions is strikingly at odds with the

government's unabated opposition to the taking of Rule 15 depositions; had the government not

opposed McLellan's Rule 15 motion, the depositions would likely have taken place before now.

Once the depositions had shown that the witnesses did in fact have valuable testimony to

give, McLellan promptly moved to take Rule 15 depositions, which the government opposed. That

the civil depositions did not take place until February 2018 was not due to any delay on McLellan's

part. Judge Woodlock issued the Hague Convention order on March 17, 2017, and less than three

months later a representative of the British court had contacted counsel with an eye to setting up the

depositions. However, Freshfields, State Street's U.K. outside counsel, representing the witnesses,

proceeded to raise a series of procedural objections which took many months to resolve. Had State

Street, which has been actively assisting the government in its prosecution of McLellan, not allowed

its attorneys to delay the process in the U.K., the depositions would have taken place during the

summer of 2017. McLellan had no reason to believe, when he commenced the civil deposition

process in February 2017, that it would take almost a year to obtain the depositions. These

circumstances cannot in any sense be regarded as a matter of "choice" on McLellan's part. If there

is a dangerous precedent to be set here, *see* Opposition at 3, it lies not in any disadvantage to the

government, but instead in the government's depriving McLellan of important evidence in support

---

[1] Telling Judge Woodlock that the witnesses had information that was "relevant and essential" to McLellan's "understanding" of what was permissible under the contracts or authorized by the State Street legal team, Opposition at 2, is hardly the equivalent of being able to establish extraordinary circumstances for purposes of Rule 15. *See* Defendant Ross McLellan's Motion for Rule 15 depositions of Krystyna Beck and Simone Paul at 6-9.

of his defenses because of his "more limited power . . . to compel production of witnesses from outside the United States," Order (Doc. 350) at 2, through its opposition to Rule 15 depositions that would likely have been ordered months ago had it assented. All the procedural objections having already been resolved in the prior deposition proceedings, a U.K. court would have had the necessary time to order the depositions before June 4, 2018.

The depositions should be admitted under Rule 804(b)(1). McLellan, contrary to the government's argument, Opposition at 4-5, has pursued all "reasonable means" available to him to obtain the testimony of these witnesses, who have have steadfastly refused to participate voluntarily in these proceedings. As explained above and in his Reply to Government's Response in Opposition to His Motion for Rule 15 Depositions, McLellan could *not* have obtained the witnesses' testimony had he begun the Rule 15 process in March 2017.[2] For the government to now suggest that McLellan had only to ask for Rule 15 depositions to have been able to obtain them is disingenuous given its repeated objections to the Court's allowing them.

Also contrary to the government's argument, Opposition at 5-7, the SEC had a similar motive to develop the witnesses' testimony. The issues in the SEC case are precisely the same as those in the criminal case, at least insofar as the testimony of these witnesses is concerned. Testimony that helped McLellan or undermined the government's case would have had the same impact on the SEC civil action as it would on the government's criminal case. The SEC and the government were both "on the same side of the same issue" and "have a substantially similar degree of interest in prevailing on that issue." *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993). Since the same issues that

---

[2] In *Unicolors, Inc. v. Urban Outfitters, Inc.*, 686 Fed. App'x 422, 425 (9th Cir. 2017), the sole case that the government cites on this point, the defendant made no effort whatsoever to ascertain whether the witness would be available to testify until two weeks before trial, circumstances not remotely comparable to those in this case.

would be contested in the SEC case are the same as in this case, *i.e.*, whether McLellan knowingly and wilfully violated the securities laws of the United States by causing undisclosed markups to be charged to transition management clients, it can hardly be said that SEC attorneys "had no insight into the issues that will be contested at the criminal trial." Opposition at 7.  When it was opposing the depositions in the civil case, the government insisted that the two actions were substantively identical, *see* Defendant Ross McLellan's Motion to Admit Foreign Deposition Testimony into Evidence (Doc. 368)("Motion") at 7-8, but now, because it better serves its purposes, the government wants to pretend that the cases are too different for the SEC to have been similarly motivated at the depositions. They were not.

The deposition at issue in *United States v. Martoma*, 2014 WL 5361977 (S.D.N.Y. Jan. 8, 2104), on which the government relies, Opposition at 6, was only an investigative deposition, taken well before the defendant was indicted or enforcement proceedings instituted by the SEC. Here, by contrast, the depositions were taken well after both actions began, and the SEC, knowing it was foreseeable that the witnesses would be unavailable at any later SEC  trial and that the depositions would, in all likelihood, be introduced at that trial, had every incentive to develop the witnesses' testimony in the way most favorable to its position. What the *Martoma* court identified as the "most important[]" factor in its decision to exclude the depositions, was that the witness' deposition "was taken before much of the evidence to be introduced at Martoma's trial was developed." *Id.* at *4. Here, of course, the evidence had been well developed by the time of the depositions through the joint efforts of the SEC and the DOJ. *See* Motion at 6-7. The government knew that these depositions would be taking place. While it intervened in the SEC action to seek a stay that would have precluded the taking of depositions, it did not seek to participate in the depositions despite the ready foreseeability of McLellan's seeking to introduce them in the criminal case, particularly if the

4

government's efforts to prevent their Rule 15 depositions were successful, as they have been. That was its choice, and it must live with the consequences.

The existence of 804(b)(1) does not preclude the depositions' admissibility under the residual hearsay exception. On the contrary, "Rule 807 is applicable to hearsay of a type that a more specific rule also addresses, even if the particular hearsay evidence at issue does not quite meet the criteria for admission under the more specific rule." *Volland-Golden v. City of Chicago*, 89 F. Supp. 3d 983, 992 (N.D. Ill. 2015). Courts routinely turn to a consideration of whether prior testimony is admissible under Rule 807 if they find it not admissible under 804(b)(1); indeed, the court did so in *Martoma*. 2014 WL 5361977, at *5.   There is no reason to believe that the testimony does not have sufficient guarantees of trustworthiness. One will search the deposition transcripts in vain for the slightest indicium that these witnesses, both trained attorneys,  were "confused" by the questions asked. *See* Opposition at 9. That McLellan may use the depositions as a means of introducing other evidence, *id.*, does not render the testimony any less reliable. Sarah Lewis' notes were adopted by Simone Paul as an accurate representation of what occurred during the conversation they memorialized, in which Paul was also a participant. The government would have had no valid basis to object to the notes at Paul's deposition.

As McLellan had demonstrated, the deposition testimony is relevant to prove a number of material facts, Motion at 11-13, most of which the government has not challenged. The probative value of the deposition testimony is not lessened by the fact that government witnesses *might* testify to some of the same substance. *See* Opposition at 10-11. If McLellan can indeed elicit the testimony he seeks from witnesses at trial, it may be that he will not need to introduce the portions of the depositions that repeat the same matter.  But that is an issue best left for trial and not decided through an outright exclusion of the depositions in their entirety.

Respectfully submitted,
By his attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (telephone)
(617) 338-9538 (fax)
owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this 30th day of May, 2018, I caused the within Response to be served on all registered participants through its filing with this Court's CM/ECF system.

**/s/ Martin G. Weinberg**
Martin G. Weinberg

6