UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

———————————————————————
                                                    )
UNITED STATES OF AMERICA             )
                                                    )
v.                                                  )                    No. 16-CR-10094-LTS
                                                    )
ROSS MCLELLAN,                           )
           Defendant                        )
———————————————————————)

## STATE STREET'S EXPLANATION OF PRIVILEGE ASSERTION

As the Court directed in its order of June 5, 2018, State Street Bank and Trust

Company, a non-party in this action, respectfully submits this explanation as to why it has

not waived the privileges over a small number of emails that one of its in-house counsel

sent or received between November 2 and 4, 2010.  Over the course of this matter and the

government's investigation of State Street, there have been two waivers:  (i) State Street's

voluntary waiver to the government; and (ii) the waiver this Court found in its January 19,

2018 order (the "Order").  *See* Dkt. 273.  As explained in further detail below, the

privileged emails at issue here do not fall within the scope of either one.

### BACKGROUND

Approximately two weeks ago, on May 21, 2018, McLellan served State Street a

subpoena (the ***ninth*** subpoena he has issued to the company), which seeks five categories of

emails sent or created by State Street in-house lawyer Melissa McKay between November 2 and

4, 2010.  McLellan specifically requested any such emails that "relat[e] to:  (1) Riskless Principal

trading; (2) Mark-ups/Mark-downs; (3) Broker/Dealer compensation; (4) Transition manager

compensation; (5) KIA Transition Management Agreements, Periodic Notices, and other

1

contractual documentation; (6) Ross McLellan; and/or (7) Ed Pennings." McLellan served an identical subpoena on Ms. McKay.

Given the impending trial date, State Street's counsel, on behalf of the company and Ms. McKay, conducted an expedited review of Ms. Mckay's emails.  Apart from emails State Street previously produced, there were ***no responsive emails pertaining to subjects (1) - (5)***.

State Street did, however, identify 28 emails that also mentioned or included Ross McLellan or Ed Pennings.  The mention or involvement of McLellan and/or Pennings is not, however, a proxy for relevance.  Each had a management role within the Portfolio Solutions Group; McLellan was the group's global leader and Pennings was the leader of the Europe, Middle East & Africa region.

Transition management is just one of several businesses within the Portfolio Solutions Group.  And even within the transition management business, State Street performed hundreds of transitions a year around the globe.  This case, of course, concerns only eight transitions conducted in 2010 or 2011 for seven clients.

The 28 withheld emails are not at all relevant to this matter.  None of them concern commissions or fees, including the types of charges that are or are not permitted or anything about disclosure to clients.  None of them concern trading.  And none of them concern the clients or transitions at issue in this case.  In fact, the substantial majority of these emails concern a separate business (cash equitization) that was not part of transition management.

The withheld emails—which are all internal emails with State Street's in-house lawyers—are also privileged.  In the hope of avoiding time spent discussing relevance, State Street elected to identify these privileged documents on a log.  State Street produced the log to McLellan on Monday, June 4.  To date, McLellan has not contacted State Street to inquire about

any of those emails, to question any privilege assertion, or to take or explain any position on waiver.

We infer from the Court's order that McLellan raised something about waiver directly with the Court and without notice to State Street. We do not understand why McLellan may believe State Street has waived its privilege over these emails, but no matter what McLellan has said, he is wrong.

## ARGUMENT

### I.      The Emails Are Not Subject To The Voluntary Waiver

Some time ago, State Street voluntarily made a limited privilege waiver to the government with respect to two discrete events: an April 2011 meeting involving State Street's outside counsel Herbert Smith (a law firm in the U.K.); and a November 2010 assessment of whether State Street's transition management group would be allowed to trade with an affiliated counterparty (the fixed income rates desk) on KIA Transition No. 121.

The withheld emails have nothing whatsoever to do with either topic.

### II.     The Emails Are Not Subject To The Order

On January 19, 2018, the Court issued an order denying State Street's motion to quash several of McLellan's subpoenas and opposing a request by him for leave to serve another. Although some of the arguments the Court addressed concerned McLellan's waiver assertions, they were all within the context of the specific documents McLellan sought—768 documents that McLellan specifically identified from prior privilege logs. *See* Order at 6-7.[1] Indeed, McLellan himself argued that his subpoenas and arguments did not

---

[1]      "With the subpoenas State Street challenges in this motion, McLellan seeks: 1) unredacted audio files or written transcripts of ninety-four specifically identified telephone calls that State Street included on a May 8, 2015 privilege log; 2) unredacted versions of 385 specifically identified emails and documents that State Street included on a 263-page privilege log disclosed to McLellan in discovery; 3) unredacted versions of 288 specifically identified

extend beyond those documents.  For example, he argued that he had "not sought broad categories of documents but has instead specifically identified, document by document, the materials he seeks."  McLellan Opposition, Dkt No. 290 at 19.

McLellan should not be heard to now take a much broader view of his prior arguments and the Order.  That is especially so given how irrelevant the emails at issue are to this proceeding.  ***None*** of these emails concern (i) any client or transition at issue in this proceeding; (ii) transition management compensation or disclosure; or (iii) trading compensation or disclosure.  They are entirely irrelevant and were logged only because they mentioned or included McLellan and/or Pennings.

Further illustrating absence of any relevance, nineteen of the withheld emails concern a cash equitization service, which is not part of transition management.  The others concern topics that are likewise far afield from the issues in this case, including things like State Street's expansion of its transition management business into Latin American markets, the negotiation of an indemnity provision with a consultant that is not involved in this matter, and a tolling agreement and possible settlement with a U.S. client on a dispute that is unrelated to transition management.

### III.    McLellan Should Be Required To Raise Any Other Issues Directed To State Street By Motion And With Notice To State Street

To the extent McLellan has any further issues about this or anything else, he should be directed to, as the rules require, raise them by motion and with notice to State Street.  State Street is a non-party in this action and is entitled to notice and an opportunity to be heard.  McLellan should not be allowed to bypass the Court's motions procedures and to

---

emails and documents that also appear to have been listed on a privilege log produced by State Street;7 and 4) unredacted transcripts and audio recordings of two telephone conversations between McLellan and a[] co-conspirator."

advance arguments to the Court about State Street's discovery (including any response to this explanation) without notice to State Street and outside State Street's presence.

## CONCLUSION

For the foregoing reasons, State Street respectfully requests that its privilege assertions were entirely appropriate.

Respectfully submitted,

*/s/ John J. Butts*
John J. Butts (BBO No. 643201)
Harry Weiss (BBO No. 521180)
Wilmer Cutler Pickering
  Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000
john.butts@wilmerhale.com

Dated: June 6, 2018

## **CERTIFICATE OF SERVICE**

I, hereby certify that on this date, June 6, 2018, a redacted copy of the foregoing document has been served on counsel of record in this matter via electronic mail.

*/s/ John J. Butts*
John J. Butts