UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 16-10094-LTS
)
ROSS MCLELLAN, )
)
Defendant. )

**GOVERNMENT'S OBJECTIONS TO DEFENDANT'S JURY INSTRUCTIONS**

The government respectfully submits objections to defendant Ross McLellan's proposed jury instructions, Dkt. 362. The majority of McLellan's proposed instructions are thinly veiled arguments unmoored from controlling authority. He has (1) invented instructions whole-cloth, (2) cherry-picked favorable language from irrelevant out-of-circuit cases, and (3) omitted whole theories of liability and statutory language unfavorable to him. What is more, McLellan has reprised in his instructions arguments previously rejected by the Court in his motions to dismiss, and responded to at length by the government in June 2017, Dkt. 170. The government will specify each of its objections below, but reserves the right to supplement these objections as well as to propose additional or modified instructions.

OBJECTION TO REQUEST NO. 1

In spelling out the elements of securities fraud, the defendant has omitted whole theories contained in the statute and applicable regulations, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). Defendant's first element—which in the government's instruction is the second element—only embraces the "false statements" theory of liability. In fact, the regulatory language, as contained in Rule 10b-5, proscribes, (1) employing "any device, scheme, or artifice to defraud," (2) making "any untrue statement of a material fact" or omitting "to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," or (3) engaging in "any act, practice, or course of business which operate or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5. The government is entitled to an instruction on all three theories,[1] as further detailed in its Proposed Instruction No. 8, discussed below, provided there is an instruction requiring unanimity. Cf. United States v. Bradstreet, 135 F.3d 46, 50-51 (1st Cir. 1998) (affirming conviction where trial court gave instruction on three "alternative ways one can commit securities fraud under Rule 10b-5" and instruction requiring unanimity on which of three types of conduct occurred). The only theory of liability the government has explicitly disclaimed is one of omissions in the presence of a duty to disclose. See Chiarella v. United States, 445 U.S. 222, 228 (1980) ("[O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." (citation and internal quotation marks omitted)).[2]

---

[1] The government mistakenly omitted one of the three theories of liability in its Proposed Jury Instruction No. 6, where the elements of securities fraud are merely listed, but included all three in its Proposed Jury Instruction No. 8. The government requests that the phrase "made any untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading," be added to the second element of Instruction No. 6.

[2] Courts have repeatedly held that omitting to state facts necessary to make statements, in light of the circumstances under which they were made, not misleading constitutes an affirmative misrepresentation. See, e.g., United States v. Kone, 303 F. App'x 38, 40 (2d Cir. 2008); United States v. Lloyd, 807 F.3d 1128, 1153 (9th Cir. 2015) ("A broker cannot affirmatively tell a misleading half-truth about a material fact to a potential investor because the duty to disclose in these circumstances arises from the telling of a half-truth, independent of any responsibilities arising from a truth relationship."); United State v. Sumeru, 449 F. App'x 617, 622 (9th Cir. 2011) (half-truths, where materials facts were concealed or omitted alongside other statements,

The defendant's requested instruction for the fourth element also modifies the language of Rule 10b-5, which is "by use of any means or instrumentality of interstate commerce, or of the mails, or of any national securities exchange." 17 C.F.R. § 240.10b-5. Instead, the defendant has limited it to "wire communications." The government requests an instruction matching the regulatory language.

OBJECTION TO REQUEST NO. 2

The defendant's second requested instruction similarly makes the error of omitting the multiple alternate theories of liability for 10b-5 securities fraud, and improperly describes liability under the false statement theory. The government instead requests that the Court issue its Proposed Jury Instruction No. 8.

Even the sole theory contained in the defendant's instruction misstates the standard for making a false statement. Putting aside aiding and abetting liability, which is appropriate here and the subject of a separate instruction, Rule 10b-5 liability attaches for not only "making" false statements, or omitting material facts, but also for "causing" the false statements to be made, or causing material facts to be omitted. See McConville v. SEC, 465 F.3d 780, 787 (7th Cir. 2006) (question for 10b-5 liability was whether "whether [defendant] *caused* [the company] to make material misstatements to the investing public"); SEC v. Wolfson, 539 F.3d 1249, 1261 (10th Cir. 2008) (10b-5 liability for causing material misstatements or omissions to be made); SEC v. KPMG LLP, 412 F. Supp. 2d 349, 375 (S.D.N.Y 2006) (10b-5 liability attaches on proof that "defendant was sufficiently responsible for the statement—in effect, caused the statement to be

are affirmative misrepresentations); United States v. Autuori, 212 F.3d 105, 119 (2d Cir. 2000) (affirmative misrepresentations include failures to disclose alongside other statements).

made—and knew or had reason to know that the statement would be disseminated to investors"). The government has included such an instruction in its Proposed Jury Instruction No. 8.

The defendant's instruction also omits a standard instruction that false or misleading statements made with *reckless indifference* as to their truth or falsity give rise to 10b-5 liability. See, e.g., United States v. Tarallo, 380 F.3d 1174, 1189 (9th Cir. 2004) (recklessness sufficient for criminal 10b-5 securities fraud conviction); Williams v. United States, 979 F.2d 844, 1992 WL 332029 (1st Cir. 1992) ("the scienter element under the mail and securities fraud statutes can be satisfied by something less than fraudulent intent or knowing falsehoods"), citing United States v. Gay, 967 F.2d 322, 326 (9th Cir. 1992) ("We have repeatedly held that reckless indifference alone will support a mail fraud conviction."); Hoffman v. Estabrook & Co., Inc., 587 F.2d 509, 516 (1st Cir. 1978) (recklessness sufficient for 10b-5 liability).[3] Indeed, the same type of instruction is standard for mail and wire fraud in the First Circuit. See Pattern Jury

---

[3] Other decisions are in accord. For example, in a securities and mail fraud case involving an investment scam, the Sixth Circuit said

> Alternatively, the prosecution may prove that the defendant was reckless – that he made "an extreme departure from the standards of ordinary care[ ] [by omitting information] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Sanders v. John Nuveen & Co., 554 F.2d 790, 793 (7th Cir. 1977) (internal quotation marks and citation omitted); see also Auslender v. Energy Mgmt Corp., 832 F.2d 354, 356-57 (6th Cir. 1987). In either case, the belief, even if *bona fide,* that no investor will suffer a loss from a knowing or reckless material misstatement or omission, is not a defense to securities or mail-fraud charges. United States v. Stull, 743 F.2d 439, 446 (6th Cir. 1984).

United States v. DeSantis, 134 F.3d 760, (6th Cir. 1998); see also, e.g., United States v. Boyer, 694 F.2d 58 (3rd Cir. 1982) (securities and mail fraud case; specifically rejecting argument that, by instructing jury that "specific intent to defraud" can be proven through evidence of reckless conduct, court improperly lowered the standard for proving intent in fraud cases); United States v. Bradberry, No. 3:97-cr-67-P(2), 1999 WL 420617, *2 (N.D. Tex. June 22, 1999) (noting that "reckless disregard" is sufficient to prove specific intent to defraud, and that "[a] showing of evil motive by the defendant is not necessary to prove fraud").

Instructions for the First Circuit, Criminal Cases ("First Circuit Pattern") (2003) 4.18.1341 & 4.18.1343 ("'False or fraudulent pretenses' means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth and that were made with the intent to defraud.").

Contrary to the defendant's proposed instruction, there is also no unanimity requirement as to a specific false statement or deceptive conduct, but rather only as to the *theory* of liability. See United States v. Bradstreet, 135 F.3d 46, 53 (1st Cir. 1998) (rejecting argument that jury must "unanimously agree on . . . the factual basis for each count," and noting that "the weight of the relevant authority appears to be against requiring juries to reach factual unanimity in circumstances such as these," *i.e.*, a fraud case involving false statements) (internal quotation marks omitted); cf. United States v. Tarvers, 833 F.2d 1068, 1074 (1st Cir. 1987) (in continuing criminal enterprise case "unanimity was not required with respect to a specific fact underlying an element").

OBJECTION TO REQUEST NO. 3

The government objects to the defendant's Request No. 3 because it contorts the "in connection with the purchase or sale or securities" element—which is at most a "modest requirement," Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 310 (6th Cir. 2009)—into an unjustified limit on liability. So basic and implicit in the charge is this element that most pattern jury instructions do not even set it apart as a separate element. See 3 Sand et al., Modern Federal Jury Instructions, Comment to Instruction 57-20 ("The text includes this requirement in the first element, rather than as a separate element, because in most cases it will not be contested."). Where they do, there is typically no further elaboration. See Manual of Model Criminal Jury Instructions, Ninth Circuit ("Ninth Circuit Model") 9.9, available at

http://www3.ce9.uscourts.gov/jury-instructions/node/415. The Supreme Court has repeatedly held that the phrase "in connection with the purchase or sale of any security," like the securities fraud statute as a whole, should be "construed not technically and restrictively, but flexibly to effectuate its remedial purposes." SEC v. Zanford, 535 U.S. 813, 819 (2002).

In accord with this controlling authority, the government's proposed instruction is adapted from O'Malley et al., Federal Jury Practice and Instructions, No. 62:11 (6th ed. 2008), and simply states that the fraud must have "touched upon" a securities transaction. An alternate elaboration in the Modern Federal Jury Instructions, to which the government has no objection, specifies that the element is "satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities." 3 Modern Federal Jury Instructions, Instruction 57-21.[4] Nothing more is needed here.

No court in the country has given instructions resembling those the defendant has proposed. In fact, the sole set of instructions the defendant cites in support of his proposed instruction actually resembles the government's proposed instructions and provides *no further* elaboration on the "in connection with" phrase. See Jury Instructions, United States v. Litvak, No. 13-00019 (D. Conn.), Doc. 523 at 44-46, attached at Ex. A.

McLellan's instructions implicitly incorporate the following arguments from his motion to dismiss: first, because State Street's transition clients already made the decision to buy and sell particular securities, then supposedly no misrepresentations can be "in connection with"

[4] "While reliance on pattern jury instructions does not insulate a trial court from claims of instructional error, this court has relied on the [Sand] Modern Federal Jury Instructions on numerous occasions, referring to this work in one such instance as 'a leading commentary.'" United States v. Stefanik, 674 F.3d 71, 77 (1st Cir. 2012) (citing Bonilla v. Volvo Car Corp., 150 F.3d 62, 70 (1st Cir. 1998); United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010); United States v. Wyatt, 561 F.3d 49, 54 (1st Cir. 2009); Acevedo–Luis v. Pagán, 478 F.3d 35, 39 (1st Cir. 2007)).

those purchases or sales; second, as a corollary, because the misrepresentations were supposedly for the purpose of inducing clients to select a transition manager, those misrepresentations also cannot be "in connection with" the subsequent purchases or sales; and third, misrepresentations that follow the purchase or sale of securities are not "in connection with" those purchases or sales. In essence, the defendant is requesting that the Court instruct the jury to acquit him of securities fraud. As set forth below, all instructions incorporating these arguments should be rejected as either misstatements of the law, misleading, or redundant of other instructions.

The defendant includes the erroneous instruction, "False statements made to induce a transition management client to choose State Street as its transition manager are not statements in connection with the purchase or false of a security." Dkt. 362 at 4. This instruction is both inaccurate and argumentative for the simple reason that every statement made to induce clients to choose State Street as a transition manager is simultaneously made to induce them to buy and sell securities at a specific price—because choosing State Street as a transition manager necessarily includes the decision to transact a list of securities at what the clients believe will be the market price plus an agreed-upon commission. See SEC v. Crowe, 216 F. Supp. 3d 852, 867 (S.D. Ohio 2016) (finding "in connection with" element of 10b-5 met based on "false promise that State Street was the best venue for the pension funds' trades")

The defendant includes the instruction, "A misrepresentation is not made in connection with the purchase or sale of a security unless it is material to a decision by one or more individuals to buy or sell a covered security." Dkt. 362 at 3. Why the defendant has included a *separate* materiality instruction for the simplest element of the offense is hard to understand. Indeed, he has *two* separate instruction for materiality, Requests No. 4 and No. 5, which are

objectionable themselves for other reasons discussed below. The question of materiality is simply irrelevant to the "in connection with" inquiry.

The defendant also includes the misleading instruction, "Statements made after the investor's decision to buy or sell a security are not statements made in connection with the purchase or sale of a security." Dkt. 362 at 4. Such an instruction is confusing, unnecessary, and absent from *any* set of pattern instructions. Ongoing schemes to defraud involving the purchase or sale of securities can of course include misrepresentations following the purchase or sale, and still be a basis for liability. See, e.g., Backcus v. Conn. Cmty. Bank, N.A., No. CIV 3:09-CV-1256, 2009 WL 5184360, at *8 (D. Conn. Dec. 23, 2009) (allegations of securities fraud properly claimed based on "false account statements detailing the purchase, sale, and value of securities").

To the extent the defendant is concerned that misrepresentations that have nothing to do with the purchase or sale of a security could be the *sole* basis for liability, there is no need for an additional instruction: the materiality instruction contains within it the requirement that the misstatement affect a reasonable investor's *investment decision*. If all the false statements postdated decisions to invest, then, by definition, they could not affect a reasonable investor's investment decision. No additional instruction is warranted.

OBJECTION TO REQUEST NO. 4

The defendant's materiality instruction includes unnecessary elaboration. The jury does not need an instruction that materiality is an "objective standard." No pattern instruction includes such elaboration, as the notion of objectivity is implicit in the phrase, "a reasonable investor." Including such a phrase is only likely to confuse the jury. The two formulations used by most courts are (1) that there be a substantial likelihood that the misstatement or omissions "would have been viewed by a reasonable investor as having significantly altered the 'total mix'

of information available," Basic, Inc. v. Levinson, 485 U.S. 224, 231-32 (1988), and (2) that a "fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making the decision to purchase or sell securities." Ninth Circuit Model 9.9. The government's requested instruction is adapted from the first formulation.

OBJECTION TO REQUEST NO. 5

As stated in the government's objection to Request No. 4, there is a standard materiality instruction. The court should give that instruction, not the defendant's *three* materiality instructions (No. 4, 5, & 6). The defendant's Request No. 5 is a particularly egregious example of argument disguised as an instruction on the law. It attempts to enlist the court in the defendant's misguided effort to separate the decision to engage a transition manager from the decision to buy and sell a particular security—when the testimony elicited at trial has already established that the decision to select a transition manager necessarily implies a decision to transact securities at a certain price (*i.e.*, the market price obtainable by the transition management trading desk plus any commission added onto it). There is simply no authority for the defendant's proposed instruction. Indeed, district courts in at least three other circuits have found that misrepresentations that influence the choice of a broker-dealer *can*, in fact, be material for purposes of Section 10(b). See, e.g., Crowe, 216 F. Supp. 3d at 866-67; Lewis v. Scottrade, Inc., 204 F. Supp. 3d 1064, 1068 (E.D. Mo. 2016) (alleged fraud concerning order-rerouting practices was material to plaintiffs' decision "to buy or sell securities through Scottrade"); Lim v. Charles Schwab & Co., No. 15-CV-02074-RS, 2015 WL 7996475, at *7 (N.D. Cal. Dec. 7, 2015) ("the false promise that customers will receive the best price for their trades is material to every decision to purchase or sell a security through Schwab"). Indeed, the majority of the cases the defendant has cited in support of request No. 5 merely restate the standard materiality instruction. And the ones that appear to endorse his position do not concern actual securities

transactions. See, e.g., SEC v. Goble, 682 F.3d 934, 945 (11th Cir. 2012) (noting that the "money market fund account at issue did not meet the definition of a security under the Exchange Act"); Taylor v. Westor Capital Group, 943 F. Supp. 2d 397, 403 (S.D.N.Y. 2013) (allegations that "Defendants unfairly froze the Account and made [plaintiff] an unfavorable offer as to its contents to take advantage of his financial constraints."). Accordingly, there is simply no need for statements of law that are inapplicable to the facts of the case. The standard instructions suffice.

Moreover, this argument has reappeared from the defendant's motion to dismiss, which the government responded to in length in June 2017. See Dkt. 170. There is ample authority for 10b-5 securities fraud to cover situations like this one, where hidden commissions/mark-ups were applied to client's trades. See, e.g., Grandon v. Merrill Lynch & Co., 147 F.3d 184, 193 (2d Cir. 1998) ("we must also seek, under § 10(b) and Rule 10b-5, to protect customers from paying excessive markups that, because they remained undisclosed, are fraudulent"); SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1469 (2d Cir. 1996) ("a broker-dealer who charges customers retail prices that include an undisclosed, excessive markup violates § 17(a) and § 10(b) of the securities laws"); Bank of Lexington & Trust Co. v. Vining-Sparks Sec., Inc., 959 F.2d 606, 613 (6th Cir. 1992) (broker's "failure to disclose exorbitant mark-ups violates section 78j(b) and Rule 10b–5"); Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 835 F.2d 1031, 1033 (3d Cir. 1987) (expressing "no doubt" that broker's charging of undisclosed, excessive commissions was "actionable under section 10(b) and Rule 10b-5"); see also Brink v. Raymond James & Assocs., No. 15-CV-60334-WPD, 2016 WL 3950030, at *4 (S.D. Fla. June 6, 2016) ("Because Plaintiff was allegedly charged a Processing Fee hiding an undisclosed commission with each transaction, the fees coincided with the purchase or sale of securities" and satisfied "in

connection with" requirement); Marini v. Adamo, 995 F. Supp. 2d 155, 189 (E.D.N.Y. 2014) (rare coin dealer's representation that he would only charge "a minimal markup on each coin" actionable under Section 10(b) where he "charged a markup that often exceeded 100%"). The defendant is free to argue to the jury that, contrary to the evidence adduced at trial, the alleged misstatements by McLellan and his co-conspirators did not affect clients' decisions to buy or sell securities through State Street, but no additional instruction or elaboration is needed for a fact pattern that is within the heartland of 10b-5 securities fraud.

OBJECTION TO REQUEST NO. 6

The government objects to Request No. 6. Sand's Modern Jury Instructions, which the government has followed, includes the following instruction: "Once you find that there was a material misrepresentation or omission of a material fact, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the law protects the gullible and unsophisticated as well as the experienced investor." Instruction 57-21; see Dkt. 367 at 14. This is a standard instruction for courts to give in 10b-5 securities fraud cases. See, e.g., Jury Instructions, United States v. Greebel, No. 15-CR-637, 2017 WL 6631581 (E.D.N.Y Dec. 26, 2017); Jury Instructions, United States v. Muzio, No. 09-CR-20327, 2010 WL 3499213 (S.D. Fla. Feb. 18, 2010); Jury Instructions, United States v. King, No. 05-CR-698, 2007 WL 4789705 (D.N.J. Apr. 5, 2007).

There is no requirement in criminal securities fraud that a reasonable investor be a sophisticated investor. Sophistication is not a component of materiality, but rather a component of reliance, an element of *civil* securities fraud suits filed by private plaintiffs. That is, plaintiffs in civil securities fraud suits must prove that they had reason to rely on a misstatement. See, e.g., Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017, 1028 (4th Cir. 1997) ("A

plaintiff's failure to prove that it justifiably relied on a broker's alleged omission or misstatement is necessarily fatal to a securities fraud claim."); In re AES Corp. Sec. Litig., 849 F. Supp. 907, 910 (S.D.N.Y. 1994) ("[P]laintiffs' sophistication is relevant to the merits of these [direct reliance] allegations and a defense of non-reliance."). Reliance, however, is not an element of criminal securities fraud or civil securities fraud actions filed by the SEC. See United States v. Fields, 1:10-CR-10388, 2016 WL 215267, at (D. Mass. Jan. 19, 2016) (Woodlock, J.) ("[N]either Section 10(b), 15 U.S.C. § 78j(b), nor Rule 10b-5, 17 C.F.R. § 240.10b-5, includes a reliance requirement."); SEC v. Solow, No. 06-cv-81041, 2008 WL 11333854, at *5 (S.D. Fla. Mar. 26, 2008) (rejecting argument that "case law pertaining to reliance should be incorporated in an SEC enforcement action")

The government has no objection to defining the reasonable investor for purpose of these instructions as a "reasonable institutional investor engaging a transition manager," which will appropriately focus the jury's attention on the relevant type of investor. However, the government objects to an instruction that the jury must evaluate the sophistication of the transition management clients.

OBJECTION TO REQUEST NO. 7

There is no need for this instruction as the presence or absence of this regulation has no bearing on whether the defendant committed fraud. As the government has stated repeatedly, this is not a case of omissions in the presence of a duty to disclose. If the government were alleging a duty to disclose based on a controlling regulation, then the court would need to give an instruction as to what the regulation requires. See United States v. Prigmore, 243 F.3d 1, 17 (1st Cir. 2001) (instruction on regulation appropriate when the duty it imposes is the basis for a false filing charge). In the absence of that, the presence of that regulation at most is a fact the jury can

consider in assessing the defendant's state of mind, provided the defense is able to establish the necessary factual predicate for its admission into evidence. See United States v. Tucker, 137 F.3d 1016, 1036 (8th Cir. 1998) (affirming district court's refusal to give instruction on regulatory requirements when regulation was not element of crime while noting that district court permitted defendant to introduce evidence of regulation). Any instruction on the regulation, however, is prejudicial in that it unduly elevates what is at most one fact among many for the jury's consideration—and is thus likely to confuse the jury.

OBJECTION TO REQUEST NO. 8

The defendant's requested instruction misstates the *mens rea* element for securities fraud. His instruction for the meaning of the term "willfully" includes the following: "The government must prove that McLellan knew that we was acting unlawfully and in violation of United States securities laws." Dkt. 362 at 11. That instruction suggests that the defendant had to know his conduct was unlawful. That is not the standard.

The instruction that the defendant had to have known his conduct was unlawful is only needed in the insider trading context. As the Second Circuit explained in United States v. Kaiser, 609 F.3d 556 (2010), "Unlike securities fraud, insider trading does not necessarily involve deception, and it is easy to imagine an insider trader who receives a tip and is unaware that his conduct was illegal and therefore wrongful. The same cannot be said of one who deliberately misleads investors about a security." Id. at 569 (concluding that defendant need only have "had an awareness of the general wrongfulness of his conduct"); see also United States v. Tarallo, 380 F.3d 1174, 1188 (9th Cir. 2004) ("willfully" in securities fraud means the defendant "undertook acts that he knew at the time to be wrongful"); cf. United States v. Wenger, 427 F.3d 840, 851 (10th Cir. 2005) ("[W]hen the prohibited conduct is *malum in se*, a

'willful' act may entail only that the defendant intentionally undertook an act that he knew to be wrongful.").

Indeed, in the jury instructions from United States v. Litvak, No. 13-00019 (D.Conn.), attached as exhibit A, which the defendant has relied on as his *sole* authority for this request, the definition of "willfully" *differs* from the defendant's: "'Willfully' here means to act with the intent to do something that the law forbids, that is to say, with the bad purpose either to disobey or to disregard the law. *The government need not prove that Mr. Litvak knew he was breaking any particular law or rule. The government must prove, however, that he was aware of the general wrongfulness of his acts, and that his acts were not due to negligence, inadvertence, or mistake*." Exhibit A at 50 (emphasis added). Accordingly, the government requests a similar jury instruction on the definition of "willfully" in the *mens rea* element of the securities fraud instructions.[5]

The defendant also reincorporates the term "willfully" into his definition of "intent to defraud." That is incorrect and confusing. Instruction 57-24 of Sand's Modern Jury Instructions, defines "intent to defraud" to mean "act[ing] knowingly and with the intent to deceive." The defendant's request should be rejected.

---

[5] The government's proposed jury instructions erroneously included the following sentence in its definition of "willfully": "The defendant need only to have been aware of the generally unlawful nature of his acts." Dkt. 367 at 15. As stated above, such an instruction is only required in insider trading cases, and not general securities fraud cases that allege deception and the intent to defraud. The government withdraws its request for that instruction on "willfully" and instead requests its replacement with the instruction: "'Willfully' here means to act with the intent to do something that the law forbids, that is to say, with the bad purpose either to disobey or to disregard the law. The government need not prove that Mr. McLellan knew he was breaking any particular law or rule. The government must prove, however, that he was aware of the general wrongfulness of his acts."

OBJECTION TO REQUEST NO. 9

In its proposed instructions, the government included a "good faith" instruction within the general instruction on knowing and willful conduct. See Dkt. 367 at 16. The defendant, however, requests a stand-alone "good faith" instruction. See Dkt. 362 at 14. Such an instruction is not warranted. It is well-settled in the First Circuit that "[a] separate instruction on good faith is not required . . . where the court adequately instructs on intent to defraud." United States v. Camuti, 78 F.3d 738, 744 (1st Cir. 1996); see also United States v. Dockray, 943 F.2d 152, 155 (1st Cir. 1991) ("[W]here the court properly instructs the jury on the element of intent to defraud—essentially the opposite of good faith—a separate instruction on good faith is not required.").

OBJECTION TO REQUEST NO. 10

The defendant has requested an unnecessary and lengthy instruction on the extraterritorial application of U.S. securities laws that will only serve to confuse the jury. The jury needs only a brief explanation that in order for a securities transaction to be the basis of liability it must be a domestic transaction. As the government noted in its jury instructions, a security not traded on a national exchange is domestic if "[1] a seller incurred irrevocable liability to deliver a security within the United States, [2] a buyer incurred irrevocable liability to pay for a security within the United States, or title was transferred within the United States." Dkt. 367 at 18; see also United States v. Georgiou, 777 F.3d 125, 135-37 (3d Cir. 2015). Nothing more is required.

In addition, the defense has smuggled in an unrelated requirement at the end of Request No. 10 that the defendant had to enter a conspiracy to commit securities fraud in connection with U.S. securities. This instruction improperly suggests a requirement that the defendant have

known that the securities involved in his conspiracy were domestic securities. There is no such requirement.

OBJECTION TO REQUEST NO. 12

While the government has closely followed the First Circuit Pattern, the defendant has tried to refashion the wire fraud instruction to his liking. The defendant has cut short the definition of "false or fraudulent pretenses" that is contained in the Pattern Instructions, omitting the additional phrases, such as the fact that fraudulent pretenses "include actual, direct false statements as well as half-truths and the knowing concealment of facts." First Circuit Pattern 4.18.1343.

The defendant has added the phrase: a "breach of contract does not by itself constitute a scheme to defraud." Dkt. 362 at 18. This instruction improperly seeks the Court's endorsement of the defendant's contract theory, and further suggests that a contract is required for fraud. This is not a breach of contract case, and the government does not allege that a breach of contract constitutes fraud. The Court should likewise reject the clearly argumentative instruction, lifted out of an inapposite Seventh Circuit case, United States v. Weimert, 819 F.3d 351 (2016), that "just because some of the actions or statements you have heard about may strike you as sharp dealing or unethical conduct, that alone does not amount to a scheme to defraud." *Id.* Neither of the above instructions appear in any pattern instruction.

The defendant also suggests in one instruction that, contrary to law, a victim must have actually been defrauded: "You may infer such contemplated harm only if there was a discrepancy between the benefits reasonably anticipated and the actual benefits which the defendant delivered or intended to deliver." *Id.* In fact, the wire fraud statute encompasses unsuccessful schemes and schemes that did not cause a loss to a victim. "The wire fraud statute

punishes the scheme, not its success." Pasquantino v. United States, 544 U.S. 349, 371 (2005); United States v. Helmsley, 941 F.2d 71, 94 (2d Cir. 1991) (sustaining the mail fraud conviction of real estate mogul who intended to defraud the State of New York of tax revenue, notwithstanding that the government failed to prove that the taxes were actually due); United States v. Camuti, 78 F.3d 738, 742 (1st Cir. 1996) (the mail fraud statute does "not require that the victims be pure of heart or even that they have been effectively deceived by the charged representations") (emphasis added); United States v. Allard, 926 F.2d 1237, 1242 (1st Cir. 1991); United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994).

The pattern instruction, by contrast, is: "A scheme to defraud is *ordinarily* accompanied by a desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or purpose to cause some loss to some person." First Circuit Pattern 4.18.1343 (emphasis added). That is sufficient for the facts of this case.

OBJECTION TO REQUEST NO. 13

The defendant's page-long materiality instruction for wire fraud bears little resemblance to the First Circuit's one sentence pattern instruction and should be rejected. The defendant has repeated his request for an instruction on the sophistication of the victim, just as he did in Request No. 6. Asking the jury to consider the sophistication of the victim is not warranted, and improperly suggests that the materiality element requires proof that the victim acted upon the statement. Indeed, the defendant's instructions contain an implicit reliance element: "A statement is material only . . . if a reasonable person in the position of the person to whom he [*sic*] statements is made would have relied on it in making his decision." Dkt. 362 at 20. In fact, the wire fraud statute does *not* require proof of reliance. See Neder v. United States, 527 U.S. 1,

24-25 (1999) ("The common-law requirements of 'justifiable reliance' and 'damages,' for example, plainly have no place in the federal fraud statutes.").

Reliance aside, this instruction also appears to establish a subjective standard of materiality that focuses on the recipient of the false statement when in fact materiality is an objective standard. United States v. Weaver, 860 F.3d 90, 94 (2d Cir. 2017) ("a lie can support a fraud conviction only if is material, that is, it would affect a reasonable person's evaluation of a proposal") (internal quotation omitted); United States v. Lindsey, 850 F.3d 1009, 1015-16 (9th Cir. 2017) (because materiality is an objective standard, whether or not a lender was negligent in approving a fraudulent loan is not a defense to wire fraud). The instruction also wrongly suggests that the only decision to which the lies could be material was the decision whether to retain State Street and that "[s]tatements made after the decision to select State Street as the client's transition manager are not, therefore, material to that decision." Dkt. 362 at 20. Such arguments in the guise of instructions are unwarranted and would simply serve to mislead the jury and endorse the defendant's theory of the case that the fraud ended either after State Street was selected, or once it had completed a particular transition.

OBJECTION TO REQUEST NO. 15

The government raises the same objection to Request No. 15 as it does above to Request No. 9.

OBJECTION TO REQUEST NO. 17

The government requests that the instruction specify that if either AXA Equitable Life Insurance Co. or State Street Corporation, both financial institutions, as stipulated by the parties, was exposed to a new or increased risk of loss, then the element is satisfied.

OBJECTION TO REQUEST NO. 18

This instruction is unnecessary. As stated in the government's response to defendant's motion to dismiss, Dkt. 170, and its response to defendant's motion *in limine* to exclude evidence of the Dutch Doctors transition, Dkt. 355, there is no need to reach the question of the extraterritorial application of 18 U.S.C. § 1343. As the First Circuit noted in United States v. Lyons with respect to the Wire Act, 18 U.S.C. § 1084, which contains language identical to Section 1343 regarding transmissions in interstate or foreign commerce, "transmissions between the United States and a foreign country" are sufficient to bring conduct within the statute's scope. 740 F.3d 702, 718 (1st Cir. 2014). So long as the jury is instructed that in order to convict the defendant for wire fraud, a wire to or from the United States or between states within the United States must have been sent in furtherance of the scheme to defraud, no additional elaboration is necessary.

OBJECTION TO REQUEST NO. 19

The government objects to the final paragraph in the defendant's instruction. The aiding and abetting instruction in First Circuit Pattern clearly sets forth that there must be a principal who committed a crime and that the defendant must have taken part in the endeavor, seeking to make it succeed. First Circuit Pattern 4.18.02. There is no need for the defendant's additional elaboration, which is confusing and misleading. The government's theory is that the crime was committed when McLellan and his co-conspirators affirmatively misled clients. Failing to disclose commissions, on its own, is not the government's theory. And the underlying instructions for wire fraud and securities fraud make that clear that liability cannot be based on omissions alone without other affirmative statements. The instruction, however, is inaccurate because liability for the defendant could be based, under an aiding and abetting theory, on any

number of actions by the defendant to associate himself with the charged crime, and participate in some way to bring it about, such as by ordering traders to apply commissions in excess of agreed-upon fees, and directing them to conceal those commissions from others.

OBJECTION TO REQUEST NO. 20

The government objects to an aiding and abetting instruction for securities fraud that differs from that for wire fraud.

OBJECTION TO REQUEST NO. 21

The government objects to the instruction in Request No. 21 that wrongly implies the government must prove that defendant joined the conspiracy with the intent to commit both wire fraud and securities fraud. That is not the law. When an indictment alleges a dual-object conspiracy, the defendant may be convicted of conspiracy based on his agreement to further only one of its objects. See United States v. Capozzi, 486 F.3d 711, 717-18 (1st Cir. 2007) (noting that, for multi-object conspiracies, "guilt can be established by adequate proof on any one of the . . . charged grounds" and that "[t]he district court properly instructed the jury that guilt must be based upon proof of *an agreement to commit any one of the three objects* of the conspiracy") (emphasis added); United States v. Walker, 97 F.3d 253, 255 (8th Cir. 1996) (where indictment alleged conspiracy to commit mail fraud and honest-services mail fraud, affirming jury instruction that "in order to return a verdict of guilty, you must unanimously agree upon which of the objects or purposes was the subject of the conspiracy").

The defendant has also omitted an important instruction from the First Circuit Pattern instruction for conspiracy: "The government does not have to prove that the conspiracy succeeded or was achieved. The crime of conspiracy is complete upon the agreement to commit

the underlying crime and the commission of one overt act." First Circuit Pattern 4.18.1343. The government requests that such an instruction be included.

OBJECTION TO REQUEST NO. 22

The government objects to the inclusion of this "concealment" instruction. There is no evidence that the conspiracy ended, or achieved its central purposes, on May 24, 2011, as the defendant contends. Rather, Mr. Boomgaardt testified that concealment was an important component of the entire fraud scheme from its inception, and continued unabated throughout the summer of 2011. The defendant's mere desire to sever certain conduct from the conspiracy does not entitle him to an instruction in furtherance of that aim. See Mathews v. United States, 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.")

Respectfully submitted,

SANDRA MOSER
Acting Chief, Fraud Section
Criminal Division

By: *_/s/ William E. Johnston_*
WILLIAM E. JOHNSTON
Trial Attorney

ANDREW E. LELLING
UNITED STATES ATTORNEY

By: *_/s/ Stephen E. Frank_*
STEPHEN E. FRANK
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I certify that on June 8, 2018, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

/s/ *William E. Johnston*
WILLIAM E. JOHNSTON