UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | No. 16-10094-LTS |
| ROSS MCLELLAN,<br>    Defendant | ) ) ) ) ) | |

**DEFENDANT ROSS MCLELLAN'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO HIS REQUESTS FOR INSTRUCTIONS**

Contrary to the government's apparent belief, McLellan is under no obligation to request that the Court instruct the jury in accordance with the government's theory of the case or with the government's interpretation of the controlling legal principles. The overarching thrust of the government's objections is that, if McLellan's requested instruction pertains to an aspect of the applicable law that might prove favorable to McLellan's defenses, then the jury should not hear about it.

The instructions requested by McLellan are essential to the jury's understanding of the complexities of the issues which will be submitted to it and the many varied considerations that it should take into account in reaching its verdict. They are not "invented" out of "whole cloth," Opposition at 1; on the contrary, each request is supported by authority for it, often extensive authority from well-reasoned case law. Some of these issues were, to be sure, raised in McLellan's motions to dismiss, *id.*, but the Court's denial of those motions at the pretrial stage, when it found itself bound by the facial allegations of the indictment, is not controlling with respect to the jury's consideration of the actual evidence presented at trial.

**Request No. 1**

The government has expressly stated that this is a case about affirmative misstatements, not omissions. *See* Defendant Ross McLellan's Requests for Instructions to the Jury (Doc. 362)("Instruction Requests") at 2 n.1. Tr. 5/12/18 at 107 (government states, "lies are the subject of this case"). The requested instructions are intended to hold the government to its representations about its theory of prosecution by limiting the submission to the jury to that theory of securities fraud and wire fraud. *See* Defendant Ross McLellan's Objections to Government's Proposed Jury Instructions (Doc. 387) at 3-5. The government's current attempt to retreat from its express representation should be rejected, as should the government's attempt to inject a "half truth" theory into this case. *See* Opposition at 2 n.2. The government's theory has always been that the transition management clients were out-and-out lied to, told that there would be no commissions when the intent was to take a commission and hide it from the clients. This theory is reflected in the testimony of Rick Boomgaardt and Ed Pennings: the government was in no way eliciting from these witnesses the telling of "half truths," but instead the telling of affirmative lies. A "half truth" instruction will only serve to confuse the issues for the jury and should not be given.

**Request No. 2**

The cases on which the government relies for its causation theory, Opposition at 3, are dispositively different from this case. In each of those cases—*McConville*, *Wolfson*, and *KPMG*—the defendants had played a major role in creating written materials that they knew would be disseminated to the investing public. As the *Wolfson* court explained: "Like the defendants in *KPMG* and *McConville*, Marple played an integral role in preparing those filings that contained the misstatements and omissions at issue here." *S.E.C. v. Wolfson*, 539 F.3d 1249, 1261 (10th Cir. 2008).

There will be no comparable evidence in this case, and the causation concept should be reserved for the aiding and abetting concept.

In *United States v. O'Hagan*, 521 U.S. 642, 665 (1997), the Court expressly stated that "[t]o establish a criminal violation of Rule 10b–5, the Government must prove that a person 'willfully' violated the provision." "[I]n order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191-92 (1998). These concepts are inconsistent with a reckless disregard theory of *criminal* securities fraud. In *United States v. Tarallo*, 380 F.3d 1174 (9th Cir. 2004), on which the government relies, Opposition at 4, the Court relied on prior circuit precedent that predated both *O'Hagan* and *Bryan*, and its out-of-date reasoning should not be followed. In *United States v. Williams*, 979 F.2d 844, 1992 WL 332029 (1st Cir. 1992), which the government neglects to mention is an unpublished opinion of no precedential value, the Court relied on Ninth Circuit precedent that has not stood the test of time and a prior First Circuit case which dealt with "conscious avoidance," "a more stringent standard" than reckless disregard. *United States v. Brien*, 617 F.2d 299, 312 (1st Cir. 1980). *Hoffman v. Estabrook & Co., Inc.*, 587 F.2d 322 (1st Cir. 1978), was a civil case that predated *O'Hagan*'s express requirement of wilfulness. "[I]n the case of a criminal violation of Rule 10b–5, the government need prove that the defendant 'willfully' violated the provision," *United States v. Parigian*, 824 F.3d 5, 11 (1st Cir. 2016), *quoting O'Hagan*, 521 U.S. at 666. In *Parigian*, the Court made it clear that a "knew or should have known" *mens rea* instruction has no place in a criminal securities fraud prosecution. *Id.* at *11. *See United States v. Bray*, 853 F.3d 18, 29 (1st Cir. 2017)("the district court clearly erred by including the 'should have known' language in its jury instructions").

In any event, just as with the "half truth" theory that the government seeks to inject, its theory has never been that McLellan acted with reckless disregard for the truth or falsity of what was said to transition management clients. On the contrary, its theory has always been that McLellan and his alleged coconspirators concocted a scheme to knowingly and intentionally lie to clients about whether State Street would take commissions on their transition trades. There simply is no place here for a reckless disregard theory.

Finally, where false statements are concerned unanimity as to the false statement found by the jury is, contrary to the government's argument, Opposition at 5, required. *See, e.g., United States v. Travers*, 114 Fed. App'x 283, 290 (9th Cir. 2004)(approving instruction that defendant "knowingly made up, executed or participated in a scheme or plan to obtain money or property, by making false statements or promises with all of you [the jury] agreeing on at least one particular false promise or statement that was made."); *see also United States v. Dupre*, 462 F.3d 131, 144 (2d Cir. 2006)("it would be sound practice for a trial judge to charge a jury that it must be unanimous as to what specific transaction serves as the basis of a conviction for wire fraud.").[1]

### Request No. 3

McLellan has provided the Court with extensive authority for this requested instruction regarding the meaning of the "in connection with" requirement. It is not McLellan who wishes to "unjustifi[ably] limit" the reach of the securities fraud prohibitions, Opposition at 5, but the

---

[1] In *United States v. Bradstreet*, 135 F.3d 46, 53 (1st Cir. 1998), Opposition at 5, at issue was the defendant's argument that the jury should have been told that it must "unanimously agree on . . . the factual basis for each count," a considerably more generalized unanimity request than that which McLellan advances. Moreover, the *Bradstreet* Court noted that "this area of the law is still developing." *Id.*

government that seeks to improperly expand them. As the Supreme Court has made abundantly clear, "[a] fraudulent misrepresentation or omission is not made 'in connection with' . . . a 'purchase or sale of a covered security' *unless it is material to a decision by one or more individuals . . . to buy or sell a 'covered security.'*" *Chadbourne & Parke LLP v. Troice*, 134 S.Ct. 1058, 1066 (2014)(emphasis added).[2] *See* Instruction Requests at 3-4. Telling the jury only that the alleged fraud must have "touched upon" a securities transaction, Opposition at 6, fails to convey this critical nexus requirement.

      McLellan is obviously not asking the Court to tell the jury to acquit him. *See* Opposition at 7. What he *is* asking is that the jury be given a nuanced explanation of the legal principles applicable to its determination whether McLellan is guilty of securities fraud or conspiracy to commit securities fraud. If those legal principles require that McLellan be acquitted, then that is exactly what should happen. Rick Boomgaardt has already testified that, by the time transition management clients were seeking a transition manager, they had already made the decision regarding what securities they wanted to sell and which securities they wanted to buy.

      *SEC v. Crowe*, 216 F.Supp.3d 852 (S.D. Ohio 2016), Opposition at 7, was wrongly decided. Instead, the better view was stated by the Eleventh Circuit in *S.E.C. v. Goble*, 682 F.3d 934, 943-44 (11th Cir. 2012): "[A] misrepresentation that would only influence an individual's choice of broker-dealers cannot form the basis for § 10(b) securities fraud liability." *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006)("The requisite showing . . . is deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or

---

[2] The government states that its proposed instruction on this point is taken from the 2008 edition of O'Malley's Federal Jury Practice and Instructions, Opposition at 6; *Troice*, which the government does not mention, was decided in 2014.

seller"). The clients were not deciding whether "to buy and sell securities at a specific price," Opposition at 7, but instead the entity that would handle the overall transition.

McLellan's request that the jury be instructed that "[s]tatements made after the investor's decision to buy or sell a security are not made in connection with the purchase or sale of a security" is a correct statement of law, supported by ample authority. *See* Instruction Requests at 4.

### Request No. 4.

McLellan's instruction request includes the formulation proposed by the government, that "the government must prove beyond a reasonable doubt that there was a substantial likelihood that the misstated fact would have been viewed by a reasonable investor as having significantly altered the total mix of information available with respect to a decision whether to purchase or sell a security." Instruction Requests at 5. The remainder of McLellan's requested instruction is necessary to fully explain this concept to the jury, and the government has offered no real reason why it should not be given.

### Request No. 5

The government makes much of the fact that McLellan has divided his materiality-related requests into separate instructions, Opposition at 7, 9, but the different concepts were divided into separate requests for the Court's convenience in considering them rather than being confronted with a single dense pages-long instruction, as well as for ease of reference at the charge conference. They are not rendered less necessary or less accurate s statements of law for being so divided.

This instruction request is not, as the government would have it, thinly-disguised argument, Opposition at 9, but is instead, as the extensive authority cited by McLellan demonstrates, an accurate statement of the law of materiality in the specific context of securities fraud prosecutions.

*See* Instruction Requests at 7-8. In opposing this request, the government does what it accuses McLellan of doing: using arguments better left to the jury to oppose McLellan's instruction request. The government and McLellan can present their respective arguments on this point to the jury, and it will be for the jury to decide whether "the decision to select a transition manager necessarily implies a decision to transact securities at a certain price," Opposition at 9, and whether that means beyond a reasonable doubt that the alleged false statements were material to the clients' decisions to purchase or sell the securities at issue. If McLellan's future Rule 29 motion is denied, the requested instruction will be essential to fairly explain to the jury the considerations that should go into making their decision.[3]

That the Court denied McLellan's motion to dismiss raising some of these same issues does not mean that McLellan is not entitled to have the jury instructed as requested. *See* Opposition at 10. What the Court said in denying the motion to dismiss was that it could not "*on the face of the Superseding Indictment*, conclude that the alleged misstatements were so plainly insignificant that no reasonable client would have considered them important, or that they were so entirely unrelated to the purchase or sale of any securities, that the government has failed to allege a crime." Order on Motions to Dismiss (Doc. 302) at 6-7 (emphasis added). It remains to be seen whether the government can actually meet its burden of proof on these issues.

The cases cited by the government do not undermine the need for the materiality instructions requested by McLellan. For example, in *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184 (2d Cir.

---

[3] The cases on which the government relies—*Crowe*, *Lewis*, and *Lim*, Opposition at 9, did not address materiality but instead the "in connection with" requirement. Moreover, they were all decided at the motion to dismiss stage, so there was never a trial on the merits to actually decide the issue.

7

1998), Opposition at 10, the Court acknowledged that, while brokers were required to disclose markups on equity securities trades, there is no corresponding requirement for debt (fixed-income) securities. *Id.* at 192. The disclosure requirement for debt securities, the Court continued, extends only to *excessive* markups. *Id.* at 192-94. The government's theory here has never been that State Street charged excessive markups, but that State Street charged markups at all. Markups are not "excessive" as that term is used in the securities context simply because they are undisclosed; instead, a markup is excessive only "when it bears no reasonable relation to the prevailing market price." *Bank of Lexington & Tr. Co. v. Vining-Sparks Sec., Inc.*, 959 F.2d 606, 613 (6th Cir. 1992)(upholding district court finding that markups, only one of which exceeded 5%, were not excessive). The markups charged by State Street were in the hundredths of one percent and would never be found to be excessive, as that term is used in the securities context, which generally requires markups at or at least approaching 5%.[4]

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996), was also an excessive markup case, in which salesmen were charging 5-10% commissions, as were *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 835 F.2d 1031 (3d Cir. 1987), and *Marini v. Adamo*, 995 F.Supp.2d 155 (E.D.N.Y 2014), Opposition at 11. None of these cases have the slightest bearing on the issues that will actually be before the jury in this case.

The final case cited by the government, *Brink v. Raymond James & Assoc., Inc.*, 2016 WL 3950030 (S.D. Fla. 2106), Opposition at 10, has just been reversed by the Eleventh Circuit in an

---

[4] In *Grandon*, the alleged markups were "4.6, 6.3, and between 3.7 and 9.74 percent." *Id.* at 191.

opinion that is quite instructive for present purposes. The Court framed the issue before it as "whether the conduct alleged in Brink's complaint—that RJA built a profit into the Processing Fee while representing to its Passport Account customers that the Processing Fee covered only the actual costs of transaction execution and clearing—constitutes a 'misrepresentation or omission of a material fact in connection with the purchase or sale' of those securities." *Brink v. Raymond James & Assocs., Inc.*, 2018 WL 2752572, at *4 (11th Cir. June 8, 2018). The Court noted that "[m]ateriality has special meaning in the context of federal securities fraud," *i.e.*, "materiality in federal securities law requires a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Id.*, quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). Relying on its prior decision in *Goble*, *see* page 5, *supra*, the Court concluded that "the choice of a type of investment account, much like the choice of a broker-dealer, is not intrinsic to the investment decision itself. Although RJA's alleged misrepresentation regarding the Processing Fee might have influenced a reasonable investor's decision to pick the Passport Account over another type of account, that does not make the alleged representation 'material.'" *Id.* at *5. The Court found further support for its conclusion in two cases from other circuits:

> We find it persuasive that two other circuits likewise have determined that a hidden profit on a processing or transaction fee is not material under federal securities law. In a Second Circuit case, investors alleged that a brokerage firm charged hidden commissions on transactions, labeled as "transaction fees" on the transaction confirmation slips. *Feinman v. Dean Witter Reynolds, Inc.,* 84 F.3d 539, 540 (2d Cir. 1996).9 The Second Circuit held that the alleged conduct did not constitute federal securities fraud because the misrepresentation was not material as a matter of law: "Simply stated, reasonable minds could not find that an individual investing in the stock market would be affected in a decision to purchase or sell a security by knowledge that the broker was pocketing a dollar or two of the fee charged for the transaction." Id. at 541. Similarly, the Seventh Circuit has held that SLUSA did not preclude a state law breach of contract claim where the allegation was that the broker-dealer

"improperly inflated the [handling, postage and insurance fee] to include a profit" because the inflated fee was "not objectively material to ... any class members' investment decisions." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012).

*Id.* [5]

It cannot, therefore be said, as the government does, that the "fact pattern" here is "within the heartland of 10b-5 securities fraud." Opposition at 11. The requested instruction should be given to provide the jury with the guidance necessary to decide the complex issues before it.

### Request No. 6.

Once again, the government seeks to limit the Court's instructions to the bare bones of pattern instructions, Opposition at 10, and its objections should be rejected. As the Second Circuit recognized in *United States v. Litvak*, 808 F.3d 160. 183-85 (2d Cir. 2015), the sophistication of the investor matters a great deal when considering the materiality of a statement. What might alter the total mix of information for a gullible or inexperienced investor may not for an experienced, sophisticated investor, who will have a very different basis for evaluating what is being said. Contrary to the government's argument, Opposition at 11-12, the sophistication of the investor is not simply a reliance issue but, instead, as *Litvak* makes clear, one very much related to materiality. Indeed, in its second *Litvak* opinion, the Second Circuit reiterated the relationship between investor

---

[5] The Court did, to be sure, note that the defendant did not "mislead [its] customers as to what portion of the total transaction cost was going toward purchasing securities versus the cost of the broker's involvement." *Id.*, quoting *United States v. Litvak*, 808 F.3d 160, 176 (2d Cir. 2015), but it did not further explain exactly why that fact would transform representations that only affected the choice of account into those that would affect the decision whether to buy or sell a security. Here, the clients knew of the projected implementation shortfall– the projected direct and indirect costs of the transition. In any event, the proposition for which the government cited the district court opinion—that because the processing fee included an undisclosed commission, it satisfied the "in connection with" requirement—has been firmly rejected by the Eleventh Circuit.

sophistication and materiality:

> The standard of a "reasonable investor," like the negligence standard of a "reasonable man," is an objective one. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 . . . (1976); *Long v. Abbott Mortg. Corp.*, 459 F.Supp. 108, 116-17 (D. Conn. 1978) (citing cases). *The standard may vary, therefore, with the nature of the traders involved in the particular market.* See *Basic*, 485 U.S. at 236, 108 S.Ct. 978; *Michaels v. Michaels*, 767 F.2d 1185, 1197 (7th Cir. 1985). *The reasonable investor in a market in which many individual investors trade will be deemed to be somewhat less schooled and sophisticated than a reasonable investor in a market, like the one now before us, in which only institutions trade with the help of complex computer programs and professional traders.* See, e.g., *Marini v. Adamo*, 995 F.Supp.2d 155, 184 (E.D.N.Y. 2014), *aff'd*, 644 Fed. Appx. 33 (2d Cir. 2016); *In re Initial Pub. Offering Sec. Litig.*, 241 F.Supp.2d 281, 377 n.142 (S.D.N.Y. 2003); *Lenz v. Associated Inns & Rest. Co. of Am.*, 833 F.Supp. 362, 375-76 (S.D.N.Y. 1993).

*United States v. Litvak*, 889 F.3d 56, 64-65 (2d Cir. 2018)(emphasis added). The instruction requested by McLellan is an accurate recitation of factors that the jury should consider in evaluating materiality and should be given.

### Request No. 7

The requested instruction is necessary foundation for the jury's evaluation of the evidence so that it will have a complete understanding of what conduct with respect to markups does and does not violate the law. The jury needs to know, as this instruction will inform it, that the taking of undisclosed markups on debt securities, without more, is not a violation of federal securities laws. From that starting point, it will then be able to consider whether the government has proven beyond a reasonable doubt that McLellan engaged in conduct that did violate the federal securities laws under which he is charged.

### Instruction No. 8

The government acknowledges that it is proper to instruct the jury that the defendant must have acted with the "intent to do something that the law forbids, that is to say, with the bad purpose

either to disobey or to disregard the law," Opposition at 14, a proposition that is incorporated into McLellan's requested instruction. One must then ask, how can one have acted with the intent to disregard the law, unless he at least generally knows that the law prohibits his conduct? McLellan has not requested that the Court instruct the jury that the government must prove that McLellan knew chapter and verse of the particular securities laws that he was allegedly violating but only that McLellan "knew that he was acting unlawfully and in violation of United States securities laws." Instruction Requests at 11. *See* page 3, *supra.* The instruction as written should be given.

### Request No. 9

The government's opposition to the giving of a good faith instruction continues its efforts to have the Court instruct the jury in a manner slanted toward conviction. The question here is not whether, in the event of a conviction and appeal, the First Circuit would reverse the Court for failing to include a separate good faith instruction if the Court "adequately instructs on intent to defraud," Opposition at 15, but rather whether fundamental fairness dictates that such an instruction be given where McLellan's defense is predicated on his good faith belief in the propriety of his actions. "A criminal defendant is entitled to an instruction on his theory of defense so long as the theory is a valid one and there is evidence in the record to support it." *United States v. Gamache*, 156 F.3d 1, 9 (1st Cir. 1998). A good faith defense is certainly a valid one, and there will be evidence in the record to support it. Indeed, good faith instructions are common fare in cases such as this one. The government has not suggested any way in which McLellan's requested good faith instruction is deficient or inaccurate, and it should be given.

### Request No. 10

It was the government's choice to rely in its presentation of evidence on securities

transactions that were entirely extraterritorial and that did not, therefore, violate the securities laws of the United States. For example, it insisted on its right to present evidence regarding the Dutch Doctors transition even though it involved trading in entirely foreign securities. Having made that choice, the government now wants the jury to be given only the barest of bare-bones information regarding how to distinguish between domestic securities, which fall with the purview of the United States securities laws, and foreign securities transactions, which do not. It is the government's highly truncated version of an extraterritoriality instruction that will leave the jury confused and uncertain regarding how to draw the vital distinction between the two, not the one proposed by McLellan. With one minor exception, addressed in the next paragraph, the government has again not suggested anything that is wrong with McLellan's request other than it deems it too long. The instruction is a correct statement of the applicable law necessary to guide the jury's deliberations in this important area , and it should be given.

The government's one objection to McLellan's requested instruction is that, in its view, McLellan need not have known that he was entering into a conspiracy to commit securities fraud in connection with United States securities. Opposition at 15-16. This objection ignores the basic tenet of conspiracy law that "[t]o prove a defendant's participation in a conspiracy, the government must show two types of intent: the defendant's intent to join the conspiracy and his intent to perpetrate the underlying substantive offense." *United States v. Rodriguez-Milian*, 820 F.3d 26, 31 (1st Cir. 2016). Unless McLellan had the intent that domestic securities fraud be committed, he did not have the intent to commit the underlying substantive offense.

## Request No. 12

McLellan has already explained why he has not included "half truths" and "knowing

concealment" in his requests for instructions. *See* page 2, *supra.* That "breach of contract does not by itself constitute a scheme to defraud," Opposition at 16, is a correct statement of law. *See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990)("Nor does a breach of contract in itself constitute a scheme to defraud"); *see also U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 660 (2d Cir. 2016)(government referred to the "view that breach of a contract, without further evidence of fraudulent intent, does not establish a fraud claim" as "uncontroversial"). Nothing in this requested instruction even remotely "suggests that a contract is required for fraud," Opposition at 16, and in giving the instruction the Court would not be "endorsing" McLellan's defense but simply giving the jury information it needs, in the form of an absolutely correct statement of law, to evaluate the government's case and McLellan's defenses.

Contrary to the government's repeated arguments, the Court is not putting a finger on the scale in McLellan's favor by providing the jury with instructions that fully and accurately explain the applicable legal principles. The pattern instructions were neither "prepared or mandated" by the First Circuit. *United States v. Urciuoli*, 513 F.3d 290, 300 n. 7 (1st Cir. 2008). *See, e.g., United States v. Gomez*, 255 F.3d 31, 39 n.7 (1st Cir. 2001)(A district court "possesses wide discretion to instruct in language that it deems most likely to ensure effective communication with jurors," and "the compilation of pattern instructions does not in any way curtail this wide discretion."); *United States v. Sabetta*, 373 F.3d 75, 82 (1st Cir. 2004)(noting that the preface to the Pattern Instructions states that "it bears emphasis that no district judge is required to use the pattern instructions, and that the Court of Appeals has not in any way approved the use of a particular instruction.").

That the instruction that "just because some of the actions or statements you have heard about may strike you as sharp dealing or unethical conduct, that alone does not amount to a scheme to

defraud," Instruction Requests at 18; *see* Opposition at 16, does not appear in a pattern instruction is no bar to giving it. It is an entirely unobjectionable statement of law that appears not just in *Weimert*, but in other cases as well, *see, e.g., United States v. Colton*, 231 F.3d 890, 901 (4th Cir. 2000); *Allstate Ins. Co. v. Tanella*, 2012 WL 7188685, at *4 (E.D.N.Y. Aug. 28, 2012); *Banco Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1334 (S.D. Fla. 2000), and will assist the jury in evaluating the evidence before it. There is, simply, no reason not to give it.

The final portion of the requested instruction to which the government objects, Opposition at 16-17, is derived directly from a line of Second Circuit cases, including *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987), and *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970); *see also United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007); *United States v. Novak*, 443 F.3d 150 (2d Cir. 2006), that provide ample support for the giving of the requested instruction.[6] In its order denying McLellan's motion to dismiss the wire fraud charges, the Court evidenced its recognition that whether the transition management clients received the benefit of their bargains was a disputed issue of fact to be resolved by the jury:

> The Superseding Indictment does not—and need not—set forth facts which permit this Court, at this time, to assess whether each alleged victim got the benefit of its bargain with State Street. The counts involving wire fraud each plainly allege that McLellan "devised a scheme and artifice to defraud," . . . no more is required at this stage . . . . Which factors motivated the alleged victims to hire State Street to conduct their transitions, *whether each alleged victim received the benefit of its bargain*, whether the facts demonstrate a scheme to

---

[6] *Pasquantino v. United States*, 544 U.S. 349 (2005), on which the government relies, Opposition at 17, was addressing the application of the wire fraud statute to conduct designed to defraud a foreign country, not the requisites of a scheme to defraud. *United States v. Helmsley*, 941 F.2d 71 (2d Cir. 1991), and *United States v. Amato*, 39 F.3d 1249 (2d Cir. 1994), were both Second Circuit cases, and nothing in them is inconsistent with the Second Circuit cases on which McLellan relies, nor are the First Circuit cases cited by the government inconsistent with the requested "benefit of the bargain" instruction. The First Circuit has never rejected the *Starr-Regent-Shellef* line of cases (although, admittedly, it has not yet considered the issue).

defraud or merely to deceive, and the extent to which each victim was harmed by the fraud alleged here are disputed questions of fact. Such disputes must be resolved at trial rather than on pretrial motions to dismiss.

Order on Motions to Dismiss (Doc. 302) at 8-9 (emphasis added).

### Request No. 13

Nothing in the instruction requested by McLellan would in any way suggest to the jury that consideration of the sophistication of the transition management clients carries with it the implication that the investor must have relied on the misstatement, nor does the requested instruction introduce an *actual* reliance element into the equation, which is what *Neder v. United States*, 527 U.S. 1, 24-25 (1999), *see* Opposition at 17-18, was addressing. Instructing the jury that, to be material, the statement must be one that a reasonable person *would* have relied on in making his decision, *see* Opposition at 17, is very different from telling the jury that it is required to find that the transition management clients actually relied on what was said.

The government's objection that McLellan's requested instruction "appears to establish a subjective standard of materiality," Opposition at 18, is a curious one in light of the fact that the requested instruction is cast in terms of the "reasonable person" and the "reasonable transition management client." *See* Instruction Requests at 20. The requested instruction does not present "arguments in the guise of instructions," nor does it have anything to do with McLellan's theory of when the alleged fraud ended. Opposition at 18. It remains at all times focused on the issue of the materiality of the alleged misstatements, a very different question.

### Request No. 15

McLellan refers the Court to his response to the government's objection to Request No. 9, *supra*.

**Request No. 17**

McLellan intends to object to State Street's being included as a victim in this count for reasons that will be clarified during the Rule 29 arguments and/or the charge conference.

**Request No. 18**

McLellan has provided ample authority for his requested instruction regarding the wire fraud statute's lack of extraterritorial reach. *See* Requested Instructions at 26. For a more extended discussion, *see* Defendant Ross McLellan's Motion *in Limine* to Exclude Evidence Relating to Transition Conducted for the Dutch Pension Fund (Doc. 343) at 9-14, incorporated by reference herein. As those authorities demonstrate, it does not suffice for domestic application of the wire fraud statute that simply that a wire was sent to or from the United States in furtherance of the scheme. *See* Opposition at 19.

**Request No. 19**

The government states that its theory is that "the crime was committed when McLellan and his coconspirators affirmatively misled clients." Opposition at 19. The challenged paragraph of this instruction request is consistent with that theory. It remains McLellan's position, and he believes the evidence will show, that the alleged acts of concealment took place after the end of the alleged conspiracy and were not part of the alleged original conspiratorial agreement. *See* Defendant Ross McLellan's Motion *in Limine* to Exclude Evidence Relating to Alleged Concealment (Doc. 340).

**Request No. 20**

The short additional instruction regarding the requirements of aiding and abetting in the securities fraud context of this particular case is necessary to convey the important requirement that the jury must find that the principal committed a *domestic* securities fraud offense. Aiding and

abetting "requires proof that: 1) the substantive offense was actually committed; 2) the defendant assisted in the commission of that crime or caused it to be committed; and 3) the defendant intended to assist in the commission of that crime or to cause it to be committed." *United States v. Davis*, 717 F.3d 28, 33 (1st Cir. 2013). If the principal did not actually commit an offense punishable under the securities laws of the United States, then McLellan cannot be convicted of securities fraud on an aiding and abetting theory.

### Request No. 22

As the Court noted in denying Defendant Ross McLellan's Motion *in Limine* to Exclude Evidence Relating to Alleged Concealment (Doc. 340) without prejudice, "[t]he scope of the conspiracy, including its main criminal objectives is a question of fact for the jury to resolve." Orders on Pretrial Motions (Doc. 405) at 1-2.  McLellan believes that the evidence will warrant the giving of this instruction.

    Respectfully submitted,
By his attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (telephone)
(617) 338-9538 (fax)
owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

## CERTIFICATE OF SERVICE

  I, Martin G. Weinberg, hereby certify that on this 13th day of June, 2018, I caused the within Motion to be served on all registered participants through its filing with this Court's CM/ECF system.

                  **/s/ Martin G. Weinberg**
                  Martin G. Weinberg