UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)<br>ROSS MCLELLAN,      )<br>     Defendant   )  | No. 16-10094-LTS |

### DEFENDANT ROSS MCLELLAN'S MOTION TO PRECLUDE EXPERT TESTIMONY FROM GRAHAM DIXON

Now comes the Defendant, Ross McLellan, by and through undersigned counsel, and, pursuant to Fed. R. Crim. P. 16(a)(1)(G) and the parties' Joint Memorandum for Second Interim Status Conference, hereby respectfully requests that the Court preclude the government from eliciting expert testimony from Graham Dixon.  As grounds and reasons therefore, Mr. McLellan states that the government's disclosure of this proffered testimony came eighty days after the applicable deadline and ten days after the beginning of trial.  Allowing Mr. Dixon to provide expert testimony notwithstanding this late disclosure would irreversibly prejudice Mr. McLellan's trial defense.

### Local Rule 7.1(a)(2) Certification

Undersigned counsel conferred with counsel for the government and the government, by and through Stephen E. Frank, opposes the instant motion.

### MEMORANDUM OF LAW

On January 13, 2017, more than seventeen months ago, the parties filed the following agreement relating to expert disclosures:  "The parties propose a schedule for expert disclosures

1

pursuant to Fed. R. Crim. P. 16(a)(1)(G) and 16(b)(1)(C) with the government producing expert disclosures 70 days prior to trial and the defendants producing expert disclosures 45 days prior to trial with the Government producing disclosures as to any rebuttal experts 25 days prior to trial." Exhibit 1 at 2. In a timely manner, the government informed counsel for Mr. McLellan that it did not intend to offer any expert testimony in its case-in-chief and, therefore, would not be providing any expert disclosures. Forty-five days prior to trial, in reliance upon the parties' express agreement, Mr. McLellan provided a fulsome thirteen-page description of the qualifications and opinions of four potential expert witnesses, as well as all four of their curriculum vitae. The government has in no way challenged the sufficiency of these disclosures.

On May 4, 2018, after receiving Mr. McLellan's detailed disclosures, the government notified counsel for Mr. McLellan that it may offer a rebuttal expert witness, namely John Minahan. It provided Mr. Minahan's two-page curriculum vitae but no information whatsoever about the opinions that Mr. Minahan may offer or the bases for those opinions. When counsel for Mr. McLellan requested disclosures comparable to those provided for the four prospective defense experts, the government responded that, in its view, Rule 16 does not require disclosures for rebuttal experts. Ultimately, after some additional back-and-forth, the parties agreed that the government would provide a summary of Mr. Minahan's proffered opinions on June 1, three days in advance of trial, which it did. Upon review of these disclosures, it is clear that at least some of Mr. Minahan's anticipated opinions do not respond directly to the expected testimony of Mr. McLellan's experts but instead echo other evidence introduced in the government's case-in-chief. The proffered testimony is, therefore, beyond the scope of proper rebuttal and Mr. McLellan reserves his right to challenge testimony that would more properly have been part of a case-in-chief if relevant.

Now, well after the pre-trial schedule requiring the noticing of rebuttal witnesses 25 days prior to trial, and two weeks after its disclosures for Mr. Minahan, the government has notified Mr. McLellan of its intent to elicit expert testimony, again in purported rebuttal of Mr. McLellan's case-in-chief, from Graham Dixon.  Mr. Dixon is no stranger to the government and has been included in its list of likely fact witnesses since April 20.  The government has been in contact with Mr. Dixon about this case since 2015.  Indeed, it held two lengthy meetings with him, the first occurring in September 2015 and the second in January 2016.  There was no suggestion that Mr. Dixon would offer any expert testimony until almost three years after this initial contact.

The government's recent change of course may stem from well-founded concerns about the permissible scope of Mr. Dixon's testimony as a fact witness.  Indeed, in a draft report to Royal Mail produced in response to the Court-issued Letters Rogatory in this matter, Mr. Dixon expressly represented, "Our comments on the transition prior to [July 21, 2011] reflect our understanding of matters but *we did not witness events first-hand*."  Exhibit 2 (emphasis added).  This admitted lack of first-hand knowledge significantly narrows the testimony that Mr. Dixon may provide as a fact witness.  *See, e.g.*, *United States v. Organon USA Inc.*, No. 07-CV-12153, 2015 WL 10002943, at *1 n.1 (noting that proffered expert lacked "any first-hand knowledge of the facts of this case, such that he could testify as a fact witness"); *United States v. Clark*, 710 F. App'x 418, 421 (11th Cir. 2017) ("To be rationally based on the witness's perception and thus qualify as lay opinion, testimony must be based on first-hand knowledge or observation." (citation omitted)); *United States v. Banks*, 761 F.3d 1163, 1201 (10th Cir. 2014) ("Given the failure of Defendants to establish that the witnesses had personal knowledge of . . . the facts in

issue, the district court properly concluded that the witnesses could not testify as fact witnesses because their testimony was expert in nature.").

The government's last-minute attempt to offer Mr. Dixon as an expert should be rejected. As an initial matter, Mr. Dixon, much like Mr. Minahan, is not a true rebuttal expert, and a summary of his opinions should therefore have been provided over eighty days ago. Indeed, upon review of the disclosures, it is clear that many of Mr. Dixon's anticipated opinions echo evidence and arguments that have been the focus of the government's case-in-chief. *See, e.g.*, Exhibit 3 at 2 ("Commissions, mark-ups, mark-downs and spreads all refer to per-trade charges, and these terms may be used interchangeably."); *id.* ("[W]here fixed fees are charged in lieu of commissions, clients reasonably understand that to mean that there will be no per-trade charge."); *id.* ("Transition management clients are typically focused on controlling commission costs and fees, which are one component of the implementation shortfall that clients can negotiate and control."). The government's attempt to bolster these arguments with a purported rebuttal expert is improper. *See United States v. Woody's Trucking, LLC*, No. 17-CR-138, 2018 WL 985760, at *4 (D. Mont. Feb. 20, 2018) ("The government may not escape Rule 16's requirements by using rebuttal witnesses to prove its case in chief. . . . Rebuttal testimony that is offered as additional support for an argument made in the case in chief is improper."); *United States v. Waste Mgmt. of Hawaii Inc.*, No. 14-CR-00468, 2015 WL 3725345, at *2 (D. Haw. June 12, 2015) ("The Government cannot introduce what should have been the direct testimony of these experts under the 'guise of rebuttal.'" (quoting *United States v. Hodges*, 480 F.2d 229, 232 (10th Cir.1973)). This fact is reinforced by the government's repeated prior indications of its intent to call Mr. Dixon as a witness during its case-in-chief. Allowing the government to nonetheless elicit expert testimony from Mr. Dixon without timely disclosure "would make a

4

nullity of expert witness disclosure deadlines" and the agreement reached by the parties in this case. *Waste Mgmt.*, 2015 WL 3725345, at *3.

In any event, even assuming that Mr. Dixon is a true rebuttal expert, the government needed to provide a summary of his opinions no later than before the start of trial. Regardless of what Rule 16 itself does or does not require, the framework for the agreement memorialized in the status report clearly obliged the government to make rebuttal expert "disclosures" twenty-five days in advance of trial. Exhibit 1 at 2. It makes no distinction between the scope or content of the disclosures required for experts who may testify during a party's case-in-chief and those testifying in rebuttal. And nothing in Rule 16 *prohibits* the government from agreeing to make disclosures that would not otherwise be required, or the Court from ordering that such disclosures be made. Mr. McLellan's detailed Rule 16 disclosures provided more than a sufficient basis for the government to know on which points it intended to offer rebuttal evidence twenty-five days prior to the trial itself in accordance with the pre-trial schedule.

As a sanction for the government's failure to comply with its disclosure obligations, Mr. Dixon should be precluded from testifying as an expert. In determining the appropriate sanction, the Court should consider "the reason for the party's delay . . . ; the degree of prejudice to the opposing part[y]; and whether the prejudice can be cured with a less severe action." *United States v. Chalhoub*, No. 16-CR-00023, 2018 WL 1477465, at *1 (E.D. Ky. Mar. 25, 2018). First, there is no good reason for the government's nearly three-month delay in providing notice of this expert to the extent his testimony should properly be considered as case-in-chief testimony and over a month delay to the extent his testimony is proper rebuttal. Indeed, it has communicated with Mr. Dixon regarding this case several times over the course of almost three years and should have been well-aware of any relevant expert testimony that he might be able to offer.

Furthermore, Mr. McLellan would surely suffer prejudice if Mr. Dixon were permitted to testify on such short notice. As an initial matter, notice of potential expert testimony is "one of counsel's most basic discovery needs." Fed. R. Crim. P. 16, advisory committee notes. And here, the mere fact that disclosure was not made until ten days following the start of trial, after seven government witnesses had already completed their testimony, would result in significant prejudice. *See United States v. Henry*, No. 16-CR-1097, 2018 WL 794499, at *3 (D.N.M. Feb. 8, 2018) (noting that courts have excluded evidence where disclosure occurred after "the jury had been selected" and "the trial had already begun").

Mr. McLellan did not have the benefit of the government's disclosures for Mr. Dixon when he was cross-examining the first several witnesses, many of whom touched on the very same issues discussed in the tardy disclosures. For example, the government represents that Mr. Dixon is expected to testify that, "in the riskless principal model, the client has no right to inspect the street-side trading records. Riskless principals . . . are required to act in the best interests of their clients." Exhibit 3 at 2. Mr. McLellan had no opportunity to probe the veracity of these statements in his cross-examination of the government's two cooperating witnesses, Pennings and Boomgaardt. Had Mr. McLellan had the benefit of these disclosures at the time, he could have asked, among other things, whether, during the timeframe relevant to this case, State Street typically charged mark-ups when acting as riskless principal in the hundreds of other transitions in the EMEA region in 2010-2011 and whether they viewed broker-dealers trading as riskless principal as being obligated to forego commissions or mark-ups as a condition of acting in the client's best interests at all times. Mr. Dixon is also expected to testify that "[l]ow fees do not suggest that a transition manager is taking undisclosed mark-ups." Exhibit 3 at 2-3. Had Mr. McLellan had notice of this anticipated testimony, he could have asked Pennings and

Boomgaardt whether, in their view, a client could reasonably expect a flat fee of 1-2 bps to represent the full remuneration to the transition manager and its affiliates for a multi-billion dollar transition and the extent to which they warned both specific clients and the industry in general (through speeches and writings) that clients should be focused on non-explicit costs when charged very low explicit fees.  Finally, Mr. Dixon is said to hold the opinion that "[t]here is no evidence that undisclosed pre-hedging in transitions has occurred since" approximately 2004.  Exhibit 3 at 3.  Pennings clearly testified to his belief that State Street's competitors in the transition management industry were earning undisclosed revenues in 2010 and 2011.  With this expert disclosure in hand, Mr. McLellan could have specifically inquired of Pennings as to whether, in his view, these practices continued after the investigation referenced in the disclosures.  It is now too late for Mr. McLellan to probe any of the above issues with these key witnesses, who have completed their testimony and presumably returned to the U.K.  This fact alone establishes that Mr. McLellan would suffer irrevocable prejudice if Mr. Dixon were permitted to testify as an expert.

With the benefit of notice, Mr. McLellan would further have had the opportunity to probe Mr. Dixon's pre-existing relationships with Pennings, Boomgaardt, and State Street in general.[1] Mr. McLellan believes that, had he inquired on these issues with both Pennings and Boomgaardt, he would have elicited testimony that Mr. Dixon did not think highly of Pennings or State Street as a whole for that matter.  This fact would clearly be relevant to Mr. Dixon's credibility as an expert.

---

[1] While Mr. Dixon was listed as a possible fact witness before defense counsel cross-examined Pennings and Boomgaardt, Mr. McLellan did not feel the need to probe these prior relationships given the narrowness of the testimony that Mr. Dixon could offer as a fact witness.

7

Even overlooking these missed opportunities for cross-examination of other witnesses, the task of preparing to cross-examine an expert witness like Mr. Dixon is made more difficult once trial is already underway and counsel must balance such preparations with the significant demands of trying a complex federal case such as this one. Mr. Dixon's proffered testimony, relating solely to his experience in the U.K., differs significantly from that of the only expert that the government designated pre-trial (albeit belatedly), who appears to have worked exclusively in the U.S. The prejudice to Mr. McLellan cannot be cured by a less severe sanction such as a continuance. It would be impractical to recall all of the witnesses who have testified to date and allow defense counsel to cross-examine them with the benefit of Mr. Dixon's disclosures. Nor should Mr. McLellan, who has been living under the indescribable strain of federal indictment for well over two years and is now in the midst of trial, be required to endure delay as a result of the government's failure to comply with its notice obligations.

For the reasons set forth above, Mr. McLellan respectfully requests that this Honorable Court preclude the government from eliciting expert testimony from Graham Dixon.

> Respectfully submitted,
> Ross McLellan
> By His Attorneys,
>
> **/s/ Martin G. Weinberg**
> Martin G. Weinberg, Esq.
> Mass. Bar No. 519480
> 20 Park Plaza, Suite 1000
> Boston, MA 02116
> (617) 227-3700
> owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Dated: June 19, 2018

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, June 19, 2018, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg