UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| v. ) | No. 16-10094-LTS |
| ROSS MCLELLAN, ) <br> Defendant ) | |

### DEFENDANT ROSS MCLELLAN'S SUPPLEMENTAL REQUEST FOR INSTRUCTION TO THE JURY

Now comes the defendant Ross McLellan and respectfully requests that this Honorable Court provide the jury with the following instruction to guide its deliberations in this case:

> In order to convict Mr. McLellan on any of the charges in this case, you must find that he made, or directed others at State Street to make, affirmative misrepresentations to one or more of the relevant transition management clients. You cannot, by contrast, convict Mr. McLellan based on any failure to disclose additional facts to those clients. In short, unless you find that Mr. McLellan, or others acting at his direction, affirmatively lied to clients, you must return a not guilty verdict.

This instruction is predicated on the government's unequivocal representation that, "[d]espite McLellan's best efforts to turn this into an omissions case, this is a case about *affirmative* misrepresentations that McLellan personally made or directed. . . . [N]o legal or regulatory regime permits bankers to affirmatively lie." Dkt. 298 at 6 (emphasis in original). The government made this representation in opposing Mr. McLellan's motion to sever Count 6, the only count involving a U.S. transition management client, from the remaining counts, all of which related to the Europe, Middle East, and Africa region. This Court, after receiving the government's briefing, denied Mr. McLellan's motion, and the parties proceeded to a joint trial

1

on all counts.  In his initial Requests for Instructions to the Jury, Mr. McLellan did not include any reference to an omissions theory of fraud, citing the government's "explicit[] disavow[al]" of such a theory.  Dkt. 362 at 2.

The government, in an effort to resist this straightforward consequence of its own prior statements, now takes a much more measured and equivocal position.  It purports to be pursuing "alternate forms of affirmative misrepresentation liability, including half-truths, misleading statements, and omissions that make other statements misleading."  Dkt. 445 at 1.  The government professes to have "disclaimed" only "a theory of liability based on omissions in the presence of a duty to disclose."  *Id.*  Of course, this is not what the government initially said.  Instead, it flatly declared that this is not "an omissions case," without cabining the scope of that statement to any particular type of alleged omission.  Dkt. 298 at 6.  The government's severance brief is similarly devoid of any reference to "alternate forms" of liability or "half-truths."  Rather, it expresses an intent to rely solely on "affirmative[] lie[s]."  *Id.*  This Court should reject the government's belated and tactical attempt to walk away from prior representations proffered to the Court for the purpose of influencing the Court's decision-making.[1]

What's more, the "alternate" theories of half-truths and misleading statements that the

---

[1] "[T]he doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant . . . in an earlier phase of the same legal proceeding." *United States v. Szpyt*, 785 F.3d 31, 41 (1st Cir. 2015) (citation omitted).  While the First Circuit has yet to squarely decide whether judicial estoppel may apply against the government in a criminal case, *see United States v. Levasseur*, 846 F.2d 786, 795 (1st Cir. 1988), it has held that the doctrine applies against criminal defendants.  *See United States v. Pakala*, 568 F.3d 47, 60 (1st Cir. 2009).  Mr. McLellan submits that it is only fair that both parties to a criminal case be required to play by the same rules.  *See Levasseur*, 846 F.2d at 796 (Bownes, J., dissenting) ("I fail to see any justification for the government being exempted from this rule.").

government now purports to rely upon fit comfortably within the broader category of "omissions" theories.  Indeed, the First Circuit has recognized as much by interpreting securities fraud plaintiffs' waiver of an "omissions" argument to preclude any claim that the defendant "had a duty to supply omitted matter in order to prevent possible misleading." *Capri Optics Profit Sharing v. Digital Equip. Corp.*, 950 F.2d 5, 7-8 (1st Cir. 1991).  The court distinguished such alleged omissions from a contention based on statements that "were false in themselves." *Id.* at 7; *see also Baron v. Smith*, 285 F. Supp. 2d 96, 101 (D. Mass. 2003) ("[T]he plaintiffs do not claim that the defendants made affirmatively false statements, but rather that the defendants omitted to state additional information necessary to keep the disclosed information from being misleading.").  This inclusion of half-truths and misleading statements under the heading of omissions follows from the face of Rule 10b-5 itself, which prohibits omissions only when "necessary in order to make the statements made . . . not misleading."  17 C.F.R. 240.10b-5; *see also Furst v. Feinberg*, 54 F. App'x 94, 97 (3d Cir. 2002) ("Generally, an omission does not . . . , by itself, violate Rule 10b–5.  There must be an affirmative misstatement that is rendered misleading by the alleged omission.").  Indeed, as a predicate for omissions liability, there must be some half-truth, misleading statement, or other event giving rise to a duty to disclose.  Thus, the government's insistence that it has waived any reliance on alleged "omissions in the presence of a duty to disclose," but not on half-truths or misleading statements is nonsensical, in addition to being inconsistent with its prior pleadings.

Consistent with the above reasoning, courts have repeatedly characterized alleged half-truths as omissions rather than affirmative false statements. *See, e.g.*, *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 944 (7th Cir. 1989) ("The express language of 10b-5 only proscribes omissions

3

that render affirmative statements misleading; thus, incomplete disclosures, or 'half-truths,' implicate a duty to disclose whatever additional information is necessary to rectify the misleading statements."); *Martin v. Altisource Residential Corp.*, No. 15-CV-0024, 2017 WL 1068208, at *3 (D.V.I. Mar. 16, 2017) ("[O]missions can give rise to liability only where the defendant had an affirmative duty to disclose the information in question, such as 'when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete or misleading prior disclosure.'" (quoting *Oran v. Stafford*, 226 F.3d 275, 285–86 (3d Cir. 2000)); *SEC v. St. Anselm Expl. Co.*, 936 F. Supp. 2d 1281, 1295 (D. Colo. 2013) (classifying as "fraud-by-omission" argument that "defendants were required affirmatively to disclose the nature of the company's financing model in order to make statements about the strength and viability of the company's financial situation not misleading"); *Love v. Alfacell Corp.*, No. 09-CV-5199, 2011 WL 4915874, at *8 (D.N.J. Oct. 17, 2011) ("Rule 10b–5 liability may arise either from affirmative misstatements or misleading omissions."). In short, if the government's express disavowal of an omissions theory meant anything at all, it certainly conveyed an intent not to rely on purported omissions necessary to render other statements not misleading.[2] Having made that representation in connection with the Court's denial of Mr. McLellan's severance motion, the government should not be permitted to reverse course.

---

[2] Three of the four cases cited by the government on this point are not to the contrary and stand only for the unremarkable proposition that misleading omissions may be actionable under Rule 10b-5. *See* Dkt. 445 at 1 n.1 (citing cases). If this were not so, any waiver by the government of such an argument would be beside the point. The fourth case is an unpublished out-of-circuit summary order upholding as "reasonable" a district court's decision to instruct the jury on "an affirmative misrepresentation theory." *United States v. Kone*, 303 F. App'x 38, 40 (2d Cir. 2008). To the extent *Kone* supports the government's argument, which is impossible to discern

Respectfully submitted,
By his attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (telephone)
(617) 338-9538 (fax)
owlmgw@att.net

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this 19th day of June, 2018, I caused the within document to be served on all registered participants through its filing with this Court's CM/ECF system.

**/s/ Martin G. Weinberg**
Martin G. Weinberg

---

with any certainty given the paucity of detail provided by the summary order, it must give way to the weight of authority, both in and outside of this circuit, cited above.