UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
UNITED STATES OF AMERICA      )
                                          )
          v.                           )          Criminal No. 16-10094-LTS
                                          )
ROSS MCLELLAN,                   )
                                          )
          Defendant.              )
_____)

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO PRECLUDE REBUTTAL TESTIMONY**

The government respectfully submits this response in opposition to the defendant's

motion to preclude the rebuttal testimony of Graham Dixon.

The government identified Mr. Dixon to the defense as a likely witness on May 4,

2018—one month before trial—and simultaneously produced two lengthy FBI-302 reports

(totaling 12 single-spaced pages) summarizing his prior statements.  As part of Rule 16

discovery, the government also produced lengthy written reports Mr. Dixon prepared concerning

the four transitions he reviewed that are at issue in this case:  the Royal Mail transition, the

Sainsbury transition, and the two KIA transitions.  In addition, the defense itself, anticipating Mr.

Dixon's testimony, sought the production of additional documents from his firm, Inalytics,

pursuant to letters rogatory.  Inalytics complied with those document requests, and the

documents were produced to the defendant by the City of London Police well in advance of trial.

In short, the defense has long understood that Mr. Dixon would be a witness in this case, and has

had ample and timely disclosure of his prior statements and the substance of his anticipated

testimony.

The defendant now seeks to preclude Mr. Dixon's testimony because the government—having advised the defense that it will *not* call Mr. Dixon in its case-in-chief, but that it *may* call him as a rebuttal witness—provided additional disclosures concerning his expected testimony, in an abundance of caution, to the extent any of it is deemed "expert" pursuant to Fed. R. Evid. 702. (<u>See</u> Exhibit A, attached hereto).  The defendant's motion us without merit, and should be denied.

<u>First</u>, as the government noted in its letter to the defense, Mr. Dixon's background, experience and understandings based thereon are all independently admissible in his capacity as a fact witness and pursuant to Fed. R. Evid. 701 in connection with his review of four of the transitions at issue in this case.  That testimony—concerning, for example, the varying financial sophistication of his clients (including KIA, Royal Mail and Sainsbury), the definition of certain terms, his experience with fee disclosure practices, what he and his clients understood certain representations to mean, and the importance of fees to clients—all falls within the "particularized knowledge" that Mr. Dixon has "by virtue of his or her position in the business" of transition management.  See Fed. R. Evid. 701, advisory committee note; <u>see also</u> <u>United States v. Ferguson</u>, No. CRIM 3:06CR137 CFD, 2007 WL 4556625, at *3 (D. Conn. Dec. 20, 2007) (permitting securities analysts to offer lay opinion concerning "the importance of loss reserves to their understanding of AIG's financial condition, the importance of receiving accurate financial information about AIG to their understanding of how to advise clients, and their reliance on AIG's financial disclosures in writing their reports and making recommendations to clients."); <u>United States v. DeMuro</u>, 677 F.3d 550, 562 (3d Cir. 2012) ("we have allowed professionals to give lay opinions when the opinions are based on personal knowledge of the issues, along with specialized experience" and citing <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 781 (3d Cir.1985), for the

proposition that lawyer who specialized in business litigation and securities law was permitted to offer lay opinion "about what information should have been included in a private offering memorandum"). The government provided the supplemental disclosures simply to head off any attempt by the defense to resurrect its prior objection to the testimony of the government's first witness, Rick Boomgaardt, when Boomgaardt testified to his understanding of key terms and practices based on his experiences in the transition management industry.[1]

Second, even to the extent any of Mr. Dixon's testimony is deemed expert, the defense has been aware of the substance of that testimony for many weeks and, indeed, has far more disclosures with respect to him than the 12 pages of bullet point summaries the defense itself provided for *all four* of its experts *combined*. Moreover, virtually none of the information the government summarized in its disclosure letter is new. Most of it simply parrots the FBI-302 summaries of Mr. Dixon's prior statements and/or echoes disclosures the government made with respect to its previously identified rebuttal expert on the U.S. transition management industry. The defense has presumably been preparing for Mr. Dixon's testimony for weeks (if not longer),

---

[1] See 6/5/18 Tr. at 103:24-104:12:

| | |
|---|---|
| MR. JOHNSTON: | How does an agent compare to a principal in this type of market? |
| MR. WEINBERG: | If your Honor please, we object, 702. It's not been marked under 702. I think this is beyond 701. |
| MR. JOHNSTON: | He's testifying from his personal experience in decades in the industry. |
| THE COURT: | So you cite 702? |
| MR. JOHNSTON: | He's testifying based on his understanding of what these terms mean in the industry that he worked in for over 15 years. |
| (Discussion off the record.) | |
| THE COURT: | So he can explain what it meant to him and how he used those terms. |

and there is simply no prejudice to the defense to the extent portions of his testimony are deemed

expert.[2]  The defendant's contention that he "did not have the benefit of the government's

disclosures . . . when he was cross-examining the first several witnesses," (Def. Br. at 6) is

simply not true.  The defendant knew what Mr. Dixon was going to say, and as he concedes,

expected him to testify as part of the government's case-in-chief.

      Nor is there merit to the defense contention that Mr. Dixon's anticipated testimony is not

"true rebuttal" testimony. (Id. at 4).   For example, just today, the defense expert, Mr. Menchel,

testified that institutional investors are sophisticated.  Mr. Dixon will testify, based in part on his

interaction with the institutional investors in this case (and his other experience) that institutional

investors are of varying levels of sophistication.  Likewise, Mr. Menchel testified that

institutional investors paying fees for transition management services expect to pay a broker-

dealer separately for execution costs.  Mr. Dixon will testify, as a longtime transition manager

and transition management consultant, and as a consultant to three of the victims in this case, that

that is not true, and that where fixed fees are charged in lieu of commissions, clients understand

that to mean that there will be no per-trade charge (as he and his clients did in this case).  And

while Mr. Menchel today testified that institutional investors care about the implementation

shortfall, and not the remuneration earned by the transition manager or broker-dealer, Mr. Dixon

will testify that transition management clients are focused on controlling commission costs and

---

[2] The defense does not, because it cannot, suggest that Mr. Dixon is anything other than highly qualified to provide expert testimony, should it be deemed as such.  Indeed, he is likely *the* leading authority on the transition management business in the United Kingdom.

fees, which are one component of the implementation shortfall they can negotiate and control (as his clients did in this case).

<u>Third</u>, it is, in any event, black letter law that the government is not required to identify rebuttal witnesses in advance, and rebuttal experts are no exception to that rule.  Indeed, "Rule 16(a)(1)(G) is explicitly applicable only to expert testimony offered in the government's case-in-chief and not rebuttal experts."  <u>United States v. Beilharz</u>, 378 F. App'x 363, 365 (4th Cir. 2010). <u>See</u> <u>also</u>, <u>e.g.</u>, <u>United States v. Frazier</u>, 387 F.3d 1244, 1269 (11th Cir. 2004) ("Our case law establishes that, consistent with the plain language of the Rule, the government's presentation of rebuttal testimony without prior notice does not violate Rule 16, since the Rule's notice requirements apply only to the government's case-in-chief."); <u>United States v. DiCarlantonio</u>, 870 F.2d 1058, 1063 (6th Cir.1989) (same); <u>United States v. Barrett</u>, 766 F.2d 609 (1st Cir. 1985) (same); United States v. Angelini, 607 F.2d 1305, 1308–09 (9th Cir.1979) (same). <u>United States v. Windham</u>, 489 F.2d 1389, 1392 (5th Cir.1974) ("Rebuttal witnesses are a recognized exception to all witness disclosure requirements.").  While the government did agree to provide rebuttal expert disclosures to the defense on June 1, that agreement was plainly limited to identifying and setting forth the opinions of witnesses about whom the defense was unaware.[3]  It should not foreclose the government from simply re-designating portions of the testimony of a witness about whom the defense has had ample notice, abundant discovery, and early and fulsome Jencks disclosures—particularly when the government has done so only in an

---

[3] The defendant's reliance on a proposed expert disclosure schedule contained in the parties January 13, 2017 joint status report is misplaced.  That proposal was never adopted, never set forth in a Court order, and was discussed under very different circumstances, ten months before the first (subsequently adjourned) trial date and while there was still a second defendant in the case.

abundance of caution, in the wake of a defense objection to other fact and lay opinion testimony elicited during the course of trial.

Respectfully submitted,

SANDRA MOSER                         ANDREW E. LELLING
Acting Chief, Fraud Section          United States Attorney
Criminal Division

By:  */s/ William E. Johnston*        By: */s/ Stephen E. Frank*
WILLIAM E. JOHNSTON                   STEPHEN E. FRANK
Trial Attorney                        Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I certify that on June 19, 2018, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

/s/ *Stephen E. Frank*
STEPHEN E. FRANK