UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                             )     No. 16-10094-LTS<br>)<br>ROSS MCLELLAN,                      )<br>    Defendant                              )<br>)  | |

**DEFENDANT ROSS MCLELLAN'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION TO PRECLUDE EXPERT TESTIMONY FROM GRAHAM DIXON**

For the reasons set forth herein and in defendant McLellan's opening motion, Mr. McLellan's motion to preclude the government from eliciting expert testimony from Graham Dixon, Dkt. 450, should be granted, or such other alternative relief should be granted as requested below.

First, Mr. Dixon's testimony should be excluded in its entirety because it relates exclusively to U.K. practices, and it therefore does not rebut any evidence or testimony offered by the Defendant in his case-in-chief. Mr. McLellan has noticed two expert witnesses to testify regarding the regulations, customs and industry practices in the United States, and their direct examination testimony is carefully and deliberately tailored to U.S.-based practices and industry customs. Mr. Dixon has no experience in this area or basis to rebut this testimony. Today in court, government counsel did not suggest otherwise, nor did government counsel offer an

1

explanation or argument how Mr. Dixon in any respect rebuts U.S.-based experts, but instead avoided the distinction, as the government did in its opposition pleading.[1]

Second, the government does not even proffer Mr. Dixon as an expert, but continues to maintain that he is a fact witness. *See, e.g.*, Disclosure Letter dated June 14, 2018 (asserting government belief that "Mr. Dixon's background, experience and understandings based thereon are all admissible in his capacity as a fact witness and pursuant to Fed. R. Evid. 701…"); Govt. Opposition at 2, Dkt. Entry 453, ("as the government noted in its letter to the defense, Mr. Dixon's background, experience and understandings based thereon are all independently admissible in his capacity as a fact witness and pursuant to Fed. R. Evid. 701 in connection with his review of four of the transitions at issue in this case"). The government has forfeited its right to call Mr. Dixon as a fact witness. To the extent the Court permits any testimony by Mr. Dixon, such rebuttal must be limited to generalized expert testimony, not any facts related to any of the transitions at issue.

Third, to the extent the Court rejects Mr. McLellan's threshold objection that Mr. Dixon's testimony should be excluded in its entirety given the U.S./U.K. distinction and permits some testimony from Mr. Dixon, Mr. McLellan respectfully offers the following particularized objections to the proffered opinions (as set forth in the government's disclosure letter of June 4, 2018):

1. The sophistication of market participants varies.

    a. <u>Objection</u>: Neither Menchel nor Travaglini have testified or will testify that all market participants are sophisticated. This proffered testimony therefore does not rebut any evidence or testimony offered in the Defendant's case-in-chief.

---

[1] To the extent the Court disagrees and permits Mr. Dixon to testify regarding the customs and practices of the transition management industry in the U.K., Mr. McLellan respectfully requests leave to call one or both of his previously disclosed U.K. experts, and to do so via video-conferencing. Mr. McLellan deliberately chose to not call these witnesses to avoid a rebuttal case by the government.

2

2. Fund managers in UK often financial lay people, not investment and finance professionals.

    a. No particularized objection.

3. They rely on professional investment advisors for investment and finance decisions and place trust in their selected banks and financial advisors.

    a. <u>Objection</u>: Neither Menchel nor Travaglini have testified or will testify on the subject of advisors. This proffered testimony therefore does not rebut any evidence or testimony offered in the Defendant's case-in-chief.

4. Commissions, mark ups, mark downs and spreads all refer to per-trade charges, and these terms may be used interchangeably.

    a. No particularized objection.

5. Investment managers and other institutional industry participants understand that a specified commission on trades, whether equities or fixed income, covers all per-trade charges, however denominated.

    a. No particularized objections.

6. Investment managers and other institutional industry participants would not expect to be charged mark up, mark down or spread in addition to commission by same entity.

    a. <u>Objection</u>: Neither Menchel nor Travaglini will testify regarding mark ups, mark downs or spreads in addition to commissions by the same entity. Thus, this testimony does not rebut any evidence or testimony offered in the defendant's case in chief.

7. Where fixed fees are charged in lieu of commissions, clients reasonably understand that to mean that there will be no per-trade charge.

    a. No particularized objection.

8. Primary difference between principals and agents in transitions is that principals assume the market risk of transitioning the client's positions while agents merely execute trades on client's behalf, with market risk retained by client.

    a. <u>Objection</u>: This proposed testimony does not rebut any testimony offered or to be offered by the Defendant's experts and should therefore be excluded for this reason alone. Additionally, any such testimony would be premised on U.K. laws, which have no bearing upon and do not impact this proceeding. Any such testimony is thus not relevant and/or any relevance is substantially outweighed by

the dangers of confusing or misleading the jury and should be excluded pursuant to Rule 403.

9. In the United Kingdom, classical agency trading has been replaced by the "riskless principal" model, where the client retains the risk but maintains market anonymity.

    a. <u>Objection</u>: This testimony should be excluded for the reasons identified above in paragraph 8(a).

10. There is no bottom line difference between the approaches, other than that in the riskless principal model, the client has no right to inspect the street-side trading records.

    a. <u>Objection</u>: This testimony should be excluded for the reasons identified above in paragraph 8(a).

11. Riskless principals and agents are required to act in the best interests of their clients.

    a. <u>Objection</u>: This testimony should be excluded for the reasons identified above in paragraph 8(a). Indeed, according to the 302 report that supports the government's disclosure letter (302 Report dated 9/29/15 at p.2), Mr. Dixon explicitly stated that this proposition is required by the FCA and FSA.

12. In the UK, the vast majority of transition work is performed on a commission basis, although fixed income transitions may be done on a fixed-price basis.

    a. <u>Objection</u>: This proposed testimony does not rebut any testimony offered or to be offered by the Defendant's experts and should therefore be excluded.

13. Where the transition manager is acting as agent or riskless principal, all fees are disclosed to the client.

    a. <u>Objection</u>: Any such testimony would be premised on U.K. laws, which have no bearing upon and do not impact this proceeding. Any such testimony is thus not relevant and/or any relevance is substantially outweighed by the danger of confusing or misleading the jury and should be excluded pursuant to Rule 403.

14. Transition management clients typically focus on negotiating the best possible commission rates (or fixed fees).

    a. No particularized objection.

15. Transition management clients do not typically negotiate foreign exchange spreads, since foreign exchange is considered an ancillary service. Transition management clients and other industry participants understand that foreign exchange is a principal business and that foreign exchange desks may earn undisclosed spreads (or take undisclosed losses). Foreign exchange is a highly liquid market, particularly in major currencies, and spreads

4

are narrow.

    a. <u>Objection</u>: All testimony regarding foreign exchange should be excluded consistent with the Court's Order of June 20, 2018, excluding the Defendant's proffered exhibit on the subject of FX. Testimony on this topic would also be beyond the scope of proper rebuttal given that neither Menchel nor Travaglini have testified or is expected to testify on this issue.

16. Transition management clients are typically focused on controlling commission costs and fees, which are one component of the implementation shortfall that clients can negotiate and control.

    a. No particularized objection.

17. Pension fund clients do not prefer transition managers' fees to be implicit rather than explicit.

    a. <u>Objection</u>: This proposed testimony does not rebut any testimony offered or to be offered by the Defendant's experts and should therefore be excluded.

18. Periodic notices between State Street and clients that he has reviewed in this case (*e.g.*, Royal Mail and Sainsbury) made clear that the fixed fees were the sole charges the clients would pay for trading the securities involved in those transitions.

    a. <u>Objection</u>: This proposed testimony does not rebut any testimony offered or to be offered by the Defendant's experts and should therefore be excluded for this reason. Additionally, this proffered testimony should be excluded as Mr. Dixon is not a contracts expert and he should not be permitted to testify regarding the interpretation, meaning or intent of a particular contract.

19. Low fees do not suggest that a transition manager is taking undisclosed markups. Rather, transition managers may have many reasons for charging low fees to win business.

    a. <u>Objection</u>: This proposed testimony does not rebut any testimony offered or to be offered by the Defendant's experts and should therefore be excluded for this reason.

20. There is no evidence that undisclosed pre-hedging in transitions has occurred since Deutsche Morgan Grenfell was investigated for that practice in or about 2002 and sanctioned by FSA in 2004. Compliance desks specifically monitor against undisclosed pre-hedging.

    a. <u>Objection</u>: Neither Menchel nor Travaglini have testified or will testify regarding pre-hedging and this proposed testimony should therefore be excluded. Additionally, this proposed testimony is irrelevant and/or any relevance is substantially outweighed by the dangers identified in Rule 403 and should

      excluded pursuant to that Rule as well.

21. Regardless of the outcome of a transition, clients are interested in the individual components of the implementation shortfall.

    a. No particularized objection.

22. When a transition manager acts as an agent or riskless principal, its goal should be to deliver the best possible implementation shortfall.

    a. <u>Objection</u>: Any such testimony would be premised on U.K. laws, which have no bearing upon and do not impact this proceeding. Any such testimony is thus not relevant and/or any relevance is substantially outweighed by the danger of confusing or misleading the jury and should be excluded pursuant to Rule 403.

23. Clients expect that any outperformance over pre-trade estimates belong to them.

    a. <u>Objection</u>: Any such testimony would be premised on U.K. laws, which have no bearing upon and do not impact this proceeding. Any such testimony is thus not relevant and/or any relevance is substantially outweighed by the danger of confusing or misleading the jury and should be excluded pursuant to Rule 403.

24. Pre-trade estimates of implementation shortfall include market-related, or implicit costs that are based on estimates (*e.g.*, bid-ask spread, market impact, opportunity cost), and explicit, "hard" costs that are fixed (*e.g.*, commission rates or flat fees). While the absolute dollar amount of a commission may fluctuate based on market conditions or changes in the legacy or target portfolios, the commission rate should not change absent an agreement between the transition manager and the client.

    a. <u>Objection</u>: This proposed testimony does not rebut any testimony offered or to be offered by the Defendant's experts and should therefore be excluded for this reason. Additionally, any such testimony would be premised on U.K. laws, which have no bearing upon and do not impact this proceeding. Any such testimony is thus not relevant and/or any relevance is substantially outweighed by the danger of confusing or misleading the jury and should be excluded pursuant to Rule 403.

25. Negotiated fees supersede boilerplate language that appears in transition management agreements.

    a. <u>Objection</u>: This proffered testimony should be excluded as Mr. Dixon is not a contracts expert and he should not be permitted to testify regarding the subject matter of contracts law and/or the interpretation or meaning of contracts.

>Respectfully submitted,
>Ross McLellan
>By His Attorneys,
>
>**/s/ Martin G. Weinberg**
>Martin G. Weinberg, Esq.
>Mass. Bar No. 519480
>20 Park Plaza, Suite 1000
>Boston, MA 02116
>(617) 227-3700
>owlmgw@att.net
>
>**/s/ Robert M. Goldstein**
>Robert M. Goldstein
>20 Park Plaza, Suite 1000
>Boston, MA 02116
>(617) 742-9015
>rmg@goldstein-lawfirm.com

Dated: June 20, 2018

## CERTIFICATE OF SERVICE

    I, Martin G. Weinberg, hereby certify that on this date, June 20, 2018, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

>**/s/ Martin G. Weinberg**
>Martin G. Weinberg