UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA     )
                             )
          v.                  )        Criminal No. 16-10094-LTS
                             )
ROSS MCLELLAN,            )
                             )
          Defendant.      )
_____)

## GOVERNMENT'S PROPOSED MODIFICATIONS TO JURY INSTRUCTIONS

The government respectfully submits the following proposed modifications to the Court's

Final Jury Charge.  Dkt. 463.

    I.     Willful Blindness

The government respectfully requests that the Court issue a willful blindness instruction,

as set forth in the government's proposed instructions.  See Dkt. 367 at 6.  "A willful blindness

instruction is justified when the defendant claims to lack guilty knowledge, yet the evidence,

taken in the light most favorable to the government, suffices to support an inference that he

deliberately shut his eyes to the true facts."  United States v. Singh, 222 F.3d 6, 11 (1st Cir.

2000) (citing United States v. Gabriele, 63 F.3d 61, 66 (1st Cir. 1995); see also United States v.

Mitrano, 658 F.3d 117, 123 (1st Cir. 2011) ("A willful blindness instruction is appropriate if (1)

a defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate

ignorance, and (3) the instruction, taken as a whole, cannot be misunderstood as mandating an

inference of knowledge.") (further citation and internal quotation marks omitted); United States

v. Epstein, 426 F.3d 431, 441 (1st Cir. 2005) ("[A] claim that a defendant lacked knowledge

supports a willful blindness instruction, as it is the first of the three prerequisites to a willful

blindness instruction. . . .  The relevant inquiry then becomes whether 'the facts suggest a

conscious course of deliberate ignorance' on the part of the defendant.") (further citation omitted). "In determining whether the facts suggest the type of deliberate avoidance warranting a willful blindness instruction, [the Court] must consider whether the record evidence reveals flags of suspicion that, uninvestigated, suggest willful blindness." Mitrano, 658 F.3d at 123 (citation and internal quotation marks omitted). The instruction is warranted even where the defendant does not testify but invokes such a defense through defense counsel's argument and cross examination. See Singh, 222 F.3d at 11.

The government's pursuit of an "actual knowledge" theory does not foreclose a willful blindness instruction. To the contrary, the First Circuit has explicitly noted that "[t]hese theories can coexist." United States v. Appolon, 695 F.3d 44, 64 (1st Cir. 2012) (quoting United States v. Griffin, 524 F.3d 71, 79 (1st Cir.2008)) (internal quotation marks omitted); see also United States v. Cassiere, 4 F.3d 1006, 1024 (1st Cir.1993) ("Although the government's main contention at trial was that all three defendants were knowing participants in the scheme, the government presented evidence from which the jury could have concluded that if they did not know what was going on, it was only because they chose to turn a blind eye.").

This is the quintessential case in which a willful blindness instruction is warranted. From the outset, the defense has been built on the notion that the defendant "trusted" and "delegated [responsibilities] to the wrong person in Mr. Pennings." 6/5/18 Tr., 57:1-2, 22-24. Counsel argued in opening:

> This is a prosecution of a man who trusted the wrong person in
> Edward Pennings, who relied on Mr. Pennings, who was the head
> of the UK office, with lots of people under his, Pennings'
> supervision. Who relied on Mr. Pennings to know the law in the
> UK, to talk to the UK lawyers. State Street is a global bank. They
> had lawyers in each of its divisions. He relied on Mr. Pennings to
> negotiate contracts that conformed to British and European law. He

> relied on Mr. Pennings to engage in negotiations that conformed to
> the contracts and conformed to the British and European laws.

6/5/18 Tr., 57:1-10.  At the same time, the defense has argued that any fraud was Pennings' alone, contending that the defendant is "being accused of being criminally responsible for what, at its essence, is Pennings' excesses, Mr. Pennings' lies, Mr. Pennings' deceptions of his, Mr. Pennings' clients."  Id. at 57:13-16.  The defense has thus argued that, if there was a crime, Pennings did it without the defendant's knowledge.

The government, in turn, has argued that the defendant knowingly and intentionally participated in and directed the fraud.  Yet the same evidence—taken as it must be in the light most favorable to the government—would permit the jury to conclude that, if McLellan did not know what was going on, it was because he shut his eyes to the true facts.  For example, in government exhibit 67, Pennings advised the defendant, "We have to charge fee then otherwise they get suspicious."  Likewise, immediately after advising the defendant that they had won the Royal Mail assignment with a flat fee of 1.75 basis points, Pennings emailed the defendant: "I am thinking 1.5-2 bpy."  (Exhibit 92.)  And when discussing the use of the Rates Desk for the KIA 121 transition, Pennings advised that he did not "want to look at the contract with legal at all" (Exhibit 53), and that the legal department had not reviewed the contract or the periodic notice, noting, "This can of worms stays closed."  (Exhibit 54.)  These emails—even if they do not demonstrate actual knowledge of fraud, as the government contends—constitute, at a minimum, the kinds of "flags of suspicion that, uninvestigated, suggest willful blindness," Mitrano, 658 F.3d at 123, and would support a conclusion by the jury that the defendant chose to turn a blind eye to the fraud being committed under his supervision.

II.     Securities Fraud:  Material Misrepresentation Instruction

In the securities fraud instruction at page 28 of the charge, the government respectfully submits that the sentence concerning the absence of a legal duty to disclose commissions misstates SEC Rule 10b-10.  That rule provides that there is a legal duty to disclose, 'at or before completion of [a securities] transaction . . . written notification disclosing," *inter alia*, [w]hether the broker or dealer is acting as agent for such customer . . . or as principal for its own account," and—if it is acting as agent (or riskless principal in equity securities)—the amount of any commissions or markups.  17 C.F.R. § 240.10b-10(a)(2)(i)-(ii); see also Grandon v. Merrill Lynch & Co., 147 F.3d 184, 192 (2d Cir. 1998) ("Securities brokers are currently required to disclose all markups of equity securities under" Rule 10b-10.).  The absence of a legal duty to disclose markups is limited to debt securities transacted on a principal (or riskless principal) basis.  See id. at (a)(5)-(6); see also Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017, 1033 (4th Cir. 1997) ("Although securities brokers are required to disclose markups in equity securities . . . there is no requirement for a broker to disclose the amount of markup charged for a debt security in a riskless transaction.") (citing Rule 10b-10(a)(2)(ii)(A) & (B)).

Accordingly, the government proposes to modify the sentence as follows:  "There is no general legal duty to disclose commissions, spreads, or markups or markdowns *on fixed income securities when trading as a principal or riskless principal*, and you may not convict Mr. McLellan based on the taking of undisclosed revenues *on such trades* alone."  The government further proposes inserting the following:  "*However, you may convict him if you find that, in connection with such trades, he made or caused to be made false or misleading statements or half-truths, or otherwise acted with an intent to deceive or reckless indifference to the truth.  In*

4

*making this determination, you may consider statements concerning the capacity in which State Street was acting on behalf of its clients."*

    III.    <u>Securities Fraud: Instrumentalities of Interstate Commerce</u>

At page 32, in the instrumentalities of interstate commerce section, the government proposes deleting the sentence beginning "Facts relevant to this determination include," through the end of the paragraph. The government respectfully submits that it is not required to satisfy all of these factors, particularly insofar as there is no dispute that the fixed-income securities traded by State Street in Boston were U.S. bonds, transacted as riskless principal by a U.S. based broker-dealer (State Street Global Markets LLC). <u>See</u> <u>United States v. Georgiou</u>, 777 F.3d 125, 136 (3d Cir. 2015) (where a U.S.-based market-maker was involved, seller and buyer incurred irrevocable liability in the U.S., and thus securities transactions were domestic). The multiple factors set forth are likely to confuse the jury and to impermissibly raise the government's burden. Unlike the corporate bonds, Treasury securities and mortgage-backed securities at issue in this case, the cases that have relied on multi-factor tests concerned bespoke or non-standard securities and private placement offerings that were not traded through U.S.-based broker-dealers or market makers. <u>See</u>, <u>e.g.</u>, <u>United States v. Vilar</u>, 729 F.3d 6 (2d Cir. 2013) (involving "Guaranteed Fixed Rate Deposit Accounts" that were exclusively offered by defendants' investment advisor); <u>Absolute Activist Value Master Fund Ltd. v. Ficeto</u>, 677 F.3d 60, 63 (2d Cir. 2012) (involving "private investment in public equity ('PIPE') transactions"); <u>Sec. & Exch. Comm'n v. Yin Nan Michael Wang</u>, 2015 WL 12656906, at *2 (C.D. Cal. Aug. 18, 2015) (involving investment vehicles that "solicited investors through Private Placement Memoranda ('PPMs')"). Accordingly, a multi-factor test is not warranted here.

IV.    <u>Other Instructions</u>

The government further respectfully requests the following modifications to the charge:

- At page 15, in the Cooperating Witness instruction, the government requests that the Court consider deleting the sentence "They may have had reason to make up stories or exaggerate what others did because they wanted to help themselves."  The government respectfully submits that this sentence is cumulative in light of the earlier sentences advising the jury (two separate times) to treat the testimony of Boomgaardt and Pennings "with particular caution and great care," and the subsequent sentence advising that their testimony may have been affected by the witnesses' "interest in the outcome of this case, any prejudice for or against Mr. McLellan, or . . . any benefits they have received or expect to receive."

- At page 23, in the conspiracy instruction, the government requests that the court add the following:  "The agreement may be express or tacit.  It is sufficient if the government demonstrates conduct evidencing a silent understanding to share a purpose to violate the law."  <u>See</u> <u>United States v. McDonough</u>, 727 F.3d 143, 159 (1st Cir. 2013) (approving instruction that "the evidence to establish the existence of a conspiracy need not show that the conspirators entered into an express agreement. . . . It is sufficient if an agreement is shown by conduct evidencing a silent understanding to share a purpose to violate the law."); <u>id.</u> at 159 n.8 (citing <u>United States v. Maryea</u>, 704 F.3d 55, 76 (1st Cir. 2013), for the proposition that "a tacit understanding between conspirators can support a conviction").

- At page 34, in the wire fraud instruction, the government respectfully requests that the Court delete the phrase "sharp dealing, or unethical conduct," from the sentence

6

concerning breach of contract, as these terms are vague and undefined.  The government

further requests that the Court insert the following to provide balance and avoid

confusion:  "Failure to comply with a contractual obligation is fraudulent, however, when

the promisor never intended to honor the contract." United States v. D'Amato, 39 F.3d

1249, 1261 n.8 (2d Cir. 1994); see also U.S. ex rel. O'Donnell v. Countrywide Home

Loans, Inc., 822 F.3d 650, 660 (2d Cir. 2016) ("[T]he common law requires proof—other

than the fact of breach—that, at the time a contractual promise was made, the promisor

had no intent ever to perform the obligation.").

- Also at page 34, the government requests that the sentence concerning a scheme to
defraud be modified as follows:  "A scheme to defraud ordinarily is accompanied by a
desire or purpose to bring about some gain or benefit to oneself or some other person *or
entity* or by a desire or purpose to cause some loss to some person *or entity*."  The
government submits that the reference to individual people might confuse the jury in the
context of this case involving institutions.

- At page 35, the government respectfully requests deleted the following three sentences:
"Misunderstanding legal requirements or simply being wrong do not preclude a finding
that one's actions were undertaken in good faith.  Mr. McLellan has no burden to
establish that he acted in good faith.  Rather, the burden is always on the government to
prove fraudulent intent and lack of good faith, as with all other elements of the crime,
beyond a reasonable doubt."  While the government does not object to this reference to
good faith within the wire fraud charge, these additional sentences are cumulative,
particularly in light of the separate and lengthy good faith instruction included in the
securities fraud section earlier in the charge (at page 30).

Respectfully submitted,

SANDRA MOSER                          ANDREW E. LELLING
Acting Chief, Fraud Section           United States Attorney
Criminal Division

By:   _/s/ William E. Johnston_       By:  _/s/ Stephen E. Frank_____
      WILLIAM E. JOHNSTON                  STEPHEN E. FRANK
      Trial Attorney                       Assistant U.S. Attorney


## CERTIFICATE OF SERVICE

I certify that on June 21, 2018, this document was filed through the ECF system, which

will provide electronic notice to counsel as identified on the Notice of Electronic Filing.


/s/ Stephen E. Frank___
STEPHEN E. FRANK