**STATE STREET**

Stephen Smit
Executive Vice President

State Street Global Markets EMEA
and Global Services UKMEA
20 Churchill Place
Canary Wharf
London
E14 5HJ

Telephone: +44 (0) 20 3395 7207
scsmit@statestreet.com

January 12, 2012

Mr. Othman Al-Issa
Executive Director Operations
Kuwait Investment Authority
Ministries Complex
Kuwait City
Kuwait

Dear Othman:

At a meeting with you on 7 December, we committed to provide you with additional information regarding two fixed income transitions, 115 and 121, that we carried out for you in 2010. We are happy to enclose the additional information that you requested. The purpose of this letter is to openly share our findings with you, as we consider you to be a most valued and trusted client.

As Rod Ringrow explained when he last saw you, we identified issues with the spreads incurred by a few other clients, specifically those with non-standard fee arrangements, and have conducted a thorough internal review. In those instances, we had agreed to charge only a management fee, but also added a spread to the riskless principal fixed income trades executed on behalf of the client. As you would anticipate, we took this very seriously, and consistent with our obligations and reputation in the market, we have reimbursed these clients, reported the matter to the FSA, enhanced our control procedures and undertaken a review to confirm our fees were consistent with our commitments to our clients.

As part of our review, we examined your two fixed income transitions (115 & 121) including the relevant agreements, pre and post transition reports and email correspondence to determine that the results of these transitions were what was expected by and presented to the KIA. In our review it was clear that the KIA fixed income transitions agreements did not state any explicitly agreed upon commissions or management fees. We believe though, that your staff understood that we would earn some level of compensation for the transition services provided. Given that the details surrounding this compensation did not fit within the high standards of transparency that State Street normally provides, we wanted to ensure you were clear on the way in which the remuneration was charged and the amount.

Our normal practice is to charge a commission or spread, expressly agreed with our client, as our principal source of revenue on a transition; in certain instances we may also accept an agreed upon management fee or other non-standard fees for a transition assignment. For the KIA fixed income transitions named above, there were no *explicit* commissions or fees in the contract, but emails and discussions with our team did discuss that State Street would

FOIA CONFIDENTIAL TREATMENT REQUESTED
BY STATE STREET

SS1_00014747


STATE STREET.

January 12, 2012
Mr. Othman Al-Issa
Page 2

arrange to receive a portion of the bid-ask spread. This is not the typical structure of State Street's Transition business. Normally we prefer to charge an explicit commission, as it is more transparent, and that a focus on eliminating explicit commissions would reinforce the move towards a non-transparent principal broker model that we believe is used elsewhere in the market but is not our business model. The T-Charter focuses on clearly stating the compensation a transition manager will make on a specific trade and again why we had suggested the explicit commissions. We did explain and discuss this with the KIA, and while it is acknowledged that these discussions did happen, perhaps it was not fully clear to the KIA that State Street would be compensated by adding a spread to the price we paid (or received) from the broker we executed the trade with, which would have increased the transition costs to the KIA.

I have attached a spread sheet that provides further detail around the transitions. We have been working with PWC to provide confirmation of this to you directly but, in order to do so, PWC requires under its professional standards that you sign a consent in the form attached. In summary, on transitions 115 and transition 121 taken together, the aggregate notional value traded was approximately $10.7 billion, our spread amounted to an average of 9 bps of value and our commission totalled just under $9.7 million.

The amount of commission quoted above is our gross compensation and is reflected in the total costs we had showed the KIA as part of the post-transition reports. I have enclosed these reports for your review which demonstrates that for both transitions, even with these compensating amounts incorporated, the execution impact was better than that projected at the commencement of the mandates. We are confident this was an effective transaction for the KIA.

We deeply value and respect our relationship with KIA and are determined always to meet your expectations and our reputation in the marketplace. We encourage you to review the enclosed data and, if you need any additional information, we are prepared to respond to your requests. While we regret that we do not appear to have applied the degree of transparency in our fees for these transitions as is our customary practice, we hope that you agree that these were successful transitions. We also hope you agree that the compensation earned for these is fair in light of the high quality project management, risk management and trading that State Street carried out.

I look forward to meeting with you on January 18th to discuss further and address any concerns that you may still have.

Yours sincerely,

Stephen Smit
Executive Vice President

FOIA CONFIDENTIAL TREATMENT REQUESTED
BY STATE STREET

SS1_00014748