<pre>
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3     - - - - - - - - - - - - - - - - - - x

 4     UNITED STATES OF AMERICA,                :

 5           Plaintiff,                         :     Criminal Action No.
                                                      1:16-cr-10094-LTS
 6         v.                                   :

 7     ROSS MCLELLAN,                           :

 8           Defendant.                         :

 9     - - - - - - - - - - - - - - - - - - x

10

11       BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

12
                            STATUS CONFERENCE
13

14
                        Tuesday, April 10, 2018
15                            3:00 p.m.

16

17

18

19

20
       John J. Moakley United States Courthouse
21     Courtroom No. 13
       One Courthouse Way
22     Boston, Massachusetts

23
       Rachel M. Lopez, CRR
24     Official Court Reporter
       raeufp@gmail.com
25
</pre>

1                    **A P P E A R A N C E S**

2    On behalf of the Plaintiff:

3         UNITED STATES ATTORNEY'S OFFICE - MASSACHUSETTS
          BY:  STEPHEN E. FRANK
4         John Joseph Moakley Courthouse
          One Courthouse Way, Suite 9200
5         Boston, Massachusetts  02210
          (617) 748-3244
6         stephen.frank@usdoj.gov

7

8    On behalf of the Defendant:

9         MARTIN G. WEINBERG, P.C.
          BY:  MARTIN G. WEINBERG
10        20 Park Plaza
          Suite 1000
11        Boston, Massachusetts  02116
          (617) 227-3700
12        owlmcb@att.net

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1  
2          (In open court.)

3          THE DEPUTY CLERK:  Today is April 10th, the case of

4  United States v. Ross McLellan, criminal action 16-10094,

5  will now appear before this Court.

6          Counsel, please identify themselves for the record.

7          MR. FRANK:  Stephen Frank for the United States.

8  Good afternoon, Your Honor.

9          THE COURT:  Good afternoon.

10          MR. WEINBERG:  Martin Weinberg for the defendant,

11  Ross McLellan.

12          THE COURT:  Good afternoon.

13          Do we need to call -- is somebody calling -- I

14  can't remember your colleague's name from Washington, but is

15  he calling in?

16          MR. FRANK:  Oh.  Mr. Johnston.  No, he's all right.

17  I think he's fine.  Thank you.

18          THE COURT:  Sure.  He can call in to any of these,

19  if he wants, at any time.

20          MR. FRANK:  Okay.

21          THE COURT:  Just arrange it a little bit in advance

22  with Maria so she knows.  But it's not too hard.

23          MR. FRANK:  I appreciate you calling him my

24  colleague and not my overseer.

25          THE COURT:  It seemed like last time you were his

1   overseer.

2           MR. FRANK:  It did seem that way.

3           THE COURT:  Usually, it's actually the course of

4   conduct that's more dispositive than the formal legal

5   definition.  You can point that out to Mr. Johnston.

6           MR. FRANK:  Hopefully so.

7           THE COURT:  Although I'm not sure that the

8   districts are sovereign in the same sense that the states are

9   sovereign.  It may be that the Southern District views itself

10  differently in that regard.  But in any event.

11          So where are we?

12          MR. FRANK:  Your Honor, so we have reached out to

13  various individuals through their counsel and entities.  In

14  particular we reached out to WilmerHale, which was

15  representing two individual witnesses in London, and to the

16  counsel for the witness who's in the Netherlands.  We've been

17  informed by their attorneys that none of those three

18  witnesses wish to make themselves voluntarily available.

19          THE COURT:  Under any terms.

20          MR. FRANK:  Under any terms.

21          THE COURT:  Okay.

22          MR. FRANK:  I should note, there is a Government

23  witness, also in London, also no longer works at -- a former

24  State Street employee -- these are former State Street

25  employees, they're not under the control of the bank.  A

1    Government witness who's similarly situated, and I was

2    informed by her counsel that she likewise doesn't want to

3    make herself available.  I'm not sure yet whether that is

4    limited to coming here to testify, or whether she will make

5    herself available voluntarily by video.  But what I've been

6    given from my own witness --

7            THE COURT:  And the other three are:  We don't want

8    a trip to Boston to testify and we don't want to testify by

9    videoconference and we don't want to be deposed.  We're not

10   doing anything that a -- the only thing we're doing is what

11   is required of us by a court with competent jurisdiction over

12   us required.

13           MR. FRANK:  That is my understanding, Your Honor.

14   The witnesses in London made clear, at least one of them made

15   clear -- and I forget which one -- that it was, having

16   submitted to a deposition already, did not feel that she

17   should be forced to submit to another deposition.

18           THE COURT:  I see.

19           MR. FRANK:  Or testimony.

20           We've also reached out to the City of London police

21   on a couple of occasions and to several of the entities

22   directly.  We are told by the City of London police that

23   three of the entities from which the defendant sought

24   documents have produced those documents.  And I can identify

25   them to Mr. Weinberg.  It's one victim and two consulting

1    firms.

2              THE COURT:  Produced them to the London police?

3              MR. FRANK:  Have produced them to the City of

4    London police.

5              THE COURT:  Okay.

6              MR. FRANK:  A third -- a fourth consulting firm is

7    expected to produce documents to the City of London police

8    soon.  The City of London police has, in turn -- the

9    detective responsible has turned those documents over to

10   whoever is supposed to turn them over to counsel.  And that

11   should be forthcoming, although I don't have an exact date.

12             I also reached out to another victim entity based

13   in London, directly, at Mr. Weinberg's request, and I was

14   advised by them that they are also gathering documents.  It's

15   proved very cumbersome, given the nature of the requests, for

16   them to go back into their records and get these documents,

17   and I was advised that, as well, by the City of London

18   police, that all of these companies have complained.

19             But that fourth -- I'm sorry, fifth entity advised

20   me directly that they are going to be producing documents to

21   the City of London police before the end of this month.

22             THE COURT:  Okay.

23             MR. FRANK:  They said it would not be very

24   voluminous.

25             THE COURT:  Okay.

1          MR. FRANK:  So that's where we are.  Apparently

2   there are yet other entities in London that have raised

3   additional questions that the City of London police have

4   tried to answer, but it is not clear whether --

5          THE COURT:  In terms of what the requests are, and

6   the like.

7          MR. FRANK:  I guess.  I don't know what the

8   specific questions were.  But I do know that, according to

9   the detective that I spoke to, he's not overly optimistic

10  that those other entities will produce documents in a

11  sufficient time frame for us to have them before trial.

12          THE COURT:  Okay.

13          MR. FRANK:  But at least as to five of the British

14  entities, we should have documents.

15          THE COURT:  All right.

16          MR. FRANK:  We've also reached out to the two Irish

17  entities directly, and we haven't heard back from them.  One

18  entity, one of the companies I have been playing phone tag

19  with, and the other one we just haven't heard back from.

20          THE COURT:  So one, you called them, they called

21  you.  You just missed each other.

22          MR. FRANK:  Correct.

23          THE COURT:  They're being responsive, but you just

24  haven't connected yet.

25          MR. FRANK:  That's correct.  And part of it was due

1  to the Easter holiday.  The particular lawyer was out all

2  week last week.

3         THE COURT:  I see.  And as to the other one you've

4  reached out to, you haven't heard back.  And you don't know

5  if that's because of the Easter holiday is likely a big

6  holiday there and maybe a traditional time for vacation, or

7  whether he's just --

8         MR. FRANK:  That's right.  Actually, that one

9  Mr. Johnston reached out to.  And he's done that at least

10  twice, and we have not heard back.

11         THE COURT:  Okay.  All right.  So anything you want

12  to add, Mr. Weinberg?

13         MR. WEINBERG:  I'll just add to the report that I

14  received word yesterday -- actually, early this morning, that

15  my UK lawyers received an e-mail from the home office which

16  stands between UK counsel and the City of London, informing

17  them that there were two USB drives, there were thumb drives

18  to pick up.

19         THE COURT:  Good.

20         MR. WEINBERG:  We'll have them, according to a

21  later e-mail by the counsel, tomorrow.

22         We don't know what's in them.  In other words, I

23  don't know if it's a subset of the requests, all of the

24  requests.  I don't know who they're from, and the like.  I

25  can make intelligent guesses, based on Mr. Frank's summary.

1    We're going to be getting something from London, presumably

2    from three of the seven entities, I expect as early as

3    tomorrow.

4              I also should report that from the Netherlands, we

5    have gotten optimistic responses from our counsel in the

6    Netherlands, that he is expecting -- he is away on post

7    Easter vacation, but expecting some positive production over

8    the next several weeks, as a result of the letters rogatory

9    in the Netherlands.

10             I don't think either of us expect, if Your Honor

11   was to continue this trial to 2020, that the KIA would make a

12   full and complete production, although Mr. Frank sent to me

13   some additional documents he received when interviewing

14   representatives.

15             THE COURT:  KIA is?

16             MR. WEINBERG:  They're the Mideast sovereign wealth

17   fund.

18             THE COURT:  Oh.  Right.

19             MR. FRANK:  One of the here before unnamed

20   entities, Your Honor.

21             THE COURT:  I see.

22             MR. WEINBERG:  Well known, but not identified.  And

23   I would ask that those three letters be redacted from the --

24             THE COURT:  All right.  I will redact them from the

25   record.  But they are what they are for the people who are

1    here.  I can't unring the bell.

2              MR. WEINBERG:  So we're moving from having zero

3    documents.

4              THE COURT:  You're not going to seek to seek to

5    seal them?

6              MR. FRANK:  No, Your Honor.  We've made our best

7    efforts, consistent with DOJ policy, not to identify the

8    victims.  Some of them have identified themselves.  Others

9    have not been formally identified, but their names have been

10   in the --

11             THE COURT:  I see.  The reason they would be

12   redacted -- generally, we don't identify victims, except when

13   they testify at trial.

14             MR. FRANK:  That's right.

15             THE COURT:  So I didn't realize who they were for a

16   moment.

17             Yes, it's struck from the record, those three

18   letters that you said are sealed, and for the reasons that

19   they are victims, or, that is, a victim.

20             MR. WEINBERG:  So we've gone from -- you know, from

21   zero documents and zero testimony at the time of my last

22   presentation to Your Honor, which related to certain motions

23   we were filing to ask for court orders to the Government and

24   ask for different relief.  We still are at zero documents,

25   although that's -- Mr. Frank has made some supplemental

1    productions of documents that he received from two of the

2    entities during the investigation.  But putting that aside,

3    putting the Government discovery aside, we're still at zero

4    documents.  But I expect that to change over the next one

5    week or two weeks.

6           My concern is, you know, (a), I don't know the

7    extent to which the entities have conformed to the parameters

8    of the letters rogatory, and so I can't report the adequacy

9    of the response for even those entities that are responding.

10          Two is, we don't know what success Mr. Frank will

11   have with the two Irish entities that are -- that constitute

12   two of the six so-called victims of the bank's conduct in

13   this case.  We don't have any of the Rule 15s and would

14   require time to go and pursue these three lawyers, the former

15   State Street legal counsel.

16          And I'm in a difficult position of believing that

17   this evidence is pivotal to the defense, and what additional

18   evidence, documents that I receive from Mr. Frank from his

19   interviews with two of the six victims reinforces my belief

20   that what I'm seeking is important, and important both

21   legally to certain of our legal defenses, and important

22   factually in terms of a full and fair presentation of the

23   evidence, particularly if I'm -- if the people -- if the

24   requests are relating to witnesses that Mr. Frank intends to

25   call.

1              I don't know and won't know for another ten days,

2       until we exchange our first agreed exchanges of information,

3       you know, which of the victims are going to be expected to

4       testify and which aren't.  But the magnitude of the

5       importance of what I'm seeking goes up if I'm dealing not

6       just with the co-conspirators' narration of their perspective

7       of why these transitions occurred and whether they occurred

8       with or without full disclosure, but if I'm dealing with

9       witnesses that come in as so-called victims in the expected

10      testimony.

11             So I'm in a position of needing to preserve what I

12      sought by motion, but certainly agreeable or certainly think

13      it's wise to wait another several weeks and have a further

14      status conference with the Court and make a fuller report at

15      that time.

16             THE COURT:  So you're saying:  Don't rule on the

17      MLAT motions at the moment.  Wait and see what transpires

18      from the -- it sounds like, from Mr. Frank's report, there's

19      a fair amount of additional -- some amount of additional

20      information that's coming.  Some of it sounds like it's going

21      to be in your colleague's offices in London today or

22      tomorrow.

23             MR. WEINBERG:  Yes.

24             THE COURT:  But -- and the others might, it sounds

25      like, be following promptly on the heels of that.

1           Sort of have another status in a period of time to

2     see where we are, and simply you'd ask me don't rule either

3     way on the motions at the moment?

4           MR. WEINBERG:  Well, I don't want to make that

5     request and, you know, prejudice that if the Court was

6     inclined to grant any of the motions, that we then trigger a

7     timing issue because of the Court's scheduled trial date.  I

8     do believe the evidence is critical.  I do believe that the

9     Court has the authority, both Constitutionally and its

10    inherent power to say to the Government, "If you want to rely

11    on" --

12          THE COURT:  This is what we'll do.  I think we

13    should have a status either way, whether I've resolved the

14    motions or haven't resolved the motions, just because it

15    seems like this case, it might be useful.  I have the sense

16    that there's going to be a lot of motions filed in this case.

17    I could be wrong.  I'm not -- I don't have a problem with

18    that.

19          MR. FRANK:  Only if they're filed by the defense,

20    Judge.

21          THE COURT:  What did you say?

22          MR. FRANK:  Only if they're filed by the defense.

23          THE COURT:  I see.  That may be so.

24          MR. WEINBERG:  Well, we have a long-term goal of

25    having the Government file one motion, and that's a

1     dismissal.

2               MR. FRANK:  Take it under advisement, Judge.

3               MR. WEINBERG:  Yes.  This is not a boilerplate type

4     case.

5               THE COURT:  I'm happy in any case, but certainly in

6     a case like this, which is bigger, I'm happy to see you

7     whenever it's useful.  So I'm happy to see you at some future

8     time.

9               I'll take the motions under advisement, and I might

10    resolve them before then, and I might not.  I certainly

11    looked at them before you came in two weeks ago, or so, and

12    I've thought about them.  So I may end up resolving them

13    before then, and I may not.

14              But in the meantime, the processes that are

15    underway, that are leading you to get documents from these

16    foreign sources, were underway independent, if you will, of

17    the filing of the motions.  And they won't -- they don't

18    terminate if I allow the motions, they don't terminate if I

19    deny the motions.  They're happening of their own course.

20              And Mr. Frank kindly went above and beyond, he and

21    Mr. Johnston, to inquire.  Maybe all these things were

22    happening, anyway, but maybe the inquiry helped.  And so I

23    appreciate that.

24              So why don't we do that.  Independent, if you want

25    to have a status conference, I'm happy to have a status

1  conference, if it helps.

2          MR. WEINBERG:  Several other, just, loose ends, one

3  I should report.  I think Mr. Frank stated in our joint

4  status report that we have reached an agreement in terms of

5  the --

6          THE COURT:  Pretrial disclosures.

7          MR. WEINBERG:  In terms of disclosures and exhibit

8  and witness lists that I think would provide both parties

9  with times to file motions in limine.

10          THE COURT:  You had an issue about whether there

11  would be -- what kind of proposal, if any, to make about a

12  written questionnaire.

13          MR. WEINBERG:  Yes.

14          THE COURT:  And I haven't resolved that.  And I

15  don't know that I need to decide that today.  But if you --

16  if there's an agreement to a questionnaire -- if one of you

17  wants a questionnaire, as a -- which it sounds like at least

18  one of you does, as a practical matter, there's some more

19  advanced notice if I decide that a questionnaire should be

20  used.  Because there's a little more work with the jury

21  office, to be sure.  Then we talk about some of the

22  logistics.

23          And if one of you wants it and one doesn't, and I

24  decide no -- but I, in fairness, should try to decide that in

25  time, that if I decided that it was appropriate, we could do

1   it, rather than too late to do it.  And Monday morning of the

2   trial is a little bit hard on the jury office to then tell

3   them that we're going to do questionnaire.

4            It sounds like you all are thinking ahead and on

5   the way to either resolving that issue or not resolving it or

6   presenting it to me in a form that I could decide far enough

7   in advance.

8            MR. FRANK:  Well, Judge, just to be clear, what

9   we've said is we don't believe a questionnaire is necessary

10  in this case.  We don't think there's anything that really

11  distinguishes it from other white collar fraud cases in that

12  regard.  But that if Mr. Weinberg had three or four or five

13  questions that he really wanted to put in a questionnaire,

14  I'm sure we could work something out.  If what he has in

15  mind, and what I think he did have in mind, was something

16  longer than that, then we would think that that would be

17  potentially problematic.

18            From our perspective, resolving those kinds of

19  issues earlier, and not saving them to the last minute when

20  we're going to have a lot of other things going on, would be

21  preferable.

22            THE COURT:  I agree.  So what I'm saying is -- I'm

23  not saying I'm doing a questionnaire or not, but I'm saying,

24  (a), I want to resolve the questionnaire far enough in

25  advance that if I say yes and don't agree with exactly what's

1    been proposed, you can edit it to conform with my order.  You

2    can provide copies, we can talk to the jury office, they can

3    have it all done, and they can be ready to go in an organized

4    fashion, in synch with the way they contact people and do it.

5    So that would mean resolving it in early mid May, probably,

6    if we're starting June 4th, maybe mid May to like May 20th,

7    or something.  But they need a little lead time.  And even if

8    it's just lead time to know what it is and approximately how

9    long it will take to do.

10         Second, I agree with you, I would rather resolve

11   issues like that, to the extent they can be resolved earlier,

12   earlier because I think there will be more.

13         I don't know -- I'm agnostic at the moment as to

14   whether a questionnaire is useful or not.  I don't know -- I

15   will say, I've done a questionnaire in one case.  That case

16   was a death penalty case, so it was different than this case.

17   And you know, I'm open -- I will consider with an open mind

18   what you propose.  As a general matter, in most cases, I

19   think a questionnaire is unnecessary.

20         So I don't know what -- you've thought about the

21   case, appropriately so, both of you more than me.  But you're

22   thinking about why you don't think it's necessary; why maybe

23   you'd agree to a couple of questions, if it was really short,

24   but maybe not.

25         And you have whatever you have in mind, it's more

1    extensive than that.

2              So the issue would be, you know, what -- what's in

3    the questions?  Why do we need to do it?  What about this

4    case warrants it?  And how would it be helpful to selecting a

5    fair and impartial jury?  And why is it necessary, and why --

6    and without being too intrusive or too burdensome on the

7    jurors, and simply delving into a level of detail that

8    ordinarily it was not necessary.

9              I will say that even in the Sampson case, which we

10   had a questionnaire, there was -- a lot of it was extensive.

11   There are lots of things that we didn't inquire into, that I

12   have seen people ask me to inquire into on regular cases.  I

13   think there was some limited questions about what media you

14   read, or something, but it doesn't -- it was fairly tailored,

15   despite it's length, to the issues that led us to try that

16   case in the first place and the kinds of evidence people

17   would be hearing and the kind of issues that -- and there you

18   have the merits and people's values intersecting in a way

19   that is a little bit different than in a typical criminal

20   case.

21             MR. WEINBERG:  No question.  This is not --

22             THE COURT:  Right.  I know you're not saying it's a

23   death penalty case.

24             MR. WEINBERG:  And this is not a test on jurors'

25   understandings of the intricacies of the due process clause.

1          THE COURT:  Right.

2          MR. WEINBERG:  This is some biography, and then

3     questions oriented to identify the --

4          THE COURT:  So if you want it, talk to Mr. Frank.

5     If you reach agreement, I'll look at it and think about it.

6     If you don't reach agreement, submit what you want, and

7     not -- submit what you want, in terms of questionnaire, and

8     why you think it's necessary and appropriate.

9          The driving considerations for me would be,

10    primarily, why.  Why do we need it, and how is it going to be

11    helpful?  How will it work, and what do you need?  Why not?

12    Why don't we need it?  Those kind of considerations.  And you

13    know, to the extent it's been done in other cases, why those

14    other cases suggest I should or shouldn't do it in this case.

15    And I'll look at it.

16          Sooner is better.  I think you should talk to each

17    other and propose a -- you don't have to propose to me, just

18    agree to do it.  But I think Mr. Frank's right.  We should do

19    it early enough to have it resolved.  And I want to do it

20    early enough so that it's not a problem for the jury office,

21    if I decided that we should have some form of a

22    questionnaire.

23          MR. WEINBERG:  We'll have it filed before then, at

24    least 48 hours before the next status conference.  Hopefully,

25    we can reach some consensus.  If we can't, I'll file a --

1          THE COURT:  And I encourage you, to the extent

2     there's other issues of that nature that you think could be

3     resolved earlier, you can figure out, either among

4     yourselves, a schedule, just bring them up or file them, and

5     hopefully in a coordinated fashion of some sort, which would

6     be a little than here every day.

7          And also, if you also -- one last thing.  If you

8     think there's a big motion in limine -- although I think,

9     under the schedule, ordinarily motions in limine come maybe a

10    week or two before trial.  But if you think there's -- not

11    every one motion in limine that is like cross-cutting in some

12    way that, you know, is a bigger issue, that might require

13    more briefing or more time -- I don't know that there is,

14    actually, in this case.  Most cases don't have such a motion,

15    even though there might be a lot of important motions in

16    limine to resolve.  But if you think there's something like

17    that, I'm open to hearing it earlier or having you file it

18    earlier, or what have you, if there is such a thing in this

19    case.

20         MR. FRANK:  Judge, our biggest concern is really

21    the date.  We -- Mr. Weinberg and I successfully negotiated,

22    very early, from our perspective, very early pretrial

23    disclosures of exhibits and witnesses and those types of

24    things, 3500 material.  But what I expressed to him is my

25    concern that, you know, the earliest of those disclosures is

1    beginning next Friday.  If the trial gets pushed after that

2    on his motion, then we will be in the unfortunate position of

3    having sort of laid out our case, which we would not

4    ordinarily do.

5         THE COURT:  It would be -- if it was a one-week

6    extension, it was like that date was rolled back a week,

7    without all the other dates necessarily rolling back, or what

8    have you.

9         MR. FRANK:  It just has a roadmap to our case, much

10   earlier than he otherwise would.  And that puts us sort of in

11   a position that we wouldn't choose to be in.

12        So I guess, from our perspective, you know, there

13   are now documents from a good number of entities that the

14   defense has sought, that are going to be produced within the

15   next several weeks.

16        THE COURT:  So let me -- I don't think, at the

17   moment, there's a pending motion to continue.

18        MR. FRANK:  There's not.

19        THE COURT:  Okay.  I didn't think there was.

20        MR. WEINBERG:  Well --

21        THE COURT:  You disagree?

22        MR. WEINBERG:  No, it's not pending.  But I want to

23   be candid with the Court, again, that --

24        THE COURT:  That you're likely to ask again.

25        MR. WEINBERG:  That I would like to ask, and ask at

1  a time when it can be more concrete.  And what I have told

2  Mr. Frank is we have reciprocal exchanges on April the 20th,

3  the 45th day before the scheduled trial, where he will get my

4  expert disclosure.  And there are several that will provide

5  the Government with a preview of significant issues from the

6  defense perspective.  And I will be getting from Mr. Frank a

7  witness list that will essentially tell me -- you know, most

8  of the witnesses are well known, but some are not.  I'll

9  learn from that.

10          And what I'm getting that could impact the

11  continuance motion is certain discovery of witnesses that

12  Mr. Frank is not intending to use, and whether or not I would

13  want to use them.

14          THE COURT:  Let me be totally transparent.  There

15  was a motion to continue that I denied, that Mr. Weinberg

16  made on his client's behalf, I think after -- if I'm

17  remembering right, after the filing of the superseding

18  indictment that added the additional count.  He filed a

19  motion, you filed an opposition.  I looked at it, and I

20  considered it, and I said I'm not continuing the trial.

21          We had a hearing on certain motions.  I don't think

22  it was the last hearing, but it might have been, in which, in

23  the course of it orally, he raised for continuance, of a

24  form.  And I think then, I said no.  So in my view, trial is

25  on, on June 4th.  There's no pending motion for a

1   continuance.  Nothing that I've heard to date has caused me

2   to think, *sua sponte*, I should change anything that I've

3   said.

4         That said, I think Mr. Weinberg has been accurate

5   in what he just said, that he certainly indicated that

6   intends to seek a further continuance.  That's his right.  He

7   can seek a continuance at any time.  You all can file any

8   motion that you want, pretty much at any time, and I'll look

9   at it.  And he can file it, and he's being transparent and

10  saying he's going to do it.  And I'm not prejudging the

11  motion to continue; that is, I'll read the motion, and look

12  at what it says and decide based on what it says.  So I'm not

13  making a promise -- I'll make the promise that I'm going to

14  consider it, in light of the totality of the circumstances

15  and the record and under the applicable law, and make the

16  best judgment that I can.  But I'm not promising that I will

17  or I won't do it.  But I'm being -- this is what I've done.

18  This is where we are.  This is what I've been thinking about.

19        And I assume, as a general -- ordinarily, there's a

20  certain narrowing process that occurs, but I don't know what

21  I'm going to learn -- I'm going to learn.  Certainly, this is

22  a case where there was a superseding indictment that added a

23  charge, and I thought, given the timing and the totality of

24  the circumstances, it wasn't appropriate or necessary or

25  warranted to continue the trial date.

1          I have had cases where there was superseding

2     indictments that didn't add new charges, and I thought, given

3     the nature of the circumstances, it was appropriate to

4     continue it.  Different circumstances, different issues,

5     different time period, different facts.  There was a variety

6     of different circumstances.

7          So I -- I understand what your -- if you will, the

8     dilemma that you see yourself in, Mr. Frank, that you, in

9     part, agreed to this schedule because the trial date is when

10    it is.  And I'm not -- I'll consider -- if he files the

11    motion, I'll consider it with an open mind, in light of all

12    that's come before, where we are in the case and what I've

13    thought about.  But I'm unlikely to deny the motion, because

14    it would give him a leg up in the roadmap way.  And I'm not

15    likely to rule on the motion, either way, in light of that.

16    I'm unlikely to rule on it, given the sort of other

17    considerations; that is, how long, what the issue is, why,

18    why not, all those other considerations.  I would certainly

19    consider that if I thought it was a tactic.

20          MR. FRANK:  No.

21          THE COURT:  And you're not suggesting that, and I

22    know that.  I know you're not.  And I don't think it's that.

23    But that's a different way that would be relevant.

24          So I don't know what to say other than I'm

25    proceeding like we're on for June 4th.

1          Is that the date?  That Monday?

2          MR. WEINBERG:  Yes.

3          THE COURT:  There's no other case that I have on in

4    June scheduled for trial, on June 4th or on any other day in

5    June.  I'm not scheduling anything else in June, because

6    you've told me that it's probably three weeks and it could be

7    four, so I'm reserving the whole time, four.

8          That's the transparent part.  What I will decide,

9    if and when the motion is filed, I can't say because I don't

10   know.

11         MR. FRANK:  Thank you, Your Honor.

12         MR. WEINBERG:  Thank you, Your Honor.  I would just

13   add that any motion will be brought significantly before

14   June 4th, to prevent --

15         THE COURT:  Right.  I understand.  Anything else we

16   can talk about today?

17         MR. WEINBERG:  No.

18         MR. FRANK:  Not from the Government, Judge.

19         THE COURT:  Oh.  Status conference.  So when should

20   I set another date for it?

21         MR. WEINBERG:  I would say the week of April 23rd,

22   if that's a week.

23         THE COURT:  Yes, that's like two weeks from this

24   past Monday.  So how about --

25         Not Monday, Maria, but in that week.

```
 1              THE DEPUTY CLERK:  How about the 24th, Tuesday, at
 2    2 o'clock?
 3              THE COURT:  Fine.
 4              Does that work for you, Mr. Frank?
 5              MR. FRANK:  That does, Your Honor.
 6              THE COURT:  Is that one of those Judge Bowler green
 7    books?
 8              MR. FRANK:  Does she use these?
 9              THE COURT:  Can you hold it up?
10              MR. FRANK:  It's a record book.
11              THE COURT:  I think hers are legal sized.
12              MR. FRANK:  Just to look old school.
13              THE COURT:  I tried to use those, but my hand
14    writing wasn't good enough.
15              All right.
16              MR. WEINBERG:  Thank you, Your Honor.
17              THE COURT:  We're adjourned.  Thank you very much.
18    Have a good day.
19              THE DEPUTY CLERK:  All rise.  This matter is
20    adjourned.
21              (Court in recess at 3:29 p.m.)
22
23
24
25
```

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4        I, Rachel M. Lopez, Certified Realtime Reporter, in

5   and for the United States District Court for the District of

6   Massachusetts, do hereby certify that pursuant to Section

7   753, Title 28, United States Code, the foregoing pages

8   are a true and correct transcript of the stenographically

9   reported proceedings held in the above-entitled matter and

10  that the transcript page format is in conformance with the

11  regulations of the Judicial Conference of the United States.

12

13                      Dated this 7th day of January, 2019.

14

15

16

17                      /s/ RACHEL M. LOPEZ

18

19

20        _____

21        Rachel M. Lopez, CRR
          Official Court Reporter

22

23

24

25