1          UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS
2

3    - - - - - - - - - - - - - - - - - - x

4    UNITED STATES OF AMERICA,              :

5          Plaintiff,                       :    Criminal Action No.
                                                 1:16-cr-10094-LTS
6        v.                                 :

7    ROSS MCLELLAN,                         :

8          Defendant.                       :

9    - - - - - - - - - - - - - - - - - - x

10

11      BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

12                     STATUS CONFERENCE

13

14
                    Tuesday, May 29, 2018
15                       3:06 p.m.

16

17

18

19

20
     John J. Moakley United States Courthouse
21   Courtroom No. 13
     One Courthouse Way
22   Boston, Massachusetts

23
     Rachel M. Lopez, CRR
24   Official Court Reporter
     raeufp@gmail.com
25

```
1                    A P P E A R A N C E S

2     On behalf of the Plaintiff:

3         UNITED STATES ATTORNEY'S OFFICE - MASSACHUSETTS
          BY:  STEPHEN E. FRANK
4         John Joseph Moakley Courthouse
          One Courthouse Way, Suite 9200
5         Boston, Massachusetts  02210
          (617) 748-3244
6         stephen.frank@usdoj.gov

7
          UNITED STATES DEPARTMENT OF JUSTICE
8         BY:  WILLIAM JOHNSTON
          1400 New York Avenue, Northwest
9         Washington, D.C.  20005
          (202) 514-0687
10        william.johnston4@usdoj.gov

11
      On behalf of the Defendant:
12
          MARTIN G. WEINBERG, P.C.
13        BY:  MARTIN G. WEINBERG
          20 Park Plaza
14        Suite 1000
          Boston, Massachusetts  02116
15        (617) 227-3700
          owlmcb@att.net
16
17        LAW OFFICES OF ROBERT M. GOLDSTEIN
          BY:  ROBERT M. GOLDSTEIN
18        20 Park Plaza
          Suite 1000
19        Boston, Massachusetts  02116
          (617) 742-9015
20        rmg@goldstein-lawfirm.com

21
      On behalf of the Interested Party State Street Bank & Trust:
22
          WILMERHALE, LLP
23        BY:  JOHN J. BUTTS (appearing telephonically)
          60 State Street
24        Boston, Massachusetts  02109
          (617) 526-6000
25        john.butts@wilmerhale.com
```

**P R O C E E D I N G S**

1

2          (In open court.)

3          THE DEPUTY CLERK:  The United States District Court

4     for the District of Massachusetts is now in session, the

5     Honorable Leo T. Sorokin presiding.

6          Today is May 29th, the case of United States v.

7     McLellan, criminal action 16-10094, will now appear before

8     this Court.

9          Counsel, please identify themselves for the record.

10          THE COURT:  You may be seated.

11          MR. FRANK:  Stephen Frank and William Johnston for

12     the United States.  Good afternoon, Your Honor.

13          THE COURT:  Good afternoon.

14          MR. WEINBERG:  Good afternoon, Your Honor.  Martin

15     Weinberg with Rob Goldstein on behalf of Ross McLellan.

16          THE COURT:  And on the phone for State Street, whom

17     do we have?

18          MR. BUTTS:  Good afternoon, Your Honor.  This is

19     John Butts from WilmerHale for State Street.

20          THE COURT:  Just one preliminary matter for those

21     of you in the courtroom.  I'm not intending today to talk

22     about anything other than this narrow question about State

23     Street and those three lawyers, not even the motions that all

24     of you have, or one of you have pending with respect to those

25     lawyers.  Tomorrow we'll talk about all of that.  And I know

1   you filed a blizzard of papers yesterday, and so I'm aware of
2   that.
3           So Mr. Butts, here's the situation.  I think you're
4   generally familiar with the context, but let me just recite
5   it for my understanding.  There are three people, each of
6   whom is a lawyer, two, as I understand it, in England, one in
7   the Netherlands.  My understanding of the facts are as
8   follows:  That each of those three lawyers work at the
9   time -- at the relevant time of the allegations of --
10  concerning this indictment; that each of those three lawyers,
11  at some period during that time, worked for a law firm that
12  did work for State -- is that State Street or one of its
13  affiliates; and that the defendant wishes their testimony at
14  the trial, thinking that it -- that some of it is admissible,
15  relevant, and helpful; that the Government doesn't
16  necessarily agree with the analysis of admissible, relevant
17  and helpful; and that all three of those lawyers, none are US
18  citizens, none are -- work any longer for State Street,
19  either directly as employees or indirectly for -- as part of
20  their work, their doing work for State Street.  It appears
21  they've moved on to work for other financial companies or
22  different law firms, or what have you.
23          And my understanding is none of the three are
24  willing to appear voluntarily for trial, either by coming to
25  the United States to testify, or, as I made clear the Court's

1    offer, with the assent of the Government and the defense,

2    that they could sit in their offices in the Netherlands or

3    England and, at a prearranged time, testify, say, at 3:00

4    p.m. their time, 9:00 a.m. our time, or something like that,

5    and we would take them out of order on a prearranged time by

6    videoconference.  I can't imagine, if they had to testify,

7    their testimony is that long.  And we would do that.

8              But my understanding is that none of them will

9    agree to that.

10             So does that all sound -- are you familiar with all

11   of that?

12             MR. BUTTS:  I am familiar with that, Your Honor.

13   There's one, just, minor clarification that I'd make.

14             THE COURT:  Okay.

15             MR. BUTTS:  Which is that you thought that, at the

16   relevant time, each of them did work for State Street as

17   outside counsel, and two were -- that's correct as to one.

18   And as to two of the three, though, they were in-house

19   counsel.

20             THE COURT:  Two were in-house counsel.  Okay.  So I

21   have not verified this, but I also assume that none of the

22   three are members of the bar of this court, which wouldn't

23   give me subpoena power over them, but would give me a little

24   something.

25             So the reason that I convened the status conference

1    was this, Mr. Butts, hoping to prevail upon you to prevail

2    upon them to agree to testify or make themselves available to

3    testify, subject to the resolutions of any motions here by

4    videoconference.  And the reason I did this is they strike me

5    as not standing in the shoes of ordinary witnesses, in the

6    sense, they're not just a fact witness who, like, was walking

7    down the street one day in London and overheard a

8    conversation that's relevant to this case and why would they

9    want to bother, and so forth.  But there's several facts that

10   strike me about these witnesses that seem to me ought make

11   them willing to testify voluntarily.

12           The first is, they're lawyers.  Okay.  I understand

13   they're not lawyers, members -- I understand they're not US

14   lawyers, but they're lawyers.  And they're lawyers in

15   countries that have similar legal traditions, which is the

16   belief in the rule of law and that rules and evidence govern

17   the resolution of cases.

18           They each know something about the events that

19   transpired here.  They had some connection to it.  And

20   they're not, as far as I know, subjects, targets, or

21   defendants, civilly or criminally, in any of these

22   proceedings.  So it just seems like the right thing to do.

23           That might sound old fashioned, but I think it's

24   just the right thing to do to offer up their evidence.  If

25   they were in the United States, I would have no compunction

1    in subpoenaing them and compelling them to come here,

2    subject, then, to resolution of whatever there was about the

3    admissibility of their evidence.

4         So that's the first reason that I think -- it

5    strikes me that they ought to testify and that that ought to

6    carry some weight for them as lawyers who are members of the

7    legal profession in their respective countries and committed

8    to the practice of law.

9         The second is that two of them were -- as you point

10   out, were in-house lawyers for State Street, and so these

11   concern -- I am confident State Street is interested in

12   the -- the integrity of the judicial process and truth coming

13   out, and I assume that it entered into a nonprosecution and

14   cooperation agreement.  This is essentially testimony about

15   things that they did when they were former employees.

16        While I know that there are difficulties sometimes

17   getting former employees to cooperate with -- you know, about

18   matters, and the like, but ordinarily, I would think there's

19   some loyalty, especially by lawyers to their -- and there may

20   be duties; I don't know what the rules are in those

21   countries.  But in this country, there might be a duty for a

22   lawyer to sort of provide assistance to their client and

23   provide information to their client, if wanted.  And here the

24   burden on them seems rather low.  So that's a second reason,

25   it seems to me, I would think they would be willing to make

1    themselves, or ought make themselves available.

2         And the third, I would think, as a general matter,

3    it would be State Street would want them to make themselves

4    available, because it would want to do whatever it could to

5    be sure that this proceeding was one and done.  And it has

6    its -- not only does it have its non -- deferral, or

7    whatever, the agreement with the Government, in cooperation

8    with the Government, but as a general matter, we all -- we --

9    maybe Mr. Weinberg feels differently, but I think the rest of

10   us would all like to do this once well and be done.  And it

11   may be in Mr. Weinberg's interest to repeat, to have a

12   do-over, depending on how it all went the first time.  But I

13   would think State Street would have that interest.

14        And like certainly one issue in this case, it might

15   not be a big issue when it's all said and done, but it might

16   be an issue, is the fact that there are witnesses who are

17   overseas who aren't subject to the subpoena power and what

18   the significance of that is.  And so if those people testify,

19   then that's not an issue, or it's not an issue as to them.

20        And so those are all lots of reasons that I can

21   think of that it would be preferable if these witnesses made

22   themselves available.  Everybody here is agreeable to let

23   them testify by videoconference at a stipulated time.  So

24   that, you know, minimizes -- they don't have to come here.

25   We can do it at a certain time.  There's a lot that -- you

1    know, that eases the burden on them.

2         So I had this status conference because I wanted to

3    tell all those things to you, in the belief that somehow I

4    might be persuasive upon you, and you might then be

5    persuasive upon them.

6         MR. BUTTS:  Thank you, Your Honor.  So I've been

7    taking good notes about what you said, and I will relay that.

8    I would also say, I have been in touch with at least the two

9    former State Street lawyers, and they did appear in the UK

10   when they were deposed --

11        THE COURT:  Right.

12        MR. BUTTS:  -- just in the SEC case.  And so you

13   know, I have been in touch with them about this and offered

14   to represent them, so they would be, you know, with counsel,

15   without charge, and obviously make, you know, facilities

16   available for the videoconference.  And you know, both of

17   them were quite strong in their answer that they were not

18   interested in that, and one, as recently as Friday, was very,

19   very strong.  But I will relay what you said.

20        I'm not optimistic that they will change their

21   mind.  They are, as you mentioned, former employees with, you

22   know, no ongoing obligations to State Street vis-à-vis any

23   employment relationship.  The third lawyer, who is the one in

24   the Netherlands, is a former associate of one of State

25   Street's outside counsel.  She -- that firm has been

1    representing her, and as such, I don't have a direct line to

2    her.  But I spoke to her lawyer on Friday, in anticipation of

3    this conference, and he told me that she had thought through

4    it carefully and made her decision.  I'll relay these

5    comments to him.

6          I don't know what her current status is, but I know

7    that she was scheduled to have a baby only a few weeks ago.

8    And god willing everything went well and she's at home with,

9    you know, a two-week or three-week old infant.  And I don't

10   know if that's weighing on her decision, as well.  But you

11   know, I have passed on the sentiments that you shared

12   earlier.  I'm willing to do it again.

13         THE COURT:  Thank you.  I guess I would say just a

14   couple more things.  One, obviously, you know, I appreciate

15   that if she's home with a two-week-old baby, testifying in a

16   foreign criminal proceeding of which she's, at most,

17   peripherally involved as a fact witness, would probably be

18   low on her list of considerations, to the extent that she

19   even remembers at the moment this case.  On the other hand,

20   we would be talking about testimony -- this is during the

21   defense case, so it's coming later in June.  That gives her a

22   little more window of time.  It's not huge, I recognize, but

23   it's something.  I'm happy to be as accommodating as we can

24   be about the time.  You might -- I don't sense it's the

25   longest amount of testimony.

1           How long, if you got everything you wanted from

2     that witness, would it be, Mr. Weinberg, on direct?

3           MR. WEINBERG:  30 to 45 minutes.

4           THE COURT:  So it would probably be an hour, total,

5     at the most?

6           So I understand that that's -- if she's home with

7     the baby, it could be inconvenient.  But nonetheless, I think

8     the other considerations I mentioned apply.

9           And there is another, I suppose, further

10    consideration you can think about, which is that, you know,

11    at some point -- there's various motions before me now, and

12    depending on the outcome of the case, there could be other

13    motions, and some of them implicate that Mr. Weinberg is

14    raising this question about foreign evidence and

15    availability, and the like.  And so I've written a little bit

16    on that already, I think, in some orders, but I might or

17    might not have to write more about that at the time it comes

18    or at different points related to either pending motions or

19    later.

20          And so I would think about that and certainly -- I

21    don't -- the only reason that I heard about why they wouldn't

22    want to testify is the one you mentioned.  I understand that

23    reason.  And especially I understand that reason if we were

24    having trial this week.  But other than that, I don't know.

25    You know, people sat for a civil deposition, I don't know why

1    they wouldn't be willing to sit for another.  I get that I

2    can't compel them to, but it would be nice if they

3    cooperated.

4            MR. BUTTS:  Understood, Your Honor.  They -- you

5    know, they did testify in the civil deposition, and you know,

6    I don't know that this is driving, necessarily, the ultimate

7    thing in their decision-making, but there was some concern on

8    their part about characterizations made of their testimony in

9    one of Mr. Weinberg's papers and, you know, suggesting that

10   they were more knowing or more knowledgeable about what

11   Mr. McLellan was alleged to have been doing than they really

12   were.  And they were quite categorical in their testimony in

13   the case they were noticed for.

14           THE COURT:  All the more reason, one would think,

15   that they would like the chance to be the oracle of their

16   views as to what they did and didn't know at the trial, to

17   the extent they're asked.  I mean -- and one of the virtues

18   of testimony at trial, of course, is there are judges to

19   enforce the rules, unlike at depositions.  And I understand

20   that they don't like the way -- but they're -- but I guess,

21   as you know, they're going to be characterized in pleadings

22   whether they testify at the trial or not.

23           If they don't testify at the trial and Mr. Weinberg

24   is going to characterize them in pleadings, then the

25   Government will characterize them probably differently, but

1    characterize their view of the testimony and pleadings, and

2    I'll characterize what -- I have the transcripts.  I'll

3    characterize the testimony as I -- to the extent I think it

4    needs to be characterized, in whatever way I see fit, to the

5    extent I need to write about it, to the extent I write an

6    opinion discussing their decisions not to testify.  If they

7    testify, it will speak for itself to the jury.

8            MR. BUTTS:  Your Honor, I understand all of that,

9    and I will, as I say, be happy to talk to them again.  This

10   conversation that you're anticipating is not unlike what

11   we've previously talked about.  But I'll relay that it came

12   from you, and that may cause them to think about it

13   differently.  I don't know, but I will be happy to do that.

14   And obviously, in the case of Ms. Lewis, it will be a

15   conversation with her lawyer.

16           THE COURT:  Sure.  You can convey to them, I

17   scheduled a very special status conference just for this

18   purpose, just so I could communicate this to you.  That was

19   my entire purpose.  That was the only purpose for today's

20   hearing.  And I invited the parties to comment on whether I

21   should do this, and neither objected.  And so that's where it

22   stands.

23           Is there anything else from -- -- I don't have

24   anything else, Mr. Butts, unless you have something else you

25   want to address with respect to this.

1          MR. BUTTS:  I have something I would like to ask,

2    not with respect to this, but with respect to a motion to

3    compel that we're scheduled to respond to today.

4          THE COURT:  Oh.  Yes.  Go ahead.

5          MR. BUTTS:  Which is only that there was a -- that

6    motion, just for your recollection, was filed ex parte or --

7          THE COURT:  So part of it was ex parte, and I

8    ordered that it all be served on you, so you could understand

9    what the -- the whole thing.  And then Mr. Weinberg asked me

10   to say, "Well, yes, but you can't share the ex parte parts

11   with the Government," and I said okay to that.

12         MR. BUTTS:  That's right.  And so my question is,

13   with regard to the opposition that we'll be filing today, I

14   don't think that it reveals anything that was in the ex parte

15   portions of that, and we wrote it to take out the name of the

16   client so that it wouldn't need to be filed under seal.  But

17   I obviously don't want to offend any order expectations that

18   you have.

19         THE COURT:  I don't have any.  My -- you hit the

20   two expectations that I had.  If you referred to the ex parte

21   things, then I would want you to redact those parts and file

22   a redacted public copy and a sealed unredacted.  If you're

23   not -- if we're not -- I guess we're not referring to the

24   name of the insurance company in pleadings at the moment,

25   right?

1          MR. FRANK:  Not for --

2          MR. BUTTS:  I can refer to it the same way as

3     the --

4          THE COURT:  Fine.  If you did it the same way, then

5     that's fine.  So I don't -- if you have any concern about

6     something running up against the ex parte, you can run it by

7     Mr. Weinberg or Mr. Goldstein and see.  But other than that,

8     I'm not only perfectly content that you file it not under

9     seal, but I appreciate that you made an effort to advance

10    your client's positions fully and effectively, without having

11    to file it under seal.  It just makes everything easier.

12         MR. BUTTS:  Okay.  Thank you, Your Honor.  There

13    will be one -- there will be a small piece that's within an

14    exhibit that refers to the client's name that will be

15    redacted.  But I think for all purposes --

16         THE COURT:  Hold on one second.  Is there any

17    reason that the client's name needs to be redacted at this

18    point, Mr. Frank?  Should he redact it from the --

19         MR. FRANK:  Your Honor, under Justice Department

20    policy, victims aren't supposed to be identified until they

21    need to be identified.  At this point, we're four days away

22    from trial.  I don't think it makes a big deal, but -- or

23    five days.  But technically, our policy is not to identify.

24         THE COURT:  Not to identify until they're literally

25    called on the witness stand or something like --

```
 1              MR. FRANK:  Or need to be identified in court, yes.
 2              MR. BUTTS:  I mean, it's already redacted.
 3              THE COURT:  Fine.
 4              MR. BUTTS:  We can do that as long as it doesn't
 5    bother anyone.
 6              THE COURT:  It's not going to bother anybody, I
 7    don't think.
 8              It's not going to bother you, is it?
 9              MR. WEINBERG:  Not going to bother me.  But I do
10    think that at some appropriate time, on or before June 4, we
11    ought to be --
12              THE COURT:  I think on June 4th they have to be
13    revealed, because we have to reveal them to the venire.
14              MR. FRANK:  We agree, Your Honor.
15              THE COURT:  Right.  Okay.  All right, nothing else
16    with Mr. Butts.
17              Any of you have anything else on this issue.
18              MR. FRANK:  Your Honor, I just want to clarify the
19    record on one point.  And I realize we're not arguing
20    motions, I'm not trying to argue motions, but there were some
21    representations made in the defense's motions yesterday that
22    the Government has done nothing to accommodate defense
23    requests for foreign witnesses and foreign documents, and
24    that is categorically untrue, Your Honor.
25              We have stopped short of exercising the
```

1    Government's rights under the Mutual Legal Assistance Treaty,

2    because we've been advised by our Office of International

3    Affairs that that's prohibited.  We have made some pretty

4    extraordinary efforts to reach out to parties overseas, to

5    expedite -- to ask them for the production of documents, to

6    expedite the production of documents, which I believe were at

7    least, in the case of the City of London police, successful,

8    and to speak to these particular witnesses and their counsel,

9    through their counsel, to see if they would be willing to

10   testify.

11          We've even reached out, at Mr. Weinberg's request,

12   to authorities in Ireland, which the Court hadn't even

13   mentioned.  I did that at Mr. Weinberg's request, to see if

14   there would be any progress on that front.  So I just wanted

15   to clarify the record, because to the extent there are

16   proceedings down the line and to the extent it's relevant to

17   the Court's consideration, we really have tried.  We've had a

18   little bit of success, but not as much success as might be

19   hoped.

20          THE COURT:  Just for the record, I didn't convene

21   this hearing based on a conclusion that I needed to do --

22   that you didn't do it, and therefore, I needed to do it.  I

23   convened this hearing because they're not coming, these three

24   people.  And I thought that -- I was hopeful that, as lawyers

25   presumably committed to the, you know, expeditious and proper

1      administration of justice, these people who aren't subjects,

2      targets, or defendants, might be prepared to voluntary offer

3      their testimony in a way and mechanism that we've all

4      arranged that would be convenient for them and that it

5      would -- that there are some --

6             That while usually the entreaties of the executive

7      branch carry great weight, sometimes the entreaty from the

8      judge makes a difference.  And I thought I would, because I

9      think that it would be certainly -- it would facilitate

10     resolution of some issues if they were available.

11            MR. FRANK:  Understood, Your Honor.  And we don't

12     quarrel with any of that.  But to the extent there was a

13     representation in the record of the Court that we haven't

14     done anything, I very currently wanted to state that we have.

15            THE COURT:  And at the moment, I don't need to make

16     any findings about that.

17            MR. WEINBERG:  And I don't recall the exact

18     language that is triggering Mr. Frank's reaction, but I would

19     say, from the perspective of the defendant, one, the

20     Government opposed these very Rule 15 depositions.  And the

21     record shows, in the civil case, they were ordered by Judge

22     Woodlock on March 17th.  And by May, Freshfields, that is,

23     not WilmerHale, but it's the British lawyers for State

24     Street, were communicating.  In June, the home office of the

25     UK, less than 90 days --

1          THE COURT:  Tell you what.  At the moment, let's

2     not go through all of these representations and views of each

3     thing, because it's not relevant to Mr. Butts' time and it's

4     not relevant to the issue that we have here.  To the extent

5     we need to get it, I'm not making any rulings about that.

6     Tomorrow we'll be going through the motions in limine, the

7     preliminary voir dire.

8          Did each of you, either of you, give me a

9     statement, a proposed statement to describe the case?

10          MR. FRANK:  We did not, Your Honor.  We can.

11          THE COURT:  I think that you should think about

12     doing that.  I've been working on one myself, but I feel like

13     they need some explanation -- in my experience, explaining

14     the case in a neutral way, both what -- what the Government's

15     case is and a little bit of the defense -- it may just be he

16     denies it.  You may want to say a little more.  But then it

17     gives them some context to answer the questions, and it

18     helps.  Not like pages.  Typically what I would read, you

19     know, in a simple criminal case, it might just be two or

20     three sentences.  There was a car stopped, they found a gun,

21     he's charged being a felon in possession of a firearm, and he

22     denies the charges.  They have a context to answer the

23     questions.

24          A little bit more here, not more than -- I tried a

25     patent case earlier this month with a somewhat complicated

1    set of issues, also had an international dimension to it.

2    And maybe I had two single-spaced paragraphs, or three, just

3    describing the case, because I think that's really helpful to

4    the venire to -- then when they hear names, they mean

5    something more to them.  And then when they hear the

6    questions about the law and the different questions about the

7    case, and the like, they have a little context to answer the

8    questions a little easier -- you get better answers, I guess,

9    is what I'm saying.

10            So if you submit something, that's great, because

11   then I'll look at that.  Otherwise, I'll draft something and

12   read it back to all of you.  But you might prefer to do it

13   together or give me some submission.

14            MR. FRANK:  We're happy to do that, Your Honor.  I

15   just wanted to clarify, is it tomorrow?  My calendar shows

16   Thursday.

17            THE COURT:  I can't remember now.

18            THE DEPUTY CLERK:  We have it on for 2 o'clock,

19   Wednesday, the 30th.

20            THE COURT:  Let me just see one thing.

21            MR. FRANK:  There were two separate -- there were

22   actually two separate orders, I believe.  The second order

23   was for Thursday?

24            THE COURT:  I'm available at 2:00 tomorrow and 2:00

25   on Thursday.  I'm happy to meet -- it may be we may need to

1   meet twice.  There's a lot of motions.

2              Are you both available tomorrow?

3              MR. WEINBERG:  Yes, Your Honor.

4              THE COURT:  Why don't we -- tomorrow, we meet from,

5   at most, 2:00 to 3:30, because I have something else at 4:00.

6   So why don't we, if you're available, let's start tomorrow at

7   2 o'clock, because you filed a lot of motions.  I've read

8   everything that you filed.  But you both have done a really

9   nice job at presenting the issues.  The good part about that

10  is you're doing a really nice job.  The bad part is it makes

11  my job really hard and -- so then if we go through them,

12  we'll do that.  If we're done with everything, great, we're

13  done on Wednesday.  It might be better for you.  But if we're

14  not, then we can talk again on Thursday.

15             MR. WEINBERG:  Thank you, Your Honor.

16             Judge, at some point, can you just remind us what

17  the Court's jury selection practice is?

18             THE COURT:  Yes.  I'll tell you briefly right now.

19             So we will bring the venire in.  I will -- they'll

20  be sitting in the audience.  Juror number one, listed on

21  the -- you know the sheet you get, one to whatever?  Juror

22  number one will be to my left, in the first row.

23             Mr. Butts, you can stay for this.  But if you want

24  to hang up, if you haven't already hung up, you are free to

25  do so.

1          MR. BUTTS:  Thank you, Your Honor.  I will leave
2    you all.  Thank you.

3          THE COURT:  All right.  Bye.

4          (Mr. Butts leaves the conference call.)

5          THE COURT:  Juror number one, in the first row to
6    my far left.  Across, I guess, would be four, eight, 16, 20.
7    Groups of four.  I think they put four in each bench.  And
8    then the second row would be 21 across, third row like that.

9          I will then ask a series -- I will ask some
10   amalgamation of the questions that all of you propose.  We
11   can go over that tomorrow.  And I'll ask, basically,
12   questions where they'll raise their hand with a "yes," and
13   raising their hand would be an answer that would suggest to
14   me further inquiry is required.

15         For each question, "Do you know the lawyers" -- and
16   then whoever raised their hand, we'd ask them for their juror
17   number and we would write down their number, number one,
18   juror number ten, what have you.  And we go through question
19   one, two, three until I've asked all the questions of the
20   venire.

21         And then I would bring, starting with the juror
22   number one, and, "Did you raise your hand?"  If they raised
23   their hand, I'd bring them over to sidebar with all of you.

24         You can have your client there or not, as you
25   prefer.  You do whatever you want as to that.

1          I will ask the juror -- potential juror follow-up
2    questions about the one or more questions to which they
3    raised their hand.  And then when I'm done with that, I'll
4    turn to each of you, "Do you have any follow-up questions?"
5    So if want to follow-up on those issues, you may.  It's no --
6    so in that sense, yes.  It's not license to ask about -- they
7    didn't raise their hand to the law enforcement question and
8    you want to say, "Well, what do you think of law enforcement
9    and FBI agents and," no, because that's far afield.  If
10   something were missing on the form that you got from the jury
11   office, that would be not within what I asked about, but I
12   wouldn't mind that.  But beyond that, not really.  No.
13         Then I will send the person off.  And then that's
14   the moment we'll have our discussion about for-cause
15   excusals.
16         So here's how it typically breaks out.  There's
17   some people who I'm going to excuse for scheduling reasons,
18   and I'll just -- I'll say to you, "Do you have any objection
19   to that?"  Just as to this person.  Some people I might defer
20   on.  I might say I'm thinking about excusing them for
21   scheduling reasons, but I kind of want to see how we do, how
22   many we have.  So they're a question mark as to an excuse.
23   But the ones that I'm excusing for scheduling, I'm not
24   telling them at that moment.  I'm sending them back to their
25   seat, but I'm not sending them downstairs, mostly because I

1    don't want to create a rush to downstairs and sometimes I

2    want to think about that.

3           So anyway, I'll say that to you.  I'm very

4    transparent about my thinking about the scheduling.  And then

5    if you want to excuse the person for cause, because they said

6    they never met a law enforcement agent that -- who didn't

7    stand true, or because he was indicted he must be guilty, or

8    what have you, whatever the reason you want to advance,

9    that's the time.  Make your for-cause objection before I get

10   to the next juror.

11          And the reason that I want to resolve it then is

12   for several reasons.  It's fresh in my mind, your objection.

13   And whatever response I get from the Government, or vice

14   versa, might cause me to think I want to talk to the person

15   some more, so I'll call them back.  And that's a very

16   convenient time to call them back.

17          You can wait until they're out of -- until they're

18   back a little ways, so you don't have to do it sort of within

19   earshot of them.  That's fine with me.  And then we'll have

20   our discussion and then I'll resolve it.  And usually I'll

21   resolve it right then, or I'll call them back, talk to them.

22   And we'll have another discussion, and then I'll resolve it.

23          Sometimes I'll wait and say I want to think about

24   that one, and there will be a question mark.  And we'll -- so

25   we'll keep going and I haven't ruled on it, and you'll get

1    the chance to hear from me again about it.

2              So I'll go like that until we've cleared enough

3    jurors.  When we've -- until we've cleared enough jurors plus

4    one or two extra.  And when I say "cleared enough," we're

5    going to have 12 in the box, plus how many alternates?

6              Did we talk about how many alternates.

7              MR. FRANK:  I don't think we did, Your Honor.  We

8    would suggest, and based on my last trial experience strongly

9    suggest, that we have more than two, given the length of this

10   trial.

11             THE COURT:  I think we should have more than two.

12   I think four is enough.

13             MR. FRANK:  I think that's probably enough.

14             MR. WEINBERG:  Sure.

15             THE COURT:  All right.  So we'll do 16.  So then 16

16   plus -- you get 10, Mr. Weinberg?

17             MR. WEINBERG:  I do.

18             THE COURT:  So that's 26, plus you get six for the

19   Government, I think?

20             MR. WEINBERG:  I think we get a few extra for

21   alternates on top of that.

22             THE COURT:  Right, before -- we'll get to that in a

23   minute.  So you get one for each two alternates.  So you

24   would have - so in total, you get 12, plus 16 jurors is 28,

25   plus you have 6 plus 2 is 8, so that's 36.  So we need to

clear 37 or 38 jurors to have enough.  So when I get to 37 or
38, then I'll stop and I won't call up to sidebar anyone
else.  And if we get to 37 or 38, you know, but there's one
or two who are in the first group, who we've gone over and I
reserved on, I'll resolve that with you then and we'll talk
about it and whatever it would be.

Once I have cleared 37 or 38 jurors, then -- and
here's a question for you.  It's a choice.  The rules suggest
that you should do two steps, first the jury, and then the
alternates.  That's the way I would do it, unless both of you
agree to do it as one selection.  So I'll tell you how I do
it, and you can think about it and you can tell me tomorrow.

If we do it the way it's literally prescribed in
the rule, I would seat 12 in the box.  I will ask each juror
in the box to say their name, their occupation, what they're
spouse, significant other, partner, or similar person, if
there is one, does for work, what they do for work.  So we
hear from the person.  We go down the line of all 12, and
then I'll say, okay, let's go.  The first round, Government
goes first, the defense goes second, go back and forth, one
strike at a time -- I'm sorry, one strike for the Government,
two strikes for the defense, back and forth like this.  It
will become one and one, if you reach the point that you're
even and striking people in the 12.

Once you're done striking people in the 12, then

1    let's say you struck three people out of the 12.  Those three

2    people, I'll send down to the jury room -- by the way, before

3    I seat the 12, I'll send everybody down I've excused for

4    cause or scheduling.  So you're only looking out at the

5    cleared people.  And then I'll excuse the three you struck

6    from the box.

7             Now, we'll have -- I'll bring three new people in,

8    which will be the next three in order, sequentially.  And the

9    three I put in, I'll ask them the same question about work,

10   and the like.  Then it's round two.  Round two, defense goes

11   first, Government second.  And -- but you're only striking

12   those three people.  So once you're settled with the people

13   in the box and you didn't strike them and you're done with

14   the back and forth, you know, if Mr. Frank says, "Well, I'm

15   only striking one person," you can go as long as you want,

16   but once you say you're done, whoever is left in the box is

17   on the jury.  So we would do that until we're done with the

18   12, until we have 12.

19            Then we go to the alternates.  And I'd seat four

20   alternates, ask them the same question, then we go and start

21   with the Government, back and forth, one, one, one, one.  And

22   then we do another round, switch in the second round and you

23   start.  That's if we do them separately.

24            If we combined them as one pick, then I would seat

25   the 16 people at the same time, and you could strike anybody

1    you wanted.  And then the -- I have to think about it.  I

2    would be open to your suggestions.  Probably what I would do

3    is the people in the four seats furthest from me, two in the

4    last row, two in the front row, would be the alternates.  And

5    that's the way I've done it the one or two times people have

6    agreed to do it as a unitary process.

7             MR. FRANK:  And in that case, Your Honor, we would

8    just go back and forth among the 16 until we'd exhausted our

9    strikes?

10            THE COURT:  Correct.  Yes.

11            MR. FRANK:  And is it Your Honor's practice to tell

12   the alternates that they're alternates?

13            THE COURT:  No.  Unless you see some reason that I

14   should.  Ordinarily, I wouldn't tell them now, because I

15   don't really know now.  They're seemingly alternates now, but

16   they might not actually be alternates, because somebody could

17   get sick, you know, we could lose someone.  So I wouldn't

18   tell people now that they're alternates.  I would go all the

19   way to the end, until we're ready to send them out to

20   deliberate, and then whoever is actually an alternate, I

21   would deal with them.

22            MR. WEINBERG:  Judge, just to be clear about one

23   thing, like we line up one through 20, and let's say 12 are

24   the jury.  And if any are challenged for peremptories, you

25   would then have the next person, the next person --

1          THE COURT:  Let's suppose everybody came in, no one

2     answered yes to any questions, there was no scheduling

3     issues, no for cause.  It was my dream.  The first 12 jurors

4     would be in the box, one to 12 on your list.  Mr. Frank

5     struck two and you struck two.  So I would excuse those

6     people, send them on their way.  Round two would come.  I'd

7     fill their four empty seats with jurors 13, 14, 15, 16, if

8     we're just doing the 12 now.  And in round 2, you could only

9     challenge those four people wherever they sat.

10          MR. WEINBERG:  So in other words, the randomness is

11    done when they line jurors up.

12          THE COURT:  Yes.  I don't do anymore with the

13    randomness once they're in here.

14          MR. WEINBERG:  Okay.

15          THE COURT:  Right.  It's just going through the

16    line.  So in that sense, the person at the end, like the 67th

17    juror -- we probably won't have 67, but the last one on your

18    list we might get to, because, you know, there could be a lot

19    of scheduling issues in this case.  I think three to four

20    weeks, it's -- encompasses the end of school, public school,

21    and the beginning of summer vacation, so there may be a fair

22    number of people who are going away on vacation June 18th or

23    June 25th, you know, end of school, public school, if they

24    have kids.  Maybe not.  It's a lot of snow days, maybe school

25    is pushed out.  That might help you out.  But it's a long

1    time, and there are more schedules.

2            MR. FRANK:  I'm sorry, I just got confused.  So the

3    alternate plan -- the two options are three at a time, we do

4    what we do, and then you bring up another three and those --

5            THE COURT:  No, no.  Two options.  Option one is 12

6    jurors, we pick the jury.  When we're done picking the jury,

7    we pick four more, in which case your challenges for the

8    alternates you do separately.  And we pick them -- we pick

9    12, and when we're all done with 12, then we pick four.  And

10   you have separate groups of strikes for the two groups.

11           MR. FRANK:  Understood.  But the mechanism for

12   picking those is you bring three up at a time?

13           THE COURT:  No.  I bring 12 up -- if I'm doing the

14   two step, jurors and then alternates, I bring 12 up.  Your

15   first round, you strike one, he strikes one or two.  If he

16   only strikes one, that means he's done.  You go, you will say

17   "I'm content," or you strike another.  And you go back and

18   forth among the 12 until you've exhausted yourself with those

19   12.  You're either out of strikes, or you're content with who

20   hasn't been struck.  And the same for him.

21           Once you're both done like that, I excuse the

22   people you've struck.  That could be three jurors, it could

23   be one juror, it could be all 12.  But whoever is left, if

24   anyone is left in the box, they're going to be on the jury

25   because then in the second round, no back-strikes.  You

1    can't strike them.

2            MR. FRANK:  And the only difference between that

3    and calling up 16 is that it's just all in one.

4            THE COURT:  Correct.  You're combining your

5    alternates.  And there must be some strategic significance

6    for how it works out with the pool that I confess eludes me.

7    It's a little simpler, from my perspective, to just put 16 in

8    the box and do it once.  But I think the way I read the rule

9    is it prescribes it the other way.  So I'm not prepared to do

10   it as a one-step process unless you both agree.

11           MR. FRANK:  So when Your Honor said something about

12   three at a time, that was three strikes at a time, his two

13   and my one?

14           THE COURT:  Yes, just by way of example, if there

15   were three strikes.  Correct.  Not that there's some --

16           MR. FRANK:  You would go back and forth until both

17   of us say we're done, and then you would fill in the new

18   spots.  And then we only focus on the new spots.

19           THE COURT:  Correct.

20           MR. FRANK:  Got it.  Thank you, Your Honor.

21           MR. WEINBERG:  Judge, I could tell you, we prefer

22   the 10 and 6 for the 12 and then the 2/2 for the alternates.

23           THE COURT:  You'd prefer to do it in two rounds.

24           MR. WEINBERG:  We like 10 to 6 better than 12 to 8

25   in terms of --

1          THE COURT:  Oh, I see.  So you want to pick the

2     jury and then pick the alternates.

3          MR. WEINBERG:  That's the way I --

4          THE COURT:  Okay.  I think that's what the rule

5     prescribes, and so then that's the way we'll do it.  Okay.

6          MR. WEINBERG:  Last question, Your Honor.  Should I

7     assume that even if we pick the jury on Monday before the end

8     of the day, we would do openings on Tuesday?  Or should we be

9     ready to do openings?

10         THE COURT:  I think you should be ready to do

11    openings on Monday, simply because this is a long trial.

12    We're losing one day because of the Court's conference, so

13    I'd rather keep pressing.  I certainly would not expect

14    witnesses in the afternoon.  If we -- if we pick the jury by

15    10:00, I would want to go to openings and then go to

16    witnesses.  I find it hard to believe that all of that will

17    happen before 1 o'clock, in which case I would think about

18    openings in the afternoon and think about maybe not.  But I

19    think, at the moment, you should think about being ready.

20    And we could talk about that some more tomorrow.

21         MR. WEINBERG:  Last question.  Would Your Honor

22    impose on the Government to at least tell us who their first

23    witnesses are so we can be ready --

24         THE COURT:  I will tell you both this, that's

25    apropos that.  And then we can go, and we'll talk more about

1  this tomorrow.  But I want to meet -- other than -- Monday we

2  can meet at 9:00.  But after that, I want to meet at 8:30

3  every day, because I want to review whatever evidentiary

4  issues you anticipate arising during the trial.  I'd rather

5  you bring them up, even if I can't resolve them at 8:30.  You

6  preview them, I can hear your arguments, I'm familiar with

7  them.  Then I can -- I have -- that gives me my best chance

8  to be able to resolve the evidentiary issues without a

9  sidebar, which is my goal.  The jurors don't like sidebars,

10  and I'd like to spend the juror's time, that they give us

11  from 9:00 to 1:00, hearing testimony.

12          So yes, I would like you to tell him in advance,

13  you know, like whatever you work out that's reasonable and

14  fair to you and fair to them, of who's coming up day to day,

15  so that at 8:30 in the morning, we can make use of that time.

16  So my goal is to talk about those evidentiary issues.

17          I've done this in civil cases, I've done it in

18  criminal cases.  I stole the idea from one of my colleagues.

19  And I found that although it's a bit taxing, it -- in terms

20  of time, I find it very helpful.  And it means that often we

21  don't have to have sidebars, and when we do, they're more

22  abbreviated.  So that's what I want to do.

23          So yes, you don't have to tell them today,

24  necessarily, who's the first witness, but tell them.  And I'd

25  want you to tell them along the way.  I would think you could

1    work that out.  Tell them a day or two days in advance of

2    who's coming up.

3              And then when it's your case, you should do it the

4    same.

5              MR. WEINBERG:  Of course.

6              THE COURT:  I think that facilitates this focusing

7    and bringing up the evidentiary issues and then trying to

8    resolve them so that -- and that makes the 9:00 to 1:00 work

9    better in terms of you get more done during the 9:00 to 1:00.

10             Okay.  Great.  I'll see you tomorrow at 2 o'clock.

11   Have a good day.

12             THE DEPUTY CLERK:  All rise.  This matter is

13   adjourned.

14             (Court in recess at 3:49 p.m.)

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4          I, Rachel M. Lopez, Certified Realtime Reporter, in

5     and for the United States District Court for the District of

6     Massachusetts, do hereby certify that pursuant to Section

7     753, Title 28, United States Code, the foregoing pages

8     are a true and correct transcript of the stenographically

9     reported proceedings held in the above-entitled matter and

10    that the transcript page format is in conformance with the

11    regulations of the Judicial Conference of the United States.

12

13                         Dated this 7th day of January, 2019.

14

15

16

17                         /s/ RACHEL M. LOPEZ

18

19

20                         _____

21                         Rachel M. Lopez, CRR
                            Official Court Reporter

22

23

24

25