UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>    )<br>v.    )<br>    )   Criminal No. 16-cr-10094-LTS<br>ROSS MCLELLAN    )<br>    )   Leave to file granted on<br>    Defendant    )   December 8, 2020<br>    ) | |

### RESPONSE TO OPPOSITION TO MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C § 3582(c)(1))

Now comes the Defendant, Ross McLellan, by and through undersigned counsel, and hereby respectfully responds to the Government's Opposition to his Motion for Reduction of Sentence Pursuant to 3582(c)(1)(A)(i).

First, while the sentence this Honorable Court imposed was below the sentencing guidelines and considered all of the relevant factors that were applicable at the time of the October 16, 2018 sentencing hearing, respectfully no one could have predicted an intervening once-in-a-lifetime pandemic that threatens the medically vulnerable, like Mr. McLellan, with serious illness or death or that prevents inmate-parents from seeing their children for months or years.  Moreover, no one could have predicted that prisons would become the "tinderboxes for infectious disease." *United States v. Pabon*, 17-cr-00165-AB-1, Dkt. 118 at 8-9 (E.D. Pa. May 4, 2020).  Indeed, from November 30, 2020, the date from which Mr. McLellan quoted BOP statistics in his initial motion, to today, the total amount of inmate cases within BOP facilities increased from 24,445 to 28,167 (an increase of 3,722 cases in seven days) and virus related

1

inmate deaths increased from 145 to 151.  *See https://www.bop.gov/coronavirus/*.  Staff cases at FMC Devens increased from 6 to 8.  *See id.* [1]

That FMC Devens has not yet suffered a second wave of devastating infections – even though the county surrounding the prison has seen a recent exponential rise in cases – does not diminish the risk to Mr. McLellan's health and safety. *See* BOP, "Facility-Level BOP COVID-19 Trends," available at https://www.arcgis.com/apps/MapSeries/index.html?appid=a3e98be1aab94eadaaeaa96ed176f418; *see also United States v. Powell*, No. 05-cr-61, ECF No. 78 at 9 (D.D.C. June 18, 2020) ("[I]t cannot seriously be disputed that an individual in prison is less able to control his own surroundings and exposure than he would be if living in single-family residence in the community.").   As time and time again has shown, once a facility is infiltrated, the growth in positive cases is explosive and the measures taken by the BOP to stop the spread insufficient. *See United States v. Burrill*, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020) ("Federal correctional institutions, which had reported zero COVID-19 cases only weeks ago, and despite the steps the BOP has taken to contain the disease within its facilities, are now reporting numerous virus-related deaths.")  Mr. McLellan reports that he and other inmates eat in the same cafeteria (without masks) in a fairly confined space, that all of the inmates use the same bathrooms, sinks, and showers (similarly without masks) which are congested each morning and evening, and that inmates interact daily with visitors, BOP staff members, and other outsiders that present a risk of introducing the virus into the facility.  Furthermore, there has been no

---

[1] When Mr. McLellan chose to commence his sentence, the pandemic was under control in Massachusetts.  *See* Motion at 3. His mistake was in not anticipating that the public would get insufficient leadership from its elected officials and that it would ignore the warnings on travel and social distancing that have contributed to the depth of the unexpected fall/winter surge.

recent extensive COVID-19 testing at FMC Devens. *See* BOP, Facility-Level BOP COVID-19 Inmate Testing Trend, available at https://www.arcgis.com/apps/MapSeries/index.html?appid=a3e98be1aab94eadaaeaa96ed176f418; *see also United States v. Schafer*, No. 6:18-CR-06152 EAW, 2020 WL 2519726, at *2 (W.D.N.Y. May 18, 2020) ("[W]ithout knowing the percentage of the prison population that has been tested, the fact that there are no positive COVID-19 cases provides little insight into whether the virus has reached the facility."). In essence, stopping or preventing the spread of the virus in the prison environment – where inmates share the cafeteria, showers, and other facilities, and where guards and vendors can inadvertently introduce the virus – is difficult to impossible. Appropriately, not risking medically vulnerable inmates, courts have released defendants to home confinement from BOP facilities that have had no reported cases. *See e.g., United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, **2-4 (D. Nev. Apr. 17, 2020) (granting compassionate release to defendant, notwithstanding that FCP Atwater, where he was housed had seen no cases of COVID-19, recognizing how the realities of prison life make it impossible for medically vulnerable inmates to follow CDC guidelines to protect themselves in the face of COVID-19.); *United States v. Amarrah*, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (releasing a medically vulnerable inmate from FCI Loretto, despite no reported COVID-19 cases at the facility, because he could not adequately protect himself in line with CDC guidelines.); *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221 at *3 (E.D.N.Y. April 17, 2020) (releasing defendant to home confinement from facility with no confirmed cases and noting that "absent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility"); *United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *4 (N.D. Cal., April 10, 2020) (releasing defendant from

facility with no confirmed cases and noting that "[p]rison conditions mean incarcerated individuals, as well as society as a whole, are safer the more defendants are released.").

Second, that Mr. McLellan's medical conditions are presently well-controlled does not make him any less susceptible to serious injury or death. For example, a study comparing the medical outcomes between COVID-19 patients with well-controlled diabetes and poorly-controlled diabetes concluded that "clinical outcomes and chest CT severity scores are similar between patients with well-controlled and poorly-controlled diabetes." *https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7314673/*. The outcomes between the young and the old suffering from conditions afflicting Mr. McLellan are similarly the same. *See* Motion at 16. And, while the Government disagrees that Hypertension presents an increased risk, *see* Opp. at 9 (focusing on the language "might be at an increased risk"), the CDC has also published statistics that Hypertension – which is the leading co-morbidity amongst hospitalized patients – triples the risks of hospitalization for patients infected with COVID-19. *See* Motion at 17-19.

Third, the defense respectfully disputes that the BOP is the appropriate gatekeeper for relief from custody under the circumstance of an ongoing pandemic. In Mr. McLellan's case the BOP denied his compassionate release request on November 2, 2020 citing some (but not all) of his medical conditions, *See* Exhibit B to Opposition. Indeed, the letter omits reference to Mr. McLellan's diabetes or hypertension, which are significant comorbidities that place Mr. McLellan in one of the highest categories of risk.[2] Furthermore, the BOP advised Mr. McLellan on November 25, 2020 that his diabetes, obesity, and hypertension are COVID-19 risk factors and that "Home Confinement provides the opportunity for the inmate to practice optimal

---

[2] On November 2, 2020, Mr. McLellan was receiving treatment, including through medication, for both diabetes and Hypertension through the BOP.

infection prevention control measures…," but has taken no further steps, under the CARES Act or Attorney General Barr's guidance, to place him in home confinement. Supplemental Exhibit 1 at 5-7; *see also United States v. Bischoff*, 460 F. Supp. 3d 122, 126 (D.N.H. 2020) (granting compassionate release to an inmate at the camp at FMC Devens despite the BOP's representation that it plans to release the defendant to home confinement and finding that although "Bischoff is not in that part of the facility where persons have tested positive for COVID-19 and the facility is taking measures including lock down to contain the disease, this pandemic has proven difficult to contain even with careful attention to restrictions and public health."); *United States v. Pena*, 463 F. Supp. 3d 118, 125 (D. Mass. 2020) (finding no reason a defendant at FMC Devens should stay in custody for an additional two months and "risk being infected by the COVID-19 virus" to qualify for home confinement under BOP guidelines).  Although FMC Devens has reduced the inmate population and "temper[ed] the risk of any outbreak", the risk of infection from outsiders and the concomitant spread of the virus within the facility is still significant and the risk to Mr. McLellan's health if he were to contract the virus is gravely serious.

Finally, the Government's comparison between Mr. McLellan and Mr. Pennings is misplaced. Mr. Pennings did not have to serve his sentence fearful of contracting a deadly virus. He also did not have to serve a term of Supervised Release. Furthermore, while Mr. McLellan could be eligible for release with Good Time Credit on October 16, 2021, he, now, respectfully requests this Honorable Court to allow him to serve the remaining portion of his sentence in home confinement, which would last through January 5, 2020.  *See* Exhibit C to Opposition at 3. Thus, the requested modification would not end Mr. McLellan's punishment; it would instead

accommodate the unique unanticipated peril posed by the virus while still including a significant restraint on liberty.[3]

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | Ross McLellan<br>By his Attorney, |
|  | **/s/ Martin G. Weinberg**<br>Martin G. Weinberg<br>Mass. Bar No. 519480<br>20 Park Plaza, Suite 1000<br>Boston, MA 02116<br>(617) 227-3700 |
| Dated: December 8, 2020 | owlmgw@att.net |

### CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, December 8, 2020, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg

---

[3] While the Government cherry-picked the article it cites, in that same article Mr. McLellan admits that he lied to State Street's client in an attempt to cover-up the overcharging scheme and admits that the jury's verdict was consistent with the evidence that was presented at trial. *See* https://www.institutionalinvestor.com/article/b1mhwblz8gkfx2/Everybody-Hates-Ross.