UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 16-10094-LTS |
| ROSS MCLELLAN. | ) ) ) | |

ORDER ON MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 577)

December 10, 2020

SOROKIN, J.

Ross McLellan, who is presently serving a sentence for securities fraud and related crimes, seeks an order pursuant to 18 U.S.C. § 3582(c)(1)(A) converting the remainder of his sentence to home confinement, citing the combination of his documented health conditions and the present COVID-19 pandemic as extraordinary and compelling reasons justifying his release. Doc. Nos. 577, 585.[1] The government opposes his request. Doc. No. 581. For the following reasons, McLellan's motion is DENIED.[2]

On June 26, 2018, following a jury trial, McLellan was convicted of conspiring to commit securities fraud in violation of 18 U.S.C. § 371, two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), and two counts of wire fraud in violation of 18 U.S.C. § 1343. Doc. Nos. 472, 473. The charges arose from McLellan's role in a scheme to defraud large, institutional investors who were clients of State Street Corporation's Portfolio Solutions Group, which McLellan led. Implicated in the conspiracy were McLellan and two of

---

[1] Citations to items appearing on the Court's electronic docket ("Doc. No. __ at __") reference the document and page numbers assigned by ECF.
[2] Neither party requested a hearing, and the Court determined no hearing was necessary as the issues were ably and adequately explored in the parties' briefs.

his subordinates, both of whom ultimately entered guilty pleas and testified against McLellan. At stake were more than $20 million in undisclosed overcharges paid by six client-victims.

This was McLellan's first arrest and first conviction for any crime. Driven largely by the amount of money involved, the advisory guidelines sentencing range was 168 to 210 months' imprisonment. As the government conceded, that range "overstate[d] the severity of [McLellan's] crimes." Doc. No. 517 at 3. So, on October 16, 2018, the Court sentenced McLellan to eighteen months in prison, to be followed by two years of supervised release. Doc. Nos. 520, 522. McLellan filed a direct appeal, and the Court of Appeals granted him release pending the resolution of his appeal. Doc. No. 548. His conviction and sentence, however, were affirmed on May 20, 2020. Doc. No. 566. Thereafter, at McLellan's request, his self-surrender date was extended to July 7, 2020. Doc. No. 571. The government had not opposed McLellan's request; indeed, it had been willing to assent to an even longer extension of the self-surrender date in light of the COVID-19 pandemic, but McLellan had declined. Doc. No. 571 at 1. In his motion, McLellan expressed that he was "cognizant of the COVID-19 health risks," but that he sought "finality" and wished to surrender after the July 4th holiday. Doc. No. 568 at 2.

To date, McLellan has served approximately five months of his sentence; his expected release date is October 16, 2021. He is housed at the minimum-security satellite camp at FMC Devens in Ayer, Massachusetts. Doc. No. 577 at 2. In September 2020, McLellan asked the warden at his facility to file a motion for a sentence reduction on his behalf. Doc. No. 577 at 8-9. The warden denied his request on November 2, 2020.[3] Id. at 9.

---

[3] The government concedes that McLellan satisfies § 3582(c)(1)'s exhaustion requirement and, thus, that the Court has jurisdiction to entertain his request. Doc. No. 581 at 8.

McLellan's motion requires the Court to determine whether, having "consider[ed] the factors set forth in [18 U.S.C. §] 3553(a)," McLellan has identified "extraordinary and compelling reasons" warranting a reduction in his sentence. § 3582(c)(1)(A)(i). The Court's assessment is guided by the Policy Statement of the Sentencing Commission in § 1B1.13 of the United States Sentencing Guidelines. § 3582(c)(1)(A)(ii). That statement permits a reduction in sentence if three conditions are met: 1) "extraordinary and compelling reasons warrant the reduction"; 2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and 3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (2), (3).

McLellan is 48 years old and suffers from, inter alia, Type-2 diabetes and obesity, both of which are identified by the Centers for Disease Control and Prevention ("CDC") as conditions which place an individual "at increased risk of severe illness from COVID-19." CDC, "People with Certain Medical Conditions," http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 9, 2020); see Doc. No. 577 at 1, 12; see generally Doc. Nos. 577-3, 578, 578-1, 578-2.[4] On this basis, the government agrees that McLellan has satisfied the first of the three required conditions listed in the Policy Statement. Doc. No. 581 at 9. Thus, the Court proceeds to assess the remaining conditions—public safety and the § 3553(a) sentencing factors.

Though McLellan's health conditions are matters of legitimate concern, he is now and will likely remain at the FMC Devens prison camp until released by the Bureau of Prisons in the

---

[4] The record also suggests McLellan suffers from other conditions—specifically, hypertension and liver disease—which "might," according to the CDC, increase one's risk of serious illness arising from COVID-19. The Court need not resolve the implications of these other conditions, as he has surpassed the first hurdle identified in the Policy Statement in any event, and its analysis of the other factors is not altered by the severity of the additional conditions.

ordinary course to the Residential Reentry Center in Boston or his residence on home confinement.  See 18 U.S.C. § 3624(c)(1), (2) (providing for "prerelease custody" in "a community correctional facility" or "home confinement for the shorter of 10 percent of the term of imprisonment . . . or 6 months").  The camp is presently less than half full and has no active COVID-19 cases among its inmates.  Doc. No. 581 at 5-6.  Nothing in the record suggests that McLellan is currently exposed to unduly harsh or excessively risky conditions of confinement such that the Court would deem it necessary to reweigh the § 3553(a) factors on that basis.

Furthermore, McLellan committed a serious crime for which he has served less than a third of his sentence—and less than the amount of time his less culpable co-conspirator served as a result of a sentence also imposed by this Court.  It is true that McLellan does not pose a public safety risk.  However, as the government aptly notes, the same was true at the time McLellan was convicted and sentenced.  This Court's original sentencing determination was not motivated by concerns for public safety, and so the fact that McLellan poses no "danger to the safety of any other person or to the community" is not a circumstance that merits a change in the Court's sentencing calculus.

Likewise, the substantial collateral effects of McLellan's crime and his sentence— including its impact on his family—justified, along with other factors, this Court's imposition of a sentence substantially below those the guidelines recommended (at least 168 months) and the government sought (60 months).  Such effects did not then, nor do they now, justify a sentence lower than the one the Court imposed, when considered in the mix of the totality of the pertinent sentencing factors.  In short, notwithstanding the increased burden on McLellan and his family,

McLellan has not demonstrated that the Court should alter the manner in which it weighed the § 3553(a) factors at the time of his sentencing.[5]

Accordingly, the Court finds that a reduction in McLellan's sentence at this time is neither warranted nor consistent with the Sentencing Commission's Policy Statement. His motion for compassionate release (Doc. No. 577) is DENIED.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[5] In addition, the Court notes McLellan's own decision—made in the midst of the pandemic—not to seek a greater postponement of his surrender date. The record reflects the government would have supported such a request, and McLellan's contemporaneous filings reflected his awareness and consideration of the implications of serving his sentence during the COVID-19 crisis.